Case 1:22-cv-22213-CMA Document 1-2 Entered on FLSD Docket 07/18/2022 Page 1 of 389

IN THE CIRCUIT COURT OF
THE ELEVENTH JUDICIAL
CIRCUIT, IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CE-1709 Midland Trail Shelbyville KY, LLC;
Amazonia Consulting Group, LLC, on behalf
of CHC-81 Street Westminster Co, LLC;
Amazonia Consulting Group, LLC, on behalf
of CHC-2015 North Wickham Road Melbourne
FL, LLC; Amazonia Consulting Group, LLC
on behalf of CC-1601 N Woodland Blvd Deland
FL, LLC; Amazonia Consulting Group, LLC,
on behalf of CHC-Holmes Corner Cheyenne
WY, LLC; Realty Franchise Services, on behalf
of CHC-2735 Calumet Trace Owensboro KY
Landco, LLC; Realty Franchise Services, LLC,
on behalf of CD-1204 Wade Hampton Blvd
Greer SC, LLC; Realty Franchise Services, LLC,
on behalf of CHC-4684 Patterson Ave Winston
Salem Landco, LLC; Realty Franchise
Services, LLC, on behalf of AFC West Road 8040
Ulmerton Rd, Largo Florida Landco, LLC; and
Amazonia Consulting Group, LLC, on behalf of
CD-2250 Cherry Road Rock Hill SC, LLC,

Case No.:

    Plaintiffs,

v.

Redstone, LLC d/b/a American Development
Partners, a Florida limited liability company;
Manny Butera, an individual; Shawn Eby,
an individual; Bruce Arinaga, an individual;
and Pun For Li, an individual,

    Defendants.

_____/

## **COMPLAINT**

CE-1709 Midland Trail Shelbyville KY, LLC ("Shelbyville"), Amazonia Consulting

Group, LLC ("Amazonia") on behalf of CHC-81 Street Westminster Co, LLC, Amazonia

Consulting Group, LLC on behalf of CHC-2015 North Wickham Road Melbourne FL, LLC,

Amazonia Consulting Group, LLC on behalf of CC-1601 N Woodland Blvd Deland Fl, LLC,

1

Amazonia Consulting Group, LLC on behalf of CHC-Holmes Corner Cheyenne WY, LLC, Realty Franchise Services, LLC on behalf of CHC-2735 Calumet Trace Owensboro KY Landco, LLC, Realty Franchise Services, LLC ("Realty") on behalf of CD-1204 Wade Hampton Blvd Greer SC, LLC, Realty Franchise Services, LLC on behalf of CHC-4684 Patterson Ave Winston Salem Landco, LLC, Realty Franchise Services, LLC on behalf of AFC West Road 8040 Ulmerton Rd, Largo Florida Landco, LLC, and Amazonia Consulting Group, LLC on behalf of CD-2250 Cherry Road Rock Hill SC, LLC (Shelbyville, Amazonia and Realty are each a "Plaintiff" and collectively, "Plaintiffs") by and through undersigned counsel, hereby sues Defendants, Redstone, LLC ("Redstone"), Manny Butera ("Butera"), Shawn Eby ("Eby"), Bruce Arinaga ("Arinaga") and Pun For Li ("Li"), (collectively, "Defendants"), and, in support thereof, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1)      Plaintiff CE-1709 Midland Trail Shelbyville KY, LLC is a limited liability company organized and existing under the laws of the State of Kentucky.

2)      Plaintiff Amazonia Consulting Group, LLC, is a limited liability company organized and existing under the laws of the State of Florida.

3)      Plaintiff Realty Franchise Services, LLC, is a limited liability company organized and existing under the laws of the State of Florida.

4)      Defendant Redstone, LLC is a limited liability company organized and existing under the laws of the State of Tennessee.

5)      Defendant Manny Butera is an individual who is sui generis and a citizen of Tennessee.

6)      Defendant Shawn Eby is an individual who is sui generis and a citizen of Wyoming.

7)      Defendant Bruce Arinaga is an individual who is sui generis and a citizen of Florida.

8)      Defendant Pun For Li is an individual who is sui generis and a citizen of Maryland.

9)      This Court has subject matter jurisdiction of this matter given that the amount in controversy exceeds the sum or value of $50,000.00, exclusive of costs, interest and reasonable attorneys' fees.

10)     Venue is proper in this Court because the claims and causes of action accrued in Miami-Dade County, Florida.

11)     In addition, venue is proper in this Court pursuant to Florida Statute §47.011 because Defendant Bruce Arinaga resides in Miami-Dade County, Florida, and because this Court has personal jurisdiction over Defendants Redstone, LLC, Manny Butera, Shawn Eby, and Pun For Li.

12)     This Court has personal jurisdiction over Defendants because the events or omissions that gave rise to Plaintiff's claims occurred in Miami-Dade County, Florida.

13)     Further, this Court has personal jurisdiction over Defendants because Defendants were members of a conspiracy to commit tortious acts towards Plaintiffs/the Owners, as detailed below.

14)     This Court has personal jurisdiction, and venue is proper in this Court, because Defendants form part of a criminal enterprise that fraudulently induced Plaintiffs/the Owners to pay substantial sums of monies to Defendants.

15)     This Court has personal jurisdiction over Defendants:

  i)      pursuant to Florida Statute §48.193(1)(a)(1) because the causes of action arise from Defendants "operating, conducting, engaging in, or carrying on a business or business venture in this state."

ii)      pursuant to pursuant to Florida Statute §48.193(1)(a)(2) because Defendants committed a tortious act within this state.

iii)     pursuant to Florida Statute §48.193(1)(a)(6) because Defendants caused injury to persons or property within this state arising out of an act or omission by the Defendants outside this state and, at the time of the injury, Defendants were engaged in solicitation or service activities within this state and/or were products, materials, or things, processed, serviced or manufactured by Defendants anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

iv)     Pursuant to Florida Statute §48.193(1)(a)(7) for breaching a contract in this state and for falling to perform acts required by the contract in this state.

v)      Pursuant to Florida Statute §48.193(2) because Defendants engage in substantial and not isolated activity within Florida.

<u>**GENERAL ALLEGATIONS**</u>

**INTRODUCTION**

16)     Through a fraudulent scheme and illicit conspiracy, Defendants stole and converted funds belonging to CE-1709 Midland Trail Shelbyville KY, LLC ("Shelbyville"), CHC-81 Street Westminster Co, LLC ("Westminster"), CHC-2015 North Wickham Road Melbourne FL, LLC ("Melbourne"), CC-1601 N Woodland Blvd Deland Fl, LLC ("Deland"), CHC-Holmes Corner Cheyenne WY, LLC ("Cheyenne"), CHC-2735 Calumet Trace Owensboro KY Landco, LLC ("Owensboro"), CD-1204 Wade Hampton Blvd Greer SC, LLC ("Greer"), CHC-4684 Patterson Ave Winston Salem Landco, LLC ("Salem"), AFC West Road 8040 Ulmterton Rd, Largo Florida Landco, LLC ("Largo"), and CD-2250 Cherry Road Rock

Hill SC, LLC ("Rock Hill") (Shelbyville, Westminster, Melbourne, Deland, Cheyenne, Owensboro, Greer, Salem, Largo and Rock Hill are hereafter collectively referred to as, the "Owners").

17)    Plaintiff Amazonia is a member of Westminster, Melbourne, Deland, Cheyenne and Rock Hill, and was a member at the time of occurrence of the actions and events described in this Complaint.

18)    It would be a futile and useless act for Amazonia to make a demand on the other members and/or managers of Westminster, Melbourne, Deland, Cheyenne and Rock Hill requesting that the other managers and/or members cause the company to take suitable action to enforce the rights and claims asserted herein.

19)    Plaintiff Realty is a member of Greer, Salem, Owensboro and Largo and was a member at the time of occurrence of the actions and events described in this Complaint.

20)    It would be a futile and useless act for Realty to make a demand on the other members and/or managers of Greer, Salem, Owensboro and Largo requesting that the other managers and/or members cause the company to take suitable action to enforce the rights and claims asserted herein.

21)    Defendant Butera is the owner and principal of Defendant Redstone, an entity that engages in construction and development.

22)    Defendant Eby is a franchise developer. Eby obtains approvals from franchisors for the establishment and operation of quick service restaurants for brands such as Church's Chicken and Captain D's.

23)    Defendant Arinaga and Li are managers of the Owners. Defendants Arinaga and Li also own an interest in member-entities of the Owners.

24)    Defendants Butera, Redstone, Eby, Arinaga and Li raised funds from the Owners by falsely representing to the Owners' agents, including Mr. Fernando Cassingena

("Cassingena"), in 2017 and in Melbourne, Florida and Deland, Florida, among other places, that Defendants would accomplish the construction and operation of numerous quick service franchised restaurants through mutual collaboration and effort. Defendants represented that Butera and Redstone would accomplish the construction and development of the restaurants. Defendants represented that Eby would obtain approval from the franchisors of the Church's Chicken and Captain D's franchise systems to operate Church's Chicken and Captain D's franchises at the restaurants. In order to accomplish their goals, Defendants Butera, Redstone, Eby, Arinaga and Li represented to the Owners that they required outside investment of millions of dollars.

25)     Defendants obtained the investment they sought from the Owners through an elaborate, fraudulent scheme and illicit conspiracy.

26)     Defendants Butera, Redstone, Eby, Arinaga and Li represented to the Owners that after the Owners purchased certain vacant parcels of real estate, Defendants Butera and Redstone would construct commercial buildings to be used as restaurants on the real estate so that the Owners could lease the restaurants to third parties for the operation of a franchise to be managed by Defendant Eby and/or his entities.

27)     Defendants promised that the high rents that the Owners would obtain from the leases would result in significant returns on the Owners' investments to purchase the real estate and construct restaurants.

28)      The Defendants also promised that the high rents would enable the Owners to sell the real estate for significant profits.

29)     In order to fraudulently induce the Owners to provide monies to Defendants, Defendants Butera, Redstone, Eby, Arinaga and Li conspired to provide to the Owners and their agents, representatives and principals, including Cassingena, written false financial projections regarding the capitalization rate, annual rent and monthly rent that the Owners

would achieve in the event Defendants constructed, established and operated quick service franchised restaurants on certain vacant parcels of land.

30)     As noted above, Defendant Eby was charged with obtaining approval from franchisors (including the franchisors of the Church's Chicken and Captain D's brands) to establish and operate franchises at the restaurants. In connection with obtaining franchisor approval, and unbeknownst to the Owners, Eby provided to the franchisors projections regarding the anticipated financial performance of the franchised restaurants. In order to ensure that franchisors would provide approval, Defendants conspired to the provide to the franchisors financial projections which contained projected rental amounts that the restaurants would pay to the Owners which were significantly lower than the false, inflated rental amounts that Defendants provided to the Owners.

31)     In other words, Defendants conspired to provide two sets of projected rents that the franchised restaurants would pay to the Owners. Defendants provided one set of projected rents to the Owners, and (unbeknownst to the Owners) another set to the franchisors. The set of projected rents that Defendants provided to the Owners were high, false and inflated in order to induce the Owners to provide millions of dollars to Defendants. The set of projected rents that Defendants simultaneously provided to the franchisors were much lower than the projected rental amounts Defendants provided to the Owners.

32)      In this manner, Defendants conspired to fraudulently induced the Owners to provide millions of dollars to Defendants, finance the construction and development of the restaurants, and enter into a series of separate and substantially identical development contracts (the "Development Contracts") with Defendant Redstone, LLC.

33)     Defendant Butera executed the Development Contracts on behalf of Redstone.

34)     The Development Contracts provide that the Owners would pay to Defendants Redstone and Butera millions of dollars and, in exchange, Redstone would develop, build and

construct commercial buildings for the Owners to utilize as restaurants on various parcels of vacant land located in Florida, South Carolina, Kentucky, Wyoming, Colorado and North Carolina (the "Restaurants"). *Id.*

35)     The Owners provided millions of dollars to Defendants Redstone and Butera pursuant to the Development Contracts and in reliance on their various misrepresentations and omissions of material fact.

36)     Notably, it was understood that Eby would receive a portion of the monies that the Owners provided pursuant to the Development Contracts in order to start-up a franchise at the Restaurants.

37)     However, Defendant Redstone failed to develop, build, or construct the Restaurants for the Owners as contemplated by the Development Contracts.

38)     Instead, Defendants have simply retained and converted to their own use the monies provided to them by the Owners.

39)     While the Development Contracts contemplate that Redstone would develop and construct the Restaurants, Butera and Redstone never intended to develop and construct the Restaurants or perform under the Development Contracts.

40)     It was always Defendants' intention to abscond with the monies paid by the Owners pursuant to the Development Contracts, without ever having built the Restaurants contemplated by the Development Contracts.

41)     To that end, Defendants conspired to, and did, continually make misrepresentations to the Owners and their representatives, including Cassingena, regarding the progress that was being made on permitting and construction in order to induce the Owners to execute additional Development Contracts and pay additional monies to Redstone and Butera.

42)    Defendants consistently misrepresented that Defendant Redstone and its subcontractors, architects and engineers were undertaking the work required to accomplish the construction and development of the restaurants. However, unbeknownst to the Owners, the subcontractors, architects and engineers were not undertaking the work required of them for the completion of the construction projects because Redstone and Butera failed to pay them with the funds provided to Redstone by the Owners, as contemplated by the Development Contracts.

43)    Defendants also conspired to, and did, mislead the Owners by consistently blaming delays in the construction projects on the cities and various governmental entities at issue, when in reality the delays were Redstone's fault as Redstone failed to pay the subcontractors, architects and engineers and intentionally failed to make progress in the permitting process or in construction.

### BUTERA AND REDSTONE INDUCE THE OWNERS TO ENTER INTO THE DEVELOPMENT CONTRACTS AND FAIL TO PERFORM UNDER THE DEVELOPMENT CONTRACTS

### The Westminster Restaurant

44)    In 2017 (prior to the execution of the "Westminster Contract"), Defendants Butera, Redstone, Eby, Arinaga and Li conspired and agreed to provide to Cassingena financial projections regarding the capitalization rate, annual rent and monthly rent that Westminster would achieve in the event Redstone constructed a commercial building in Westminster, Colorado for Westminster to lease to a third party and to be operated as a quick service franchised restaurant operated by Eby (the "Westminster Restaurant").

45)    In 2017, furtherance of Defendants conspiracy, Defendants Butera, Redstone, Eby, Arinaga and Li falsely represented to Cassingena, in writing and via email and/or mail, that Westminster would achieve: (i) a capitalization rate of 9% (ii) annual rent in the amount $195,050.32; and (iii) monthly rent in the amount of $16,254.19.

9

46)     Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

47)     The financial projections regarding Westminster were false and misleading. The rents that the Westminster Restaurant could actually achieve were far less than what was represented by Defendants. Defendants provided the false financial projections to Cassingena in order to induce the Owners to purchase real estate and enter into Development Contracts with Redstone for the construction of the franchised Restaurants to be managed by Eby.  All the while, Defendants knew that Redstone would not construct the Restaurants (including the Westminster Restaurant).

48)     In connection with obtaining approval in 2017 from the franchisor of the Church's Chicken franchise system to operate a Church's Chicken franchise at the Westminster Restaurant, Defendants conspired to, and did, provide to the franchisor projections of the rent that the Westminster Restaurant would pay to the Owners which were far lower than the aforementioned rental amount projections that Defendants provided to the Owners with respect to the Westminster Restaurant.

49)     Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that they provided to the franchisor projections of rental amounts for the Westminster Restaurant that were far less than the projections of rental amounts that Defendants provided to the Owners.

50)     On August 14, 2017, in reliance on the misrepresentations and omissions of committed by Defendants, Westminster executed a Development Contract (the "Westminster Contract") with Redstone, LLC for the construction of the Westminster Restaurant. *Id*. *See* a true and correct copy of the Westminster Contract attached hereto as <u>Exhibit "A"</u>.

51)     The Westminster Contract provides that Westminster would pay to Redstone a "Total Build Cost" not to exceed $2,167,225.81. *Id*. In addition, the Westminster Contract provides that Westminster would pay to Redstone a "development fee" of $197,020.53. *Id*.

52)     Subsequent to executing the Westminster Contract, Westminster provided to Defendants, and also directed its lenders to provide to Defendants, hundreds of thousands of dollars pursuant to the Westminster Contract and in reliance on Defendants' misrepresentations and omissions.

**The Shelbyville Restaurant**

53)     Also in 2017 (prior to the execution of the "Shelbyville Contract"), Defendants Butera, Redstone, Eby, Arinaga and Li conspired and agreed to provide to Cassingena financial projections regarding the capitalization rate, annual rent and monthly rent that Shelbyville would achieve in the event Redstone constructed a commercial building in Shelbyville, Kentucky for Shelbyville to lease to a third party and to be operated as a quick service franchised restaurant operated by Eby (the "Shelbyville Restaurant").

54)     In 2017, in furtherance of Defendants conspiracy, Defendants Butera, Redstone, Eby, Arinaga and Li falsely represented to Cassingena, in writing and via email and/or mail, that Shelbyville would achieve: (i) a capitalization rate of 9% (ii) annual rent in the amount $184,478.68; and (iii) monthly rent in the amount of $15,373.22.

55)     Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

56)     The financial projections regarding Shelbyville were false and misleading. The rents that the Shelbyville Restaurant could actually achieve were far less than what was represented by Defendants. Defendants provided the false financial projections to Cassingena in order to induce the Owners to purchase real estate and enter into Development

11

Contracts with Redstone for the construction of the franchised Restaurants to be managed by Eby.  All the while, Defendants knew that Redstone would not construct the Restaurants (including the Shelbyville Restaurant).

57)     In connection with obtaining approval in 2017 from the franchisor of the Captain D's franchise system to operate a Captain D's franchise at the Shelbyville Restaurant, Defendants conspired to, and did, provide to the franchisor projections of the rent that the Shelbyville Restaurant would pay to the Owners which were far lower than the aforementioned rental amount projections that Defendants provided to the Owners with respect to the Shelbyville Restaurant.

58)     Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners prior to the execution of the "Shelbyville Contract" that they provided to the franchisor projections of rental amounts for the Shelbyville Restaurant that were far less than the projections of rental amounts that Defendants provided to the Owners.

59)     On August 21, 2017, in reliance on the misrepresentations and omissions of committed by Defendants, Shelbyville executed a Development Contract (the "Shelbyville Contract") with Redstone, LLC for the construction of the Shelbyville Restaurant. *Id. See* a true and correct copy of the Shelbyville Contract attached hereto as Exhibit "B".

60)     The Shelbyville Contract provides that Shelbyville would pay to Redstone a "Total Build Cost" not to exceed $2,049,763.10. *Id*. In addition, the Shelbyville Contract provides that Westminster would pay to Redstone a "development fee" of $186,342.10. *Id*.

61)     Subsequent to executing the Shelbyville Contract, Shelbyville provided to Defendants, and also directed its lender to provide to Defendants, hundreds of thousands of dollars pursuant to the Shelbyville Contract and in reliance on Defendants' misrepresentations and omissions.

**The Rock Hill Restaurant**

62)     In 2017 (prior to the execution of the "Rock Hill Contract"), Defendants Butera, Redstone, Eby, Arinaga and Li conspired and agreed to provide to Cassingena financial projections regarding the capitalization rate, annual rent and monthly rent that Rock Hill would achieve in the event Redstone constructed a commercial building in Rock Hill, South Carolina for Rock Hill to lease to a third party and to be operated as a quick service franchised restaurant operated by Eby (the "Rock Hill Restaurant").

63)     In 2017, in furtherance of Defendants conspiracy, Defendants Butera, Redstone, Eby, Arinaga and Li falsely represented to Cassingena, in writing and via email and/or mail, that Rock Hill would achieve: (i) a capitalization rate of 9% (ii) annual rent in the amount $205,584.49; and (iii) monthly rent in the amount of $17,132.04.

64)     Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

65)     The financial projections regarding Rock Hill were false and misleading. The rents that the Rock Hill Restaurant could actually achieve were far less than what was represented by Defendants. Defendants provided the false financial projections to Cassingena in order to induce the Owners to purchase real estate and enter into Development Contracts with Redstone for the construction of the franchised Restaurants to be managed by Eby.  All the while, Defendants knew that Redstone would not construct the Restaurants (including the Rock Hill Restaurant).

66)     In connection with obtaining approval in 2017 from the franchisor of the Captain D's franchise system to operate a Captain D's franchise at the Rock Hill Restaurant, Defendants conspired to, and did, provide to the franchisor projections of the rent that the Rock Hill Restaurant would pay to the Owners which were far lower than the aforementioned

rental amount projections that Defendants provided to the Owners with respect to the Rock Hill Restaurant.

67)     Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that they provided to the franchisor projections of rental amounts for the Rock Hill Restaurant that were far less than the projections of rental amounts that Defendants provided to the Owners.

68)     On September 9, 2017, in reliance on the misrepresentations and omissions committed by Defendants, Rock Hill executed a Development Contract (the "Rock Hill Contract") with Redstone, LLC for the construction of the Rock Hill Restaurant. *Id*. *See* a true and correct copy of the Rock Hill Contract attached hereto as Exhibit "C".

69)     The Rock Hill Contract provides that Rock Hill would pay to Redstone a "Total Build Cost" not to exceed $2,284,272.10. *Id*. In addition, the Rock Hill Contract provides that Westminster would pay to Redstone a "development fee" of $207,661.10. *Id*

70)     Subsequent to executing the Rock Hill Contract, Rock Hill provided to Defendants, and also directed its lender to provide to Defendants, hundreds of thousands of dollars pursuant to the Rock Hill Contract and in reliance on Defendants' misrepresentations and omissions.

**The Melbourne Restaurant**

71)     In 2017 (prior to the execution of the "Melbourne Contract"), Defendants Butera, Redstone, Eby, Arinaga and Li conspired and agreed to provide to Cassingena financial projections regarding the capitalization rate, annual rent and monthly rent that Melbourne would achieve in the event Redstone constructed a commercial building in Melbourne, Florida for Melbourne to lease to a third party and to be operated as a quick service franchised restaurant operated by Eby (the "Melbourne Restaurant").

72)     In 2017, in furtherance of Defendants conspiracy, Defendants Butera, Redstone, Eby, Arinaga and Li falsely represented to Cassingena in writing and via email and/or mail, that Melbourne would achieve: (i) a capitalization rate of 9% (ii) annual rent in the amount $213,821.69; and (iii) monthly rent in the amount of $17,818.47. Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

73)     The financial projections regarding Melbourne were false and misleading. The rents that the Melbourne Restaurant could actually achieve were less than what was represented by Defendants. Defendants provided the false financial projections to Cassingena in order to induce the Owners to purchase real estate and enter into Development Contracts with Redstone for the construction of the franchised Restaurants to be managed by Eby. All the while, Defendants knew that Redstone would not construct the Restaurants (including the Melbourne Restaurant).

74)     In connection with obtaining approval in 2017 from the franchisor of the Church's Chicken franchise system to operate a Church's Chicken franchise at the Melbourne Restaurant, Defendants conspired to, and did, provide to the franchisor projections of the rent that the Melbourne Restaurant would pay to the Owners which were far lower than the aforementioned rental amount projections that Defendants provided to the Owners with respect to the Melbourne Restaurant.

75)     Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that they provided to the franchisor projections of rental amounts for the Melbourne Restaurant that were far less than the projections of rental amounts that Defendants provided to the Owners.

76)     On September 9, 2017, in reliance on the misrepresentations and omissions committed by Defendants, Melbourne executed a Development Contract (the "Melbourne

Contract") with Redstone, LLC for the construction of the Melbourne Restaurant. *Id. See* a true and correct copy of the Melbourne Contract attached hereto as <u>Exhibit "D"</u>.

77)     The Melbourne Contract provides that Melbourne would pay to Redstone a "Total Build Cost" not to exceed $2,375,796.50. In addition, the Rock Hill Contract provides that Westminster would pay to Redstone a "development fee" of $215,981,50. *Id.*

78)     Subsequent to executing the Melbourne Contract, Melbourne provided to Defendants, and also directed its lender to provide to Defendants, hundreds of thousands of dollars pursuant to the Melbourne Contract and in reliance on Defendants' misrepresentations and omissions

**The Deland Restaurant**

79)     In 2017 (prior to the execution of the "Deland Contract"), Defendants Butera, Redstone, Eby, Arinaga and Li conspired and agreed to provide to Cassingena financial projections regarding the capitalization rate, annual rent and monthly rent that Deland would achieve in the event Redstone constructed a commercial building in Deland, Florida for Deland to lease to a third party and to be operated as a quick service franchised restaurant operated by Eby (the "Deland Restaurant").

80)     In 2017, in furtherance of Defendants conspiracy, Defendants Redstone, Butera and Eby falsely represented to Cassingena in writing and via email and/or mail, that Deland would achieve: (i) a capitalization rate of 9% (ii) annual rent in the amount $205,523.70 and (iii) monthly rent in the amount of $17,126.98. Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

81)     The financial projections regarding Deland were false and misleading. The rents that the Deland Restaurant could actually achieve were less than what was represented by Defendants. Defendants provided the false financial projections to Cassingena in order to

induce the Owners to purchase real estate and enter into Development Contracts with Redstone for the construction of the franchised Restaurants to be managed by Eby. All the while, Defendants knew that Redstone would not construct the Restaurants (including the Deland Restaurant).

82)    In connection with obtaining approval in 2017 from the franchisor of the Church's Chicken franchise system to operate a Church's Chicken franchise at the Deland Restaurant, Defendants conspired to, and did, provide to the franchisor projections of the rent that the Deland Restaurant would pay to the Owners which were far lower than the aforementioned rental amount projections that Defendants provided to the Owners with respect to the Deland Restaurant.

83)    Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that they provided to the franchisor projections of rental amounts for the Deland Restaurant that were far less than the projections of rental amounts that Defendants provided to the Owners.

84)    On October 18, 2017, in reliance on the misrepresentations and omissions committed by Defendants, Deland executed a Development Contract (the "Deland Contract") with Redstone, LLC for the construction of the Deland Restaurant. *Id*. *See* a true and correct copy of the Deland Contract attached hereto as Exhibit "E".

85)    The Deland Contract provides that Deland would pay to Redstone a "Total Build Cost" not to exceed $2,283,596.70. In addition, the Deland Contract provides that Deland would pay to Redstone a "development fee" of $207,599.70.

86)    Subsequent to executing the Deland Contract, Deland provided to Defendants, and also directed its lender to provide to Defendants, hundreds of thousands of dollars pursuant to the Deland Contract and in reliance on Defendants' misrepresentations and omissions.

**Defendants Redstone and Butera misrepresent the progress
being made in construction and permitting**

87)    In early February, 2018, in furtherance of Defendants' conspiracy, Defendant Butera sent emails to Cassingena in which Butera falsely represented that: (i) Redstone and its subcontractors, architects and engineers would submit permit applications for the Restaurants to the relevant cities and governmental entities; (iii) Redstone and its subcontractors, architects and engineers would address certain comments to permit applications regarding the Restaurants made by the cities and governmental entities; and (iii) Redstone and its subcontractors, architects and engineers would ensure that the cities and governmental entities would approve the permit applications for the Restaurants so that construction of the Restaurants could begin. Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

88)    In the emails, Redstone and Butera expressed to the Owners that the architects, engineers and subcontracts were ready and willing to work on the permitting and construction of the Restaurants, but Redstone and Butera failed to disclose and withheld the fact that Redstone and Butera had not and would not pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants with the funds provided to Redstone and Butera by the Owners pursuant to the Development Contracts.

**The Cheyenne Contract**

89)    In 2018 (prior to the execution of the "Cheyenne Contract"), Defendants Butera, Redstone, Eby, Arinaga and Li conspired and agreed to provide to Cassingena financial projections regarding the capitalization rate, annual rent and monthly rent that Cheyenne would achieve in the event Redstone constructed a commercial building in

18

Cheyenne, Wyoming for Cheyenne to lease to a third party and to be operated as a quick service franchised restaurant operated by Eby (the "Cheyenne Restaurant").

90)    In 2018, in furtherance of Defendants conspiracy, Defendants Butera, Redstone, Eby, Arinaga and Li falsely represented to Cassingena in writing and via email and/or mail, that Cheyenne would achieve: (i) a capitalization rate of 9% (ii) annual rent in the amount $196,181.05; and (iii) monthly rent in the amount of $16,348.42.

91)    Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

92)    The financial projections regarding Cheyenne were false and misleading. The rents that the Cheyenne Restaurant could actually achieve were less than what was represented by Defendants. Defendants provided the false financial projections to Cassingena in order to induce the Owners to purchase real estate and enter into Development Contracts with Redstone for the construction of the franchised Restaurants to be managed by Eby.  All the while, Defendants knew that Redstone would not construct the Restaurants (including the Cheyenne Restaurant).

93)    In connection with obtaining approval in 2018 from the franchisor of the Church's Chicken franchise system to operate a Church's Chicken franchise at the Cheyenne Restaurant, Defendants conspired to, and did, provide to the franchisor projections of the rent that the Cheyenne Restaurant would pay to the Owners which were far lower than the aforementioned rental amount projections that Defendants provided to the Owners with respect to the Cheyenne Restaurant.

94)    Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that they provided to the franchisor projections of rental amounts for the Cheyenne

Restaurant that were far less than the projections of rental amounts that Defendants provided to the Owners.

95)     On February 6, 2018 in reliance on the misrepresentations and omissions committed by Defendants, Cheyenne executed a Development Contract (the "Cheyenne Contract") with Redstone, LLC for the construction of the Cheyenne Restaurant. *Id*. *See* a true and correct copy of the Cheyenne Contract attached hereto as Exhibit "F".

96)     The Cheyenne Contract provides that Cheyenne would pay to Redstone a "Total Build Cost" not to exceed $2,179,789.00. In addition, the Cheyenne Contract provides that Cheyenne would pay to Redstone a "development fee" of $198,162.67.

97)     In early to mid-February, 2018, in furtherance of Defendants' conspiracy, Defendant Butera sent emails to Cassingena, in which Butera falsely represented that: (i) Redstone and its subcontractors, architects and engineers would submit permit applications for the Restaurants to the relevant cities and governmental entities; (iii) Redstone and its subcontractors, architects and engineers would address certain comments to permit applications regarding the Restaurants made by the cities and governmental entities; (iii) Redstone and its subcontractors, architects and engineers would ensure that the cities and governmental entities would approve the permit applications for the Restaurants so that construction of the Restaurants could begin; (iv) certain permits had been approved; and (v) Redstone would initiate construction of the Restaurants within two to three months. Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

98)     Again, in the emails, Redstone and Butera told the Owners that the architects, engineers and subcontracts were ready and willing to work on the permitting and construction of the Restaurants, but Redstone and Butera failed to disclose and withheld the

fact that Redstone and Butera had not and would not pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants with the funds provided to Redstone and Butera by the Owners pursuant to the Development Contracts.

99)     Subsequent to executing the Cheyenne Contract, Cheyenne provided to Defendants, and also directed its lender to provide to Defendants, hundreds of thousands of dollars pursuant to the Cheyenne Contract and in reliance on Defendants' misrepresentations and omissions.

**The Greer Restaurant**

100)    In 2018 (prior to the execution of the "Greer Contract"), Defendants Butera, Redstone, Eby, Arinaga and Li conspired and agreed to provide to Cassingena financial projections regarding the capitalization rate, annual rent and monthly rent that Greer would achieve in the event Redstone constructed a commercial building in Greer, South Carolina for Greer to lease to a third party and to be operated as a quick service franchised restaurant operated by Eby (the "Greer Restaurant").

101)    In 2018, in furtherance of Defendants conspiracy, Defendants Redstone, Butera and Eby falsely represented to Cassingena, in writing and via email and/or mail, that Greer would achieve: (i) a capitalization rate of 9% (ii) annual rent in the amount $197,095.43; and (iii) monthly rent in the amount of $16,424.62.

102)    Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

103)    The financial projections regarding Greer were false and misleading. The rents that the Greer Restaurant could actually achieve were less than what was represented by Defendants. Defendants provided the false financial projections to Cassingena in order to

induce the Owners to purchase real estate and enter into Development Contracts with Redstone for the construction of the franchised Restaurants to be managed by Eby.  All the while, Defendants knew that Redstone would not construct the Restaurants (including the Greer Restaurant).

104)    In connection with obtaining approval in 2018 from the franchisor of the Captain D's franchise system to operate a Captain D franchise at the Greer Restaurant, Defendants conspired to, and did, provide to the franchisor projections of the rent that the Greer Restaurant would pay to the Owners which were far lower than the aforementioned rental amount projections that Defendants provided to the Owners with respect to the Greer Restaurant.

105)    Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that they provided to the franchisor projections of rental amounts for the Greer Restaurant that were far less than the projections of rental amounts that Defendants provided to the Owners.

106)    On February 23, 2018, in reliance on the misrepresentations and omissions committed by Defendants, Greer executed a Development Contract (the "Greer Contract") with Redstone, LLC for the construction of the Greer Restaurant. *Id*. *See* a true and correct copy of the Greer Contract attached hereto as Exhibit "G".

107)    The Greer Contract provides that Greer would pay to Redstone a "Total Build Cost" not to exceed $2,189,949.18. In addition, the Greer Contract provides that Greer would pay to Redstone a "development fee" of $199,086.29.

108)    In mid to late February and early March, 2018, in furtherance of Defendants' conspiracy, Defendant Butera again sent emails to Cassingena in which Butera falsely represented that: (i) Redstone and its subcontractors, architects and engineers would submit permit applications for the Restaurants to the relevant cities and governmental entities; (iii)

22

Redstone and its subcontractors, architects and engineers would address certain comments to permit applications regarding the Restaurants made by the cities and governmental entities; (iii) Redstone and its subcontractors, architects and engineers would ensure that the cities and governmental entities would approve the permit applications for the Restaurants so that construction of the Restaurants could begin; (iv) certain permits had been approved; and (v) Redstone would initiate construction of the Restaurants within two to three months. Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

109)    Again, in the emails, Redstone and Butera told the Owners that the architects, engineers and subcontracts were ready and willing to work on the permitting and construction of the Restaurants, but Redstone and Butera failed to disclose and withheld the fact that Redstone and Butera had not and would not pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants with the funds provided to Redstone and Butera by the Owners pursuant to the Development Contracts.

110)    Subsequent to executing the Greer Contract, Greer provided to Defendants, and also directed its lender to provide to Defendants, hundreds of thousands of dollars pursuant to the Greer Contract and in reliance on Defendants' misrepresentations and omissions.

### The Largo Restaurant

111)    In 2018 (prior to the execution of the "Largo Contract"), Defendants Redstone, Manny Butera and Eby conspired and agreed to provide Cassingena financial projections regarding the capitalization rate, annual rent and monthly rent that Largo would achieve in the event Redstone constructed a commercial building in Largo, Florida for Largo to lease to

a third party and to be operated as a quick service franchised restaurant operated by Eby (the "Largo Restaurant").

112)    In 2018, in furtherance of Defendants' conspiracy, Defendants Butera, Redstone, Eby, Arinaga and Li falsely represented to Cassingena in writing and via email and/or mail, that Largo would achieve: (i) a capitalization rate of 9% (ii) annual rent in the amount $265,938.32; and (iii) monthly rent in the amount of $22,161.53. Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

113)    The financial projections regarding Largo were false and misleading. The rents that the Largo Restaurant could actually achieve were less than what was represented by Defendants. Defendants provided the false financial projections to Cassingena in order to induce the Owners to purchase real estate and enter into Development Contracts with Redstone for the construction of the franchised Restaurants to be managed by Eby.  All the while, Defendants knew that Redstone would not construct the Restaurants (including the Largo Restaurant).

114)    In connection with obtaining approval in 2018 from a franchisor to operate a franchise at the Largo Restaurant, Defendants conspired to, and did, provide to the franchisor projections of the rent that the Largo Restaurant would pay to the Owners which were far lower than the aforementioned rental amount projections that Defendants provided to the Owners with respect to the Largo Restaurant.

115)    Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that they provided to the franchisor projections of rental amounts for the Largo Restaurant that were far less than the projections of rental amounts that Defendants provided to the Owners.

116)    On March 6, 2018, in reliance on the misrepresentations and omissions committed by Defendants, Largo executed a Development Contract (the "Largo Contract") with Redstone, LLC for the construction of the Largo Restaurant. *Id. See* a true and correct copy of the Largo Contract attached hereto as <u>Exhibit "H"</u>.

117)    The Largo Contract provides that Largo would pay to Redstone a "Total Build Cost" not to exceed $2,954,870.23. In addition, the Largo Contract provides that Largo would pay to Redstone a "development fee" of $268,624.57.

118)    Subsequent to the execution of the Largo Contract, the owners, including Largo, continued to provide to Defendants, and also directed their lenders to provide to Defendants, hundreds of thousands of dollars in reliance on Defendants' misrepresentations and omissions.

## The Salem Restaurant

119)    In 2018 (prior to the execution of the "Salem Contract"), Defendants Redstone, Manny Butera and Eby conspired and agreed to provide to Cassingena financial projections regarding the capitalization rate, annual rent and monthly rent that Salem would achieve in the event Redstone constructed a commercial building in Winston Salem, North Carolina for Salem to lease to a third party and to be operated as a quick service franchised restaurant operated by Eby (the "Salem Restaurant").

120)    In 2018, in furtherance of Defendants' conspiracy, Defendants falsely represented to Cassingena in writing and via email and/or mail, that Salem would achieve: (i) a capitalization rate of 9% (ii) annual rent in the amount $172,955.66; and (iii) monthly rent in the amount of $14,412.97.

121)    Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

122)     The financial projections regarding Salem were false and misleading. The rents that the Salem Restaurant could actually achieve were less than what was represented by Defendants. Defendants provided the false financial projections to Cassingena in order to induce the Owners to purchase real estate and enter into Development Contracts with Redstone for the construction of the franchised Restaurants to be managed by Eby.  All the while, Defendants knew that Redstone would not construct the Restaurants (including the Salem Restaurant).

123)     In connection with obtaining approval in 2018 from the franchisor of the Church's Chicken franchise system to operate a Church's Chicken franchise at the Salem Restaurant, Defendants conspired to, and did, provide to the franchisor projections of the rent that the Salem Restaurant would pay to the Owners which were far lower than the aforementioned rental amount projections that Defendants provided to the Owners with respect to the Salem Restaurant.

124)     Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that they provided to the franchisor projections of rental amounts for the Salem Restaurant that were far less than the projections of rental amounts that Defendants provided to the Owners.

125)     On March 26, 2018, in reliance on the misrepresentations and omissions committed by Defendants, Salem executed a Development Contract (the "Salem Contract") with Redstone, LLC for the construction of the Salem Restaurant. *Id*. *See* a true and correct copy of the Salem Contract attached hereto as Exhibit "I".

126)     The Salem Contract provides that Salem would pay to Redstone a "Total Build Cost" not to exceed $1,921,729.57. In addition, the Salem Contract provides that Salem would pay to Redstone a "development fee" of $174,702.69.

127)     In early and mid-April, 2018, in furtherance of Defendants' conspiracy, Defendant Butera again sent emails to Cassingena in which Butera falsely represented that: (i) Redstone and its subcontractors, architects and engineers would submit permit applications for the Restaurants to the relevant cities and governmental entities; (iii) Redstone and its subcontractors, architects and engineers would address certain comments to permit applications regarding the Restaurants made by the cities and governmental entities; (iii) Redstone and its subcontractors, architects and engineers would ensure that the cities and governmental entities would approve the permit applications for the Restaurants so that construction of the Restaurants could begin; (iv) certain permits had been approved; and (v) Redstone would initiate construction of the Restaurants within two to three months. Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

128)     Again, in the emails, Redstone and Butera told the Owners that the architects, engineers and subcontracts were ready and willing to work on the permitting and construction of the Restaurants, but Redstone and Butera failed to disclose and withheld the fact that Redstone and Butera had not and would not pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants with the funds provided to Redstone and Butera by the Owners pursuant to the Development Contracts.

129)     Subsequent to executing the Salem Contract, Salem provided to Defendants, and also directed its lenders to provide to Defendants, hundreds of thousands of dollars pursuant to the Salem Contract and in reliance on Defendants' misrepresentations and omissions.

**The Owensboro Restaurant**

130)    In 2018 (prior to the execution of the "Owensboro Contract"), Defendants Butera, Redstone, Eby, Arinaga and Li conspired and agreed to provide to Cassingena financial projections regarding the capitalization rate, annual rent and monthly rent that Owensboro would achieve in the event Redstone constructed a commercial building in Owensboro, Kentucky for Owensboro to lease to a third party and to be operated as a quick service franchised restaurant operated by Eby (the "Owensboro Restaurant").

131)    In 2018, in furtherance of Defendants conspiracy, Defendants Butera, Redstone, Eby, Arinaga and Li falsely represented Cassingena in writing and via email and/or mail, that Owensboro would achieve: (i) a capitalization rate of 9% (ii) annual rent in the amount $197,622.50; and (iii) monthly rent in the amount of $16,468.54.

132)    Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

133)    The financial projections regarding Owensboro were false and misleading. The rents that the Owensboro Restaurant could actually achieve were less than what was represented by Defendants. Defendants provided the false financial projections to Cassingena in order to induce the Owners to purchase real estate and enter into Development Contracts with Redstone for the construction of the franchised Restaurants to be managed by Eby.  All the while, Defendants knew that Redstone would not construct the Restaurants (including the Owensboro Restaurant).

134)    In connection with obtaining approval in 2018 from the franchisor of the Church's Chicken franchise system to operate a Church's Chicken franchise at the Owensboro Restaurant, Defendants conspired to, and did, provide to the franchisor projections of the rent that the Owensboro Restaurant would pay to the Owners which were

far lower than the aforementioned rental amount projections that Defendants provided to the Owners with respect to the Owensboro Restaurant.

135)    Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that they provided to the franchisor projections of rental amounts for the Owensboro Restaurant that were far less than the projections of rental amounts that Defendants provided to the Owners.

136)    On April 20, 2018, in reliance on the misrepresentations and omissions committed by Defendants, Owensboro executed a Development Contract (the "Owensboro Contract") with Redstone, LLC for the construction of the Owensboro Restaurant. *Id*. *See* a true and correct copy of the Owensboro Contract attached hereto as <u>Exhibit "J"</u>.

137)    The Owensboro Contract provides that Owensboro would pay to Redstone a "Total Build Cost" not to exceed $1,827,247.28. In addition, the Owensboro Contract provides that Owensboro would pay to Redstone a "development fee" of $166,113.39.

138)    Subsequent to executing the Owensboro Contract, Owensboro provided to Defendants, and also directed its lenders to provide to Defendants, hundreds of thousands of dollars pursuant to the Owensboro Contract and in reliance on Defendants' misrepresentations and omissions.

139)    In early and mid-May, 2018, in furtherance of Defendants' conspiracy, Defendant Butera again sent emails to Cassingena in which Butera falsely represented that: (i) Redstone and its subcontractors, architects and engineers would submit permit applications for the Restaurants to the relevant cities and governmental entities; (iii) Redstone and its subcontractors, architects and engineers would address certain comments to permit applications regarding the Restaurants made by the cities and governmental entities; (iii) Redstone and its subcontractors, architects and engineers would ensure that the cities and governmental entities would approve the permit applications for the Restaurants

so that construction of the Restaurants could begin; (iv) certain permits had been approved; and (v) Redstone would initiate construction of the Restaurants within two to three months. Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

140)    Again, in the emails, Redstone and Butera told the Owners that the architects, engineers and subcontracts were ready and willing to work on the permitting and construction of the Restaurants, but Redstone and Butera failed to disclose and withheld the fact that Redstone and Butera had not and would not pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants with the funds provided to Redstone and Butera by the Owners pursuant to the Development Contracts.

141)    The Owners continued to provide to Defendants, and also directed their lenders to provide to Defendants, hundreds of thousands of dollars pursuant to the Development Contracts and in reliance on Defendants' misrepresentations and omissions.

142)    On June 18, 2018, in furtherance of Defendants' conspiracy, Manny Butera sent an email to Fernando Cassingena falsely stating that the delays in permitting and constructing the Restaurants were not caused by Redstone. In reality, the delays were caused by Redstone as Redstone failed to pay the architects, engineers and subcontractors with the funds provided to Redstone by the Owners as contemplated by the Development Contracts.

143)    On July 24, 2018, in furtherance of Defendants' conspiracy, Manny Butera sent an email to Fernando Cassingena which falsely stated that he would pay the subcontractors working on the Restaurants. Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

144)     On Jun 26, 2018, in furtherance of Defendants' conspiracy, Manny Butera sent an email to Fernando Cassingena which falsely stated that he would pay Redstone's subcontractors in order to "keep the project moving." Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

145)     Butera's representations were false as he did not, and had no intention of, paying the subcontractors.

146)     In June, July, August and September, 2018, , in furtherance of Defendants' conspiracy, Defendant Butera continued to send emails to Cassingena in which Butera falsely represented that: (i) Redstone and its subcontractors, architects and engineers would submit permit applications for the Restaurants to the relevant cities and governmental entities; (iii) Redstone and its subcontractors, architects and engineers would address certain comments to permit applications regarding the Restaurants made by the cities and governmental entities; (iii) Redstone and its subcontractors, architects and engineers would ensure that the cities and governmental entities would approve the permit applications for the Restaurants so that construction of the Restaurants could begin; (iv) certain permits had been approved; and (v) Redstone would initiate construction of the Restaurants within two to three months. Defendants' misrepresentations were in furtherance of their broader conspiracy to defraud all the Owners and were directed to and received by Cassingena in Miami-Dade County, Florida.

147)     Again, in the emails, Redstone and Butera told the Owners that the architects, engineers and subcontracts were ready and willing to work on the permitting and construction of the Restaurants, but Redstone and Butera failed to disclose and withheld the fact that Redstone and Butera had not and would not pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants with the

funds provided to Redstone and Butera by the Owners pursuant to the Development Contracts.

148)     Throughout 2018, the Owners continued to provide to Defendants, and also directed their lenders to provide to Defendants, hundreds of thousands of dollars pursuant to the Development Contracts and in reliance on Defendants' misrepresentations and omissions.

149)     All conditions precedent to the commencement of this action have occurred, or have been performed, excused, satisfied, or waived.

150)     Plaintiffs reserve the right to amend their claim to seek punitive damages before trial.

151)     As a result of Defendants' wrongful conduct, Plaintiffs have retained the undersigned attorneys and is obligated to pay said firm reasonable attorneys' fees pursuant to the Development Agreements and applicable law.

### <u>Count I – Conspiracy to commit Fraud</u>
**(Against Defendants Butera, Redstone, Eby, Arinaga and Li)**

152)     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further states:

153)     Defendants Butera, Redstone, Eby, Arinaga and Li agreed and conspired to do a criminal or unlawful act or a lawful act by criminal or unlawful means.

154)     Indeed, Defendants agreed and conspired to induce the Owners to provide millions of dollars to Defendants and enter into the Development Contracts through a series of fraudulent misrepresentations and omissions.

155)     Defendants committed overt acts in furtherance of their conspiracy.

156)     Defendants Butera, Redstone, Eby, Arinaga and Li: (i) made numerous representations to the Owners: (ii) of existing material fact; (iii) with knowledge that the

representations were false and/or misleading; (iv) with the intent that the representations induce injurious action; (v) with consequent injury to the Owners; (vi) acting in reasonable reliance thereon.

157)   Defendants Butera, Redstone, Eby, Arinaga and Li knowingly and intentionally withheld existing material facts from the Owners, which they had an affirmative duty to disclose. Specifically, Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose that they provided to the franchisors projections of the rents that the Owners would receive from the Restaurants which were far less than the projected rental amounts that the Defendants provided to the franchisors. Defendants duty to disclose arises because Defendants Butera, Redstone, Eby, Arinaga and Li told the Owners "half-truths," whereby Defendants provided to the Owners false, inflated projected amounts of rent that the Owners would receive from the Restaurants. Defendants duty to disclose also arises because they had superior knowledge rental amounts that the Owners could obtain from the Restaurants.

158)   In addition, Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that Redstone and Butera failed to pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants. Defendants Butera, Redstone, Eby, Arinaga and Li's duty to disclose arises because Defendants told the Owners "half-truths," whereby Defendants told the Owners that the architects, engineers and subcontracts were ready and willing to work on the permitting and construction of the Restaurants, but Defendants withheld the fact that Redstone and Butera had not and would not pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants with the funds provided to Redstone and Butera by the Owners pursuant to the Development Contracts. Defendants duty to disclose also arises because they had superior knowledge about whether the architects, engineers and

33

subcontractors were paid to accomplish the permitting and construction of the Restaurants, and Defendants failed to disclose that the architects, engineers and subcontractors were not paid in order to trick and induce the Owners to execute the Development Contracts and pay substantial sums of monies to Redstone and Butera.

159)    Defendants' false representations and concealments of material fact were made knowingly and intentionally.

160)    Butera directly committed and participated in the false representations and concealments of material fact made by Redstone.

161)    Defendants intended for Plaintiffs/the Owners to rely upon the foregoing misrepresentations and omissions in entering into the Development Contracts and in making substantial payments to Defendants for the construction and completion of Restaurants.

162)    As a result of Defendants' acts performed in furtherance of their conspiracy, the Owners/Plaintiffs suffered damages.

**WHEREFORE**, Plaintiffs demand judgment Defendants Butera, Redstone, Eby, Arinaga and Li for damages, including but not limited to consequential damages, compensatory damages, recission, statutory attorney's fees, costs, and any other relief this Honorable Court deems just and proper.

### COUNT II - Violation of RICO 18 U.S.C. § 1962(c)
### (Against Defendants Butera, Redstone, Eby, Arinaga and Li)

163)    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further states:

164)    Since 2017 and continuing to the present (at a minimum), Defendants Butera, Redstone, Eby, Arinaga and Li constitute an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact."

(a)   Defendants are each "persons," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associate with and/or participate in the conduct of said enterprise's affairs.

(b)   Defendants share the common purpose of (among other things) defrauding investors, including the Owners, of money or property under the false pretense of constructing, developing, establishing and operating franchised restaurants in order for the investors to receive a return on their investments. Defendants' enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the enterprise has existed since 2017 (at a minimum).

(c)   Since at least as early as 2017 and continuing to the present (at a minimum), Defendants each individually conducted, participated in, engaged in, and operated and managed the affairs of their enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Defendants' pattern of racketeering activity consists of the acts of mail and wire fraud within the meaning of 18 U.S.C. §§ 1341 and 1343.

165)   At all relevant times, the enterprise was engaged in, and their activities affected, interstate commerce and foreign commerce.

166)   Defendants' acts of racketeering were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud investors, including the Owners of money or property, their common result was to defraud investors, including the Owners, of money and property; Defendants, personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; The Owners were the victims

35

of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

167)   Defendants' acts of racketeering are continuous so as to form a pattern of racketeering activity in that Defendants have engaged in the predicate acts over a substantial period of time or in that Defendants' acts of racketeering are a regular way in which Defendants continue to do business and their acts of racketeering threatened to continue indefinitely.

168)   Defendants, and their co-conspirators acting singly and in concert, personally or through their agents or corporate alter egos (including Redstone), used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud the Owners and other investors, within the meaning of 18 U.S.C. §§ 1341 and 1343.

169)   In particular, Defendants, and their co-conspirators and agents knew or could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver, *inter alia*, correspondence relating to the rents that the Owners would receive from the Restaurants and the progress made in the permitting and construction of the Restaurants.

170)   Some or all of the wire communications described above and occurring between persons in the same state crossed interstate borders by reason of the technology and other mechanisms used to transmit the communication.

171)   Defendants' use of the U.S. Postal Service or interstate wires constitute racketeering activity, occurred during the effective time of RICO, occurred within ten years of a prior act of racketeering committed by Defendants and their co-conspirators with the specific intent to defraud the Owners or for obtaining the money or property of the Owners

by means of false or fraudulent pretenses, representations, or promises. Defendants and their co-conspirators and agents committed acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

172)    As a direct and proximate result of, and by reason of, the activities of Defendants, and their conduct in violation of 18 U.S.C. § 1962(c), Plaintiffs/the Owners were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiffs/the Owners suffered damages to the extent that Defendants induced the Owners to provide millions of dollars to Defendants and execute the Development Agreements. The Owners/Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Butera, Redstone, Eby, Arinaga and Li for damages, including but not limited to consequential damages, compensatory damages, treble statutory damages, recission, statutory attorney's fees, costs, and any other relief this Honorable Court deems just and proper.

## COUNT III - RICO CONSPIRACY 18 U.S.C. § 1962(d)
### (against Defendants Butera, Redstone, Eby, Arinaga and Li)

173)    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further states:

174)    As set forth above, Defendants agreed and conspired together to conduct or participate, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C.A. § 1962 (c), in violation of 18 U.S.C. § 1962(d).

175)    Plaintiffs/the Owners were injured by Defendants' overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which included (among other acts) acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

176) As a direct and proximate result of, and by reason of, the activities of Defendants, and their conduct in violation of 18 U.S.C. § 1962(d), Plaintiff/the Owners were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiffs/the Owners suffered damages to the extent that Defendants induced the Owners to provide millions of dollars to Defendants and execute the Development Agreements. The Owners/Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Butera, Redstone, Eby, Arinaga and Li for damages, including but not limited to consequential damages, compensatory damages, treble statutory damages, recission, statutory attorney's fees, costs, and any other relief this Honorable Court deems just and proper.

### Count IV - Violation of the Civil Remedies for Criminal Practices Act; Pattern of Criminal Activity; Fla. Stat. §772.103(3) *et seq.* (against Defendants Butera, Redstone, Eby, Arinaga and Li)

177)    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further state:

178)    This is an action for violation of Fla. Stat. 772.104 & 772.103(3) *et seq.*

179)    Defendants Butera, Redstone, Eby, Arinaga and Li are each a "person" within the meaning of Fla. Stat. §772.103 & §772.104.

180)    Defendants Butera, Redstone, Eby, Arinaga and Li each have been and continue to be, a part of an association-in-fact enterprise within the meaning of Fla. Stat. § 772.102(3), comprised of at least Defendants.

181)     Defendants Butera, Redstone, Eby, Arinaga and Li each have an existence separate and distinct from the enterprise, in addition to directly participating and acting as a part of the Enterprise.

182)     The Enterprise had an identifiable structure and functioned as a continuing unit. The Enterprise shared a common function of fraudulently inducing the Owners to entering into the Development Agreement and into paying substantial sums of monies to Defendants.

183)     Defendants committed multiple acts of criminal activity within the meaning of Florida Statute §772.101, *et seq*. The predicate acts include, but are not limited to mail fraud, 18 U.S.C. §1341, and wire fraud, 18 U.S.C. §1343, which are incorporated into the list of "criminal activities" in Florida Statute §772.102(1)(b). In addition, the predicate acts include multiple instances of communications fraud in violation of Fla Stat. §817.034.

184)     Thus, Defendants violated Florida Statute §772.103(3).

185)     As a direct and proximate cause of Defendants' conduct, criminal activity and violations of Florida Statute §772.103(3), the Owners/Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs demand judgment Defendants Butera, Redstone, Eby, Arinaga and Li for damages, including but not limited to consequential damages, compensatory damages, threefold Plaintiffs/the Owners' actual damages sustained (but not less than $200) pursuant to Fla. Stat. §772.104, and reasonable attorneys' fees and costs pursuant to Fla. Stat. §772.104.

### Count V – Violation of the Civil Remedies for Criminal Practices Act; Conspiracy; Fla. Stat. §772.103(4) *et seq*. (against Defendants Butera, Redstone, Eby, Arinaga and Li)

186)     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further state:

187)     This is an action for violation of Fla. Stat. 772.104 & 772.103(4) *et seq*.

188)    Defendants Butera, Redstone, Eby, Arinaga and Li are each a "person" within the meaning of Fla. Stat. §772.103 & §772.104.

189)    Defendants Butera, Redstone, Eby, Arinaga and Li each have been and continue to be, a part of an association-in-fact enterprise within the meaning of Fla. Stat. § 772.102(3), comprised of at least Defendants.

190)    Defendants Butera, Redstone, Eby, Arinaga and Li each have an existence separate and distinct from the enterprise, in addition to directly participating and acting as a part of the Enterprise.

191)    The Enterprise had an identifiable structure and functioned as a continuing unit. The Enterprise shared a common function of fraudulently inducing the Owners to entering into the Development Agreement and into paying substantial sums of monies to Defendants.

192)    Defendants Butera, Redstone, Eby, Arinaga and Li willfully and knowingly conspired to conduct or participate, directly and indirectly, in the Enterprise through a pattern of criminal activity within the meaning of Florida Statute §772.101, *et seq*.

193)    Defendants conspired to and did commit multiple acts of criminal activity within the meaning of Florida Statute §772.101, *et seq*. The predicate acts include, but are not limited to mail fraud, 18 U.S.C. §1341, and wire fraud, 18 U.S.C. §1343, which are incorporated into the list of "criminal activities" in Florida Statute §772.102(1)(b). In addition, the predicate acts include multiple instances of communications fraud in violation of Fla Stat. §817.034.

194)    Thus, Defendants violated Florida Statute §772.103(4).

195)    As a direct and proximate cause of Defendants' conduct, criminal activity and violations of Florida Statute §772.103(4), the Owners/Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs demand judgment Defendants Butera, Redstone, Eby, Arinaga and Li for damages, including but not limited to consequential damages, compensatory damages, threefold Plaintiffs/the Owners' actual damages sustained (but not less than $200) pursuant to Fla. Stat. §772.104, and reasonable attorneys' fees and costs pursuant to Fla. Stat. §772.104.

### COUNT VI - FRAUDULENT INDUCEMENT AND OMISSION
**(Against Defendants Butera, Redstone, Eby, Arinaga and Li)**

196)    Plaintiffs incorporates by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further states:

197)    The Owners were fraudulently induced by Defendants Butera, Redstone, Eby, Arinaga and Li into entering into the Development Contracts and making substantial payments to Redstone pursuant to the Development Contracts.

198)    Defendants Butera, Redstone, Eby, Arinaga and Li: (i) made numerous representations to the Owners: (ii) of existing material fact; (iii) with knowledge that the representations were false and/or misleading; (iv) with the intent that the representations induce injurious action; (v) with consequent injury to the Owners; (vi) acting in reasonable reliance thereon.

199)    In addition, Defendants Redstone and Butera always had the specific intent that they would not perform their obligations under the Development Contracts, but executed the Development Contracts with the Owners anyway so that the Owners would pay to Redstone the substantial sums of monies contemplated by the Development Contracts. Redstone and Butera always had the specific intent that they would not, *inter alia*: construct and complete the commercial buildings contemplated by the Development Contracts. *See* Development Contracts at Section 1; (ii) Supervise and direct the Work contemplated by the contracts. *See* Development Contracts at Section 10; and (iii) Ensure that subcontractors and

their agents and representatives perform the Work and adhere to the Contract Documents. *See* Development Contracts at Section 10; As such, Redstone and Butera's representations in the Development Contracts were false and misleading.

200)   Defendants Butera, Redstone, Eby, Arinaga and Li knowingly and intentionally withheld existing material facts from the Owners, which they had an affirmative duty to disclose. Specifically, Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose that they provided to the franchisors projections of the rents that the Owners would receive from the Restaurants which were far less than the projected rental amounts that the Defendants provided to the franchisors. Defendants duty to disclose arises because Defendants Butera, Redstone, Eby, Arinaga and Li told the Owners "half-truths," whereby Defendants provided to the Owners false, inflated projected amounts of rent that the Owners would receive from the Restaurants. Defendants duty to disclose also arises because they had superior knowledge rental amounts that the Owners could obtain from the Restaurants.

201)   In addition, Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose to the Owners that Redstone and Butera failed to pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants. Defendants Butera, Redstone, Eby, Arinaga and Li's duty to disclose arises because Defendants told the Owners "half-truths," whereby Defendants told the Owners that the architects, engineers and subcontracts were ready and willing to work on the permitting and construction of the Restaurants, but Defendants withheld the fact that Redstone and Butera had not and would not pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants with the funds provided to Redstone and Butera by the Owners pursuant to the Development Contracts. Defendants duty to disclose also arises because they had superior knowledge about whether the architects, engineers and

subcontractors were paid to accomplish the permitting and construction of the Restaurants, and Defendants failed to disclose that the architects, engineers and subcontractors were not paid in order to trick and induce the Owners to execute the Development Contracts and pay substantial sums of monies to Redstone and Butera.

202)    Defendants' false representations and concealments of material fact were made knowingly and intentionally.

203)    Butera directly committed and participated in the false representations and concealments of material fact made by Redstone.

204)    Defendants intended for Plaintiffs/the Owners to rely upon the foregoing misrepresentations and omissions in entering into the Development Contracts and in making substantial payments to Defendants for the construction and completion of Restaurants.

205)    As a direct, proximate, and foreseeable result of Defendants Butera, Redstone, Eby, Arinaga and Li's material misrepresentations and omissions, the Owners/Plaintiffs have been damaged.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against Defendants Butera, Redstone, Eby, Arinaga and Li for damages, including but not limited to consequential damages, compensatory damages, recission of the Development Contracts, attorney's fees, costs, and any other relief this Honorable Court deems just and proper.

### COUNT VII - NEGLIGENT MISREPRESENTATION AND OMISSION
### (AGAINST DEFENDANTS BUTERA, REDSTONE, EBY, ARINAGA AND LI)

206)    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further states:

207)    Defendants Butera, Redstone, Eby, Arinaga and Li have (i) made negligent representations to the Owners; (ii) of existing material fact; (iii) recklessly, negligently,

without knowledge of the truth or falsity, and/or under circumstances where Redstone and Butera should have known the truth or falsity; (iv) with consequent injury to the Owners; (v) acting in reasonable reliance thereon.

208)   As a result of Defendants' negligent misrepresentations, the Owners entered into the Development Contracts and made substantial payments to Redstone and Butera.

209)   In addition, Redstone and Butera's representations in the Development Contracts were negligent, false and misleading, including the representations that Redstone would *inter alia*: (i) Construct and complete the commercial buildings contemplated by the Development Contracts. See Development Contracts at Section 1; (ii) Supervise and direct the Work contemplated by the contracts. *See* Development Contracts at Section 10; and (iii) Ensure that subcontractors and their agents and representatives perform the Work and adhere to the Contract Documents. Redstone and Butera always had the specific intent that they would not, *inter alia*: construct and complete the commercial buildings contemplated by the Development Contracts. See Development Contracts at Section 1; (ii) Supervise and direct the Work contemplated by the contracts. *See* Development Contracts at Section 10; and (iii) Ensure that subcontractors and their agents and representatives perform the Work and adhere to the Contract Documents. *See* Development Contracts at Section 10; Redstone and Butera induced Plaintiffs to enter into the Development Contracts through Redstone and Butera's negligent representations contained in the Development Contracts because Redstone and Butera always had the specific intent that they would not perform their obligations under the Development Contracts, but executed the Development Contracts with the Owners anyway so that the Owners would pay to Redstone the substantial sums of monies contemplated by the Development Contracts.

210)   Defendants Butera, Redstone, Eby, Arinaga and Li knowingly and intentionally and/or negligently withheld existing material facts from the Owners, which

they had an affirmative duty to disclose. Specifically, Defendants Butera, Redstone, Eby, Arinaga and Li failed to disclose that they provided to the franchisors projections of the rents that the Owners would receive from the Restaurants which were far less than the projected rental amounts that the Defendants provided to the franchisors. Defendants duty to disclose arises because Defendants Butera, Redstone, Eby, Arinaga and Li told the Owners "half-truths," whereby Defendants provided to the Owners false, inflated projected amounts of rent that the Owners would receive from the Restaurants. Defendants duty to disclose also arises because they had superior knowledge rental amounts that the Owners could obtain from the Restaurants.

211)    In addition, Defendants Butera, Redstone Eby, Arinaga and Li failed, to disclose to the Owners that Redstone and Butera failed to pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants. Defendants Butera, Redstone, Eby, Arinaga and Li's duty to disclose arises because Defendants told the Owners "half-truths," whereby Defendants told the Owners that the architects, engineers and subcontracts were ready and willing to work on the permitting and construction of the Restaurants, but Defendants withheld the fact that Redstone and Butera had not and would not pay the architects, engineers and subcontractors to accomplish the permitting and construction of the Restaurants with the funds provided to Redstone and Butera by the Owners pursuant to the Development Contracts. Defendants duty to disclose also arises because they had superior knowledge about whether the architects, engineers and subcontractors were paid to accomplish the permitting and construction of the Restaurants, and Defendants failed to disclose that the architects, engineers and subcontractors were not paid in order to trick and induce the Owners to execute the Development Contracts and pay substantial sums of monies to Redstone and Butera.

212) Butera directly participated in and made the misrepresentations and omissions committed by Redstone.

213) Defendants intended for Plaintiffs/the Owners to rely upon the foregoing misrepresentations and omissions in entering into the Development Contracts and in making substantial payments to Defendants for the construction and completion of Restaurants.

214) As a direct, proximate, and foreseeable result of Defendants' negligent misrepresentations and omissions, the Owners/Plaintiffs have been damaged.

**WHEREFORE,** Plaintiffs respectfully requests that this Honorable Court enter a judgment in their favor and against Defendants Butera, Redstone, Eby, Arinaga and Li for damages, including but not limited to consequential damages, compensatory damages, recission of the Development Contracts, attorney's fees, costs, and any other relief this Honorable Court deems just and proper.

### COUNT VIII - BREACH OF CONTRACT
#### (AGAINST REDSTONE)

215) Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further states:

216) The Development Contracts are valid and binding contracts between the Owners and Redstone.

217) The Owners have performed all of their obligations in accordance with the terms of the Development Contracts.

218) Redstone has breached the Development Contracts by, inter alia: (i) failing to construct and complete the commercial buildings contemplated by the Development Contracts. *See* Contracts at Section 1; (ii) failing to supervise and direct the Work contemplated by the Development Contracts. See Development Contracts at Section 10; and

(iii) failing to ensure that subcontractors and their agents and representatives perform the Work and adhere to the Contract Documents. See Development Contracts at Section 10;

219)     Plaintiff and the Owners have suffered damages as a proximate cause of Redstone's breach of the Development Contracts.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Redstone for damages, including but not limited to consequential damages, compensatory damages, recission of the Development Contracts, attorney's fees, costs, and any other relief this Honorable Court deems just and proper.

## Count IX – Breach of the Implied Covenant of Good Faith and Fair Dealing
### (AGAINST REDSTONE)

220)     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further states:

221)     The Development Contracts are valid and binding contracts between the Owners and Redstone.

222)     The Development Contracts contained an implied covenant of good faith and fair dealing requiring Redstone to exercise good faith in performing its obligations under the Development Contracts and to refrain from doing anything that would interfere with the Owners receipt of the benefits of the Development Contracts.

223)     Redstone has breached the Development Contracts and the implied covenant of good faith and fair dealing contained therein by, inter alia: (i) failing to construct and complete the commercial buildings contemplated by the Development Contracts. *See* Contracts at Section 1; (ii) failing to supervise and direct the Work contemplated by the Development Contracts. *See* Development Contracts at Section 10; and (iii) failing to ensure that subcontractors and their agents and representatives perform the Work and adhere to the Contract Documents. *See* Development Contracts at Section 10;

224)    Redstone's breaches of the Development Contracts unfairly interfered with the Owners receipt of benefits of the Development Contracts.

225)    Plaintiff and the Owners have suffered damages as a proximate cause of Redstone's breach of the implied covenant of good faith and fair dealing contained in the Development Contracts.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Redstone for damages, including but not limited to consequential damages, compensatory damages, recission of the Development Contracts, attorney's fees, costs, and any other relief this Honorable Court deems just and proper.

## COUNT X - UNJUST ENRICHMENT
### (AGAINST DEFENDANTS BUTERA, REDSTONE, EBY, ARINAGA AND LI)

226)    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further states:

227)    The Owners conferred a benefit upon Defendants Butera, Redstone, Eby, Arinaga and Li, who have knowledge thereof. Specifically, the Owners paid millions of dollars to Defendants towards the securing of permits for and the construction and completion of the Restaurants to be managed by Eby. However, Defendants did not secure the permits for and did not construct or complete the Restaurants.

228)    Defendants have voluntarily accepted and retained the benefit conferred.

229)    Circumstances are such that it would be inequitable for Defendants to retain the benefit conferred upon it by the Owners/Plaintiffs without paying the value thereof to Plaintiff.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendants Butera, Redstone, Eby, Arinaga and Li for damages,

including but not limited to consequential damages, compensatory damages, attorney's fees, costs, and any other relief this Honorable Court deems just and proper.

<u>COUNT XI – CONVERSION</u>
**(Against Defendants Butera, Redstone, Eby, Arinaga and Li)**

230)     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further states:

231)     Defendants Butera, Redstone, Eby, Arinaga and Li obtained the Owners' monies and converted the Owners monies to their own use, thereby depriving the Owners of their monies.

232)     Said theft was malicious, oppressively fraudulent, and facially unlawful, thereby justifying the imposition of punitive damages.

233)     The Owners have demanded that Defendants return their monies, but Defendants have refused.

234)     As a result, the Owners/Plaintiffs have suffered damages.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court enter a judgment in its favor and against Defendants Butera, Redstone, Eby, Arinaga and Li for damages, including but not limited to consequential damages, compensatory damages, attorney's fees, costs, and any other relief this Honorable Court deems just and proper.

**<u>Count XII – Breach of Fiduciary Duty</u>**
**(Against Defendants Arinaga and Li)**

235)     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 151, supra, as if fully set forth herein and further state:

236)     Defendants Arinaga and Li are managers of the Owners and were managers of the Owners at all times.

237)     This is an action against Defendants Arinaga and Li for breach of duties owed to the Owners.

238)     Defendants Arinaga and Li owed certain duties (including fiduciary duties as well as duties of good faith, honesty, candor and loyalty) to the Owners.

239)     Defendants Arinaga and Li violated such fiduciary duties (including duties of good faith, honesty, candor and loyalty) to the Owners.

240)     Plaintiffs/the Owners have been damaged as a result of the violation of such fiduciary duties (including duties of good faith, honesty, candor and loyalty).

**WHEREFORE,** Plaintiffs respectfully requests that this Honorable Court enter a judgment in their favor and against Defendants Arinaga and Li for disgorgement of profits, a constructive trust, damages, including but not limited to consequential damages, compensatory damages, attorney's fees, costs, and any other relief this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all matters properly triable by jury under the laws of the United States and the State of Florida.

Dated: May 24, 2022                    Respectfully submitted,

**HIRZEL DREYFUSS & DEMPSEY, PLLC**
*Counsel to Plaintiffs*
2333 Brickell Avenue, Suite A-1
Miami, Florida 33129
Telephone: (305) 615-1617

By: /s/  *Andre Dreyfuss*
   **ANDRE DREYFUSS**
   Florida Bar No. 94868
   dreyfuss@hddlawfirm.com
   **LEON F. HIRZEL**
   Florida Bar No. 085966
   hirzel@hddlawfirm.com
   **ALEC P. HAYES**
   Florida Bar No. 1015314
   hayes@hddlawfirm.com

**EXHIBIT "A"**



**American Development Partners Development Contract**

This agreement is made on the date written above our signatures between
DEVELOPER Name: **REDSTONE LLC DBA American Development Partners** (DEVELOPER) and
OWNER Name: CHC-81 STREET WESTMINSTER CO LLC (OWNER).

**DEVELOPER**
DEVELOPER Name: **REDSTONE LLC DBA American Development Partners**
Address: 6004 Cody Cove
City: Spring Hill, State: TN Zip: 37174
Work Phone Number: (615) 818-6982
Email Address: manny@americandevelopmentpartners.com
DEVELOPER Name: **American Development Partners** will be referred to as DEVELOPER throughout this agreement.

**CONTRACTOR**
**CONTRACTOR INFORMATION:**
Address: Phone Number: (615) 330-0629
Email Address: llynp@built-more.com
License Number: 00057609

CONTRACTOR Name: Built-more LLC will be referred to as CONTRACTOR throughout this agreement.

**OWNER**
OWNER Name: CHC-81 STREET WESTMINSTER CO LLC, 14103 Chinkapin Drive, Rockville MD 20850 ATTENTION – Mr. Pun For Li
OWNER Name: CHC-81 STREET WESTMINSTER CO LLC will be referred to as OWNER throughout this agreement.

**1    Project Description**

 A. For a price identified below, DEVELOPER agrees to complete a new commercial building (identified as the Project in this agreement) for OWNER.

 B. For the Contract Price identified below, DEVELOPER agrees to complete a new commercial building consisting of approximately 1850 sq. ft. +/- square feet of air-conditioned space and 300 square feet of a connected outdoor patio used as a Church's Chicken Restaurant (identified as the "Project" in this Agreement), for TENANT's use and OWNERS ownership on the Land in accordance with the plans

 C. The term "Total Build Cost" shall mean the aggregate of (1) the Total Project Cost, (2) the

Contract Price, (3) the Contingencies of the Project, (4) the cost of the Work and the Extra Work, (5) other costs, charges and fees under this Agreement (collectively, the "Other Agreements") (the Other Agreements shall include but not be limited to any contractor or subcontractor agreements and the cost of all materials and labor).

D.   The term "Budget" shall mean the Total Build Cost less the cost to acquire the Land.

E.   The term "Property" shall mean the Land and all improvements thereon including but not limited to the Project.

F.   Contract Price / OWNERS Cost Cap / Developer

G.   DEVELOPER shall earn in addition to any other charges specified in this agreement, OWNER agrees to pay a 10% development fee for completing the Work described as the Project. DEVELOPER fee is paid off total project cost that includes land / building, construction and all numbers that are used to factor total project cost.

H.   Notwithstanding any contrary provision in this Agreement or otherwise, OWNERS maximum monetary liability under this Agreement and for the Project towards all amounts, including but not limited to the Total Build Cost, shall not exceed, and shall be capped at, the sum of: (**$2,167,225.81) said amount referred to as the (OWNERS GROSS MAX)**.  Notwithstanding any contrary provision in this Agreement or otherwise, DEVELOPER shall be solely responsible under this Agreement and to OWNER, for any projects overruns that are above the gross max number provided to OWNER.

## 2   Contract Price

I.   DEVELOPER shall earn and OWNER agrees to pay a development fee of 10% of total project cost in addition to any other charges specified in this agreement. In addition to any other charges specified in this agreement, OWNER agrees to pay DEVELOPER **$197,020.53 development fee for** completing the Work described as the Project.

## 3 Contingency Budget

II.   It is identified and agreed to by OWNER that DEVELOPER has an estimated budget of **5 %** of project cost for "contingencies". CONTRACTOR will submit to DEVELOPER a "change order" for approval by DEVELOPER and OWNER any proposed change order. Contingencies are limited to change orders due to error or omission by a licensed architect after plans were received and reviewed by contractor, all state or federal codes changes that were mandated after contractor received stamped plans and or building permit.

## 4 Scheduled Start of Construction

A.   Work under this agreement will begin within 5 Calendar Days after the following contingencies have been met.

1.   Complete Plans and Specifications have been approved and initialed by both OWNER, DEVELOPER and CONTRACTOR.

2.   OWNER has shown proof of funds or other financing acceptable to DEVELOPER.

3.   DEVELOPER has obtained all architectural approvals from any franchise and or corporate authorities.

4.     OWNER has furnished DEVELOPER with evidence of Ownership of the property satisfactory to DEVELOPER.

5.     All appropriate building permits have been issued.

6.     DEVELOPER has received written notice from the lien holder or the title company insuring lien holder's security interest in the property that all documents required to be recorded prior to the commencement of construction have been properly recorded.

7.     The contract has been signed by OWNER, DEVELOPER and CONTRACTOR.

## 5 Scheduled Completion of Construction

A.     Work under this agreement will be Substantially Completed within 125 Calendar Days after the date construction begins (building permit is issued) however it is understood and will go without penalty for acts that our outside of the control of the DEVELOPER and CONTRACTOR.

## 6 Documents Incorporated

A.     The Glossary of Terms which follows our signatures is incorporated into this contract as though included in full as part of this agreement.

B.     This agreement incorporates by reference certain documents which define and describe the Work to be done. The following documents are incorporated as though included in full as part of this agreement.

## 7 Ownership of Plans

A.     All Plans, Drawings, Specifications and other documents prepared by or for OWNER for use under this agreement will be paid for and are the property of DEVELOPER and remain the property of DEVELOPER. Plans, Drawings and Specifications, whether in paper or electronic form, prepared for use in construction under this agreement shall not be modified or used on any other project without written consent of DEVELOPER. DEVELOPER shall hold harmless and Indemnify OWNER from and against all Claims, actions, suits, costs, damages, losses, expenses and attorney's fees arising out of use of the Project Plans, Drawings, or Specifications for any purpose other than construction to be completed under this agreement. DEVELOPER, CONTRACTOR and Subcontractors are granted a limited license to use and reproduce applicable portions of the Plans, Specifications and Drawings as required for construction under this agreement. All copies made under this license shall bear a notice showing OWNER as copyright holder. DEVELOPER may retain one record set of the Plans, Drawings and Specifications. All other sets shall be accounted for by DEVELOPER and CONTRACTOR and returned to OWNER. Submittal or distribution of Project Plans, Drawings or Specifications to meet Official Regulatory Requirements is not to be construed as publication in derogation of the rights of OWNER.

## 8 Plans on Site

A.     DEVELOPER and CONTRACTOR will keep a full set of Project Plans available on-site to authorized personnel during the period of construction.

## 9 Documents Supplied to CONTRACTOR

A.     OWNER will furnish to DEVELOPER and CONTRACTOR at no cost (this is part of total project cost)

1.     A full set of Plans and Specifications for all trades in electronic format.

2.     DEVELOPER and CONTRACTOR will distribute Contract Documents as required by Subcontractors.

## 10 Scope of Work

A.     DEVELOPER and CONTRACTOR shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Project in compliance with the Contract Documents.

B.     Develop and CONTRACTOR are responsible for coordination of the various trades and deliveries of equipment, materials and supplies to minimize interference which could delay the Work or pose a hazard to life or property. DEVELOPER shall be responsible for allocation of tasks between trades and will be the final authority on location and routing of equipment and storage of materials on the Job Site.

C.     DEVELOPER will ensure that Subcontractors, their agents, and employees adhere to these Contract Documents. DEVELOPER and CONTRACTOR accepts responsibility for all Work performed under this contract, including Work performed by employees of Subcontractors.

D.     CONTRACTOR shall provide on the Job Site during the period of construction a temporary chemical toilet or water closet which shall be serviced no less than weekly. Upon completion of the Project, CONTRACTOR will remove temporary toilet facilities from the site.

E.     DEVELOPER and CONTRACTOR shall provide temporary elevators and lifts as may be required by construction personnel, including Subcontractors, Material Suppliers, Inspectors, and Representatives of OWNER. Elevators and lifts will comply with all federal, state and local Laws and ordinances in effect at the Job Site. Upon completion of the Project, DEVELOPER and CONTRACTOR will dismantle and remove temporary elevators and lifts.

F.     DEVELOPER and CONTRACTOR shall develop and present to OWNER for approval (which shall not be withheld unreasonably), a site logistics plan drawn to scale, showing proposed secure and fenced areas, locations and types of temporary barricades, material storage and staging areas, property entrances used for material deliveries, and special material or equipment storage Requirements. This plan will include a description and proposed location for any temporary office, storage trailer, sanitary facilities, and parking for construction personnel.

## 11 Submittals

A.     Architectural Drawings will indicate in detail all parts of the building components, Installation details, and coordination with Work of other trades or other CONTRACTORS. Architectural Drawings for structural steel, timbers and pre-cast concrete will include engineering calculations, fabrication details and erection Drawings that show physical characteristics, dimensions, shapes, inserts, attaching points and methods, and other information required for manufacture, assembly and erection, in compliance with the Contract Documents.

B.     Approval by OWNER'S Representative does not relieve DEVELOPER and CONTRACTOR of responsibility for compliance with the Contract Documents except as follows: If a Submittal does not comply with Contract Documents, DEVELOPER and CONTRACTOR will attach to the Submittal, prior to approval, a written request for variation showing the change in Contract Price and Contract Time, if any, that will result from the variation. If OWNER'S Representative approves a Submittal which includes a written request for a variation and which requires a change in the Contract Price or Contract Time, OWNER'S Representative will issue a contract Modification confirming the change. If OWNER'S Representative approves a Submittal with a written request for a minor variation which does not require a change in the Contract Price or Contract Time, no contract Modification is needed. A minor variation is anything which does not materially alter the quality or performance of the Work. Approved variations are subject to all terms of this agreement and without prejudice to any rights granted to OWNER'S Representative under a Surety Bond.

C.    DEVELOPER and CONTRACTOR is entitled to expect that corrections to Submittals by OWNER'S Representative be clearly noted and easily understood so that prompt resubmission is possible without further instructions from OWNER'S Representative.

D.    OWNER'S Representative will review Submittals and notify DEVELOPER and CONTRACTOR of approval or rejection within **2** Calendar Days of receipt.

E.    OWNER'S Representative will review Submittals of DEVELOPER and CONTRACTOR for conformance with Requirements of the Contract Documents and will approve or take other appropriate action upon those Submittals.  OWNER'S Representative will advise DEVELOPER and CONTRACTOR of any errors or omissions which OWNER'S Representative may detect during this review. Submittals approved by OWNER'S Representative become additions to the Contract Documents and can be relied on by DEVELOPER and CONTRACTOR in completing the Work. Nothing in any approved Submittal shall be interpreted to limit DEVELOPER and CONTRACTOR in selection of the means, method, technique, sequence or procedure of construction.

## 12 Record Documents

A.    DEVELOPER and CONTRACTOR will note on a record set of Project Drawings any Work done that is not shown on the original Plans and not described in other Contract Documents. The record set of Project documents will be delivered to OWNER at the same time as final payment is requested.

## 13 Job Site Safety

A.    DEVELOPER and CONTRACTOR will always take all reasonable precautions for the safety of employees and the public at the Job Site and will comply with all applicable safety Laws and regulations of federal, state, and local authorities (including building codes) and safety Requirements of OWNER.

## 14    Hazardous Materials Used in Construction

A.    Except as provided elsewhere in the Contract Documents, CONTRACTOR is responsible for all Hazardous Materials brought to the Job Site by CONTRACTOR or Subcontractors.

## 15    Hazardous Materials Discovered on Site

A.    Except as provided elsewhere in the Contract Documents, OWNER is responsible for all Hazardous Materials discovered on the Job Site so long as those materials were not brought on the Job Site by CONTRACTOR, Subcontractors, or anyone directly or indirectly employed by them. Nothing in this paragraph shall relieve DEVELOPER and CONTRACTOR from liability for negligence in handling or removing hazardous materials as required under the terms of this agreement.

B.    Except as provided in the Contract Documents or as agreed by mutual consent, DEVELOPER and CONTRACTOR shall not be required to perform Work relating to asbestos, polychlorinated biphenyl (PCB), radioactive material, toxic mold or any other Hazardous Material.

C.    OWNER shall defend, Indemnify and hold harmless DEVELOPER  and CONTRACTOR from and against all loss, liability, claims, costs, damage and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from the discovery or existence of Hazardous Material on the Job Site, whether or not identified in the Contract Documents, provided such loss, liability, costs, damage and economic detriment is not the result of any negligent act or omissions of DEVELOPER and CONTRACTOR, Subcontractors or anyone directly or indirectly employed by them. Indemnification by OWNER under this paragraph shall apply even if OWNER is in no way responsible for the loss to DEVELOPER and CONTRACTOR.

## 16    Compliance with Law

A.    CONTRACTOR and OWNER mutually commit to use reasonable care to meet the Requirements of state, federal and local Law when discharging their responsibilities under this agreement.

B.    If DEVELOPER and CONTRACTOR observe that Drawings, Specifications, or other Contract Documents do not comply with applicable Law, DEVELOPER and CONTRACTOR shall promptly notify OWNER or OWNER'S Representative of the variance. Any changes made to the Contract Documents because of this notice shall be handled in the form of a Change Order under this agreement.

C.    DEVELOPER and CONTRACTOR shall bear none of the cost of correcting Work completed per Contract Documents but not in compliance with Law if CONTRACTOR did not know that Contract Documents or instructions from OWNER or OWNER'S Representative did not comply with the Law.

D.    If Law enacted after the Contract Date changes the Scope of Work under this agreement, DEVELOPER and CONTRACTOR and OWNER will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

## 17    Layout

A.    DEVELOPER and CONTRACTOR shall be responsible for alignment and elevation of the Work and will set grade stakes, batter boards, and other working points, lines and elevations required to complete the Project as described in the Contract Documents.

## 18    Permits and Fees

A.    DEVELOPER and CONTRACTOR shall secure all permits, licenses and renewals required by government authority to complete construction of the Project. If permits are required for Subcontracted Work, Subcontractors will secure those permits. OWNER may request a copy of each permit, license and renewal issued by government authority for the Project. All permits and fees are considered a fee that is enclosed in the project plan.

B.    Project budget will include the building permit fee, Plan check fee, and charges levied by government for testing, Inspection and Re-Inspection of the Project. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

C.    Except as provided elsewhere in this agreement, Project budget  will include all fees and application charges imposed by government authority, including, but not limited to, grading permit fees, drainage permit fees, traffic control charges, thoroughfare charges, impact fees, special district fees, sewer fees, water fees, planning fees, school fees, elevator permit fees, charges for temporary access or use of the public right of way, and charges for document processing, hearings, and certifications. Project budget will also pay all fees and application charges imposed by any association of property OWNERs having authority over the Job Site. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

D.    Except as provided elsewhere in this agreement, Project budget will include all application fees and connection charges imposed by utility companies or government agencies for bringing service to the Job Site, and for connecting gas, water, electricity, phone, cable, sewer, and drainage lines. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

E.    Except as provided elsewhere in this agreement, Project budget will include all approvals for the

Project that are required by government authority, including planning, easements, remediation, environmental, and zoning approvals. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## 19    Taxes

A.    If any federal, state or local tax rate increases or if any new federal, state or local tax is imposed, whether by Law, regulation, or interpretation, between the Contract Date and Substantial Completion, the Contract Price shall be increased by the additional tax levied on DEVELOPER and CONTRACTOR but only to the extent that the change in rate or new tax could not have been reasonably foreseen on the Contract Date. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## 20    Temporary Utilities

A.    DEVELOPER and CONTRACTOR have budgeted for all costs associated with use of temporary utilities on the Job Site during construction, including application fees, permits, engineering, and metered service for water, electric power, heating and cooling. Temporary utility systems provided by DEVELOPER CONTRACTOR shall be designed and installed to protect the public and construction personnel and conform to applicable Laws and Regulations.

B.    Utility services shall be re-listed in the name of future building occupant on the Calendar Day following Substantial Completion.

## 21    Permanent Utilities

A.    Project budget shall include Installation, connection, and modification of permanent electric, water, phone, cable, sewer and gas service as required for the completed Project. It will not include any deposits that will be paid by building occupant

## 22    Job Cleanup

A.    DEVELOPER and CONTRACTOR shall regularly remove from the Job Site and storage areas all surplus material, waste and debris resulting from the Work. Construction debris shall be removed to a legal refuse collection site with disposal or recycling fees included in Project budget. At completion of the Work, DEVELOPER and CONTRACTOR shall, in addition, remove from the Job Site all tools, equipment and scaffolding brought to the Job Site by DEVELOPER and CONTRACTOR or Subcontractors. At Substantial Completion, exposed finishes of windows, doors, floors, walls, ceilings, fixtures and trim shall be cleaned and free of grime, stains, over spray, dirt and dust.

B.    DEVELOPER and CONTRACTOR shall provide a trash disposal facility on the Job Site for use by construction personnel. The on-site trash facility provided by DEVELOPER and CONTRACTOR shall be of an appropriate size for the Project and placed in a location approved by OWNER. All construction debris shall either be placed in the trash facility provided by DEVELOPER and CONTRACTOR or hauled to a legal disposal site, at the discretion of DEVELOPER and CONTRACTOR. When any trash container provided by DEVELOPER and CONTRACTOR is full, contents shall be removed to a legal disposal facility at the expense of CONTRACTOR.

## 23    Project Sign

A.    DEVELOPER and CONTRACTOR shall have the right to fabricate and erect a Project sign bearing

the name of the Project, Prime CONTRACTOR, principal Subcontractors, designers, consultants, lead lender, a short Project description, and expected Completion Date. CONTRACTOR may erect directional signs at the Job Site with approval of OWNER with respect to size, style and location. Directional signs may bear the name of CONTRACTOR and a directional symbol. No other signs will be permitted except by permission of OWNER.

## 24     Project Superintendent

A.     DEVELOPER and CONTRACTOR shall employ a competent Superintendent and any necessary assistants or alternates that will be at the job site from start to finish of project. The Superintendent shall not be changed unless the Superintendent is discharged by DEVELOPER and CONTRACTOR. The Superintendent shall have authority to represent DEVELOPER and CONTRACTOR in all matters relating to the Project. Communications with the Superintendent shall have the same force and effect as direct communication with DEVELOPER and CONTRACTOR.

## 25     OWNER'S Responsibilities

A.     OWNER affirms that OWNER has the right to enter this agreement and has the right to contract for construction of the Project on the Job Site. OWNER shall pay all taxes and assessments due on the Job Site during the period of construction and shall take all reasonable actions required to protect marketable title to the Job Site. OWNER is responsible for all standard responsibilities that a property OWNER / landlord would have.

B.     OWNER will ensure that OWNER'S Representative responds in writing and with reasonable promptness to written requests from DEVELOPER and CONTRACTOR for (1) interpretation of the Plans or Specifications, or (2) other information relevant to completion of the Work. DEVELOPER and CONTRACTOR are authorized to rely on written responses from OWNER'S Representative.

C.     OWNER shall have sole responsibility to secure financing for the Project and shall pay all fees, charges, or other costs of such financing, including Inspection fees charged by any lender. The nonperformance of any lender shall not affect the obligation of OWNER to DEVELOPER and CONTRACTOR. OWNER hereby authorizes and directs any lender on the Project to furnish DEVELOPER and CONTRACTOR with full information on undisbursed proceeds when requested by DEVELOPER and CONTRACTOR. Proof of funds must be made available to DEVELOPER prior to project starting.

D.     OWNER will not interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by DEVELOPER and CONTRACTOR or Subcontractors except as provided under this agreement.

## 26     Construction by Others

A.     OWNER shall neither hire nor retain Separate DEVELOPER and CONTRACTOR, Subcontractors, employees or agents of OWNER to perform Work on the Job Site while Work is being done under this agreement by DEVELOPER and CONTRACTOR.

## 27     Authority of OWNER'S Representative

A.     OWNER'S Representative has authority to administer the contract, make construction decisions on behalf of OWNER, and is the primary authority on issues of compliance with the Drawings and Specifications, quality of workmanship, materials used, manner of performance, and rate of progress on the Project.

B.     After the Contract Date, OWNER shall make no change in the responsibilities or authority of OWNER'S Representative without consent of DEVELOPER and CONTRACTOR.

C.     OWNER'S Representative shall have the right to visit the Project and view Work in progress at any time. Any Defective Work found or suspected, either as the result of a site visit or otherwise, shall be reported promptly to DEVELOPER and CONTRACTOR. No actions taken or statements made during site visits shall relieve DEVELOPER and CONTRACTOR of obligations described in the Contract Documents.

D.     Communication between DEVELOPER and CONTRACTOR and OWNER shall be initiated through OWNER'S Representative unless direct communication is required by Law or Contract Documents. Unless otherwise authorized by DEVELOPER and CONTRACTOR, communications between OWNER'S Representative and Subcontractors or Material Suppliers shall be through DEVELOPER and CONTRACTOR.

E.     OWNER'S Representative shall have the authority to reject and order removed any portion of the Work which does not conform to the Contract Documents.

F.     OWNER'S Representative shall have authority to conduct Inspections about Beneficial Occupancy and to determine the dates of Substantial Completion.

## 28     Representations by DEVELOPER and CONTRACTOR

A.     DEVELOPER and CONTRACTOR shall use skill and attention to complete the Work in a timely manner consistent with the Contract Documents.

B.     OWNER has reported to DEVELOPER and CONTRACTOR all conditions known to OWNER which may not be apparent to CONTRACTOR and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the Job Site, unsuitable soil conditions, prior Defective Work of others, latent Defects in the Plans or Specifications, earlier attempts to do Similar or related Work, and obligations imposed by government.

## 29     Disclaimer by OWNER, Reliance by CONTRACTOR

A.     OWNER has provided DEVELOPER and CONTRACTOR with information on subsurface or concealed conditions at the Job Site. Except to the extent that DEVELOPER and CONTRACTOR knows this information to be false, DEVELOPER and CONTRACTOR is entitled to rely on the accuracy of this information.

## 30     Discrepancy between Plans and Field Conditions

A.     DEVELOPER and CONTRACTOR is not a Design Professional and have no obligation to find discrepancies between Job Site conditions and representations or Requirements in the Contract Documents.

B.     DEVELOPER and CONTRACTOR shall not be liable for discrepancies between representations or Requirements in the Contract Documents and conditions at the Job Site unless DEVELOPER and CONTRACTOR knowingly fails to report a discrepancy, in which case DEVELOPER and CONTRACTOR shall be liable for additional costs incurred because of failure to give prompt notification.

C.     If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information

provided by OWNER, DEVELOPER and CONTRACTOR shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall submit a Claim for a Change Order which covers the additional cost incurred because of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

### 31    Use of the Site

A.    OWNER has agreed to furnish all required rights to use the land upon which the Work is to be constructed. OWNER will identify any encumbrances or restrictions related to use of the land furnished and DEVELOPER and CONTRACTOR agrees to comply with those encumbrances or restrictions. If OWNER fails to furnish the land, rights of way, or easements when required, DEVELOPER and CONTRACTOR may make a Claim for extra compensation, additional time, or other relief.

B.    OWNER shall designate a construction entrance which DEVELOPER and CONTRACTOR shall use for all delivery of materials and equipment and which shall be used by all construction personnel.

### 32    Draw Schedule

OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:

> **OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:**
>
> **Momentum draw - 10% of the Budget within three (3) Business Days following the closing on land, building or execution of this development contract.  Momentum draw will include all developer's pursuit cost, project soft cost, developer fee and necessary local, state and or federal permitting fees to start the project.**
>
> **Draw 1 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following the commencement of the Work.**
>
> **Draw 2 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 1.**
>
> **Draw 3 - 20% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 2.**
>
> **Final Draw – 10% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request includes a copy of all executed lien releases and final payment affidavits (from CONTRACTOR, Subcontractors and others) being submitted to the clerk of court and recorded in the public records and a copy of the permanent Certificate of Occupancy issued for the Project.**

It is agreed by OWNER and or FUNDING SOURCE that all payments will be made to DEVELOPER. DEVELOPER will disburse funds in a timely manner. The afore mentioned budget that is supported by the GMAX clause is considered total project budget and the DEVELOPER will disburse funds per DEVELOPERS discretion.  No third-party title company will be granted permission to disburse funds to any company or individual on behalf of funding group. Each application for payment shall be submitted

on the form approved by OWNER.

**Discharge of Liens and Payment of Subcontractors**

1.     DEVELOPER and CONTRACTOR warrants that, upon payment, OWNER shall receive clear title to all Work identified in the application for payment, free and clear of all liens and Claims, including Claims of Subcontractors, employees or Material Suppliers. CONTRACTOR also agrees that this vesting of title in OWNER does not impose any obligation on OWNER or relieve CONTRACTOR from any obligation under this contract. CONTRACTOR shall remain responsible for damage to or loss of both the Work and stored materials until Completion.

2.     DEVELOPER and CONTRACTOR warrants and guarantees that no Work, materials, or equipment covered by a request for payment has been acquired by DEVELOPER and CONTRACTOR or by any other person performing the Work or furnishing materials or equipment for the Project subject to an agreement under which an interest therein, or an encumbrance thereon, has been retained by seller or otherwise imposed by CONTRACTOR.

3.     DEVELOPER and CONTRACTOR shall furnish, with each application for payment, executed waivers of liens from DEVELOPER and CONTRACTOR and each Subcontractor and Material Supplier to the Project in the amount of the application for payment. Waivers of liens shall be in a form satisfactory to OWNER, title insurer, and lenders.

4.     DEVELOPER shall disburse funds received from OWNER among DEVELOPER and CONTRACTOR, subcontractors and material suppliers in proportion to the work done and materials received for the project during the pay period.

## 35     Interest

A.     Payments due and not paid under the Contract Documents shall bear interest from the date payment is due at a monthly rate of **10** percent.

B.     Payment of interest does not abrogate or replace any other rights DEVELOPER and CONTRACTOR may have under this agreement.

## 36     Final Payment

A.     DEVELOPER and CONTRACTOR will apply for final payment and will notify OWNER'S Representative when the work has been completed. OWNER'S Representative will issue a certificate of completion on determination that the Project is complete and in compliance with the Contract Documents. When the certificate of completion is issued, the entire unpaid balance of the contract amount, including any retainage, is payable to DEVELOPER.

B.     Making of final payment constitutes waiver of all Claims by OWNER against DEVELOPER and CONTRACTOR except those Claims previously made in writing and delivered to DEVELOPER and CONTRACTOR and those obligations otherwise provided by this agreement or by operation of Law.

C.     The acceptance of final payment by CONTRACTOR constitutes a complete and unconditional waiver and release of any and all Claims by CONTRACTOR of whatever nature, and regardless of whether they are then known or unknown, and a complete and unconditional release of OWNER, and every person for whom OWNER is responsible, for any and all matters related to the contract or otherwise, except those Claims which have been made in writing and identified by CONTRACTOR as not having been settled at that time.

## 37  Changes in the Work

A.     Except as required by changes in the Prime Contract between OWNER and DEVELOPER, no

change to this contract (including Modification, clarification, interpretation or correction of the Plans or Specifications) shall be made without agreement and a written Change Order signed by DEVELOPER and CONTRACTOR and OWNER identifying the change, the cost of the change, and the effect on Project Schedule, if any.

B.     Any change in Plans, Specifications or Contract Documents necessary to conform to existing or future Laws, codes, ordinances or regulations shall be considered Extra Work.

C.     Changes in the Work required due to defects or inconsistencies in Plans or Specifications or other Contract Documents shall be considered Extra Work.

D.     The charge for Extra Work shall be the normal selling price DEVELOPER and CONTRACTOR charges for similar changes on other jobs.

E.     Failure of DEVELOPER and CONTRACTOR and OWNER to agree on the terms of a Change Order shall be resolved under the provisions of this agreement which cover Claims and disputes.

F.     Should DEVELOPER and CONTRACTOR and OWNER fail to agree promptly on the terms of a Change Order, DEVELOPER and CONTRACTOR shall be paid, pending resolution of the dispute, the portion of the cost of the change not in dispute, including the costs of time and materials required to execute the change. Payments required under this paragraph shall be made as the Work progresses, concurrently with progress payments.

### 38     Cooperation of the Parties

A.     OWNER and DEVELOPER acknowledge that open communication and cooperation will be required to complete the Project on time, as estimated, and in compliance with the Contract Documents. DEVELOPER and OWNER each agree to identify a representative who will be available to resolve minor problems, answer questions and reach mutually acceptable solutions. The individuals identified by DEVELOPER and OWNER shall try to reach informal agreement on problems as they arise but are under no obligation to do so.

B.     Both DEVELOPER and OWNER pledge that their relations will be conducted with courtesy and consideration in an environment characterized by mutual respect. OWNER pledges to respond promptly to requests by DEVELOPER for guidance, assistance and payments when due and agrees to extend to DEVELOPER the deference and latitude a dedicated professional deserves. CONTRACTOR pledges to commit the skill and resources required to complete the Project in a manner that complies with both the letter and spirit of the Contract Documents and enhances the reputation of DEVELOPER and for dependability and professionalism.

### 39     Warranty

DEVELOPER and CONTRACTOR warrant that the Work shall be free of Defects due to faulty material or workmanship for the period specified in this agreement.

### A.     General Requirements

1.     Except as otherwise provided in this agreement, the warranty period shall begin from the date of Completion for 12 months.

2.     Work done by CONTRACTOR in compliance with warranty provisions of this agreement does not extend the period of the warranty.

3.     DEVELOPER and CONTRACTOR shall deliver to OWNER all warranties provided by vendors and manufacturers of materials and equipment used to complete the Project. DEVELOPER and CONTRACTOR shall have no obligation under warranties provided by others except to render any

assistance that OWNER may require in enforcing the terms of those warranties.

4.     Except as provided in this agreement, and to the extent permitted by Law, DEVELOPER and CONTRACTOR disclaims all warranties, whether express or implied, whether of fitness for purpose, merchantability, habitability or workmanlike completion.

5.     Failure of OWNER to give notice of a breach of warranty within the warranty period constitutes a waiver of the right to repair or replacement by DEVELOPER and CONTRACTOR.

6.     To make a warranty Claim under this agreement, OWNER must send a clear and specific written complaint to DEVELOPER and CONTRACTOR at the following address within 60 Calendar Days of discovering Defects, unless otherwise specified in the list of items covered under this warranty. DEVELOPER and CONTRACTOR shall make repairs, replacements and corrections promptly and at no expense to OWNER.

**B.     Exclusions from Warranty**

1.     The warranty provided by this contract does not cover any of the following items or conditions:

I.     Damages to private property or bodily injury.

II.     Damages or losses that result from soil movement that is covered by insurance or that is compensated for by legislation.

III.     Insect damage.

IV.     Damage or losses that result from overloading of any floor, wall, ceiling, or roof beyond the design capacity.

V.     Damages caused or made worse by:

A.     Changes, additions, deletions, or any other alterations made to any part of the structure by anyone other than DEVELOPER and CONTRACTOR after the warranty term begins.

B.     Loss that results from failure of OWNER to take timely action to mitigate or minimize damage.

2.     DEVELOPER and CONTRACTOR has no liability for incidental or consequential damages from breach of any warranty provided by this agreement insofar as the loss claimed is covered by insurance of OWNER or for which OWNER has a right of recovery from any other party.

**C.     Basic Warranty Coverage**

1.     It is a breach of warranty if any material or design furnished, or workmanship performed by DEVELOPER and CONTRACTOR or any Subcontractor or Material Supplier, is found to be defective during the first year.

**D.     Warranty on Major Structural Damage**

1.     It is a breach of the major structural damage warranty where there is actual physical damage to designated load-bearing portions of the structure caused by the failure of such designated portions to perform to their load-bearing functions to the extent that it makes the structure unsafe, uninhabitable, or unsanitary during the first 12 months. The following items are designated load-bearing portions:

I.     Foundation Systems and Footings

II.     Beams

III.     Girders

IV.     Lintels

V.      Columns

VI.     Walls and Partitions

VII.    Floor Systems

VIII.   Roof Framing Systems

**40      DEVELOPER and CONTRACTOR Claims**

A.      If DEVELOPER and CONTRACTOR claims that any instruction, Drawing, act or omission of OWNER or any representative of OWNER, or any agency of government, increases costs to DEVELOPER and CONTRACTOR, requires extra time or changes the Scope of Work, CONTRACTOR shall have the right to assert a Claim for such costs or time.

**41     Notice of Claims**

A.      No Claim by DEVELOPER and CONTRACTOR shall be considered unless DEVELOPER and CONTRACTOR provide OWNER or OWNER'S Representative with a notice that there will be a Claim for additional compensation or an extension of time. This notice of Claim shall be made no less than 5 Calendar Days after DEVELOPER and CONTRACTOR recognizes or should have recognized that circumstances exist which support such a Claim. The notice of Claim shall include: (1) The date of the notice, (2) The date the basis for the Claim was discovered, (3) The circumstances that support the Claim, and (4) The estimated additional cost to OWNER or additional time required to complete the Project.

B.      If the Claim involves Extra Work, DEVELOPER and CONTRACTOR shall maintain detailed records which show each expense incurred, including payroll records and receipts for Subcontracted Work, materials and equipment. These detailed records shall be made available to OWNER for verification while Work subject to the Claim is being performed.

C.      The amount Claimed by CONTRACTOR shall be calculated in accord with provisions in this contract on charges for Extra Work.

**42     Arbitration**

A.      Any controversy or Claim arising out of or relating to this contract or contract warranty or the breach thereof which cannot be resolved by mediations shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

B.      Two copies of the demand for arbitration and attachments and the related fee shall be filed with the appropriate regional office of the American Arbitration Association. Copies of the demand and attachments shall be given to all other Parties to the dispute. The demand for arbitration shall be made within a reasonable time after the Claim or dispute has arisen, and in no event after the date when institution of legal or equitable proceedings based on such Claim or dispute would be barred by the applicable statute of limitations.

C.      DEVELOPER, CONTRACTOR and OWNER agree to include in each contract for construction or design services on the Project a clause which requires that disputes under that contract be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules.

D.      Any representative of OWNER or consultant to OWNER or DEVELOPER and CONTRACTOR or any Subcontractor to DEVELOPER and CONTRACTOR on the Project shall have the same rights in any

arbitration proceeding as are afforded by arbitration rules to DEVELOPER and CONTRACTOR and OWNER. If more than one demand for arbitration is made by a Party with respect to the Project, all such Claims shall be consolidated into a single arbitration unless the Parties otherwise agree in writing.

E.      If a Claimant in arbitration recovers less than 50 percent of the amount demanded in arbitration, DEVELOPER and CONTRACTOR and OWNER agree that the Claimant shall pay all costs in arbitration, including the arbitrator's fees and the attorney's fees of the opposing Party.

## 43.    Insurance

### A.    Certificates of Insurance

1.      DEVELOPER and CONTRACTOR shall provide to OWNER a certificate of insurance for each insurance policy required by this agreement. These certificates shall list OWNER as the certificate holder.

2.      Certificates of insurance shall be issued on a standard form

3.      DEVELOPER and CONTRACTOR shall permit no Subcontractor to begin Work on the Project until OWNER has received certificates of insurance demonstrating that the Subcontractor has coverage of a like kind and with comparable limits to insurance coverage required of DEVELOPER and CONTRACTOR under this agreement.

### B.    Waivers of Subrogation

1.      OWNER and DEVELOPER and CONTRACTOR waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance except such rights as may exist to the proceeds from insurance held by OWNER as trustee. DEVELOPER and CONTRACTOR shall require similar waivers in Subcontracts for the Project.

### C.    Insurance Details

1.      If insurance policies meeting the Requirements of this contract are not generally available to DEVELOPER and CONTRACTOR.  DEVELOPER and CONTRACTOR may provide substantially similar coverage and shall so notify OWNER in writing.

2.      DEVELOPER and CONTRACTOR may satisfy the policy limits set by this contract through any combination of underlying and excess liability (umbrella) insurance so long as the total coverage is not less than the policy limits specified in this contract. Any excess liability (umbrella) insurance coverage provided by CONTRACTOR must be written on an occurrence basis, offer coverage at least as broad as the underlying insurance, and have concurrent effective dates. Excess liability (umbrella) insurance provided by DEVELOPER and CONTRACTOR shall provide additional insured endorsements, blanket contractual coverage, and punitive damages coverage (unless prohibited by Law).

### D.    Liability Insurance

1.      As an alternative to including OWNER as an additional insured under a comprehensive general liability policy, DEVELOPER and CONTRACTOR may provide an OWNER'S and CONTRACTOR's Protective Liability Policy. If DEVELOPER and CONTRACTOR are unable to procure the minimum amounts of insurance in a single policy, CONTRACTOR may provide required policy limits through a combination of a primary OCP Policy and one or more excess policies. OWNER shall be the named insured on the Policy and, if applicable, the excess policy. Each policy shall be endorsed to include each Subcontractor of every Tier as the CONTRACTOR designated in the declarations.

2.      Minimum CONTRACTOR's liability coverage shall be: $1,000,000 combined bodily injury and

property damage single occurrence limit, annual aggregate limit of $2,000,000, products and completed operations aggregate limit of $1,000,000, personal and advertising injury aggregate limit of $1,000,000.

**E.    Builder's Risk Insurance**

1.     OWNER shall provide builder's risk insurance covering property damage to the Project during the construction period. OWNER accepts the risk of damage to the Work during construction and agrees to Indemnify and hold harmless DEVELOPER and CONTRACTOR and Subcontractors at any Tier from losses resulting from uninsured damage to the Work prior to final payment under this agreement.

2.     Builder's risk insurance shall include a loss payable provision naming OWNER as loss payee. OWNER shall have the power to adjust and settle Claims resulting from builder's risk insurance.

3.     Policy limits for builder's risk coverage shall be no less than the completed replacement value of the Project including the value of Change Orders.

<h3 style="text-align:center">44    Liability for Damages</h3>

**DEVELOPER and CONTRACTOR Liability for Damages**

1.     DEVELOPER and CONTRACTOR shall have no liability for damage to or loss of OWNER'S private property left on the Job Site unless such damage or loss is the direct result of intentional or negligent acts by DEVELOPER and CONTRACTOR.

**45    Indemnity**

A.     DEVELOPER and CONTRACTOR shall defend, Indemnify, and hold harmless OWNER and all officers, employees, agents, and consultants of OWNER from and against all and any losses, liability, Claims, costs, damages and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from performance of Work under this agreement provided such loss, liability, costs, damage and economic detriment is attributable to bodily injury, sickness, disease or death, or to injury or destruction of property (other than the Work itself) caused by the negligent acts or omissions of DEVELOPER and CONTRACTOR, a Subcontractor, or anyone directly or indirectly employed by them, or whether caused by or contributed to by OWNER, unless caused by the sole negligence of OWNER.

B.     Indemnification of OWNER is limited to the extent of insurance coverage required to be carried by DEVELOPER and CONTRACTOR under this agreement.

C.     Indemnification under this agreement shall not exceed any limitation on the amount or type of damages, compensation, or benefits payable by or for DEVELOPER and CONTRACTOR or any Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

**46    Interpretation of the Contract**

A.     Section headings and paragraph numbers have been included in this contract to refer easier and in no way limit, define, or enlarge the terms, scope, or conditions of this contract.

B.     Except as otherwise provided in this contract, OWNER and DEVELOPER and CONTRACTOR intend that this contract be interpreted in accord with the *Restatement of Law, Contracts*, published by the American Law Institute. Specifically: All parts of the Contract Documents should be interpreted together, and conduct of the Parties should be interpreted as a manifestation of intention, and specific provisions should be interpreted as qualifying the meaning of the general provisions.

**47    Dealing with Plan Defects**

A.     At any time, DEVELOPER and CONTRACTOR may request an interpretation or clarification of the Contract Documents from OWNER or OWNER'S Representative. OWNER or OWNER'S Representative shall reply with a written interpretation, clarification, or detailed instructions within a reasonable time.

B.     DEVELOPER and CONTRACTOR will rely on the Contract Documents as the final authority on what is included in the Project. The Contract Documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction DEVELOPER and CONTRACTOR doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. CONTRACTOR bears no responsibility for defects in the Contract Documents.

C.     Unless DEVELOPER and CONTRACTOR has asked for and received a written clarification from OWNER in time to prevent delay in the Work, any omission or ambiguity in the Contract Documents shall be interpreted as requiring the material or construction technique necessary to produce the greater quantity and better quality of Work.

D.     DEVELOPER and CONTRACTOR will report promptly to OWNER any design defects likely to result in problems during construction of the Project. However, DEVELOPER and CONTRACTOR is not a licensed architect or engineer and have no obligation to detect ambiguities, inconsistencies or omissions in the Contract Documents. While acting in good faith, DEVELOPER and CONTRACTOR is entitled to rely on the Work of a trained design specialist selected by and responsible to OWNER.

E.     DEVELOPER and CONTRACTOR is entitled to rely on dimensions and descriptions shown in the Contract Documents when ordering materials for Installation.

F.     Ambiguities, inconsistencies and omissions in the Contract Documents are design defects, not errors by DEVELOPER and CONTRACTOR. The cost of correcting design defects shall be at the expense of OWNER.

G.     If inconsistent, approved changes to the Contract Documents take precedence over the original Contract Documents. Subsequent changes to the Contract Documents take precedence over prior changes to the Contract Documents.

H.     If inconsistent, the construction Drawings take precedence over the Specifications.

I.     If anything in the construction Specifications is inconsistent with anything else in the construction Specifications: (1) A product performance Requirement takes precedence over a named product or manufacturer, and (2) Other clauses in the Specifications take precedence over anything incorporated by reference into the Specifications.

J.     If anything in the construction Drawings is inconsistent with anything else in the construction Drawings: (1) Dimensions written in numbers take precedence over scaled measurements, (2) Notes and schedules take precedence over lines on the Drawings, (3) Large scale Drawings take precedence over small scale Drawings, (4) Schedules take precedence over notes or other directions, (5) Specific notes take precedence over general notes, and (6) Bottom elevations of footings take precedence over any general notes.

K.     If inconsistent, other Contract Documents take precedence over any manual, industry standard, recommendation, regulation, and set of guidelines, code, or instructions incorporated by reference into the Contract Documents.

L.     If inconsistent, any portion of the Contract Documents written in longhand takes precedence over

anything printed in the Contract Documents.

M.     DEVELOPER and CONTRACTOR has no liability for any omission, inconsistency or ambiguity in the Contract Documents or for any discrepancy between physical conditions at the Job Site and the Contract Documents, unless DEVELOPER and CONTRACTOR fails to report the error to OWNER or OWNER'S Representative.

## 48     Choice of Venue

A.     The Parties agree that venue for any action related to performance of this contract shall be the appropriate court in Tennessee.

## 49     Entire Agreement

A.     The Contract Documents are the entire agreement and constitute a complete integration of all understandings between DEVELOPER and CONTRACTOR and OWNER about the Project. The Contract Documents supersede all prior negotiations, representations and agreements, whether written or oral. No subsequent notation, renewal, addition, deletion, change or amendment to this contract shall have any force or effect unless in the form of a written Change Order or amendment to this contract.

## 50     Severability

A.     If any provision of this contract is interpreted or rendered invalid and unenforceable, then the remainder of this contract shall remain in full force and effect.

## 51     Cumulative Remedies

A.     All rights and remedies provided to DEVELOPER and CONTRACTOR by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to CONTRACTOR at Law or in equity.

## 52     Materials and Substitutions

A.     When the Specifications refer to materials or equipment by performance standard (such as an ASTM identifier), DEVELOPER and CONTRACTOR may select for Installation any product or equipment meeting that standard. When several products or manufacturers are identified as acceptable in the Specifications, DEVELOPER and CONTRACTOR has the option of using any of the products or selecting any of the manufacturers listed without seeking approval from OWNER or OWNER'S Representative.

B.     Except as stated otherwise in the Specifications, any reference in the Specifications to a brand, make, manufacturer, or model denotes only characteristics of quality, workmanship, economy of operation and suitability for the intended purpose. DEVELOPER and CONTRACTOR may use any substantially equivalent material, equipment, or article if approved in advance of Installation by OWNER or OWNER'S Representative.

C.     All materials and equipment used on the Project shall comply with Specifications in the Contract Documents unless a substitution is approved in advance of Installation by OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall apply to OWNER or OWNER'S Representative for approval of a substitute material when: (1) Any item specified is found to be unusable or unavailable when needed for Installation, or (2) The item specified is considered inferior to an equivalent item which is readily available at a Similar cost. With the application, DEVELOPER and CONTRACTOR shall include documentation: (1) Demonstrating that essential features of the substitute item are equal to or exceed similar features of the item specified, and (2) Listing delivered prices for the substitute item based on Material Supplier quotations. OWNER or OWNER'S Representative may deny

any application for substitution if not in the best interest of OWNER. If approved, any savings in cost that result from the substitution will be credited to OWNER. No request for substitution of material shall constitute grounds for extension of the Contract Time. Proposed substitutions shall not be purchased or installed without approval of the substitution by OWNER or OWNER'S Representative.

## 54    Inspections

DEVELOPER and CONTRACTOR shall schedule and coordinate all Inspections required by the Contract Documents and by public authority so as not to delay the progress of the Work or the Work of OWNER or Separate CONTRACTORs. If the Contract Documents require that an Inspection be witnessed or attended by OWNER or OWNER'S Representative, DEVELOPER and CONTRACTOR shall give notice of the time and place of the Inspection. DEVELOPER and CONTRACTOR shall schedule Inspections during regular Work Days and normal business hours, unless mutually agreed by DEVELOPER and CONTRACTOR, OWNER, and Inspector.

B.    Insofar as applicable and except where superseded by other provisions of the Contract Documents or by government regulation, Inspection of the following Work will be required on the Project: (1) Bearing surfaces of excavations before concrete is placed, (2) Reinforcing steel after Installation and before concrete is poured, (3) Structural concrete when poured, (4) Structural framing after erection and prior to being covered or enclosed, (5) Steel welding, (6) Mechanical and plumbing Work following Installation and prior to being covered or enclosed, (7) Electrical Work following Installation and prior to being covered or enclosed, (8) Above-ceiling Work when complete but before the finish ceiling material is installed, and (9) Final Inspections prior to occupancy.

C.    If an Inspection reveals Work of DEVELOPER and CONTRACTOR not in compliance with the Contract Documents or not in compliance with any code or statute, DEVELOPER and CONTRACTOR shall bear the costs of correction, the cost of repeating the Inspection, and any related costs, including reasonable charges by OWNER or OWNER'S Representative for additional services.

## 55    The Construction Schedule

A.    DEVELOPER and CONTRACTOR shall prepare and submit to OWNER for review and approval an estimated progress Schedule for the Work showing completion within the Contract Time. This progress Schedule shall identify expected starting and completion dates for each part of the job and identify tasks critical to timely completion of the Work.

B.    DEVELOPER and CONTRACTOR may select any type of Schedule which: (1) Is suitable for monitoring progress of the Work, (2) Provides easy access to information about the timing of decisions OWNER must make and acts OWNER must perform, (3) Includes sufficient detail to demonstrate adequate planning for the Work, and (4) Presents a practical plan to complete the Work in an acceptable time.

C.    DEVELOPER and CONTRACTOR shall plan, develop, supervise, control, and coordinate the performance of the Work so that job progress, sequence and timing conform to the construction Schedule. If DEVELOPER and DEVELOPER and CONTRACTOR falls materially behind the currently approved construction Schedule, OWNER may require DEVELOPER and CONTRACTOR to prepare and submit for approval, at no cost to OWNER, a plan for completing the Project within the Contract Time. Failure to submit a plan meeting this Requirement shall constitute grounds for termination under the terms of this agreement.

D.    The Schedule shall allow for and depict the following: (1) Beginning and Completion Dates of each significant task (Work breakdown structure) in the job, (2) Delivery and approval of each Submittal, Samples and Shop Drawing, (3) Inspections and tests, (4) The Work of Subcontractors and Separate

CONTRACTORs, and (5) Order dates and delivery dates of significant equipment and key materials. The construction Schedule shall include a legend which identifies the meaning of each symbol and abbreviation.

## 56     Extension of the Time for Completion

A.      OWNER shall execute a Change Order for Excusable Delay by extending the Contract Time for the period of the delay. Any of the following shall constitute excusable delay for which the Contract Time shall be extended: (1) Strike, boycott, embargo, terrorism, armed rebellion, quarantine or other obstructive action by employees, labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or, order of government authority, and (2) Fire, flood, earthquake, tornado, tidal wave, lightning, rain, snow, temperature under 32 degrees, casualty loss, epidemic, or unusually adverse weather.

B.      For delay in delivery of materials, FF&E, equipment or for a shortage of labor that results from unforeseeable circumstances beyond the control and without fault or negligence of either DEVELOPER and CONTRACTOR, or any Subcontractor or Material Supplier of DEVELOPER and CONTRACTOR, OWNER will grant an extension of the Contract Time if: (1) DEVELOPER and CONTRACTOR, notifies OWNER and OWNER'S Representative promptly on discovery of the anticipated shortage, (2) DEVELOPER and CONTRACTOR,  substantiates the delay as unavoidable with a detailed chronology of events and all relevant correspondence, and (3) DEVELOPER and CONTRACTOR, provides an estimated date when the material, equipment or labor will be available.

C.      Any Change Order granted for Excusable Delay shall have no effect on a Claim by DEVELOPER and CONTRACTOR, for damage from the same delay for interruption, hindrance, or disruption.

## 57     DEVELOPER and CONTRACTOR Claims for Delay

A.      The Contract Price shall be adjusted for any increase in the cost of performance of this contract caused by suspension, delay or interruption of the Work due to: (1) An error or omission in the Contract Documents, (2) A decision of OWNER to change the Scope of the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR,, (3) A decision of OWNER to suspend the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR,, (4) A failure by OWNER or OWNER'S Representative to comply with the construction Schedule, (5) Any act or neglect of OWNER or agent of OWNER or any Separate DEVELOPER and CONTRACTOR, (6) Failure of OWNER to yield control of the Job Site to DEVELOPER and CONTRACTOR,, or (7) Failure of OWNER to make payments when due under the terms of this agreement.

B.      Within 3 Working Days after receipt of a notice of Claim for compensation for suspension, delay, or interruption, OWNER shall: (1) Respond with a resolution, remedy, or direction to alleviate the delay, (2) Respond with a notice rejecting the Claim for delay, or (3) Respond with a draft Change Order accepting the Claim for delay. If the issue is not then resolved, DEVELOPER and CONTRACTOR, may request a Change Order.

C.      No change in the Contract Time for completion or the Contract Price shall become part of the Contract Documents without a Change Order.

D.      Compensation to DEVELOPER and CONTRACTOR, for suspension, delay, or interruption of Work shall include direct overhead (Job Site) expense, a proportionate share of unabsorbed indirect (home office) overhead expense, lost efficiency and lost profit taken as 15 percent of total compensable expenses. Direct overhead costs shall include, without limitation: (1) Labor (with taxes, insurance and fringe benefits) for the idle work force, (2) The fair rental cost of idle equipment (such as vehicles,

construction tools and equipment), (3) Facilities (such as temporary structures, water, power, phone, and toilets), (4) The additional cost of Bonds and insurance, (5) Similar direct overhead costs of Subcontractors to whom DEVELOPER and CONTRACTOR, is liable for damages that result from the delay, and (6) Demobilization and re-mobilization costs. Unabsorbed indirect overhead costs shall include, without limitation, the proportionate share of office rent, office supplies, office utilities, office equipment, advertising, professional fees, management salaries, technical services, estimating, selling, accounting, bookkeeping and clerical expense, business licenses, taxes (except income taxes), and insurance.

## 58    Liquidated Damages

A.    Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the Contract Time are considered reasonable by OWNER and DEVELOPER and DEVELOPER and CONTRACTOR, any neglect, refusal or failure of DEVELOPER and CONTRACTOR to reach Substantial Completion within the Contract Time, plus approved extensions of that time, will result in damage to OWNER impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and CONTRACTOR or which may become due CONTRACTOR the sum of $125.00 as liquidated damages for each Calendar Day that Substantial Completion is delayed beyond the Contract Time, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

B.    Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the time for Completion are considered reasonable by OWNER and CONTRACTOR. Any neglect, refusal or failure of DEVELOPER and CONTRACTOR, to reach Completion within the time provided in this contract, plus approved extensions of that time, will result in damage in the form of inconvenience, loss of opportunities, and higher Inspection, Superintendence, and administrative costs to OWNER. These costs are impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and DEVELOPER and CONTRACTOR or which may become due DEVELOPER and CONTRACTOR, the sum of $125.00 as liquidated damages for each Calendar Day that Completion is delayed beyond the time provided in this contract, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

C.    Achieving Substantial Completion sooner than the Contract Time, plus approved extensions of that time, shall earn additional compensation to DEVELOPER and CONTRACTOR of $125.00 for each Calendar Day that Substantial Completion is achieved prior to the Contract Time, plus approved extensions of that time.

D.    DEVELOPER and CONTRACTOR, shall not be charged liquidated damages for any failure, neglect or refusal to complete the Work on Schedule to the extent that the proximate cause of the delay was: (1) Strike, boycott, embargo, terrorism, armed rebellion, quarantine, delay in delivery of FF&E, or other obstructive action by employees, franchise owner, franchisor or labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or by order of government authority, (2) Fire, flood, earthquake, tornado, tidal wave, lightning, casualty loss, epidemic, rain, snow or unusually adverse weather, (3) Any delay of Subcontractors or vendors resulting from items listed in sections 1 or 2 above, or (4) Any act or omission of OWNER or anyone acting on behalf of OWNER.

E.    Except as provided elsewhere in this contract, liquidated damages are the exclusive damage remedy for OWNER for any failure of DEVELOPER and CONTRACTOR to complete Work per Schedule. No damages of any other type or description shall be awarded OWNER for failure of DEVELOPER and

CONTRACTOR to comply with the construction Schedule.

## 59    Consequential Damages

A.    DEVELOPER and CONTRACTOR, and OWNER waive all Claims for consequential damages against each other, their respective officers, directors, partners, employees, agents, consultants and Subcontractors, arising out of or relating to this contract or the termination of this contract, except those consequential damages covered by insurance or specifically provided elsewhere in this agreement.

## 60    Right to Stop Work for Non-Payment

A.    If DEVELOPER and CONTRACTOR, is not paid any amount not in dispute within 7 Calendar Days after the date due, CONTRACTOR shall post on the Job Site and deliver to OWNER and all Subcontractors a notice of intention to stop the Work if payments then due are not received in full within 10 Calendar Days. Thereafter, CONTRACTOR may suspend the Work until delinquent payments have been received, pursuant to Tennessee Civil Code § 3260.2.

B.    Neither DEVELOPER and CONTRACTOR, nor Surety of CONTRACTOR, nor any Subcontractor of DEVELOPER and CONTRACTOR shall be liable for delay or damage that OWNER may suffer as a result of suspension of the Work for failure to receive payments due under this agreement so long as: (1) Work was suspended by DEVELOPER and CONTRACTOR in compliance with the terms of this contract and with applicable Law, and (2) There is no good faith dispute that payment is due DEVELOPER and CONTRACTOR,  at the time of suspension. A good faith dispute exists if OWNER provides: (1) A list of specific reasons for nonpayment, including labor, materials, or equipment not in compliance with the Contract Documents, and (2) CONTRACTOR is afforded a reasonable opportunity to correct the Defects cited or issue a credit compensating OWNER for Defects that cannot be cured promptly.

## 61    Early Partial Occupancy

A.    Without prior approval of DEVELOPER and CONTRACTOR, OWNER shall not occupy or use any portion of the Work until Substantial Completion of the Project. If OWNER occupies or uses any portion of the Work before Substantial Completion of the Project and without prior approval of DEVELOPER and CONTRACTOR, the portion or portions used or occupied shall be considered complete, finished, accepted and the responsibility of OWNER.

B.    No Partial Use or occupancy of the Work by OWNER shall commence prior to Substantial Completion without a Change Order confirming the responsibility of OWNER for maintenance, utilities, operation of equipment, and security during early Partial Use or occupancy.

C.    If any portion of the Project is used or occupied by OWNER prior to Substantial Completion and if the Project is not completed within the Contract Time, liability of DEVELOPER and CONTRACTOR, for delayed completion shall be reduced by the proportion of the Project used or occupied by OWNER and for the time used or occupied by OWNER prior to Substantial Completion.

## 61 Substantial Completion

A.    When, in the opinion of DEVELOPER and CONTRACTOR, the Work is Substantially Complete, DEVELOPER and CONTRACTOR shall prepare a preliminary Punch List of Work remaining to be done and deliver that Punch List to OWNER'S Representative with a request for evaluation of Substantial Completion. If, in the opinion of OWNER'S Representative, items on the preliminary Punch List are consistent with Substantial Completion, OWNER'S Representative shall conduct an Inspection of the Work to evaluate compliance with the Contract Documents.

B. before OWNER takes possession or occupancy of the Project, DEVELOPER and CONTRACTOR,

shall receive a comprehensive Punch List of discrepancies to be corrected or Work to be finished by CONTRACTOR and a date for completing this Work. DEVELOPER and CONTRACTOR, shall complete and correct items on the Punch List by the designated date.

C. the Punch List given to DEVELOPER and CONTRACTOR, is a complete and final list of Defective or incomplete Work on the Project. OWNER shall be deemed to have accepted Work not on the Punch List. Nothing in this paragraph shall be interpreted as relieving DEVELOPER and CONTRACTOR, of the obligation to meet warranty and call-back obligations.

D.      DEVELOPER and CONTRACTOR, shall annotate the Punch List with: (1) A detailed breakdown of the Work required to complete or correct each item, (2) The Subcontractor or trade responsible for the Work, and (3) The dates Work will commence and be finished on each item. No annotation is required for any item on the Punch List which is beyond the control of DEVELOPER and CONTRACTOR. Failure of CONTRACTOR to furnish a detailed completion Schedule for items on the Punch List shall constitute grounds for withdrawing acknowledgment of Substantial Completion.

E.      OWNER'S Representative will prepare a certificate of Substantial Completion for signature by OWNER and DEVELOPER and CONTRACTOR, when the Project or a specific portion of the Project is ready for occupancy. Except as otherwise provided in the Contract Documents, signing of the certificate of completion shall: (1) Transfer to OWNER responsibility for maintenance, safety, utility expense, controlling access at the site, and (2) Begin running of any warranty or call-back period on the Project.

H. after Substantial Completion, DEVELOPER and CONTRACTOR, shall remain responsible for: (1) Damage caused by DEVELOPER and CONTRACTOR, while completing the Work, and (2) Safety of crews when completing the Work.

**62     Delivery of Notices**

A.      Any written notice required by this contract can be: (1) Delivered by hand at the last known address of the addressee, or (2) Delivered by hand to the addressee or representative of the addressee, wherever found. Notice is effective upon delivery.

B.      Any written notice required by this contract can be: (1) Delivered by enclosing in a stamped envelope addressed to the last known address of the intended recipient and either deposited in a United States Postal Service mailbox or given to a USPS employee, or (2) Consigned to a commercial courier service and addressed to the last known address of the intended recipient. Notice is effective upon delivery if proof of delivery is provided; where no proof of delivery is available, notice is effective 5 Calendar Days after mailing or consignment to a courier service.

**Signatures**

The signatures that follow constitute confirmation by those signing that they have examined and understand the Contract Documents and agree to be bound by the terms of these documents.

DEVELOPER and CONTRACTOR may not begin Work before receiving from OWNER a written notice to proceed. Any Work performed by DEVELOPER and CONTRACTOR before receipt of the notice to proceed shall be done at the risk of DEVELOPER and CONTRACTOR and without obligation of OWNER.

This agreement is entered as of the date written below.

**OWNER Name:** CHC-81 STREET WESTMINSTER CO LLC ,

**OWNER**

_____          08 / 14 / 17
(Signature)                                  (Date)

Pun For Li    Manager
(Printed Name and Title)

**DEVELOPER Name:** American Development Partners ,

_____          8/14/17
(Signature)                                  (Date)

Manny Butera Developer
(Printed Name and Title)

Page 24

**Glossary of Terms**

**Beneficial Occupancy** refers to OWNER'S use of the project premises after Substantial Completion but prior to Final Completion. Beneficial Occupancy may occur when the project or some portion is sufficiently complete and systems operational such that the OWNER could, after obtaining necessary approvals and certificates, occupy and utilize the space for its intended purpose. The time limit for warranties applicable to that portion of the Work begin on the date the OWNER begins Beneficial Occupancy, unless otherwise specified in this Agreement.

**Bond** means the security offered by a licensed surety company which may be used to satisfy a claim of failure to perform obligations undertaken in this Agreement.

**Calendar Day** means any day shown on the calendar beginning at midnight and ending at midnight the following day. Contrast the term Work Day which excludes Saturdays, Sundays and state-recognized holidays.

**Certification of Payment** is acknowledgment by someone not a party to this Agreement that CONTRACTOR is entitled to payment for work completed.

**Change Order** is a written modification of the Contract Price (including all claims for direct, indirect and consequential damages and costs of delay), Time for Completion and Scope of Work under this Agreement. A Change Order, once signed by all parties, is incorporated into and becomes a part of the Contract Documents.

**Claim** means a demand or assertion by one of the parties to this Agreement seeking, as a matter of right, modification, adjustment or interpretation of contract terms, payment of money, extension of time or other relief.

**Code Requirements** means all laws, statutes, regulations, building codes, ordinances, rules, and lawful orders of all public authorities having jurisdiction over OWNER, CONTRACTOR, any Subcontractor, the Project, the Job Site, the Work, or the prosecution of the Work.

**Contract Completion Date** means the day by which the Work must be substantially complete.

**Contract Date** is the day on which the contract becomes binding between CONTRACTOR and OWNER.

**Contract Documents** are this Agreement and all documents incorporated by reference into this Agreement.

**Contract Price** is the amount which will become due in exchange for work performed under this Agreement. Contract Price includes allowances for purchased materials and equipment and may be modified by a Change Order or contract modification. The Contract Price may be paid in one or more installments, including an Initial Payment at or before the start of work, Progress Payments as work is completed, and a Final Payment on final acceptance of the work. Payment Period is the time elapsed

Between applications for progress payments or prior to the first application for progress payment.

**Contract Schedule** is a graphical representation of a practical plan to complete Work within the Contract Time.

**Contract Time** means the period between Date of Commencement and the date of Substantial Completion.

**CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the Work under the terms of this Agreement.

**Defective Work** means construction done under this Agreement that is unsatisfactory, faulty, omitted, incomplete, deficient, or does not conform to the requirements of the Contract Documents, directives of OWNER'S Representative, or the requirements of an inspection, reference standard, test, or approval specified in the Contract Documents.

**Design Professional** means the person, organization or authorized representative who is responsible to the OWNER for design of the Project through preparation of Drawings and Specifications. The term Design Professional may refer to an architect, designer, engineer or landscape architect.

**Drawings** (also called plans or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Drawings include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed Project. A group of drawings adequate to complete construction of the Project may be referred to as a plan set. Drawings can be either paper or electronic media.

**Emergency** means an unforeseen event, combination of circumstances, or a resulting state that poses imminent danger to health, life or property.

**Excusable Delay** means any circumstance which postpones completion of the Work and for which CONTRACTOR is entitled to an adjustment of the Contract Time but not an adjustment to the Contract Price. Contrast Inexcusable Delay which entitles CONTRACTOR to neither an adjustment of the Contract Price nor an adjustment in the Contract Time.

**Extra Work** means any change, interpretation, clarification or correction in the Contract Documents or in applicable law, ordinance or regulation which would increase or decrease the quantity of work, delay, suspend or interfere with the work, require an addition to or omission from the work, change the character, quality or nature of any part of the work or material used in the work, change levels, lines, positions or dimensions of any part of the work, require demolition or removal of any work completed under this Agreement, extend or amend the normal work day, alter the construction schedule or require completion of any part of the work at a time other than provided by this Contract when originally made.

**Final Completion** is the date of OWNER'S acceptance of the Work as fully performed per the

Contract Documents.

**Furnish** means to supply and deliver to the job site.

**General CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking execution of the Work under terms of a Prime Contract.

**Hazardous Materials** means radioactive materials, asbestos, polychlorinated biphenyls, petroleum, crude oil, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, and toxic substances which are restricted, prohibited, or regulated by any agency of government in the manufacture, use, maintenance, storage, Ownership or handling.

**Indemnification** Financial compensation intended to restore someone to their condition before a loss or damage.

**Inspection** is any review of the Project, including a visual review of the Work completed to ascertain compliance with Contract Documents, building codes and construction standards.

**Inspector** is anyone authorized by government or the Design Professional to conduct inspections of contract performance and materials supplied for the Work.

**Install** means to secure in position in compliance with the Contract Documents and includes unloading materials, supplying all necessary equipment and rigs to do the work and performing functional tests which demonstrate fitness for the intended purpose.

**Job Site** is the address or location of the Project.

**Law** means federal or state statutes, municipal ordinances, building codes, regulations adopted pursuant to statute, executive orders, official interpretations, and other rules and directives issued by government.

**Material Supplier** means any manufacturer, fabricator, distributor, material man or vendor who provides material for the Project but does not provide on-site labor.

**Modification** is a written amendment to the Contract signed by both parties.

**OWNER'S Representative** means the person or firm authorized to act and make administrative decisions on behalf of the OWNER during construction. Any notice required to be delivered to the OWNER may be delivered to the OWNER'S Representative. The scope of authority of the OWNER'S Representative is defined in this contract. CONTRACTOR cannot rely on any decision or instruction by OWNER'S Representative that is beyond the representative's defined scope of his authority. Nothing in this contract prevents OWNER from issuing a notice or instructions directly to the CONTRACTOR. The OWNER may change the OWNER'S Representative from time to time and may, if OWNER'S Representative is absent, disabled or otherwise temporarily unavailable, appoint an interim OWNER'S Representative.

**Party (to this contract)** means a person or business organization which has an obligation to perform under the terms of this contract.

**Plans** (also called drawings or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Plans include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed project. A group of plans adequate to complete construction of the Project may be referred to as a plan set. Plans can be either paper or electronic media.

**Prime Contract** is a written agreement between CONTRACTOR and OWNER which binds CONTRACTOR to furnish labor, equipment, or materials or perform certain work for a price to be paid by OWNER.

**Project** means Work to be completed in accord with the Contract Documents. Work at the Job Site may include other projects to be completed by the OWNER or other CONTRACTORs working under other agreements.

**Provide** means furnish and install and includes connecting, testing, and placing in service for the intended use.

**Punch List** is a comprehensive list of incomplete, defective or incorrect Work yet to be completed or which does not comply with Contract Documents. A Punch List may be prepared by the CONTRACTOR, Subcontractor, Design Professional or OWNER. An initial Punch List will be prepared before application for Substantial Completion. A Close-out Punch List will be prepared before Final Completion.

**Requirements** means, in addition to obligations, responsibilities and limitations set out in the Contract Documents, the obligations, responsibilities and limitations imposed by law, rules, orders, ordinances, regulations, statutes, codes and executive orders of governmental authorities or fire rating bureaus.

**Retainage** is a portion of each progress payment temporarily held back or retained by the OWNER. Accumulated retainage is released to CONTRACTOR on satisfactory completion of the work.

**Sample** means a physical example of material; equipment or workmanship intended to be representative of some portion of the Work. When approved, samples establish standards for completion of similar work on the Project.

**Schedule of Values** means the detailed breakdown of cost of materials, equipment and labor necessary to complete the Project as described in the Contract Documents.

**Scope of Work** means the Work as defined by the Contract Documents.

**Separate CONTRACTOR** means a person or firm working under a different contract but on the same site

Page 28

and at the same time as work will be done under this contract.

**Shop Drawings** are diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data which are prepared by the CONTRACTOR or a Subcontractor, manufacturer, supplier or distributor, and which illustrate or describe some portion of the Work to be completed in compliance with the Contract Documents. Once submitted to the approval authority and approved, Shop Drawings establish standards for completion of work on Project.

**Similar** means having a like kind, quality and characteristics. Similar is not to be construed as meaning identical or by the same manufacturer.

**Specifications** (also called specs) are the part of the Contract Documents which provide descriptions of materials, equipment, construction systems, technique and workmanship to be used on the Project. Specifications are both instructions to be followed by the CONTRACTOR and Subcontractors and a reference for the Building Official to evaluate code compliance.

**Subcontract** is a written agreement between a specialty CONTRACTOR and General CONTRACTOR. Terms of the subcontract require the specialty CONTRACTOR to complete some portion of the work General CONTRACTOR is obligated to perform under another agreement, usually with the OWNER.

**Subcontractor** is any person or business entity under contract to a general CONTRACTOR to perform some portion of the work general CONTRACTOR is obligated to complete under a contract with the OWNER. Subcontractor is an independent CONTRACTOR performing services for another CONTRACTOR rather than for the OWNER. A person or organization providing supplies or materials for the Project but no job site labor is not a Subcontractor.

**Submittals** demonstrate the way by which the CONTRACTOR proposes to conform to the requirements of the Contract Documents. Submittals are shop drawings (diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data) required by the Contract Documents which are prepared for the CONTRACTOR to depict some portion of the Work. Submittals are delivered to the OWNER for approval or disapproval by the OWNER prior to purchase or installation.

**Substantial Completion** means the Project or a designated portion of the Project is nearly in compliance with the Contract Documents and is sufficiently complete to be considered fully operational in all its components and is fit for the intended use. Substantial Completion is reached when a limited number of non-conforming or defective items on a Punch List remain to be completed. Normally, a Project or portion of a Project cannot be considered Substantially Complete until (1) all utilities and services are connected and working, (2) all equipment is installed and in acceptable working condition, (3) additional activity by the CONTRACTOR to correct items on the Punch List will not prevent or disrupt use of the facility, and, (4) a certificate of occupancy has been issued by the appropriate authority.

**Sub-subcontractor** is any person or business entity under contract to a subcontractor or any lower tier subcontractor to perform some portion of the work subcontractor is obligated to complete under a contract with the prime CONTRACTOR. Sub-subcontractors are independent CONTRACTORs

performing services for another CONTRACTOR rather than for the prime CONTRACTOR. A person or organization providing supplies or materials for the Project but no job site labor is not a Sub-subcontractor.

**Superintendent** is the representative of the CONTRACTOR at the job site who is authorized to receive instructions from the OWNER or OWNER'S Representative and who is authorized to direct the performance of work on behalf of the CONTRACTOR.

**Surety** means any qualified individual, firm or corporation other than the CONTRACTOR, which executes a bond to insure its acceptable performance of the contract.

**Tier** refers to the contractual level of a person or business organization doing work on the Project. A first-tier subcontractor has a contract with the general CONTRACTOR but not the OWNER. A second-tier subcontractor has a contract with another subcontractor but not with the general CONTRACTOR or the OWNER.

**Work** means all labor, material, equipment, tools, transportation, permanent and temporary utilities, connections, provisions for safety and management services required to complete the Project in compliance with the Contract Documents. Work may constitute the whole or a part of the Project. Work is to be performed in a safe, expeditious, orderly and professional manner in keeping with current standards of the industry. Work includes everything that is or should be evident to a skilled construction professional after careful examination of the Contract Documents and the Job Site.

**Work Day** means any day, excluding Saturdays, Sundays and state-recognized holidays, shown on the calendar beginning at midnight and ending at midnight the following day.

**EXHIBIT "B"**



**American Development Partners Development Contract**

This agreement is made on the date written above our signatures between
DEVELOPER Name: **REDSTONE LLC DBA American Development Partners** (DEVELOPER) and
OWNER Name: CD-1709 MIDLAND TRAIL SHELBYVILLE KY LLC (OWNER).

**DEVELOPER**
DEVELOPER Name: **REDSTONE LLC DBA American Development Partners**
Address: 6004 Cody Cove
City: Spring Hill, State: TN Zip: 37174
Work Phone Number: (615) 818-6982
Email Address: manny@americandevelopmentpartners.com
DEVELOPER Name: **American Development Partners** will be referred to as DEVELOPER throughout this agreement.

**CONTRACTOR**
**CONTRACTOR INFORMATION:**
Address: Phone Number: (615) 330-0629
Email Address: llynp@built-more.com
License Number: 00057609

CONTRACTOR Name: Built-more LLC will be referred to as CONTRACTOR throughout this agreement.

**OWNER**
OWNER Name: CD-1709 MIDLAND TRAIL SHELBYVILLE KY LLC, 14103 Chinkapin Drive, Rockville MD
 20850 ATTENTION – Mr. Pun For Li
OWNER Name: CD-1709 MIDLAND TRAIL SHELBYVILLE KY LLC will be referred to as OWNER throughout this agreement.


**1    Project Description**

   A.    For a price identified below, DEVELOPER agrees to complete a new commercial building (identified as the Project in this agreement) for OWNER.

   B.    For the Contract Price identified below, DEVELOPER agrees to complete a new commercial building consisting of approximately 2000 sq. ft. +/- square feet of air-conditioned space and 800 square feet of a connected outdoor patio used as a Captain D's Restaurant (identified as the "Project" in this Agreement), for TENANT's use and OWNERS ownership on the Land in accordance with the plans

C.   The term "Total Build Cost" shall mean the aggregate of (1) the Total Project Cost, (2) the Contract Price, (3) the Contingencies of the Project, (4) the cost of the Work and the Extra Work, (5) other costs, charges and fees under this Agreement (collectively, the "Other Agreements") (the Other Agreements shall include but not be limited to any contractor or subcontractor agreements and the cost of all materials and labor).

D.   The term "Budget" shall mean the Total Build Cost less the cost to acquire the Land.

E.   The term "Property" shall mean the Land and all improvements thereon including but not limited to the Project.

F.   Contract Price / OWNERS Cost Cap / Developer

G.    DEVELOPER shall earn in addition to any other charges specified in this agreement, OWNER agrees to pay a 10% development fee for completing the Work described as the Project. DEVELOPER fee is paid off total project cost that includes land / building, construction and all numbers that are used to factor total project cost.

H.   Notwithstanding any contrary provision in this Agreement or otherwise, OWNERS maximum monetary liability under this Agreement and for the Project towards all amounts, including but not limited to the Total Build Cost, shall not exceed, and shall be capped at, the sum of: (**$2,049,763.10) said amount referred to as the (OWNERS GROSS MAX**).  Notwithstanding any contrary provision in this Agreement or otherwise, DEVELOPER shall be solely responsible under this Agreement and to OWNER, for any projects overruns that are above the gross max number provided to OWNER.

## 2   Contract Price

I.   DEVELOPER shall earn and OWNER agrees to pay a development fee of 10% of total project cost in addition to any other charges specified in this agreement. In addition to any other charges specified in this agreement, OWNER agrees to pay DEVELOPER **$186,342.10 development fee for** completing the Work described as the Project.

## 3 Contingency Budget

II.   It is identified and agreed to by OWNER that DEVELOPER has an estimated budget of **5 %** of project cost for "contingencies". CONTRACTOR will submit to DEVELOPER a "change order" for approval by DEVELOPER and OWNER any proposed change order. Contingencies are limited to change orders due to error or omission by a licensed architect after plans were received and reviewed by contractor, all state or federal codes changes that were mandated after contractor received stamped plans and or building permit.

## 4 Scheduled Start of Construction

A.    Work under this agreement will begin within 5 Calendar Days after the following contingencies have been met.

1.    Complete Plans and Specifications have been approved and initialed by both OWNER, DEVELOPER and CONTRACTOR.

2.    OWNER has shown proof of funds or other financing acceptable to DEVELOPER.

3.    DEVELOPER has obtained all architectural approvals from any franchise and or corporate authorities.

4.     OWNER has furnished DEVELOPER with evidence of Ownership of the property satisfactory to DEVELOPER.

5.     All appropriate building permits have been issued.

6.     DEVELOPER has received written notice from the lien holder or the title company insuring lien holder's security interest in the property that all documents required to be recorded prior to the commencement of construction have been properly recorded.

7.     The contract has been signed by OWNER, DEVELOPER and CONTRACTOR.

## 5 Scheduled Completion of Construction

A.     Work under this agreement will be Substantially Completed within 125 Calendar Days after the date construction begins (building permit is issued) however it is understood and will go without penalty for acts that our outside of the control of the DEVELOPER and CONTRACTOR.

## 6 Documents Incorporated

A.     The Glossary of Terms which follows our signatures is incorporated into this contract as though included in full as part of this agreement.

B.     This agreement incorporates by reference certain documents which define and describe the Work to be done. The following documents are incorporated as though included in full as part of this agreement.

## 7 Ownership of Plans

A.     All Plans, Drawings, Specifications and other documents prepared by or for OWNER for use under this agreement will be paid for and are the property of DEVELOPER and remain the property of DEVELOPER. Plans, Drawings and Specifications, whether in paper or electronic form, prepared for use in construction under this agreement shall not be modified or used on any other project without written consent of DEVELOPER. DEVELOPER shall hold harmless and Indemnify OWNER from and against all Claims, actions, suits, costs, damages, losses, expenses and attorney's fees arising out of use of the Project Plans, Drawings, or Specifications for any purpose other than construction to be completed under this agreement. DEVELOPER, CONTRACTOR and Subcontractors are granted a limited license to use and reproduce applicable portions of the Plans, Specifications and Drawings as required for construction under this agreement. All copies made under this license shall bear a notice showing OWNER as copyright holder. DEVELOPER may retain one record set of the Plans, Drawings and Specifications. All other sets shall be accounted for by DEVELOPER and CONTRACTOR and returned to OWNER. Submittal or distribution of Project Plans, Drawings or Specifications to meet Official Regulatory Requirements is not to be construed as publication in derogation of the rights of OWNER.

## 8 Plans on Site

A.     DEVELOPER and CONTRACTOR will keep a full set of Project Plans available on-site to authorized personnel during the period of construction.

## 9 Documents Supplied to CONTRACTOR

A.     OWNER will furnish to DEVELOPER and CONTRACTOR at no cost (this is part of total project cost)

1.     A full set of Plans and Specifications for all trades in electronic format.

2.     DEVELOPER and CONTRACTOR will distribute Contract Documents as required by Subcontractors.

## 10 Scope of Work

A.    DEVELOPER and CONTRACTOR shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Project in compliance with the Contract Documents.

B.    Develop and CONTRACTOR are responsible for coordination of the various trades and deliveries of equipment, materials and supplies to minimize interference which could delay the Work or pose a hazard to life or property. DEVELOPER shall be responsible for allocation of tasks between trades and will be the final authority on location and routing of equipment and storage of materials on the Job Site.

C.    DEVELOPER will ensure that Subcontractors, their agents, and employees adhere to these Contract Documents. DEVELOPER and CONTRACTOR accepts responsibility for all Work performed under this contract, including Work performed by employees of Subcontractors.

D.    CONTRACTOR shall provide on the Job Site during the period of construction a temporary chemical toilet or water closet which shall be serviced no less than weekly. Upon completion of the Project, CONTRACTOR will remove temporary toilet facilities from the site.

E.    DEVELOPER and CONTRACTOR shall provide temporary elevators and lifts as may be required by construction personnel, including Subcontractors, Material Suppliers, Inspectors, and Representatives of OWNER. Elevators and lifts will comply with all federal, state and local Laws and ordinances in effect at the Job Site. Upon completion of the Project, DEVELOPER and CONTRACTOR will dismantle and remove temporary elevators and lifts.

F.    DEVELOPER and CONTRACTOR shall develop and present to OWNER for approval (which shall not be withheld unreasonably), a site logistics plan drawn to scale, showing proposed secure and fenced areas, locations and types of temporary barricades, material storage and staging areas, property entrances used for material deliveries, and special material or equipment storage Requirements. This plan will include a description and proposed location for any temporary office, storage trailer, sanitary facilities, and parking for construction personnel.

## 11 Submittals

A.    Architectural Drawings will indicate in detail all parts of the building components, Installation details, and coordination with Work of other trades or other CONTRACTORS. Architectural Drawings for structural steel, timbers and pre-cast concrete will include engineering calculations, fabrication details and erection Drawings that show physical characteristics, dimensions, shapes, inserts, attaching points and methods, and other information required for manufacture, assembly and erection, in compliance with the Contract Documents.

B.    Approval by OWNER'S Representative does not relieve DEVELOPER and CONTRACTOR of responsibility for compliance with the Contract Documents except as follows: If a Submittal does not comply with Contract Documents, DEVELOPER and CONTRACTOR will attach to the Submittal, prior to approval, a written request for variation showing the change in Contract Price and Contract Time, if any, that will result from the variation. If OWNER'S Representative approves a Submittal which includes a written request for a variation and which requires a change in the Contract Price or Contract Time, OWNER'S Representative will issue a contract Modification confirming the change. If OWNER'S Representative approves a Submittal with a written request for a minor variation which does not require a change in the Contract Price or Contract Time, no contract Modification is needed. A minor variation is anything which does not materially alter the quality or performance of the Work. Approved variations are subject to all terms of this agreement and without prejudice to any rights granted to OWNER'S Representative under a Surety Bond.

C.     DEVELOPER and CONTRACTOR is entitled to expect that corrections to Submittals by OWNER'S Representative be clearly noted and easily understood so that prompt resubmission is possible without further instructions from OWNER'S Representative.

D.     OWNER'S Representative will review Submittals and notify DEVELOPER and CONTRACTOR of approval or rejection within **2** Calendar Days of receipt.

E.     OWNER'S Representative will review Submittals of DEVELOPER and CONTRACTOR for conformance with Requirements of the Contract Documents and will approve or take other appropriate action upon those Submittals.  OWNER'S Representative will advise DEVELOPER and CONTRACTOR of any errors or omissions which OWNER'S Representative may detect during this review. Submittals approved by OWNER'S Representative become additions to the Contract Documents and can be relied on by DEVELOPER and CONTRACTOR in completing the Work. Nothing in any approved Submittal shall be interpreted to limit DEVELOPER and CONTRACTOR in selection of the means, method, technique, sequence or procedure of construction.

## 12 Record Documents

A.     DEVELOPER and CONTRACTOR will note on a record set of Project Drawings any Work done that is not shown on the original Plans and not described in other Contract Documents. The record set of Project documents will be delivered to OWNER at the same time as final payment is requested.

## 13 Job Site Safety

A.     DEVELOPER and CONTRACTOR will always take all reasonable precautions for the safety of employees and the public at the Job Site and will comply with all applicable safety Laws and regulations of federal, state, and local authorities (including building codes) and safety Requirements of OWNER.

## 14     Hazardous Materials Used in Construction

A.     Except as provided elsewhere in the Contract Documents, CONTRACTOR is responsible for all Hazardous Materials brought to the Job Site by CONTRACTOR or Subcontractors.

## 15     Hazardous Materials Discovered on Site

A.     Except as provided elsewhere in the Contract Documents, OWNER is responsible for all Hazardous Materials discovered on the Job Site so long as those materials were not brought on the Job Site by CONTRACTOR, Subcontractors, or anyone directly or indirectly employed by them. Nothing in this paragraph shall relieve DEVELOPER and CONTRACTOR from liability for negligence in handling or removing hazardous materials as required under the terms of this agreement.

B.     Except as provided in the Contract Documents or as agreed by mutual consent, DEVELOPER and CONTRACTOR shall not be required to perform Work relating to asbestos, polychlorinated biphenyl (PCB), radioactive material, toxic mold or any other Hazardous Material.

C.     OWNER shall defend, Indemnify and hold harmless DEVELOPER  and CONTRACTOR from and against all loss, liability, claims, costs, damage and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from the discovery or existence of Hazardous Material on the Job Site, whether or not identified in the Contract Documents, provided such loss, liability, costs, damage and economic detriment is not the result of any negligent act or omissions of DEVELOPER and CONTRACTOR, Subcontractors or anyone directly or indirectly employed by them. Indemnification by OWNER under this paragraph shall apply even if OWNER is in no way responsible for the loss to DEVELOPER and CONTRACTOR.

## 16     Compliance with Law

A.     CONTRACTOR and OWNER mutually commit to use reasonable care to meet the Requirements of state, federal and local Law when discharging their responsibilities under this agreement.

B.     If DEVELOPER and CONTRACTOR observe that Drawings, Specifications, or other Contract Documents do not comply with applicable Law, DEVELOPER and CONTRACTOR shall promptly notify OWNER or OWNER'S Representative of the variance. Any changes made to the Contract Documents because of this notice shall be handled in the form of a Change Order under this agreement.

C.     DEVELOPER and CONTRACTOR shall bear none of the cost of correcting Work completed per Contract Documents but not in compliance with Law if CONTRACTOR did not know that Contract Documents or instructions from OWNER or OWNER'S Representative did not comply with the Law.

D.     If Law enacted after the Contract Date changes the Scope of Work under this agreement, DEVELOPER and CONTRACTOR and OWNER will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

## 17     Layout

A.     DEVELOPER and CONTRACTOR shall be responsible for alignment and elevation of the Work and will set grade stakes, batter boards, and other working points, lines and elevations required to complete the Project as described in the Contract Documents.

## 18     Permits and Fees

A.     DEVELOPER and CONTRACTOR shall secure all permits, licenses and renewals required by government authority to complete construction of the Project. If permits are required for Subcontracted Work, Subcontractors will secure those permits. OWNER may request a copy of each permit, license and renewal issued by government authority for the Project. All permits and fees are considered a fee that is enclosed in the project plan.

B.     Project budget will include the building permit fee, Plan check fee, and charges levied by government for testing, Inspection and Re-Inspection of the Project. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

C.     Except as provided elsewhere in this agreement, Project budget  will include all fees and application charges imposed by government authority, including, but not limited to, grading permit fees, drainage permit fees, traffic control charges, thoroughfare charges, impact fees, special district fees, sewer fees, water fees, planning fees, school fees, elevator permit fees, charges for temporary access or use of the public right of way, and charges for document processing, hearings, and certifications. Project budget will also pay all fees and application charges imposed by any association of property OWNERs having authority over the Job Site. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

D.     Except as provided elsewhere in this agreement, Project budget will include all application fees and connection charges imposed by utility companies or government agencies for bringing service to the Job Site, and for connecting gas, water, electricity, phone, cable, sewer, and drainage lines. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

E.     Except as provided elsewhere in this agreement, Project budget will include all approvals for the

Project that are required by government authority, including planning, easements, remediation, environmental, and zoning approvals. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## 19    Taxes

A.     If any federal, state or local tax rate increases or if any new federal, state or local tax is imposed, whether by Law, regulation, or interpretation, between the Contract Date and Substantial Completion, the Contract Price shall be increased by the additional tax levied on DEVELOPER and CONTRACTOR but only to the extent that the change in rate or new tax could not have been reasonably foreseen on the Contract Date. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## 20    Temporary Utilities

A.     DEVELOPER and CONTRACTOR have budgeted for all costs associated with use of temporary utilities on the Job Site during construction, including application fees, permits, engineering, and metered service for water, electric power, heating and cooling. Temporary utility systems provided by DEVELOPER CONTRACTOR shall be designed and installed to protect the public and construction personnel and conform to applicable Laws and Regulations.

B.     Utility services shall be re-listed in the name of future building occupant on the Calendar Day following Substantial Completion.

## 21    Permanent Utilities

A.     Project budget shall include Installation, connection, and modification of permanent electric, water, phone, cable, sewer and gas service as required for the completed Project. It will not include any deposits that will be paid by building occupant

## 22    Job Cleanup

A.     DEVELOPER and CONTRACTOR shall regularly remove from the Job Site and storage areas all surplus material, waste and debris resulting from the Work. Construction debris shall be removed to a legal refuse collection site with disposal or recycling fees included in Project budget. At completion of the Work, DEVELOPER and CONTRACTOR shall, in addition, remove from the Job Site all tools, equipment and scaffolding brought to the Job Site by DEVELOPER and CONTRACTOR or Subcontractors. At Substantial Completion, exposed finishes of windows, doors, floors, walls, ceilings, fixtures and trim shall be cleaned and free of grime, stains, over spray, dirt and dust.

B.     DEVELOPER and CONTRACTOR shall provide a trash disposal facility on the Job Site for use by construction personnel. The on-site trash facility provided by DEVELOPER and CONTRACTOR shall be of an appropriate size for the Project and placed in a location approved by OWNER. All construction debris shall either be placed in the trash facility provided by DEVELOPER and CONTRACTOR or hauled to a legal disposal site, at the discretion of DEVELOPER and CONTRACTOR. When any trash container provided by DEVELOPER and CONTRACTOR is full, contents shall be removed to a legal disposal facility at the expense of CONTRACTOR.

## 23    Project Sign

A.     DEVELOPER and CONTRACTOR shall have the right to fabricate and erect a Project sign bearing

the name of the Project, Prime CONTRACTOR, principal Subcontractors, designers, consultants, lead lender, a short Project description, and expected Completion Date. CONTRACTOR may erect directional signs at the Job Site with approval of OWNER with respect to size, style and location. Directional signs may bear the name of CONTRACTOR and a directional symbol. No other signs will be permitted except by permission of OWNER.

## 24   Project Superintendent

A.     DEVELOPER and CONTRACTOR shall employ a competent Superintendent and any necessary assistants or alternates that will be at the job site from start to finish of project. The Superintendent shall not be changed unless the Superintendent is discharged by DEVELOPER and CONTRACTOR. The Superintendent shall have authority to represent DEVELOPER and CONTRACTOR in all matters relating to the Project. Communications with the Superintendent shall have the same force and effect as direct communication with DEVELOPER and CONTRACTOR.

## 25   OWNER'S Responsibilities

A.     OWNER affirms that OWNER has the right to enter this agreement and has the right to contract for construction of the Project on the Job Site. OWNER shall pay all taxes and assessments due on the Job Site during the period of construction and shall take all reasonable actions required to protect marketable title to the Job Site. OWNER is responsible for all standard responsibilities that a property OWNER / landlord would have.

B.     OWNER will ensure that OWNER'S Representative responds in writing and with reasonable promptness to written requests from DEVELOPER and CONTRACTOR for (1) interpretation of the Plans or Specifications, or (2) other information relevant to completion of the Work. DEVELOPER and CONTRACTOR are authorized to rely on written responses from OWNER'S Representative.

C.     OWNER shall have sole responsibility to secure financing for the Project and shall pay all fees, charges, or other costs of such financing, including Inspection fees charged by any lender. The nonperformance of any lender shall not affect the obligation of OWNER to DEVELOPER and CONTRACTOR. OWNER hereby authorizes and directs any lender on the Project to furnish DEVELOPER and CONTRACTOR with full information on undisbursed proceeds when requested by DEVELOPER and CONTRACTOR. Proof of funds must be made available to DEVELOPER prior to project starting.

D.     OWNER will not interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by DEVELOPER and CONTRACTOR or Subcontractors except as provided under this agreement.

## 26   Construction by Others

A.     OWNER shall neither hire nor retain Separate DEVELOPER and CONTRACTOR, Subcontractors, employees or agents of OWNER to perform Work on the Job Site while Work is being done under this agreement by DEVELOPER and CONTRACTOR.

## 27   Authority of OWNER'S Representative

A.     OWNER'S Representative has authority to administer the contract, make construction decisions on behalf of OWNER, and is the primary authority on issues of compliance with the Drawings and Specifications, quality of workmanship, materials used, manner of performance, and rate of progress on the Project.

B.     After the Contract Date, OWNER shall make no change in the responsibilities or authority of OWNER'S Representative without consent of DEVELOPER and CONTRACTOR.

C.     OWNER'S Representative shall have the right to visit the Project and view Work in progress at any time. Any Defective Work found or suspected, either as the result of a site visit or otherwise, shall be reported promptly to DEVELOPER and CONTRACTOR. No actions taken or statements made during site visits shall relieve DEVELOPER and CONTRACTOR of obligations described in the Contract Documents.

D.     Communication between DEVELOPER and CONTRACTOR and OWNER shall be initiated through OWNER'S Representative unless direct communication is required by Law or Contract Documents. Unless otherwise authorized by DEVELOPER and CONTRACTOR, communications between OWNER'S Representative and Subcontractors or Material Suppliers shall be through DEVELOPER and CONTRACTOR.

E.     OWNER'S Representative shall have the authority to reject and order removed any portion of the Work which does not conform to the Contract Documents.

F.     OWNER'S Representative shall have authority to conduct Inspections about Beneficial Occupancy and to determine the dates of Substantial Completion.

## 28     Representations by DEVELOPER and CONTRACTOR

A.     DEVELOPER and CONTRACTOR shall use skill and attention to complete the Work in a timely manner consistent with the Contract Documents.

B.     OWNER has reported to DEVELOPER and CONTRACTOR all conditions known to OWNER which may not be apparent to CONTRACTOR and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the Job Site, unsuitable soil conditions, prior Defective Work of others, latent Defects in the Plans or Specifications, earlier attempts to do Similar or related Work, and obligations imposed by government.

## 29     Disclaimer by OWNER, Reliance by CONTRACTOR

A.     OWNER has provided DEVELOPER and CONTRACTOR with information on subsurface or concealed conditions at the Job Site. Except to the extent that DEVELOPER and CONTRACTOR knows this information to be false, DEVELOPER and CONTRACTOR is entitled to rely on the accuracy of this information.

## 30     Discrepancy between Plans and Field Conditions

A.     DEVELOPER and CONTRACTOR is not a Design Professional and have no obligation to find discrepancies between Job Site conditions and representations or Requirements in the Contract Documents.

B.     DEVELOPER and CONTRACTOR shall not be liable for discrepancies between representations or Requirements in the Contract Documents and conditions at the Job Site unless DEVELOPER and CONTRACTOR knowingly fails to report a discrepancy, in which case DEVELOPER and CONTRACTOR shall be liable for additional costs incurred because of failure to give prompt notification.

C.     If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information

provided by OWNER, DEVELOPER and CONTRACTOR shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall submit a Claim for a Change Order which covers the additional cost incurred because of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

## 31    Use of the Site

A.    OWNER has agreed to furnish all required rights to use the land upon which the Work is to be constructed. OWNER will identify any encumbrances or restrictions related to use of the land furnished and DEVELOPER and CONTRACTOR agrees to comply with those encumbrances or restrictions. If OWNER fails to furnish the land, rights of way, or easements when required, DEVELOPER and CONTRACTOR may make a Claim for extra compensation, additional time, or other relief.

B.    OWNER shall designate a construction entrance which DEVELOPER and CONTRACTOR shall use for all delivery of materials and equipment and which shall be used by all construction personnel.

## 32    Draw Schedule

OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:

**OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:**

**Momentum draw - 10% of the Budget within three (3) Business Days following the closing on land, building or execution of this development contract.  Momentum draw will include all developer's pursuit cost, project soft cost, developer fee and necessary local, state and or federal permitting fees to start the project.**

**Draw 1 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following the commencement of the Work.**

**Draw 2 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 1.**

**Draw 3 - 20% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 2.**

**Final Draw – 10% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request includes a copy of all executed lien releases and final payment affidavits (from CONTRACTOR, Subcontractors and others) being submitted to the clerk of court and recorded in the public records and a copy of the permanent Certificate of Occupancy issued for the Project.**

It is agreed by OWNER and or FUNDING SOURCE that all payments will be made to DEVELOPER. DEVELOPER will disburse funds in a timely manner. The afore mentioned budget that is supported by the GMAX clause is considered total project budget and the DEVELOPER will disburse funds per DEVELOPERS discretion.  No third-party title company will be granted permission to disburse funds to any company or individual on behalf of funding group. Each application for payment shall be submitted

on the form approved by OWNER.

**Discharge of Liens and Payment of Subcontractors**

1.      DEVELOPER and CONTRACTOR warrants that, upon payment, OWNER shall receive clear title to all Work identified in the application for payment, free and clear of all liens and Claims, including Claims of Subcontractors, employees or Material Suppliers. CONTRACTOR also agrees that this vesting of title in OWNER does not impose any obligation on OWNER or relieve CONTRACTOR from any obligation under this contract. CONTRACTOR shall remain responsible for damage to or loss of both the Work and stored materials until Completion.

2.      DEVELOPER and CONTRACTOR warrants and guarantees that no Work, materials, or equipment covered by a request for payment has been acquired by DEVELOPER and CONTRACTOR or by any other person performing the Work or furnishing materials or equipment for the Project subject to an agreement under which an interest therein, or an encumbrance thereon, has been retained by seller or otherwise imposed by CONTRACTOR.

3.      DEVELOPER and CONTRACTOR shall furnish, with each application for payment, executed waivers of liens from DEVELOPER and CONTRACTOR and each Subcontractor and Material Supplier to the Project in the amount of the application for payment. Waivers of liens shall be in a form satisfactory to OWNER, title insurer, and lenders.

4.      DEVELOPER shall disburse funds received from OWNER among DEVELOPER and CONTRACTOR, subcontractors and material suppliers in proportion to the work done and materials received for the project during the pay period.

## 35      Interest

A.      Payments due and not paid under the Contract Documents shall bear interest from the date payment is due at a monthly rate of **10** percent.

B.      Payment of interest does not abrogate or replace any other rights DEVELOPER and CONTRACTOR may have under this agreement.

## 36      Final Payment

A.      DEVELOPER and CONTRACTOR will apply for final payment and will notify OWNER'S Representative when the work has been completed. OWNER'S Representative will issue a certificate of completion on determination that the Project is complete and in compliance with the Contract Documents. When the certificate of completion is issued, the entire unpaid balance of the contract amount, including any retainage, is payable to DEVELOPER.

B.      Making of final payment constitutes waiver of all Claims by OWNER against DEVELOPER and CONTRACTOR except those Claims previously made in writing and delivered to DEVELOPER and CONTRACTOR and those obligations otherwise provided by this agreement or by operation of Law.

C.      The acceptance of final payment by CONTRACTOR constitutes a complete and unconditional waiver and release of any and all Claims by CONTRACTOR of whatever nature, and regardless of whether they are then known or unknown, and a complete and unconditional release of OWNER, and every person for whom OWNER is responsible, for any and all matters related to the contract or otherwise, except those Claims which have been made in writing and identified by CONTRACTOR as not having been settled at that time.

## 37   Changes in the Work

A.      Except as required by changes in the Prime Contract between OWNER and DEVELOPER, no

change to this contract (including Modification, clarification, interpretation or correction of the Plans or Specifications) shall be made without agreement and a written Change Order signed by DEVELOPER and CONTRACTOR and OWNER identifying the change, the cost of the change, and the effect on Project Schedule, if any.

B.     Any change in Plans, Specifications or Contract Documents necessary to conform to existing or future Laws, codes, ordinances or regulations shall be considered Extra Work.

C.     Changes in the Work required due to defects or inconsistencies in Plans or Specifications or other Contract Documents shall be considered Extra Work.

D.     The charge for Extra Work shall be the normal selling price DEVELOPER and CONTRACTOR charges for similar changes on other jobs.

E.     Failure of DEVELOPER and CONTRACTOR and OWNER to agree on the terms of a Change Order shall be resolved under the provisions of this agreement which cover Claims and disputes.

F.     Should DEVELOPER and CONTRACTOR and OWNER fail to agree promptly on the terms of a Change Order, DEVELOPER and CONTRACTOR shall be paid, pending resolution of the dispute, the portion of the cost of the change not in dispute, including the costs of time and materials required to execute the change. Payments required under this paragraph shall be made as the Work progresses, concurrently with progress payments.

### 38     Cooperation of the Parties

A.     OWNER and DEVELOPER acknowledge that open communication and cooperation will be required to complete the Project on time, as estimated, and in compliance with the Contract Documents. DEVELOPER and OWNER each agree to identify a representative who will be available to resolve minor problems, answer questions and reach mutually acceptable solutions. The individuals identified by DEVELOPER and OWNER shall try to reach informal agreement on problems as they arise but are under no obligation to do so.

B.     Both DEVELOPER and OWNER pledge that their relations will be conducted with courtesy and consideration in an environment characterized by mutual respect. OWNER pledges to respond promptly to requests by DEVELOPER for guidance, assistance and payments when due and agrees to extend to DEVELOPER the deference and latitude a dedicated professional deserves. CONTRACTOR pledges to commit the skill and resources required to complete the Project in a manner that complies with both the letter and spirit of the Contract Documents and enhances the reputation of DEVELOPER and for dependability and professionalism.

### 39     Warranty

DEVELOPER and CONTRACTOR warrant that the Work shall be free of Defects due to faulty material or workmanship for the period specified in this agreement.

**A.     General Requirements**

1.     Except as otherwise provided in this agreement, the warranty period shall begin from the date of Completion for 12 months.

2.     Work done by CONTRACTOR in compliance with warranty provisions of this agreement does not extend the period of the warranty.

3.     DEVELOPER and CONTRACTOR shall deliver to OWNER all warranties provided by vendors and manufacturers of materials and equipment used to complete the Project. DEVELOPER and CONTRACTOR shall have no obligation under warranties provided by others except to render any

assistance that OWNER may require in enforcing the terms of those warranties.

4.    Except as provided in this agreement, and to the extent permitted by Law, DEVELOPER and CONTRACTOR disclaims all warranties, whether express or implied, whether of fitness for purpose, merchantability, habitability or workmanlike completion.

5.    Failure of OWNER to give notice of a breach of warranty within the warranty period constitutes a waiver of the right to repair or replacement by DEVELOPER and CONTRACTOR.

6.    To make a warranty Claim under this agreement, OWNER must send a clear and specific written complaint to DEVELOPER and CONTRACTOR at the following address within 60 Calendar Days of discovering Defects, unless otherwise specified in the list of items covered under this warranty. DEVELOPER and CONTRACTOR shall make repairs, replacements and corrections promptly and at no expense to OWNER.

**B.    Exclusions from Warranty**

1.    The warranty provided by this contract does not cover any of the following items or conditions:

I.    Damages to private property or bodily injury.

II.    Damages or losses that result from soil movement that is covered by insurance or that is compensated for by legislation.

III.    Insect damage.

IV.    Damage or losses that result from overloading of any floor, wall, ceiling, or roof beyond the design capacity.

V.    Damages caused or made worse by:

A.    Changes, additions, deletions, or any other alterations made to any part of the structure by anyone other than DEVELOPER and CONTRACTOR after the warranty term begins.

B.    Loss that results from failure of OWNER to take timely action to mitigate or minimize damage.

2.    DEVELOPER and CONTRACTOR has no liability for incidental or consequential damages from breach of any warranty provided by this agreement insofar as the loss claimed is covered by insurance of OWNER or for which OWNER has a right of recovery from any other party.

**C.    Basic Warranty Coverage**

1.    It is a breach of warranty if any material or design furnished, or workmanship performed by DEVELOPER and CONTRACTOR or any Subcontractor or Material Supplier, is found to be defective during the first year.

**D.    Warranty on Major Structural Damage**

1.    It is a breach of the major structural damage warranty where there is actual physical damage to designated load-bearing portions of the structure caused by the failure of such designated portions to perform to their load-bearing functions to the extent that it makes the structure unsafe, uninhabitable, or unsanitary during the first 12 months. The following items are designated load-bearing portions:

I.    Foundation Systems and Footings

II.    Beams

III.    Girders

IV.     Lintels

V.      Columns

VI.     Walls and Partitions

VII.    Floor Systems

VIII.   Roof Framing Systems

## 40     DEVELOPER and CONTRACTOR Claims

A.     If DEVELOPER and CONTRACTOR claims that any instruction, Drawing, act or omission of OWNER or any representative of OWNER, or any agency of government, increases costs to DEVELOPER and CONTRACTOR, requires extra time or changes the Scope of Work, CONTRACTOR shall have the right to assert a Claim for such costs or time.

## 41   Notice of Claims

A.     No Claim by DEVELOPER and CONTRACTOR shall be considered unless DEVELOPER and CONTRACTOR provide OWNER or OWNER'S Representative with a notice that there will be a Claim for additional compensation or an extension of time. This notice of Claim shall be made no less than 5 Calendar Days after DEVELOPER and CONTRACTOR recognizes or should have recognized that circumstances exist which support such a Claim. The notice of Claim shall include: (1) The date of the notice, (2) The date the basis for the Claim was discovered, (3) The circumstances that support the Claim, and (4) The estimated additional cost to OWNER or additional time required to complete the Project.

B.     If the Claim involves Extra Work, DEVELOPER and CONTRACTOR shall maintain detailed records which show each expense incurred, including payroll records and receipts for Subcontracted Work, materials and equipment. These detailed records shall be made available to OWNER for verification while Work subject to the Claim is being performed.

C.     The amount Claimed by CONTRACTOR shall be calculated in accord with provisions in this contract on charges for Extra Work.

## 42   Arbitration

A.     Any controversy or Claim arising out of or relating to this contract or contract warranty or the breach thereof which cannot be resolved by mediations shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

B.     Two copies of the demand for arbitration and attachments and the related fee shall be filed with the appropriate regional office of the American Arbitration Association. Copies of the demand and attachments shall be given to all other Parties to the dispute. The demand for arbitration shall be made within a reasonable time after the Claim or dispute has arisen, and in no event after the date when institution of legal or equitable proceedings based on such Claim or dispute would be barred by the applicable statute of limitations.

C.     DEVELOPER, CONTRACTOR and OWNER agree to include in each contract for construction or design services on the Project a clause which requires that disputes under that contract be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules.

D.     Any representative of OWNER or consultant to OWNER or DEVELOPER and CONTRACTOR or any Subcontractor to DEVELOPER and CONTRACTOR on the Project shall have the same rights in any

arbitration proceeding as are afforded by arbitration rules to DEVELOPER and CONTRACTOR and OWNER. If more than one demand for arbitration is made by a Party with respect to the Project, all such Claims shall be consolidated into a single arbitration unless the Parties otherwise agree in writing.

E.    If a Claimant in arbitration recovers less than 50 percent of the amount demanded in arbitration, DEVELOPER and CONTRACTOR and OWNER agree that the Claimant shall pay all costs in arbitration, including the arbitrator's fees and the attorney's fees of the opposing Party.

### 43.    Insurance

**A.    Certificates of Insurance**

1.    DEVELOPER and CONTRACTOR shall provide to OWNER a certificate of insurance for each insurance policy required by this agreement. These certificates shall list OWNER as the certificate holder.

2.    Certificates of insurance shall be issued on a standard form

3.    DEVELOPER and CONTRACTOR shall permit no Subcontractor to begin Work on the Project until OWNER has received certificates of insurance demonstrating that the Subcontractor has coverage of a like kind and with comparable limits to insurance coverage required of DEVELOPER and CONTRACTOR under this agreement.

**B.    Waivers of Subrogation**

1.    OWNER and DEVELOPER and CONTRACTOR waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance except such rights as may exist to the proceeds from insurance held by OWNER as trustee. DEVELOPER and CONTRACTOR shall require similar waivers in Subcontracts for the Project.

**C.    Insurance Details**

1.    If insurance policies meeting the Requirements of this contract are not generally available to DEVELOPER and CONTRACTOR.  DEVELOPER and CONTRACTOR may provide substantially similar coverage and shall so notify OWNER in writing.

2.    DEVELOPER and CONTRACTOR may satisfy the policy limits set by this contract through any combination of underlying and excess liability (umbrella) insurance so long as the total coverage is not less than the policy limits specified in this contract. Any excess liability (umbrella) insurance coverage provided by CONTRACTOR must be written on an occurrence basis, offer coverage at least as broad as the underlying insurance, and have concurrent effective dates. Excess liability (umbrella) insurance provided by DEVELOPER and CONTRACTOR shall provide additional insured endorsements, blanket contractual coverage, and punitive damages coverage (unless prohibited by Law).

**D.    Liability Insurance**

1.    As an alternative to including OWNER as an additional insured under a comprehensive general liability policy, DEVELOPER and CONTRACTOR may provide an OWNER'S and CONTRACTOR's Protective Liability Policy. If DEVELOPER and CONTRACTOR are unable to procure the minimum amounts of insurance in a single policy, CONTRACTOR may provide required policy limits through a combination of a primary OCP Policy and one or more excess policies. OWNER shall be the named insured on the Policy and, if applicable, the excess policy. Each policy shall be endorsed to include each Subcontractor of every Tier as the CONTRACTOR designated in the declarations.

2.    Minimum CONTRACTOR's liability coverage shall be: $1,000,000 combined bodily injury and

property damage single occurrence limit, annual aggregate limit of $2,000,000, products and completed operations aggregate limit of $1,000,000, personal and advertising injury aggregate limit of $1,000,000.

**E.    Builder's Risk Insurance**

1.    OWNER shall provide builder's risk insurance covering property damage to the Project during the construction period. OWNER accepts the risk of damage to the Work during construction and agrees to Indemnify and hold harmless DEVELOPER and CONTRACTOR and Subcontractors at any Tier from losses resulting from uninsured damage to the Work prior to final payment under this agreement.

2.    Builder's risk insurance shall include a loss payable provision naming OWNER as loss payee. OWNER shall have the power to adjust and settle Claims resulting from builder's risk insurance.

3.    Policy limits for builder's risk coverage shall be no less than the completed replacement value of the Project including the value of Change Orders.

## 44    Liability for Damages

**DEVELOPER and CONTRACTOR Liability for Damages**

1.    DEVELOPER and CONTRACTOR shall have no liability for damage to or loss of OWNER'S private property left on the Job Site unless such damage or loss is the direct result of intentional or negligent acts by DEVELOPER and CONTRACTOR.

## 45    Indemnity

A.    DEVELOPER and CONTRACTOR shall defend, Indemnify, and hold harmless OWNER and all officers, employees, agents, and consultants of OWNER from and against all and any losses, liability, Claims, costs, damages and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from performance of Work under this agreement provided such loss, liability, costs, damage and economic detriment is attributable to bodily injury, sickness, disease or death, or to injury or destruction of property (other than the Work itself) caused by the negligent acts or omissions of DEVELOPER and CONTRACTOR, a Subcontractor, or anyone directly or indirectly employed by them, or whether caused by or contributed to by OWNER, unless caused by the sole negligence of OWNER.

B.    Indemnification of OWNER is limited to the extent of insurance coverage required to be carried by DEVELOPER and CONTRACTOR under this agreement.

C.    Indemnification under this agreement shall not exceed any limitation on the amount or type of damages, compensation, or benefits payable by or for DEVELOPER and CONTRACTOR or any Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

## 46    Interpretation of the Contract

A.    Section headings and paragraph numbers have been included in this contract to refer easier and in no way limit, define, or enlarge the terms, scope, or conditions of this contract.

B.    Except as otherwise provided in this contract, OWNER and DEVELOPER and CONTRACTOR intend that this contract be interpreted in accord with the *Restatement of Law, Contracts*, published by the American Law Institute. Specifically: All parts of the Contract Documents should be interpreted together, and conduct of the Parties should be interpreted as a manifestation of intention, and specific provisions should be interpreted as qualifying the meaning of the general provisions.

## 47    Dealing with Plan Defects

A.    At any time, DEVELOPER and CONTRACTOR may request an interpretation or clarification of the Contract Documents from OWNER or OWNER'S Representative. OWNER or OWNER'S Representative shall reply with a written interpretation, clarification, or detailed instructions within a reasonable time.

B.    DEVELOPER and CONTRACTOR will rely on the Contract Documents as the final authority on what is included in the Project. The Contract Documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction DEVELOPER and CONTRACTOR doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. CONTRACTOR bears no responsibility for defects in the Contract Documents.

C.    Unless DEVELOPER and CONTRACTOR has asked for and received a written clarification from OWNER in time to prevent delay in the Work, any omission or ambiguity in the Contract Documents shall be interpreted as requiring the material or construction technique necessary to produce the greater quantity and better quality of Work.

D.    DEVELOPER and CONTRACTOR will report promptly to OWNER any design defects likely to result in problems during construction of the Project. However, DEVELOPER and CONTRACTOR is not a licensed architect or engineer and have no obligation to detect ambiguities, inconsistencies or omissions in the Contract Documents. While acting in good faith, DEVELOPER and CONTRACTOR is entitled to rely on the Work of a trained design specialist selected by and responsible to OWNER.

E.    DEVELOPER and CONTRACTOR is entitled to rely on dimensions and descriptions shown in the Contract Documents when ordering materials for Installation.

F.    Ambiguities, inconsistencies and omissions in the Contract Documents are design defects, not errors by DEVELOPER and CONTRACTOR. The cost of correcting design defects shall be at the expense of OWNER.

G.    If inconsistent, approved changes to the Contract Documents take precedence over the original Contract Documents. Subsequent changes to the Contract Documents take precedence over prior changes to the Contract Documents.

H.    If inconsistent, the construction Drawings take precedence over the Specifications.

I.    If anything in the construction Specifications is inconsistent with anything else in the construction Specifications: (1) A product performance Requirement takes precedence over a named product or manufacturer, and (2) Other clauses in the Specifications take precedence over anything incorporated by reference into the Specifications.

J.    If anything in the construction Drawings is inconsistent with anything else in the construction Drawings: (1) Dimensions written in numbers take precedence over scaled measurements, (2) Notes and schedules take precedence over lines on the Drawings, (3) Large scale Drawings take precedence over small scale Drawings, (4) Schedules take precedence over notes or other directions, (5) Specific notes take precedence over general notes, and (6) Bottom elevations of footings take precedence over any general notes.

K.    If inconsistent, other Contract Documents take precedence over any manual, industry standard, recommendation, regulation, and set of guidelines, code, or instructions incorporated by reference into the Contract Documents.

L.    If inconsistent, any portion of the Contract Documents written in longhand takes precedence over

anything printed in the Contract Documents.

M.     DEVELOPER and CONTRACTOR has no liability for any omission, inconsistency or ambiguity in the Contract Documents or for any discrepancy between physical conditions at the Job Site and the Contract Documents, unless DEVELOPER and CONTRACTOR fails to report the error to OWNER or OWNER'S Representative.

## 48     Choice of Venue

A.     The Parties agree that venue for any action related to performance of this contract shall be the appropriate court in Tennessee.

## 49     Entire Agreement

A.     The Contract Documents are the entire agreement and constitute a complete integration of all understandings between DEVELOPER and CONTRACTOR and OWNER about the Project. The Contract Documents supersede all prior negotiations, representations and agreements, whether written or oral. No subsequent notation, renewal, addition, deletion, change or amendment to this contract shall have any force or effect unless in the form of a written Change Order or amendment to this contract.

## 50     Severability

A.     If any provision of this contract is interpreted or rendered invalid and unenforceable, then the remainder of this contract shall remain in full force and effect.

## 51     Cumulative Remedies

A.     All rights and remedies provided to DEVELOPER and CONTRACTOR by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to CONTRACTOR at Law or in equity.

## 52     Materials and Substitutions

A.     When the Specifications refer to materials or equipment by performance standard (such as an ASTM identifier), DEVELOPER and CONTRACTOR may select for Installation any product or equipment meeting that standard. When several products or manufacturers are identified as acceptable in the Specifications, DEVELOPER and CONTRACTOR has the option of using any of the products or selecting any of the manufacturers listed without seeking approval from OWNER or OWNER'S Representative.

B.     Except as stated otherwise in the Specifications, any reference in the Specifications to a brand, make, manufacturer, or model denotes only characteristics of quality, workmanship, economy of operation and suitability for the intended purpose. DEVELOPER and CONTRACTOR may use any substantially equivalent material, equipment, or article if approved in advance of Installation by OWNER or OWNER'S Representative.

C.     All materials and equipment used on the Project shall comply with Specifications in the Contract Documents unless a substitution is approved in advance of Installation by OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall apply to OWNER or OWNER'S Representative for approval of a substitute material when: (1) Any item specified is found to be unusable or unavailable when needed for Installation, or (2) The item specified is considered inferior to an equivalent item which is readily available at a Similar cost. With the application, DEVELOPER and CONTRACTOR shall include documentation: (1) Demonstrating that essential features of the substitute item are equal to or exceed similar features of the item specified, and (2) Listing delivered prices for the substitute item based on Material Supplier quotations. OWNER or OWNER'S Representative may deny

any application for substitution if not in the best interest of OWNER. If approved, any savings in cost that result from the substitution will be credited to OWNER. No request for substitution of material shall constitute grounds for extension of the Contract Time. Proposed substitutions shall not be purchased or installed without approval of the substitution by OWNER or OWNER'S Representative.

## 54   Inspections

DEVELOPER and CONTRACTOR shall schedule and coordinate all Inspections required by the Contract Documents and by public authority so as not to delay the progress of the Work or the Work of OWNER or Separate CONTRACTORs. If the Contract Documents require that an Inspection be witnessed or attended by OWNER or OWNER'S Representative, DEVELOPER and CONTRACTOR shall give notice of the time and place of the Inspection. DEVELOPER and CONTRACTOR shall schedule Inspections during regular Work Days and normal business hours, unless mutually agreed by DEVELOPER and CONTRACTOR, OWNER, and Inspector.

B.    Insofar as applicable and except where superseded by other provisions of the Contract Documents or by government regulation, Inspection of the following Work will be required on the Project: (1) Bearing surfaces of excavations before concrete is placed, (2) Reinforcing steel after Installation and before concrete is poured, (3) Structural concrete when poured, (4) Structural framing after erection and prior to being covered or enclosed, (5) Steel welding, (6) Mechanical and plumbing Work following Installation and prior to being covered or enclosed, (7) Electrical Work following Installation and prior to being covered or enclosed, (8) Above-ceiling Work when complete but before the finish ceiling material is installed, and (9) Final Inspections prior to occupancy.

C.    If an Inspection reveals Work of DEVELOPER and CONTRACTOR not in compliance with the Contract Documents or not in compliance with any code or statute, DEVELOPER and CONTRACTOR shall bear the costs of correction, the cost of repeating the Inspection, and any related costs, including reasonable charges by OWNER or OWNER'S Representative for additional services.

## 55   The Construction Schedule

A.    DEVELOPER and CONTRACTOR shall prepare and submit to OWNER for review and approval an estimated progress Schedule for the Work showing completion within the Contract Time. This progress Schedule shall identify expected starting and completion dates for each part of the job and identify tasks critical to timely completion of the Work.

B.    DEVELOPER and CONTRACTOR may select any type of Schedule which: (1) Is suitable for monitoring progress of the Work, (2) Provides easy access to information about the timing of decisions OWNER must make and acts OWNER must perform, (3) Includes sufficient detail to demonstrate adequate planning for the Work, and (4) Presents a practical plan to complete the Work in an acceptable time.

C.    DEVELOPER and CONTRACTOR shall plan, develop, supervise, control, and coordinate the performance of the Work so that job progress, sequence and timing conform to the construction Schedule. If DEVELOPER and DEVELOPER and CONTRACTOR falls materially behind the currently approved construction Schedule, OWNER may require DEVELOPER and CONTRACTOR to prepare and submit for approval, at no cost to OWNER, a plan for completing the Project within the Contract Time. Failure to submit a plan meeting this Requirement shall constitute grounds for termination under the terms of this agreement.

D.    The Schedule shall allow for and depict the following: (1) Beginning and Completion Dates of each significant task (Work breakdown structure) in the job, (2) Delivery and approval of each Submittal, Samples and Shop Drawing, (3) Inspections and tests, (4) The Work of Subcontractors and Separate

CONTRACTORs, and (5) Order dates and delivery dates of significant equipment and key materials. The construction Schedule shall include a legend which identifies the meaning of each symbol and abbreviation.

## 56    Extension of the Time for Completion

A.    OWNER shall execute a Change Order for Excusable Delay by extending the Contract Time for the period of the delay. Any of the following shall constitute excusable delay for which the Contract Time shall be extended: (1) Strike, boycott, embargo, terrorism, armed rebellion, quarantine or other obstructive action by employees, labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or, order of government authority, and (2) Fire, flood, earthquake, tornado, tidal wave, lightning, rain, snow, temperature under 32 degrees, casualty loss, epidemic, or unusually adverse weather.

B.    For delay in delivery of materials, FF&E, equipment or for a shortage of labor that results from unforeseeable circumstances beyond the control and without fault or negligence of either DEVELOPER and CONTRACTOR, or any Subcontractor or Material Supplier of DEVELOPER and CONTRACTOR, OWNER will grant an extension of the Contract Time if: (1) DEVELOPER and CONTRACTOR, notifies OWNER or OWNER'S Representative promptly on discovery of the anticipated shortage, (2) DEVELOPER and CONTRACTOR,  substantiates the delay as unavoidable with a detailed chronology of events and all relevant correspondence, and (3) DEVELOPER and CONTRACTOR, provides an estimated date when the material, equipment or labor will be available.

C.    Any Change Order granted for Excusable Delay shall have no effect on a Claim by DEVELOPER and CONTRACTOR, for damage from the same delay for interruption, hindrance, or disruption.

## 57    DEVELOPER and CONTRACTOR Claims for Delay

A.    The Contract Price shall be adjusted for any increase in the cost of performance of this contract caused by suspension, delay or interruption of the Work due to: (1) An error or omission in the Contract Documents, (2) A decision of OWNER to change the Scope of the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR,, (3) A decision of OWNER to suspend the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR,, (4) A failure by OWNER or OWNER'S Representative to comply with the construction Schedule, (5) Any act or neglect of OWNER or agent of OWNER or any Separate DEVELOPER and CONTRACTOR, (6) Failure of OWNER to yield control of the Job Site to DEVELOPER and CONTRACTOR,, or (7) Failure of OWNER to make payments when due under the terms of this agreement.

B.    Within 3 Working Days after receipt of a notice of Claim for compensation for suspension, delay, or interruption, OWNER shall: (1) Respond with a resolution, remedy, or direction to alleviate the delay, (2) Respond with a notice rejecting the Claim for delay, or (3) Respond with a draft Change Order accepting the Claim for delay. If the issue is not then resolved, DEVELOPER and CONTRACTOR, may request a Change Order.

C.    No change in the Contract Time for completion or the Contract Price shall become part of the Contract Documents without a Change Order.

D.    Compensation to DEVELOPER and CONTRACTOR, for suspension, delay, or interruption of Work shall include direct overhead (Job Site) expense, a proportionate share of unabsorbed indirect (home office) overhead expense, lost efficiency and lost profit taken as 15 percent of total compensable expenses. Direct overhead costs shall include, without limitation: (1) Labor (with taxes, insurance and fringe benefits) for the idle work force, (2) The fair rental cost of idle equipment (such as vehicles,

construction tools and equipment), (3) Facilities (such as temporary structures, water, power, phone, and toilets), (4) The additional cost of Bonds and insurance, (5) Similar direct overhead costs of Subcontractors to whom DEVELOPER and CONTRACTOR, is liable for damages that result from the delay, and (6) Demobilization and re-mobilization costs. Unabsorbed indirect overhead costs shall include, without limitation, the proportionate share of office rent, office supplies, office utilities, office equipment, advertising, professional fees, management salaries, technical services, estimating, selling, accounting, bookkeeping and clerical expense, business licenses, taxes (except income taxes), and insurance.

## 58     Liquidated Damages

A.     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the Contract Time are considered reasonable by OWNER and DEVELOPER and DEVELOPER and CONTRACTOR, any neglect, refusal or failure of DEVELOPER and CONTRACTOR to reach Substantial Completion within the Contract Time, plus approved extensions of that time, will result in damage to OWNER impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and CONTRACTOR or which may become due CONTRACTOR the sum of $125.00 as liquidated damages for each Calendar Day that Substantial Completion is delayed beyond the Contract Time, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

B.     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the time for Completion are considered reasonable by OWNER and CONTRACTOR. Any neglect, refusal or failure of DEVELOPER and CONTRACTOR, to reach Completion within the time provided in this contract, plus approved extensions of that time, will result in damage in the form of inconvenience, loss of opportunities, and higher Inspection, Superintendence, and administrative costs to OWNER. These costs are impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and DEVELOPER and CONTRACTOR or which may become due DEVELOPER and CONTRACTOR, the sum of $125.00 as liquidated damages for each Calendar Day that Completion is delayed beyond the time provided in this contract, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

C.     Achieving Substantial Completion sooner than the Contract Time, plus approved extensions of that time, shall earn additional compensation to DEVELOPER and CONTRACTOR of $125.00 for each Calendar Day that Substantial Completion is achieved prior to the Contract Time, plus approved extensions of that time.

D.     DEVELOPER and CONTRACTOR, shall not be charged liquidated damages for any failure, neglect or refusal to complete the Work on Schedule to the extent that the proximate cause of the delay was: (1) Strike, boycott, embargo, terrorism, armed rebellion, quarantine, delay in delivery of FF&E, or other obstructive action by employees, franchise owner, franchisor or labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or by order of government authority, (2) Fire, flood, earthquake, tornado, tidal wave, lightning, casualty loss, epidemic, rain, snow or unusually adverse weather, (3) Any delay of Subcontractors or vendors resulting from items listed in sections 1 or 2 above, or (4) Any act or omission of OWNER or anyone acting on behalf of OWNER.

E.     Except as provided elsewhere in this contract, liquidated damages are the exclusive damage remedy for OWNER for any failure of DEVELOPER and CONTRACTOR to complete Work per Schedule. No damages of any other type or description shall be awarded OWNER for failure of DEVELOPER and

CONTRACTOR to comply with the construction Schedule.

## 59    Consequential Damages

A.    DEVELOPER and CONTRACTOR, and OWNER waive all Claims for consequential damages against each other, their respective officers, directors, partners, employees, agents, consultants and Subcontractors, arising out of or relating to this contract or the termination of this contract, except those consequential damages covered by insurance or specifically provided elsewhere in this agreement.

## 60    Right to Stop Work for Non-Payment

A.    If DEVELOPER and CONTRACTOR, is not paid any amount not in dispute within 7 Calendar Days after the date due, CONTRACTOR shall post on the Job Site and deliver to OWNER and all Subcontractors a notice of intention to stop the Work if payments then due are not received in full within 10 Calendar Days. Thereafter, CONTRACTOR may suspend the Work until delinquent payments have been received, pursuant to Tennessee Civil Code § 3260.2.

B.    Neither DEVELOPER and CONTRACTOR, nor Surety of CONTRACTOR, nor any Subcontractor of DEVELOPER and CONTRACTOR shall be liable for delay or damage that OWNER may suffer as a result of suspension of the Work for failure to receive payments due under this agreement so long as: (1) Work was suspended by DEVELOPER and CONTRACTOR in compliance with the terms of this contract and with applicable Law, and (2) There is no good faith dispute that payment is due DEVELOPER and CONTRACTOR,  at the time of suspension. A good faith dispute exists if OWNER provides: (1) A list of specific reasons for nonpayment, including labor, materials, or equipment not in compliance with the Contract Documents, and (2) CONTRACTOR is afforded a reasonable opportunity to correct the Defects cited or issue a credit compensating OWNER for Defects that cannot be cured promptly.

## 61    Early Partial Occupancy

A.    Without prior approval of DEVELOPER and CONTRACTOR, OWNER shall not occupy or use any portion of the Work until Substantial Completion of the Project. If OWNER occupies or uses any portion of the Work before Substantial Completion of the Project and without prior approval of DEVELOPER and CONTRACTOR, the portion or portions used or occupied shall be considered complete, finished, accepted and the responsibility of OWNER.

B.    No Partial Use or occupancy of the Work by OWNER shall commence prior to Substantial Completion without a Change Order confirming the responsibility of OWNER for maintenance, utilities, operation of equipment, and security during early Partial Use or occupancy.

C.    If any portion of the Project is used or occupied by OWNER prior to Substantial Completion and if the Project is not completed within the Contract Time, liability of DEVELOPER and CONTRACTOR, for delayed completion shall be reduced by the proportion of the Project used or occupied by OWNER and for the time used or occupied by OWNER prior to Substantial Completion.

## 61 Substantial Completion

A.    When, in the opinion of DEVELOPER and CONTRACTOR, the Work is Substantially Complete, DEVELOPER and CONTRACTOR shall prepare a preliminary Punch List of Work remaining to be done and deliver that Punch List to OWNER'S Representative with a request for evaluation of Substantial Completion. If, in the opinion of OWNER'S Representative, items on the preliminary Punch List are consistent with Substantial Completion, OWNER'S Representative shall conduct an Inspection of the Work to evaluate compliance with the Contract Documents.

B. before OWNER takes possession or occupancy of the Project, DEVELOPER and CONTRACTOR,

shall receive a comprehensive Punch List of discrepancies to be corrected or Work to be finished by CONTRACTOR and a date for completing this Work. DEVELOPER and CONTRACTOR, shall complete and correct items on the Punch List by the designated date.

C. the Punch List given to DEVELOPER and CONTRACTOR, is a complete and final list of Defective or incomplete Work on the Project. OWNER shall be deemed to have accepted Work not on the Punch List. Nothing in this paragraph shall be interpreted as relieving DEVELOPER and CONTRACTOR, of the obligation to meet warranty and call-back obligations.

D.      DEVELOPER and CONTRACTOR, shall annotate the Punch List with: (1) A detailed breakdown of the Work required to complete or correct each item, (2) The Subcontractor or trade responsible for the Work, and (3) The dates Work will commence and be finished on each item. No annotation is required for any item on the Punch List which is beyond the control of DEVELOPER and CONTRACTOR. Failure of CONTRACTOR to furnish a detailed completion Schedule for items on the Punch List shall constitute grounds for withdrawing acknowledgment of Substantial Completion.

E.      OWNER'S Representative will prepare a certificate of Substantial Completion for signature by OWNER and DEVELOPER and CONTRACTOR, when the Project or a specific portion of the Project is ready for occupancy. Except as otherwise provided in the Contract Documents, signing of the certificate of completion shall: (1) Transfer to OWNER responsibility for maintenance, safety, utility expense, controlling access at the site, and (2) Begin running of any warranty or call-back period on the Project.

H. after Substantial Completion, DEVELOPER and CONTRACTOR, shall remain responsible for: (1) Damage caused by DEVELOPER and CONTRACTOR, while completing the Work, and (2) Safety of crews when completing the Work.

## 62   Delivery of Notices

A.      Any written notice required by this contract can be: (1) Delivered by hand at the last known address of the addressee, or (2) Delivered by hand to the addressee or representative of the addressee, wherever found. Notice is effective upon delivery.

B.      Any written notice required by this contract can be: (1) Delivered by enclosing in a stamped envelope addressed to the last known address of the intended recipient and either deposited in a United States Postal Service mailbox or given to a USPS employee, or (2) Consigned to a commercial courier service and addressed to the last known address of the intended recipient. Notice is effective upon delivery if proof of delivery is provided; where no proof of delivery is available, notice is effective 5 Calendar Days after mailing or consignment to a courier service.

**Signatures**

The signatures that follow constitute confirmation by those signing that they have examined and understand the Contract Documents and agree to be bound by the terms of these documents.

DEVELOPER and CONTRACTOR may not begin Work before receiving from OWNER a written notice to proceed. Any Work performed by DEVELOPER and CONTRACTOR before receipt of the notice to proceed shall be done at the risk of DEVELOPER and CONTRACTOR and without obligation of OWNER.

This agreement is entered as of the date written below.

**OWNER Name:** CD-1709 Midland Trail Shelbyville KY LLC                              ,
**OWNER**

_____          08/21/17_____
　　　(Signature)                                   (Date)

_____Pun For Li, Manager_____
　　　(Printed Name and Title)

**DEVELOPER Name:** American Development Partners                          ,

_____        /8/14/17_____
　　　(Signature)                                   (Date)

_____Manny Butera developer_____
　　　(Printed Name and Title)

**Glossary of Terms**

**Beneficial Occupancy** refers to OWNER'S use of the project premises after Substantial Completion but prior to Final Completion. Beneficial Occupancy may occur when the project or some portion is sufficiently complete and systems operational such that the OWNER could, after obtaining necessary approvals and certificates, occupy and utilize the space for its intended purpose. The time limit for warranties applicable to that portion of the Work begin on the date the OWNER begins Beneficial Occupancy, unless otherwise specified in this Agreement.

**Bond** means the security offered by a licensed surety company which may be used to satisfy a claim of failure to perform obligations undertaken in this Agreement.

**Calendar Day** means any day shown on the calendar beginning at midnight and ending at midnight the following day. Contrast the term Work Day which excludes Saturdays, Sundays and state-recognized holidays.

**Certification of Payment** is acknowledgment by someone not a party to this Agreement that CONTRACTOR is entitled to payment for work completed.

**Change Order** is a written modification of the Contract Price (including all claims for direct, indirect and consequential damages and costs of delay), Time for Completion and Scope of Work under this Agreement. A Change Order, once signed by all parties, is incorporated into and becomes a part of the Contract Documents.

**Claim** means a demand or assertion by one of the parties to this Agreement seeking, as a matter of right, modification, adjustment or interpretation of contract terms, payment of money, extension of time or other relief.

**Code Requirements** means all laws, statutes, regulations, building codes, ordinances, rules, and lawful orders of all public authorities having jurisdiction over OWNER, CONTRACTOR, any Subcontractor, the Project, the Job Site, the Work, or the prosecution of the Work.

**Contract Completion Date** means the day by which the Work must be substantially complete.

**Contract Date** is the day on which the contract becomes binding between CONTRACTOR and OWNER.

**Contract Documents** are this Agreement and all documents incorporated by reference into this Agreement.

**Contract Price** is the amount which will become due in exchange for work performed under this Agreement. Contract Price includes allowances for purchased materials and equipment and may be modified by a Change Order or contract modification. The Contract Price may be paid in one or more installments, including an Initial Payment at or before the start of work, Progress Payments as work is completed, and a Final Payment on final acceptance of the work. Payment Period is the time elapsed

Between applications for progress payments or prior to the first application for progress payment.

**Contract Schedule** is a graphical representation of a practical plan to complete Work within the Contract Time.

**Contract Time** means the period between Date of Commencement and the date of Substantial Completion.

**CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the Work under the terms of this Agreement.

**Defective Work** means construction done under this Agreement that is unsatisfactory, faulty, omitted, incomplete, deficient, or does not conform to the requirements of the Contract Documents, directives of OWNER'S Representative, or the requirements of an inspection, reference standard, test, or approval specified in the Contract Documents.

**Design Professional** means the person, organization or authorized representative who is responsible to the OWNER for design of the Project through preparation of Drawings and Specifications. The term Design Professional may refer to an architect, designer, engineer or landscape architect.

**Drawings** (also called plans or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Drawings include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed Project. A group of drawings adequate to complete construction of the Project may be referred to as a plan set. Drawings can be either paper or electronic media.

**Emergency** means an unforeseen event, combination of circumstances, or a resulting state that poses imminent danger to health, life or property.

**Excusable Delay** means any circumstance which postpones completion of the Work and for which CONTRACTOR is entitled to an adjustment of the Contract Time but not an adjustment to the Contract Price. Contrast Inexcusable Delay which entitles CONTRACTOR to neither an adjustment of the Contract Price nor an adjustment in the Contract Time.

**Extra Work** means any change, interpretation, clarification or correction in the Contract Documents or in applicable law, ordinance or regulation which would increase or decrease the quantity of work, delay, suspend or interfere with the work, require an addition to or omission from the work, change the character, quality or nature of any part of the work or material used in the work, change levels, lines, positions or dimensions of any part of the work, require demolition or removal of any work completed under this Agreement, extend or amend the normal work day, alter the construction schedule or require completion of any part of the work at a time other than provided by this Contract when originally made.

**Final Completion** is the date of OWNER'S acceptance of the Work as fully performed per the

Contract Documents.

**Furnish** means to supply and deliver to the job site.

**General CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking execution of the Work under terms of a Prime Contract.

**Hazardous Materials** means radioactive materials, asbestos, polychlorinated biphenyls, petroleum, crude oil, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, and toxic substances which are restricted, prohibited, or regulated by any agency of government in the manufacture, use, maintenance, storage, Ownership or handling.

**Indemnification** Financial compensation intended to restore someone to their condition before a loss or damage.

**Inspection** is any review of the Project, including a visual review of the Work completed to ascertain compliance with Contract Documents, building codes and construction standards.

**Inspector** is anyone authorized by government or the Design Professional to conduct inspections of contract performance and materials supplied for the Work.

**Install** means to secure in position in compliance with the Contract Documents and includes unloading materials, supplying all necessary equipment and rigs to do the work and performing functional tests which demonstrate fitness for the intended purpose.

**Job Site** is the address or location of the Project.

**Law** means federal or state statutes, municipal ordinances, building codes, regulations adopted pursuant to statute, executive orders, official interpretations, and other rules and directives issued by government.

**Material Supplier** means any manufacturer, fabricator, distributor, material man or vendor who provides material for the Project but does not provide on-site labor.

**Modification** is a written amendment to the Contract signed by both parties.

**OWNER'S Representative** means the person or firm authorized to act and make administrative decisions on behalf of the OWNER during construction. Any notice required to be delivered to the OWNER may be delivered to the OWNER'S Representative. The scope of authority of the OWNER'S Representative is defined in this contract. CONTRACTOR cannot rely on any decision or instruction by OWNER'S Representative that is beyond the representative's defined scope of his authority. Nothing in this contract prevents OWNER from issuing a notice or instructions directly to the CONTRACTOR. The OWNER may change the OWNER'S Representative from time to time and may, if OWNER'S Representative is absent, disabled or otherwise temporarily unavailable, appoint an interim OWNER'S Representative.

**Party (to this contract)** means a person or business organization which has an obligation to perform under the terms of this contract.

**Plans** (also called drawings or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Plans include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed project. A group of plans adequate to complete construction of the Project may be referred to as a plan set. Plans can be either paper or electronic media.

**Prime Contract** is a written agreement between CONTRACTOR and OWNER which binds CONTRACTOR to furnish labor, equipment, or materials or perform certain work for a price to be paid by OWNER.

**Project** means Work to be completed in accord with the Contract Documents. Work at the Job Site may include other projects to be completed by the OWNER or other CONTRACTORs working under other agreements.

**Provide** means furnish and install and includes connecting, testing, and placing in service for the intended use.

**Punch List** is a comprehensive list of incomplete, defective or incorrect Work yet to be completed or which does not comply with Contract Documents. A Punch List may be prepared by the CONTRACTOR, Subcontractor, Design Professional or OWNER. An initial Punch List will be prepared before application for Substantial Completion. A Close-out Punch List will be prepared before Final Completion.

**Requirements** means, in addition to obligations, responsibilities and limitations set out in the Contract Documents, the obligations, responsibilities and limitations imposed by law, rules, orders, ordinances, regulations, statutes, codes and executive orders of governmental authorities or fire rating bureaus.

**Retainage** is a portion of each progress payment temporarily held back or retained by the OWNER. Accumulated retainage is released to CONTRACTOR on satisfactory completion of the work.

**Sample** means a physical example of material; equipment or workmanship intended to be representative of some portion of the Work. When approved, samples establish standards for completion of similar work on the Project.

**Schedule of Values** means the detailed breakdown of cost of materials, equipment and labor necessary to complete the Project as described in the Contract Documents.

**Scope of Work** means the Work as defined by the Contract Documents.

**Separate CONTRACTOR** means a person or firm working under a different contract but on the same site

and at the same time as work will be done under this contract.

**Shop Drawings** are diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data which are prepared by the CONTRACTOR or a Subcontractor, manufacturer, supplier or distributor, and which illustrate or describe some portion of the Work to be completed in compliance with the Contract Documents. Once submitted to the approval authority and approved, Shop Drawings establish standards for completion of work on Project.

**Similar** means having a like kind, quality and characteristics. Similar is not to be construed as meaning identical or by the same manufacturer.

**Specifications** (also called specs) are the part of the Contract Documents which provide descriptions of materials, equipment, construction systems, technique and workmanship to be used on the Project. Specifications are both instructions to be followed by the CONTRACTOR and Subcontractors and a reference for the Building Official to evaluate code compliance.

**Subcontract** is a written agreement between a specialty CONTRACTOR and General CONTRACTOR. Terms of the subcontract require the specialty CONTRACTOR to complete some portion of the work General CONTRACTOR is obligated to perform under another agreement, usually with the OWNER.

**Subcontractor** is any person or business entity under contract to a general CONTRACTOR to perform some portion of the work general CONTRACTOR is obligated to complete under a contract with the OWNER. Subcontractor is an independent CONTRACTOR performing services for another CONTRACTOR rather than for the OWNER. A person or organization providing supplies or materials for the Project but no job site labor is not a Subcontractor.

**Submittals** demonstrate the way by which the CONTRACTOR proposes to conform to the requirements of the Contract Documents. Submittals are shop drawings (diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data) required by the Contract Documents which are prepared for the CONTRACTOR to depict some portion of the Work. Submittals are delivered to the OWNER for approval or disapproval by the OWNER prior to purchase or installation.

**Substantial Completion** means the Project or a designated portion of the Project is nearly in compliance with the Contract Documents and is sufficiently complete to be considered fully operational in all its components and is fit for the intended use. Substantial Completion is reached when a limited number of non-conforming or defective items on a Punch List remain to be completed. Normally, a Project or portion of a Project cannot be considered Substantially Complete until (1) all utilities and services are connected and working, (2) all equipment is installed and in acceptable working condition, (3) additional activity by the CONTRACTOR to correct items on the Punch List will not prevent or disrupt use of the facility, and, (4) a certificate of occupancy has been issued by the appropriate authority.

**Sub-subcontractor** is any person or business entity under contract to a subcontractor or any lower tier subcontractor to perform some portion of the work subcontractor is obligated to complete under a contract with the prime CONTRACTOR. Sub-subcontractors are independent CONTRACTORs

performing services for another CONTRACTOR rather than for the prime CONTRACTOR. A person or organization providing supplies or materials for the Project but no job site labor is not a Sub-subcontractor.

**Superintendent** is the representative of the CONTRACTOR at the job site who is authorized to receive instructions from the OWNER or OWNER'S Representative and who is authorized to direct the performance of work on behalf of the CONTRACTOR.

**Surety** means any qualified individual, firm or corporation other than the CONTRACTOR, which executes a bond to insure its acceptable performance of the contract.

**Tier** refers to the contractual level of a person or business organization doing work on the Project. A first-tier subcontractor has a contract with the general CONTRACTOR but not the OWNER. A second-tier subcontractor has a contract with another subcontractor but not with the general CONTRACTOR or the OWNER.

**Work** means all labor, material, equipment, tools, transportation, permanent and temporary utilities, connections, provisions for safety and management services required to complete the Project in compliance with the Contract Documents. Work may constitute the whole or a part of the Project. Work is to be performed in a safe, expeditious, orderly and professional manner in keeping with current standards of the industry. Work includes everything that is or should be evident to a skilled construction professional after careful examination of the Contract Documents and the Job Site.

**Work Day** means any day, excluding Saturdays, Sundays and state-recognized holidays, shown on the calendar beginning at midnight and ending at midnight the following day.

**EXHIBIT "C"**



**American Development Partners Development Contract**

This agreement is made on the date written above our signatures between
DEVELOPER Name: **REDSTONE LLC DBA American Development Partners** (DEVELOPER) and
OWNER Name: CD-2250 CHERRY ROAD ROCK HILL SC LLC(OWNER).

**DEVELOPER**
DEVELOPER Name: **REDSTONE LLC DBA American Development Partners**
Address: 6004 Cody Cove
City: Spring Hill, State: TN Zip: 37174
Work Phone Number: (615) 818-6982
Email Address: manny@americandevelopmentpartners.com
DEVELOPER Name: **American Development Partners** will be referred to as DEVELOPER throughout this agreement.

**CONTRACTOR**
**CONTRACTOR INFORMATION:**
Address: Phone Number: (615) 330-0629
Email Address: llynp@built-more.com
License Number: 00057609

CONTRACTOR Name: Built-more LLC will be referred to as CONTRACTOR throughout this agreement.

**OWNER**
OWNER Name: CD-2250 CHERRY ROAD ROCK HILL SC LLC, 14103 Chinkapin Drive, Rockville MD 20850 ATTENTION – Mr. Pun For Li
OWNER Name: CD-2250 CHERRY ROAD ROCK HILL SC LLC will be referred to as OWNER throughout this agreement.


1    **Project Description**

A.    For a price identified below, DEVELOPER agrees to complete a new commercial building (identified as the Project in this agreement) for OWNER.

B.    For the Contract Price identified below, DEVELOPER agrees to complete a new commercial building consisting of approximately 2000 sq. ft. +/- square feet of air-conditioned space and 800 square feet of a connected outdoor patio used as a Captain D's Restaurant (identified as the "Project" in this Agreement), for TENANT's use and OWNERS ownership on the Land in accordance with the plans

C.    The term "Total Build Cost" shall mean the aggregate of (1) the Total Project Cost, (2) the

Contract Price, (3) the Contingencies of the Project, (4) the cost of the Work and the Extra Work, (5) other costs, charges and fees under this Agreement (collectively, the "Other Agreements") (the Other Agreements shall include but not be limited to any contractor or subcontractor agreements and the cost of all materials and labor).

D.   The term "Budget" shall mean the Total Build Cost less the cost to acquire the Land.

E.   The term "Property" shall mean the Land and all improvements thereon including but not limited to the Project.

F.   Contract Price / OWNERS Cost Cap / Developer

G.   DEVELOPER shall earn in addition to any other charges specified in this agreement, OWNER agrees to pay a 10% development fee for completing the Work described as the Project. DEVELOPER fee is paid off total project cost that includes land / building, construction and all numbers that are used to factor total project cost.

H.   Notwithstanding any contrary provision in this Agreement or otherwise, OWNERS maximum monetary liability under this Agreement and for the Project towards all amounts, including but not limited to the Total Build Cost, shall not exceed, and shall be capped at, the sum of: (**$2,284,272.10) said amount referred to as the (OWNERS GROSS MAX**).  Notwithstanding any contrary provision in this Agreement or otherwise, DEVELOPER shall be solely responsible under this Agreement and to OWNER, for any projects overruns that are above the gross max number provided to OWNER.

## 2   Contract Price

I.   DEVELOPER shall earn and OWNER agrees to pay a development fee of 10% of total project cost in addition to any other charges specified in this agreement. In addition to any other charges specified in this agreement, OWNER agrees to pay DEVELOPER **$207,661.10 development fee for** completing the Work described as the Project.

## 3 Contingency Budget

II.   It is identified and agreed to by OWNER that DEVELOPER has an estimated budget of **5 %** of project cost for "contingencies". CONTRACTOR will submit to DEVELOPER a "change order" for approval by DEVELOPER and OWNER any proposed change order. Contingencies are limited to change orders due to error or omission by a licensed architect after plans were received and reviewed by contractor, all state or federal codes changes that were mandated after contractor received stamped plans and or building permit.

## 4 Scheduled Start of Construction

A.   Work under this agreement will begin within 5 Calendar Days after the following contingencies have been met.

1.   Complete Plans and Specifications have been approved and initialed by both OWNER, DEVELOPER and CONTRACTOR.

2.   OWNER has shown proof of funds or other financing acceptable to DEVELOPER.

3.   DEVELOPER has obtained all architectural approvals from any franchise and or corporate authorities.

4.    OWNER has furnished DEVELOPER with evidence of Ownership of the property satisfactory to DEVELOPER.

5.    All appropriate building permits have been issued.

6.    DEVELOPER has received written notice from the lien holder or the title company insuring lien holder's security interest in the property that all documents required to be recorded prior to the commencement of construction have been properly recorded.

7.    The contract has been signed by OWNER, DEVELOPER and CONTRACTOR.

## 5 Scheduled Completion of Construction

A.    Work under this agreement will be Substantially Completed within 125 Calendar Days after the date construction begins (building permit is issued) however it is understood and will go without penalty for acts that our outside of the control of the DEVELOPER and CONTRACTOR.

## 6 Documents Incorporated

A.    The Glossary of Terms which follows our signatures is incorporated into this contract as though included in full as part of this agreement.

B.    This agreement incorporates by reference certain documents which define and describe the Work to be done. The following documents are incorporated as though included in full as part of this agreement.

## 7 Ownership of Plans

A.    All Plans, Drawings, Specifications and other documents prepared by or for OWNER for use under this agreement will be paid for and are the property of DEVELOPER and remain the property of DEVELOPER. Plans, Drawings and Specifications, whether in paper or electronic form, prepared for use in construction under this agreement shall not be modified or used on any other project without written consent of DEVELOPER. DEVELOPER shall hold harmless and Indemnify OWNER from and against all Claims, actions, suits, costs, damages, losses, expenses and attorney's fees arising out of use of the Project Plans, Drawings, or Specifications for any purpose other than construction to be completed under this agreement. DEVELOPER, CONTRACTOR and Subcontractors are granted a limited license to use and reproduce applicable portions of the Plans, Specifications and Drawings as required for construction under this agreement. All copies made under this license shall bear a notice showing OWNER as copyright holder. DEVELOPER may retain one record set of the Plans, Drawings and Specifications. All other sets shall be accounted for by DEVELOPER and CONTRACTOR and returned to OWNER. Submittal or distribution of Project Plans, Drawings or Specifications to meet Official Regulatory Requirements is not to be construed as publication in derogation of the rights of OWNER.

## 8 Plans on Site

A.    DEVELOPER and CONTRACTOR will keep a full set of Project Plans available on-site to authorized personnel during the period of construction.

## 9 Documents Supplied to CONTRACTOR

A.    OWNER will furnish to DEVELOPER and CONTRACTOR at no cost (this is part of total project cost)

1.    A full set of Plans and Specifications for all trades in electronic format.

2.    DEVELOPER and CONTRACTOR will distribute Contract Documents as required by Subcontractors.

## 10 Scope of Work

A.    DEVELOPER and CONTRACTOR shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Project in compliance with the Contract Documents.

B.    Develop and CONTRACTOR are responsible for coordination of the various trades and deliveries of equipment, materials and supplies to minimize interference which could delay the Work or pose a hazard to life or property. DEVELOPER shall be responsible for allocation of tasks between trades and will be the final authority on location and routing of equipment and storage of materials on the Job Site.

C.    DEVELOPER will ensure that Subcontractors, their agents, and employees adhere to these Contract Documents. DEVELOPER and CONTRACTOR accepts responsibility for all Work performed under this contract, including Work performed by employees of Subcontractors.

D.    CONTRACTOR shall provide on the Job Site during the period of construction a temporary chemical toilet or water closet which shall be serviced no less than weekly. Upon completion of the Project, CONTRACTOR will remove temporary toilet facilities from the site.

E.    DEVELOPER and CONTRACTOR shall provide temporary elevators and lifts as may be required by construction personnel, including Subcontractors, Material Suppliers, Inspectors, and Representatives of OWNER. Elevators and lifts will comply with all federal, state and local Laws and ordinances in effect at the Job Site. Upon completion of the Project, DEVELOPER and CONTRACTOR will dismantle and remove temporary elevators and lifts.

F.    DEVELOPER and CONTRACTOR shall develop and present to OWNER for approval (which shall not be withheld unreasonably), a site logistics plan drawn to scale, showing proposed secure and fenced areas, locations and types of temporary barricades, material storage and staging areas, property entrances used for material deliveries, and special material or equipment storage Requirements. This plan will include a description and proposed location for any temporary office, storage trailer, sanitary facilities, and parking for construction personnel.

## 11 Submittals

A.    Architectural Drawings will indicate in detail all parts of the building components, Installation details, and coordination with Work of other trades or other CONTRACTORS. Architectural Drawings for structural steel, timbers and pre-cast concrete will include engineering calculations, fabrication details and erection Drawings that show physical characteristics, dimensions, shapes, inserts, attaching points and methods, and other information required for manufacture, assembly and erection, in compliance with the Contract Documents.

B.    Approval by OWNER'S Representative does not relieve DEVELOPER and CONTRACTOR of responsibility for compliance with the Contract Documents except as follows: If a Submittal does not comply with Contract Documents, DEVELOPER and CONTRACTOR will attach to the Submittal, prior to approval, a written request for variation showing the change in Contract Price and Contract Time, if any, that will result from the variation. If OWNER'S Representative approves a Submittal which includes a written request for a variation and which requires a change in the Contract Price or Contract Time, OWNER'S Representative will issue a contract Modification confirming the change. If OWNER'S Representative approves a Submittal with a written request for a minor variation which does not require a change in the Contract Price or Contract Time, no contract Modification is needed. A minor variation is anything which does not materially alter the quality or performance of the Work. Approved variations are subject to all terms of this agreement and without prejudice to any rights granted to OWNER'S Representative under a Surety Bond.

C.     DEVELOPER and CONTRACTOR is entitled to expect that corrections to Submittals by OWNER'S Representative be clearly noted and easily understood so that prompt resubmission is possible without further instructions from OWNER'S Representative.

D.     OWNER'S Representative will review Submittals and notify DEVELOPER and CONTRACTOR of approval or rejection within **2** Calendar Days of receipt.

E.     OWNER'S Representative will review Submittals of DEVELOPER and CONTRACTOR for conformance with Requirements of the Contract Documents and will approve or take other appropriate action upon those Submittals.  OWNER'S Representative will advise DEVELOPER and CONTRACTOR of any errors or omissions which OWNER'S Representative may detect during this review. Submittals approved by OWNER'S Representative become additions to the Contract Documents and can be relied on by DEVELOPER and CONTRACTOR in completing the Work. Nothing in any approved Submittal shall be interpreted to limit DEVELOPER and CONTRACTOR in selection of the means, method, technique, sequence or procedure of construction.

## 12 Record Documents

A.     DEVELOPER and CONTRACTOR will note on a record set of Project Drawings any Work done that is not shown on the original Plans and not described in other Contract Documents. The record set of Project documents will be delivered to OWNER at the same time as final payment is requested.

## 13 Job Site Safety

A.     DEVELOPER and CONTRACTOR will always take all reasonable precautions for the safety of employees and the public at the Job Site and will comply with all applicable safety Laws and regulations of federal, state, and local authorities (including building codes) and safety Requirements of OWNER.

## 14     Hazardous Materials Used in Construction

A.     Except as provided elsewhere in the Contract Documents, CONTRACTOR is responsible for all Hazardous Materials brought to the Job Site by CONTRACTOR or Subcontractors.

## 15     Hazardous Materials Discovered on Site

A.     Except as provided elsewhere in the Contract Documents, OWNER is responsible for all Hazardous Materials discovered on the Job Site so long as those materials were not brought on the Job Site by CONTRACTOR, Subcontractors, or anyone directly or indirectly employed by them. Nothing in this paragraph shall relieve DEVELOPER and CONTRACTOR from liability for negligence in handling or removing hazardous materials as required under the terms of this agreement.

B.     Except as provided in the Contract Documents or as agreed by mutual consent, DEVELOPER and CONTRACTOR shall not be required to perform Work relating to asbestos, polychlorinated biphenyl (PCB), radioactive material, toxic mold or any other Hazardous Material.

C.     OWNER shall defend, Indemnify and hold harmless DEVELOPER  and CONTRACTOR from and against all loss, liability, claims, costs, damage and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from the discovery or existence of Hazardous Material on the Job Site, whether or not identified in the Contract Documents, provided such loss, liability, costs, damage and economic detriment is not the result of any negligent act or omissions of DEVELOPER and CONTRACTOR, Subcontractors or anyone directly or indirectly employed by them. Indemnification by OWNER under this paragraph shall apply even if OWNER is in no way responsible for the loss to DEVELOPER and CONTRACTOR.

## 16     Compliance with Law

A.     CONTRACTOR and OWNER mutually commit to use reasonable care to meet the Requirements of state, federal and local Law when discharging their responsibilities under this agreement.

B.     If DEVELOPER and CONTRACTOR observe that Drawings, Specifications, or other Contract Documents do not comply with applicable Law, DEVELOPER and CONTRACTOR shall promptly notify OWNER or OWNER'S Representative of the variance. Any changes made to the Contract Documents because of this notice shall be handled in the form of a Change Order under this agreement.

C.     DEVELOPER and CONTRACTOR shall bear none of the cost of correcting Work completed per Contract Documents but not in compliance with Law if CONTRACTOR did not know that Contract Documents or instructions from OWNER or OWNER'S Representative did not comply with the Law.

D.     If Law enacted after the Contract Date changes the Scope of Work under this agreement, DEVELOPER and CONTRACTOR and OWNER will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

## 17     Layout

A.     DEVELOPER and CONTRACTOR shall be responsible for alignment and elevation of the Work and will set grade stakes, batter boards, and other working points, lines and elevations required to complete the Project as described in the Contract Documents.

## 18     Permits and Fees

A.     DEVELOPER and CONTRACTOR shall secure all permits, licenses and renewals required by government authority to complete construction of the Project. If permits are required for Subcontracted Work, Subcontractors will secure those permits. OWNER may request a copy of each permit, license and renewal issued by government authority for the Project. All permits and fees are considered a fee that is enclosed in the project plan.

B.     Project budget will include the building permit fee, Plan check fee, and charges levied by government for testing, Inspection and Re-Inspection of the Project. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

C.     Except as provided elsewhere in this agreement, Project budget  will include all fees and application charges imposed by government authority, including, but not limited to, grading permit fees, drainage permit fees, traffic control charges, thoroughfare charges, impact fees, special district fees, sewer fees, water fees, planning fees, school fees, elevator permit fees, charges for temporary access or use of the public right of way, and charges for document processing, hearings, and certifications. Project budget will also pay all fees and application charges imposed by any association of property OWNERs having authority over the Job Site. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

D.     Except as provided elsewhere in this agreement, Project budget will include all application fees and connection charges imposed by utility companies or government agencies for bringing service to the Job Site, and for connecting gas, water, electricity, phone, cable, sewer, and drainage lines. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

E.     Except as provided elsewhere in this agreement, Project budget will include all approvals for the

Project that are required by government authority, including planning, easements, remediation, environmental, and zoning approvals. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## 19    Taxes

A.    If any federal, state or local tax rate increases or if any new federal, state or local tax is imposed, whether by Law, regulation, or interpretation, between the Contract Date and Substantial Completion, the Contract Price shall be increased by the additional tax levied on DEVELOPER and CONTRACTOR but only to the extent that the change in rate or new tax could not have been reasonably foreseen on the Contract Date. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## 20    Temporary Utilities

A.    DEVELOPER and CONTRACTOR have budgeted for all costs associated with use of temporary utilities on the Job Site during construction, including application fees, permits, engineering, and metered service for water, electric power, heating and cooling. Temporary utility systems provided by DEVELOPER CONTRACTOR shall be designed and installed to protect the public and construction personnel and conform to applicable Laws and Regulations.

B.    Utility services shall be re-listed in the name of future building occupant on the Calendar Day following Substantial Completion.

## 21    Permanent Utilities

A.    Project budget shall include Installation, connection, and modification of permanent electric, water, phone, cable, sewer and gas service as required for the completed Project. It will not include any deposits that will be paid by building occupant

## 22    Job Cleanup

A.    DEVELOPER and CONTRACTOR shall regularly remove from the Job Site and storage areas all surplus material, waste and debris resulting from the Work. Construction debris shall be removed to a legal refuse collection site with disposal or recycling fees included in Project budget. At completion of the Work, DEVELOPER and CONTRACTOR shall, in addition, remove from the Job Site all tools, equipment and scaffolding brought to the Job Site by DEVELOPER and CONTRACTOR or Subcontractors. At Substantial Completion, exposed finishes of windows, doors, floors, walls, ceilings, fixtures and trim shall be cleaned and free of grime, stains, over spray, dirt and dust.

B.    DEVELOPER and CONTRACTOR shall provide a trash disposal facility on the Job Site for use by construction personnel. The on-site trash facility provided by DEVELOPER and CONTRACTOR shall be of an appropriate size for the Project and placed in a location approved by OWNER. All construction debris shall either be placed in the trash facility provided by DEVELOPER and CONTRACTOR or hauled to a legal disposal site, at the discretion of DEVELOPER and CONTRACTOR. When any trash container provided by DEVELOPER and CONTRACTOR is full, contents shall be removed to a legal disposal facility at the expense of CONTRACTOR.

## 23    Project Sign

A.    DEVELOPER and CONTRACTOR shall have the right to fabricate and erect a Project sign bearing

the name of the Project, Prime CONTRACTOR, principal Subcontractors, designers, consultants, lead lender, a short Project description, and expected Completion Date. CONTRACTOR may erect directional signs at the Job Site with approval of OWNER with respect to size, style and location. Directional signs may bear the name of CONTRACTOR and a directional symbol. No other signs will be permitted except by permission of OWNER.

### 24    Project Superintendent

A.    DEVELOPER and CONTRACTOR shall employ a competent Superintendent and any necessary assistants or alternates that will be at the job site from start to finish of project. The Superintendent shall not be changed unless the Superintendent is discharged by DEVELOPER and CONTRACTOR. The Superintendent shall have authority to represent DEVELOPER and CONTRACTOR in all matters relating to the Project. Communications with the Superintendent shall have the same force and effect as direct communication with DEVELOPER and CONTRACTOR.

### 25    OWNER'S Responsibilities

A.    OWNER affirms that OWNER has the right to enter this agreement and has the right to contract for construction of the Project on the Job Site. OWNER shall pay all taxes and assessments due on the Job Site during the period of construction and shall take all reasonable actions required to protect marketable title to the Job Site. OWNER is responsible for all standard responsibilities that a property OWNER / landlord would have.

B.    OWNER will ensure that OWNER'S Representative responds in writing and with reasonable promptness to written requests from DEVELOPER and CONTRACTOR for (1) interpretation of the Plans or Specifications, or (2) other information relevant to completion of the Work. DEVELOPER and CONTRACTOR are authorized to rely on written responses from OWNER'S Representative.

C.    OWNER shall have sole responsibility to secure financing for the Project and shall pay all fees, charges, or other costs of such financing, including Inspection fees charged by any lender. The nonperformance of any lender shall not affect the obligation of OWNER to DEVELOPER and CONTRACTOR. OWNER hereby authorizes and directs any lender on the Project to furnish DEVELOPER and CONTRACTOR with full information on undisbursed proceeds when requested by DEVELOPER and CONTRACTOR. Proof of funds must be made available to DEVELOPER prior to project starting.

D.    OWNER will not interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by DEVELOPER and CONTRACTOR or Subcontractors except as provided under this agreement.

### 26    Construction by Others

A.    OWNER shall neither hire nor retain Separate DEVELOPER and CONTRACTOR, Subcontractors, employees or agents of OWNER to perform Work on the Job Site while Work is being done under this agreement by DEVELOPER and CONTRACTOR.

### 27    Authority of OWNER'S Representative

A.    OWNER'S Representative has authority to administer the contract, make construction decisions on behalf of OWNER, and is the primary authority on issues of compliance with the Drawings and Specifications, quality of workmanship, materials used, manner of performance, and rate of progress on the Project.

B.     After the Contract Date, OWNER shall make no change in the responsibilities or authority of OWNER'S Representative without consent of DEVELOPER and CONTRACTOR.

C.     OWNER'S Representative shall have the right to visit the Project and view Work in progress at any time. Any Defective Work found or suspected, either as the result of a site visit or otherwise, shall be reported promptly to DEVELOPER and CONTRACTOR. No actions taken or statements made during site visits shall relieve DEVELOPER and CONTRACTOR of obligations described in the Contract Documents.

D.     Communication between DEVELOPER and CONTRACTOR and OWNER shall be initiated through OWNER'S Representative unless direct communication is required by Law or Contract Documents. Unless otherwise authorized by DEVELOPER and CONTRACTOR, communications between OWNER'S Representative and Subcontractors or Material Suppliers shall be through DEVELOPER and CONTRACTOR.

E.     OWNER'S Representative shall have the authority to reject and order removed any portion of the Work which does not conform to the Contract Documents.

F.     OWNER'S Representative shall have authority to conduct Inspections about Beneficial Occupancy and to determine the dates of Substantial Completion.

### 28     Representations by DEVELOPER and CONTRACTOR

A.     DEVELOPER and CONTRACTOR shall use skill and attention to complete the Work in a timely manner consistent with the Contract Documents.

B.     OWNER has reported to DEVELOPER and CONTRACTOR all conditions known to OWNER which may not be apparent to CONTRACTOR and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the Job Site, unsuitable soil conditions, prior Defective Work of others, latent Defects in the Plans or Specifications, earlier attempts to do Similar or related Work, and obligations imposed by government.

### 29     Disclaimer by OWNER, Reliance by CONTRACTOR

A.     OWNER has provided DEVELOPER and CONTRACTOR with information on subsurface or concealed conditions at the Job Site. Except to the extent that DEVELOPER and CONTRACTOR knows this information to be false, DEVELOPER and CONTRACTOR is entitled to rely on the accuracy of this information.

### 30     Discrepancy between Plans and Field Conditions

A.     DEVELOPER and CONTRACTOR is not a Design Professional and have no obligation to find discrepancies between Job Site conditions and representations or Requirements in the Contract Documents.

B.     DEVELOPER and CONTRACTOR shall not be liable for discrepancies between representations or Requirements in the Contract Documents and conditions at the Job Site unless DEVELOPER and CONTRACTOR knowingly fails to report a discrepancy, in which case DEVELOPER and CONTRACTOR shall be liable for additional costs incurred because of failure to give prompt notification.

C.     If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information

provided by OWNER, DEVELOPER and CONTRACTOR shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall submit a Claim for a Change Order which covers the additional cost incurred because of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

## 31    Use of the Site

A.    OWNER has agreed to furnish all required rights to use the land upon which the Work is to be constructed. OWNER will identify any encumbrances or restrictions related to use of the land furnished and DEVELOPER and CONTRACTOR agrees to comply with those encumbrances or restrictions. If OWNER fails to furnish the land, rights of way, or easements when required, DEVELOPER and CONTRACTOR may make a Claim for extra compensation, additional time, or other relief.

B.    OWNER shall designate a construction entrance which DEVELOPER and CONTRACTOR shall use for all delivery of materials and equipment and which shall be used by all construction personnel.

## 32    Draw Schedule

OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:

> **OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:**
>
> **Momentum draw - 10% of the Budget within three (3) Business Days following the closing on land, building or execution of this development contract.  Momentum draw will include all developer's pursuit cost, project soft cost, developer fee and necessary local, state and or federal permitting fees to start the project.**
>
> **Draw 1 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following the commencement of the Work.**
>
> **Draw 2 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 1.**
>
> **Draw 3 - 20% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 2.**
>
> **Final Draw – 10% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request includes a copy of all executed lien releases and final payment affidavits (from CONTRACTOR, Subcontractors and others) being submitted to the clerk of court and recorded in the public records and a copy of the permanent Certificate of Occupancy issued for the Project.**

It is agreed by OWNER and or FUNDING SOURCE that all payments will be made to DEVELOPER. DEVELOPER will disburse funds in a timely manner. The afore mentioned budget that is supported by the GMAX clause is considered total project budget and the DEVELOPER will disburse funds per DEVELOPERS discretion.  No third-party title company will be granted permission to disburse funds to any company or individual on behalf of funding group. Each application for payment shall be submitted

on the form approved by OWNER.

**Discharge of Liens and Payment of Subcontractors**

1.    DEVELOPER and CONTRACTOR warrants that, upon payment, OWNER shall receive clear title to all Work identified in the application for payment, free and clear of all liens and Claims, including Claims of Subcontractors, employees or Material Suppliers. CONTRACTOR also agrees that this vesting of title in OWNER does not impose any obligation on OWNER or relieve CONTRACTOR from any obligation under this contract. CONTRACTOR shall remain responsible for damage to or loss of both the Work and stored materials until Completion.

2.    DEVELOPER and CONTRACTOR warrants and guarantees that no Work, materials, or equipment covered by a request for payment has been acquired by DEVELOPER and CONTRACTOR or by any other person performing the Work or furnishing materials or equipment for the Project subject to an agreement under which an interest therein, or an encumbrance thereon, has been retained by seller or otherwise imposed by CONTRACTOR.

3.    DEVELOPER and CONTRACTOR shall furnish, with each application for payment, executed waivers of liens from DEVELOPER and CONTRACTOR and each Subcontractor and Material Supplier to the Project in the amount of the application for payment. Waivers of liens shall be in a form satisfactory to OWNER, title insurer, and lenders.

4.    DEVELOPER shall disburse funds received from OWNER among DEVELOPER and CONTRACTOR, subcontractors and material suppliers in proportion to the work done and materials received for the project during the pay period.

### 35    Interest

A.    Payments due and not paid under the Contract Documents shall bear interest from the date payment is due at a monthly rate of **10** percent.

B.    Payment of interest does not abrogate or replace any other rights DEVELOPER and CONTRACTOR may have under this agreement.

### 36    Final Payment

A.    DEVELOPER and CONTRACTOR will apply for final payment and will notify OWNER'S Representative when the work has been completed. OWNER'S Representative will issue a certificate of completion on determination that the Project is complete and in compliance with the Contract Documents. When the certificate of completion is issued, the entire unpaid balance of the contract amount, including any retainage, is payable to DEVELOPER.

B.    Making of final payment constitutes waiver of all Claims by OWNER against DEVELOPER and CONTRACTOR except those Claims previously made in writing and delivered to DEVELOPER and CONTRACTOR and those obligations otherwise provided by this agreement or by operation of Law.

C.    The acceptance of final payment by CONTRACTOR constitutes a complete and unconditional waiver and release of any and all Claims by CONTRACTOR of whatever nature, and regardless of whether they are then known or unknown, and a complete and unconditional release of OWNER, and every person for whom OWNER is responsible, for any and all matters related to the contract or otherwise, except those Claims which have been made in writing and identified by CONTRACTOR as not having been settled at that time.

### 37   Changes in the Work

A.    Except as required by changes in the Prime Contract between OWNER and DEVELOPER, no

change to this contract (including Modification, clarification, interpretation or correction of the Plans or Specifications) shall be made without agreement and a written Change Order signed by DEVELOPER and CONTRACTOR and OWNER identifying the change, the cost of the change, and the effect on Project Schedule, if any.

B.     Any change in Plans, Specifications or Contract Documents necessary to conform to existing or future Laws, codes, ordinances or regulations shall be considered Extra Work.

C.     Changes in the Work required due to defects or inconsistencies in Plans or Specifications or other Contract Documents shall be considered Extra Work.

D.     The charge for Extra Work shall be the normal selling price DEVELOPER and CONTRACTOR charges for similar changes on other jobs.

E.     Failure of DEVELOPER and CONTRACTOR and OWNER to agree on the terms of a Change Order shall be resolved under the provisions of this agreement which cover Claims and disputes.

F.     Should DEVELOPER and CONTRACTOR and OWNER fail to agree promptly on the terms of a Change Order, DEVELOPER and CONTRACTOR shall be paid, pending resolution of the dispute, the portion of the cost of the change not in dispute, including the costs of time and materials required to execute the change. Payments required under this paragraph shall be made as the Work progresses, concurrently with progress payments.

## 38     Cooperation of the Parties

A.     OWNER and DEVELOPER acknowledge that open communication and cooperation will be required to complete the Project on time, as estimated, and in compliance with the Contract Documents. DEVELOPER and OWNER each agree to identify a representative who will be available to resolve minor problems, answer questions and reach mutually acceptable solutions. The individuals identified by DEVELOPER and OWNER shall try to reach informal agreement on problems as they arise but are under no obligation to do so.

B.     Both DEVELOPER and OWNER pledge that their relations will be conducted with courtesy and consideration in an environment characterized by mutual respect. OWNER pledges to respond promptly to requests by DEVELOPER for guidance, assistance and payments when due and agrees to extend to DEVELOPER the deference and latitude a dedicated professional deserves. CONTRACTOR pledges to commit the skill and resources required to complete the Project in a manner that complies with both the letter and spirit of the Contract Documents and enhances the reputation of DEVELOPER and for dependability and professionalism.

## 39     Warranty

DEVELOPER and CONTRACTOR warrant that the Work shall be free of Defects due to faulty material or workmanship for the period specified in this agreement.

## A.     General Requirements

1.     Except as otherwise provided in this agreement, the warranty period shall begin from the date of Completion for 12 months.

2.     Work done by CONTRACTOR in compliance with warranty provisions of this agreement does not extend the period of the warranty.

3.     DEVELOPER and CONTRACTOR shall deliver to OWNER all warranties provided by vendors and manufacturers of materials and equipment used to complete the Project. DEVELOPER and CONTRACTOR shall have no obligation under warranties provided by others except to render any

assistance that OWNER may require in enforcing the terms of those warranties.

4.    Except as provided in this agreement, and to the extent permitted by Law, DEVELOPER and CONTRACTOR disclaims all warranties, whether express or implied, whether of fitness for purpose, merchantability, habitability or workmanlike completion.

5.    Failure of OWNER to give notice of a breach of warranty within the warranty period constitutes a waiver of the right to repair or replacement by DEVELOPER and CONTRACTOR.

6.    To make a warranty Claim under this agreement, OWNER must send a clear and specific written complaint to DEVELOPER and CONTRACTOR at the following address within 60 Calendar Days of discovering Defects, unless otherwise specified in the list of items covered under this warranty. DEVELOPER and CONTRACTOR shall make repairs, replacements and corrections promptly and at no expense to OWNER.

**B.    Exclusions from Warranty**

1.    The warranty provided by this contract does not cover any of the following items or conditions:

I.    Damages to private property or bodily injury.

II.    Damages or losses that result from soil movement that is covered by insurance or that is compensated for by legislation.

III.    Insect damage.

IV.    Damage or losses that result from overloading of any floor, wall, ceiling, or roof beyond the design capacity.

V.    Damages caused or made worse by:

A.    Changes, additions, deletions, or any other alterations made to any part of the structure by anyone other than DEVELOPER and CONTRACTOR after the warranty term begins.

B.    Loss that results from failure of OWNER to take timely action to mitigate or minimize damage.

2.    DEVELOPER and CONTRACTOR has no liability for incidental or consequential damages from breach of any warranty provided by this agreement insofar as the loss claimed is covered by insurance of OWNER or for which OWNER has a right of recovery from any other party.

**C.    Basic Warranty Coverage**

1.    It is a breach of warranty if any material or design furnished, or workmanship performed by DEVELOPER and CONTRACTOR or any Subcontractor or Material Supplier, is found to be defective during the first year.

**D.    Warranty on Major Structural Damage**

1.    It is a breach of the major structural damage warranty where there is actual physical damage to designated load-bearing portions of the structure caused by the failure of such designated portions to perform to their load-bearing functions to the extent that it makes the structure unsafe, uninhabitable, or unsanitary during the first 12 months. The following items are designated load-bearing portions:

I.    Foundation Systems and Footings

II.    Beams

III.    Girders

IV.     Lintels

V.      Columns

VI.     Walls and Partitions

VII.    Floor Systems

VIII.   Roof Framing Systems

## 40      DEVELOPER and CONTRACTOR Claims

A.     If DEVELOPER and CONTRACTOR claims that any instruction, Drawing, act or omission of OWNER or any representative of OWNER, or any agency of government, increases costs to DEVELOPER and CONTRACTOR, requires extra time or changes the Scope of Work, CONTRACTOR shall have the right to assert a Claim for such costs or time.

## 41    Notice of Claims

A.     No Claim by DEVELOPER and CONTRACTOR shall be considered unless DEVELOPER and CONTRACTOR provide OWNER or OWNER'S Representative with a notice that there will be a Claim for additional compensation or an extension of time. This notice of Claim shall be made no less than 5 Calendar Days after DEVELOPER and CONTRACTOR recognizes or should have recognized that circumstances exist which support a Claim. The notice of Claim shall include: (1) The date of the notice, (2) The date the basis for the Claim was discovered, (3) The circumstances that support the Claim, and (4) The estimated additional cost to OWNER or additional time required to complete the Project.

B.     If the Claim involves Extra Work, DEVELOPER and CONTRACTOR shall maintain detailed records which show each expense incurred, including payroll records and receipts for Subcontracted Work, materials and equipment. These detailed records shall be made available to OWNER for verification while Work subject to the Claim is being performed.

C.     The amount Claimed by CONTRACTOR shall be calculated in accord with provisions in this contract on charges for Extra Work.

## 42    Arbitration

A.     Any controversy or Claim arising out of or relating to this contract or contract warranty or the breach thereof which cannot be resolved by mediations shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

B.     Two copies of the demand for arbitration and attachments and the related fee shall be filed with the appropriate regional office of the American Arbitration Association. Copies of the demand and attachments shall be given to all other Parties to the dispute. The demand for arbitration shall be made within a reasonable time after the Claim or dispute has arisen, and in no event after the date when institution of legal or equitable proceedings based on such Claim or dispute would be barred by the applicable statute of limitations.

C.     DEVELOPER, CONTRACTOR and OWNER agree to include in each contract for construction or design services on the Project a clause which requires that disputes under that contract be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules.

D.     Any representative of OWNER or consultant to OWNER or DEVELOPER and CONTRACTOR or any Subcontractor to DEVELOPER and CONTRACTOR on the Project shall have the same rights in any

arbitration proceeding as are afforded by arbitration rules to DEVELOPER and CONTRACTOR and OWNER. If more than one demand for arbitration is made by a Party with respect to the Project, all such Claims shall be consolidated into a single arbitration unless the Parties otherwise agree in writing.

E.     If a Claimant in arbitration recovers less than 50 percent of the amount demanded in arbitration, DEVELOPER and CONTRACTOR and OWNER agree that the Claimant shall pay all costs in arbitration, including the arbitrator's fees and the attorney's fees of the opposing Party.

### 43.   Insurance

**A.     Certificates of Insurance**

1.     DEVELOPER and CONTRACTOR shall provide to OWNER a certificate of insurance for each insurance policy required by this agreement. These certificates shall list OWNER as the certificate holder.

2.     Certificates of insurance shall be issued on a standard form

3.     DEVELOPER and CONTRACTOR shall permit no Subcontractor to begin Work on the Project until OWNER has received certificates of insurance demonstrating that the Subcontractor has coverage of a like kind and with comparable limits to insurance coverage required of DEVELOPER and CONTRACTOR under this agreement.

**B.     Waivers of Subrogation**

1.     OWNER and DEVELOPER and CONTRACTOR waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance except such rights as may exist to the proceeds from insurance held by OWNER as trustee. DEVELOPER and CONTRACTOR shall require similar waivers in Subcontracts for the Project.

**C.     Insurance Details**

1.     If insurance policies meeting the Requirements of this contract are not generally available to DEVELOPER and CONTRACTOR.  DEVELOPER and CONTRACTOR may provide substantially similar coverage and shall so notify OWNER in writing.

2.     DEVELOPER and CONTRACTOR may satisfy the policy limits set by this contract through any combination of underlying and excess liability (umbrella) insurance so long as the total coverage is not less than the policy limits specified in this contract. Any excess liability (umbrella) insurance coverage provided by CONTRACTOR must be written on an occurrence basis, offer coverage at least as broad as the underlying insurance, and have concurrent effective dates. Excess liability (umbrella) insurance provided by DEVELOPER and CONTRACTOR shall provide additional insured endorsements, blanket contractual coverage, and punitive damages coverage (unless prohibited by Law).

**D.     Liability Insurance**

1.     As an alternative to including OWNER as an additional insured under a comprehensive general liability policy, DEVELOPER and CONTRACTOR may provide an OWNER'S and CONTRACTOR's Protective Liability Policy. If DEVELOPER and CONTRACTOR are unable to procure the minimum amounts of insurance in a single policy, CONTRACTOR may provide required policy limits through a combination of a primary OCP Policy and one or more excess policies. OWNER shall be the named insured on the Policy and, if applicable, the excess policy. Each policy shall be endorsed to include each Subcontractor of every Tier as the CONTRACTOR designated in the declarations.

2.     Minimum CONTRACTOR's liability coverage shall be: $1,000,000 combined bodily injury and

property damage single occurrence limit, annual aggregate limit of $2,000,000, products and completed operations aggregate limit of $1,000,000, personal and advertising injury aggregate limit of $1,000,000.

**E.   Builder's Risk Insurance**

1.    OWNER shall provide builder's risk insurance covering property damage to the Project during the construction period. OWNER accepts the risk of damage to the Work during construction and agrees to Indemnify and hold harmless DEVELOPER and CONTRACTOR and Subcontractors at any Tier from losses resulting from uninsured damage to the Work prior to final payment under this agreement.

2.    Builder's risk insurance shall include a loss payable provision naming OWNER as loss payee. OWNER shall have the power to adjust and settle Claims resulting from builder's risk insurance.

3.    Policy limits for builder's risk coverage shall be no less than the completed replacement value of the Project including the value of Change Orders.

## 44   Liability for Damages

**DEVELOPER and CONTRACTOR Liability for Damages**

1.    DEVELOPER and CONTRACTOR shall have no liability for damage to or loss of OWNER'S private property left on the Job Site unless such damage or loss is the direct result of intentional or negligent acts by DEVELOPER and CONTRACTOR.

## 45   Indemnity

A.    DEVELOPER and CONTRACTOR shall defend, Indemnify, and hold harmless OWNER and all officers, employees, agents, and consultants of OWNER from and against all and any losses, liability, Claims, costs, damages and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from performance of Work under this agreement provided such loss, liability, costs, damage and economic detriment is attributable to bodily injury, sickness, disease or death, or to injury or destruction of property (other than the Work itself) caused by the negligent acts or omissions of DEVELOPER and CONTRACTOR, a Subcontractor, or anyone directly or indirectly employed by them, or whether caused by or contributed to by OWNER, unless caused by the sole negligence of OWNER.

B.    Indemnification of OWNER is limited to the extent of insurance coverage required to be carried by DEVELOPER and CONTRACTOR under this agreement.

C.    Indemnification under this agreement shall not exceed any limitation on the amount or type of damages, compensation, or benefits payable by or for DEVELOPER and CONTRACTOR or any Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

## 46   Interpretation of the Contract

A.    Section headings and paragraph numbers have been included in this contract to refer easier and in no way limit, define, or enlarge the terms, scope, or conditions of this contract.

B.    Except as otherwise provided in this contract, OWNER and DEVELOPER and CONTRACTOR intend that this contract be interpreted in accord with the *Restatement of Law, Contracts*, published by the American Law Institute. Specifically: All parts of the Contract Documents should be interpreted together, and conduct of the Parties should be interpreted as a manifestation of intention, and specific provisions should be interpreted as qualifying the meaning of the general provisions.

## 47   Dealing with Plan Defects

A.    At any time, DEVELOPER and CONTRACTOR may request an interpretation or clarification of the Contract Documents from OWNER or OWNER'S Representative. OWNER or OWNER'S Representative shall reply with a written interpretation, clarification, or detailed instructions within a reasonable time.

B.    DEVELOPER and CONTRACTOR will rely on the Contract Documents as the final authority on what is included in the Project. The Contract Documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction DEVELOPER and CONTRACTOR doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. CONTRACTOR bears no responsibility for defects in the Contract Documents.

C.    Unless DEVELOPER and CONTRACTOR has asked for and received a written clarification from OWNER in time to prevent delay in the Work, any omission or ambiguity in the Contract Documents shall be interpreted as requiring the material or construction technique necessary to produce the greater quantity and better quality of Work.

D.    DEVELOPER and CONTRACTOR will report promptly to OWNER any design defects likely to result in problems during construction of the Project. However, DEVELOPER and CONTRACTOR is not a licensed architect or engineer and have no obligation to detect ambiguities, inconsistencies or omissions in the Contract Documents. While acting in good faith, DEVELOPER and CONTRACTOR is entitled to rely on the Work of a trained design specialist selected by and responsible to OWNER.

E.    DEVELOPER and CONTRACTOR is entitled to rely on dimensions and descriptions shown in the Contract Documents when ordering materials for Installation.

F.    Ambiguities, inconsistencies and omissions in the Contract Documents are design defects, not errors by DEVELOPER and CONTRACTOR. The cost of correcting design defects shall be at the expense of OWNER.

G.    If inconsistent, approved changes to the Contract Documents take precedence over the original Contract Documents. Subsequent changes to the Contract Documents take precedence over prior changes to the Contract Documents.

H.    If inconsistent, the construction Drawings take precedence over the Specifications.

I.    If anything in the construction Specifications is inconsistent with anything else in the construction Specifications: (1) A product performance Requirement takes precedence over a named product or manufacturer, and (2) Other clauses in the Specifications take precedence over anything incorporated by reference into the Specifications.

J.    If anything in the construction Drawings is inconsistent with anything else in the construction Drawings: (1) Dimensions written in numbers take precedence over scaled measurements, (2) Notes and schedules take precedence over lines on the Drawings, (3) Large scale Drawings take precedence over small scale Drawings, (4) Schedules take precedence over notes or other directions, (5) Specific notes take precedence over general notes, and (6) Bottom elevations of footings take precedence over any general notes.

K.    If inconsistent, other Contract Documents take precedence over any manual, industry standard, recommendation, regulation, and set of guidelines, code, or instructions incorporated by reference into the Contract Documents.

L.    If inconsistent, any portion of the Contract Documents written in longhand takes precedence over

anything printed in the Contract Documents.

M.      DEVELOPER and CONTRACTOR has no liability for any omission, inconsistency or ambiguity in the Contract Documents or for any discrepancy between physical conditions at the Job Site and the Contract Documents, unless DEVELOPER and CONTRACTOR fails to report the error to OWNER or OWNER'S Representative.

## 48      Choice of Venue

A.      The Parties agree that venue for any action related to performance of this contract shall be the appropriate court in Tennessee.

## 49      Entire Agreement

A.      The Contract Documents are the entire agreement and constitute a complete integration of all understandings between DEVELOPER and CONTRACTOR and OWNER about the Project. The Contract Documents supersede all prior negotiations, representations and agreements, whether written or oral. No subsequent notation, renewal, addition, deletion, change or amendment to this contract shall have any force or effect unless in the form of a written Change Order or amendment to this contract.

## 50      Severability

A.      If any provision of this contract is interpreted or rendered invalid and unenforceable, then the remainder of this contract shall remain in full force and effect.

## 51      Cumulative Remedies

A.      All rights and remedies provided to DEVELOPER and CONTRACTOR by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to CONTRACTOR at Law or in equity.

## 52      Materials and Substitutions

A.      When the Specifications refer to materials or equipment by performance standard (such as an ASTM identifier), DEVELOPER and CONTRACTOR may select for Installation any product or equipment meeting that standard. When several products or manufacturers are identified as acceptable in the Specifications, DEVELOPER and CONTRACTOR has the option of using any of the products or selecting any of the manufacturers listed without seeking approval from OWNER or OWNER'S Representative.

B.      Except as stated otherwise in the Specifications, any reference in the Specifications to a brand, make, manufacturer, or model denotes only characteristics of quality, workmanship, economy of operation and suitability for the intended purpose. DEVELOPER and CONTRACTOR may use any substantially equivalent material, equipment, or article if approved in advance of Installation by OWNER or OWNER'S Representative.

C.      All materials and equipment used on the Project shall comply with Specifications in the Contract Documents unless a substitution is approved in advance of Installation by OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall apply to OWNER or OWNER'S Representative for approval of a substitute material when: (1) Any item specified is found to be unusable or unavailable when needed for Installation, or (2) The item specified is considered inferior to an equivalent item which is readily available at a Similar cost. With the application, DEVELOPER and CONTRACTOR shall include documentation: (1) Demonstrating that essential features of the substitute item are equal to or exceed similar features of the item specified, and (2) Listing delivered prices for the substitute item based on Material Supplier quotations. OWNER or OWNER'S Representative may deny

any application for substitution if not in the best interest of OWNER. If approved, any savings in cost that result from the substitution will be credited to OWNER. No request for substitution of material shall constitute grounds for extension of the Contract Time. Proposed substitutions shall not be purchased or installed without approval of the substitution by OWNER or OWNER'S Representative.

## 54    Inspections

DEVELOPER and CONTRACTOR shall schedule and coordinate all Inspections required by the Contract Documents and by public authority so as not to delay the progress of the Work or the Work of OWNER or Separate CONTRACTORs. If the Contract Documents require that an Inspection be witnessed or attended by OWNER or OWNER'S Representative, DEVELOPER and CONTRACTOR shall give notice of the time and place of the Inspection. DEVELOPER and CONTRACTOR shall schedule Inspections during regular Work Days and normal business hours, unless mutually agreed by DEVELOPER and CONTRACTOR, OWNER, and Inspector.

B.    Insofar as applicable and except where superseded by other provisions of the Contract Documents or by government regulation, Inspection of the following Work will be required on the Project: (1) Bearing surfaces of excavations before concrete is placed, (2) Reinforcing steel after Installation and before concrete is poured, (3) Structural concrete when poured, (4) Structural framing after erection and prior to being covered or enclosed, (5) Steel welding, (6) Mechanical and plumbing Work following Installation and prior to being covered or enclosed, (7) Electrical Work following Installation and prior to being covered or enclosed, (8) Above-ceiling Work when complete but before the finish ceiling material is installed, and (9) Final Inspections prior to occupancy.

C.    If an Inspection reveals Work of DEVELOPER and CONTRACTOR not in compliance with the Contract Documents or not in compliance with any code or statute, DEVELOPER and CONTRACTOR shall bear the costs of correction, the cost of repeating the Inspection, and any related costs, including reasonable charges by OWNER or OWNER'S Representative for additional services.

## 55    The Construction Schedule

A.    DEVELOPER and CONTRACTOR shall prepare and submit to OWNER for review and approval an estimated progress Schedule for the Work showing completion within the Contract Time. This progress Schedule shall identify expected starting and completion dates for each part of the job and identify tasks critical to timely completion of the Work.

B.    DEVELOPER and CONTRACTOR may select any type of Schedule which: (1) Is suitable for monitoring progress of the Work, (2) Provides easy access to information about the timing of decisions OWNER must make and acts OWNER must perform, (3) Includes sufficient detail to demonstrate adequate planning for the Work, and (4) Presents a practical plan to complete the Work in an acceptable time.

C.    DEVELOPER and CONTRACTOR shall plan, develop, supervise, control, and coordinate the performance of the Work so that job progress, sequence and timing conform to the construction Schedule. If DEVELOPER and DEVELOPER and CONTRACTOR falls materially behind the currently approved construction Schedule, OWNER may require DEVELOPER and CONTRACTOR to prepare and submit for approval, at no cost to OWNER, a plan for completing the Project within the Contract Time. Failure to submit a plan meeting this Requirement shall constitute grounds for termination under the terms of this agreement.

D.    The Schedule shall allow for and depict the following: (1) Beginning and Completion Dates of each significant task (Work breakdown structure) in the job, (2) Delivery and approval of each Submittal, Samples and Shop Drawing, (3) Inspections and tests, (4) The Work of Subcontractors and Separate

CONTRACTORs, and (5) Order dates and delivery dates of significant equipment and key materials. The construction Schedule shall include a legend which identifies the meaning of each symbol and abbreviation.

## 56     Extension of the Time for Completion

A.     OWNER shall execute a Change Order for Excusable Delay by extending the Contract Time for the period of the delay. Any of the following shall constitute excusable delay for which the Contract Time shall be extended: (1) Strike, boycott, embargo, terrorism, armed rebellion, quarantine or other obstructive action by employees, labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or, order of government authority, and (2) Fire, flood, earthquake, tornado, tidal wave, lightning, rain, snow, temperature under 32 degrees, casualty loss, epidemic, or unusually adverse weather.

B.     For delay in delivery of materials, FF&E, equipment, delay by franchisee, franchisor or for a shortage of labor that results from unforeseeable circumstances beyond the control and without fault or negligence of either DEVELOPER and CONTRACTOR, or any Subcontractor or Material Supplier of DEVELOPER and CONTRACTOR, OWNER will grant an extension of the Contract Time if: (1) DEVELOPER and CONTRACTOR,  notifies OWNER or OWNER'S Representative promptly on discovery of the anticipated shortage, (2) DEVELOPER and CONTRACTOR,  substantiates the delay as unavoidable with a detailed chronology of events and all relevant correspondence, and (3) DEVELOPER and CONTRACTOR, provides an estimated date when the material, equipment or labor will be available.

C.     Any Change Order granted for Excusable Delay shall have no effect on a Claim by DEVELOPER and CONTRACTOR, for damage from the same delay for interruption, hindrance, or disruption.

## 57     DEVELOPER and CONTRACTOR Claims for Delay

A.     The Contract Price shall be adjusted for any increase in the cost of performance of this contract caused by suspension, delay or interruption of the Work due to: (1) An error or omission in the Contract Documents, (2) A decision of OWNER to change the Scope of the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR,, (3) A decision of OWNER to suspend the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR,, (4) A failure by OWNER or OWNER'S Representative to comply with the construction Schedule, (5) Any act or neglect of OWNER or agent of OWNER or any Separate DEVELOPER and CONTRACTOR, (6) Failure of OWNER to yield control of the Job Site to DEVELOPER and CONTRACTOR,, or (7) Failure of OWNER to make payments when due under the terms of this agreement.

B.     Within 3 Working Days after receipt of a notice of Claim for compensation for suspension, delay, or interruption, OWNER shall: (1) Respond with a resolution, remedy, or direction to alleviate the delay, (2) Respond with a notice rejecting the Claim for delay, or (3) Respond with a draft Change Order accepting the Claim for delay. If the issue is not then resolved, DEVELOPER and CONTRACTOR, may request a Change Order.

C.     No change in the Contract Time for completion or the Contract Price shall become part of the Contract Documents without a Change Order.

D.     Compensation to DEVELOPER and CONTRACTOR, for suspension, delay, or interruption of Work shall include direct overhead (Job Site) expense, a proportionate share of unabsorbed indirect (home office) overhead expense, lost efficiency and lost profit taken as 15 percent of total compensable expenses. Direct overhead costs shall include, without limitation: (1) Labor (with taxes, insurance and fringe benefits) for the idle work force, (2) The fair rental cost of idle equipment (such as vehicles,

construction tools and equipment), (3) Facilities (such as temporary structures, water, power, phone, and toilets), (4) The additional cost of Bonds and insurance, (5) Similar direct overhead costs of Subcontractors to whom DEVELOPER and CONTRACTOR, is liable for damages that result from the delay, and (6) Demobilization and re-mobilization costs. Unabsorbed indirect overhead costs shall include, without limitation, the proportionate share of office rent, office supplies, office utilities, office equipment, advertising, professional fees, management salaries, technical services, estimating, selling, accounting, bookkeeping and clerical expense, business licenses, taxes (except income taxes), and insurance.

## 58   Liquidated Damages

A.     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the Contract Time are considered reasonable by OWNER and DEVELOPER and DEVELOPER and CONTRACTOR, any neglect, refusal or failure of DEVELOPER and CONTRACTOR to reach Substantial Completion within the Contract Time, plus approved extensions of that time, will result in damage to OWNER impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and CONTRACTOR or which may become due CONTRACTOR the sum of $125.00 as liquidated damages for each Calendar Day that Substantial Completion is delayed beyond the Contract Time, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

B.     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the time for Completion are considered reasonable by OWNER and CONTRACTOR. Any neglect, refusal or failure of DEVELOPER and CONTRACTOR, to reach Completion within the time provided in this contract, plus approved extensions of that time, will result in damage in the form of inconvenience, loss of opportunities, and higher Inspection, Superintendence, and administrative costs to OWNER. These costs are impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and DEVELOPER and CONTRACTOR or which may become due DEVELOPER and CONTRACTOR, the sum of $125.00 as liquidated damages for each Calendar Day that Completion is delayed beyond the time provided in this contract, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

C.     Achieving Substantial Completion sooner than the Contract Time, plus approved extensions of that time, shall earn additional compensation to DEVELOPER and CONTRACTOR of $125.00 for each Calendar Day that Substantial Completion is achieved prior to the Contract Time, plus approved extensions of that time.

D.     DEVELOPER and CONTRACTOR, shall not be charged liquidated damages for any failure, neglect or refusal to complete the Work on Schedule to the extent that the proximate cause of the delay was: (1) Strike, boycott, embargo, terrorism, armed rebellion, quarantine, delay in delivery of FF&E, or other obstructive action by employees, franchise owner, franchisor or labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or by order of government authority, (2) Fire, flood, earthquake, tornado, tidal wave, lightning, casualty loss, epidemic, rain, snow or unusually adverse weather, (3) Any delay of Subcontractors or vendors resulting from items listed in sections 1 or 2 above, or (4) Any act or omission of OWNER or anyone acting on behalf of OWNER.

E.     Except as provided elsewhere in this contract, liquidated damages are the exclusive damage remedy for OWNER for any failure of DEVELOPER and CONTRACTOR to complete Work per Schedule. No damages of any other type or description shall be awarded OWNER for failure of DEVELOPER and

CONTRACTOR to comply with the construction Schedule.

## 59    Consequential Damages

A.    DEVELOPER and CONTRACTOR, and OWNER waive all Claims for consequential damages against each other, their respective officers, directors, partners, employees, agents, consultants and Subcontractors, arising out of or relating to this contract or the termination of this contract, except those consequential damages covered by insurance or specifically provided elsewhere in this agreement.

## 60    Right to Stop Work for Non-Payment

A.    If DEVELOPER and CONTRACTOR, is not paid any amount not in dispute within 7 Calendar Days after the date due, CONTRACTOR shall post on the Job Site and deliver to OWNER and all Subcontractors a notice of intention to stop the Work if payments then due are not received in full within 10 Calendar Days. Thereafter, CONTRACTOR may suspend the Work until delinquent payments have been received, pursuant to Tennessee Civil Code § 3260.2.

B.    Neither DEVELOPER and CONTRACTOR, nor Surety of CONTRACTOR, nor any Subcontractor of DEVELOPER and CONTRACTOR shall be liable for delay or damage that OWNER may suffer as a result of suspension of the Work for failure to receive payments due under this agreement so long as: (1) Work was suspended by DEVELOPER and CONTRACTOR in compliance with the terms of this contract and with applicable Law, and (2) There is no good faith dispute that payment is due DEVELOPER and CONTRACTOR,  at the time of suspension. A good faith dispute exists if OWNER provides: (1) A list of specific reasons for nonpayment, including labor, materials, or equipment not in compliance with the Contract Documents, and (2) CONTRACTOR is afforded a reasonable opportunity to correct the Defects cited or issue a credit compensating OWNER for Defects that cannot be cured promptly.

## 61    Early Partial Occupancy

A.    Without prior approval of DEVELOPER and CONTRACTOR, OWNER shall not occupy or use any portion of the Work until Substantial Completion of the Project. If OWNER occupies or uses any portion of the Work before Substantial Completion of the Project and without prior approval of DEVELOPER and CONTRACTOR, the portion or portions used or occupied shall be considered complete, finished, accepted and the responsibility of OWNER.

B.    No Partial Use or occupancy of the Work by OWNER shall commence prior to Substantial Completion without a Change Order confirming the responsibility of OWNER for maintenance, utilities, operation of equipment, and security during early Partial Use or occupancy.

C.    If any portion of the Project is used or occupied by OWNER prior to Substantial Completion and if the Project is not completed within the Contract Time, liability of DEVELOPER and CONTRACTOR, for delayed completion shall be reduced by the proportion of the Project used or occupied by OWNER and for the time used or occupied by OWNER prior to Substantial Completion.

## 61 Substantial Completion

A.    When, in the opinion of DEVELOPER and CONTRACTOR, the Work is Substantially Complete, DEVELOPER and CONTRACTOR shall prepare a preliminary Punch List of Work remaining to be done and deliver that Punch List to OWNER'S Representative with a request for evaluation of Substantial Completion. If, in the opinion of OWNER'S Representative, items on the preliminary Punch List are consistent with Substantial Completion, OWNER'S Representative shall conduct an Inspection of the Work to evaluate compliance with the Contract Documents.

B. before OWNER takes possession or occupancy of the Project, DEVELOPER and CONTRACTOR,

shall receive a comprehensive Punch List of discrepancies to be corrected or Work to be finished by CONTRACTOR and a date for completing this Work. DEVELOPER and CONTRACTOR, shall complete and correct items on the Punch List by the designated date.

C. the Punch List given to DEVELOPER and CONTRACTOR, is a complete and final list of Defective or incomplete Work on the Project. OWNER shall be deemed to have accepted Work not on the Punch List. Nothing in this paragraph shall be interpreted as relieving DEVELOPER and CONTRACTOR, of the obligation to meet warranty and call-back obligations.

D.     DEVELOPER and CONTRACTOR, shall annotate the Punch List with: (1) A detailed breakdown of the Work required to complete or correct each item, (2) The Subcontractor or trade responsible for the Work, and (3) The dates Work will commence and be finished on each item. No annotation is required for any item on the Punch List which is beyond the control of DEVELOPER and CONTRACTOR. Failure of CONTRACTOR to furnish a detailed completion Schedule for items on the Punch List shall constitute grounds for withdrawing acknowledgment of Substantial Completion.

E.     OWNER'S Representative will prepare a certificate of Substantial Completion for signature by OWNER and DEVELOPER and CONTRACTOR, when the Project or a specific portion of the Project is ready for occupancy. Except as otherwise provided in the Contract Documents, signing of the certificate of completion shall: (1) Transfer to OWNER responsibility for maintenance, safety, utility expense, controlling access at the site, and (2) Begin running of any warranty or call-back period on the Project.

H. after Substantial Completion, DEVELOPER and CONTRACTOR, shall remain responsible for: (1) Damage caused by DEVELOPER and CONTRACTOR, while completing the Work, and (2) Safety of crews when completing the Work.

## 62     Delivery of Notices

A.     Any written notice required by this contract can be: (1) Delivered by hand at the last known address of the addressee, or (2) Delivered by hand to the addressee or representative of the addressee, wherever found. Notice is effective upon delivery.

B.     Any written notice required by this contract can be: (1) Delivered by enclosing in a stamped envelope addressed to the last known address of the intended recipient and either deposited in a United States Postal Service mailbox or given to a USPS employee, or (2) Consigned to a commercial courier service and addressed to the last known address of the intended recipient. Notice is effective upon delivery if proof of delivery is provided; where no proof of delivery is available, notice is effective 5 Calendar Days after mailing or consignment to a courier service.

**Signatures**

The signatures that follow constitute confirmation by those signing that they have examined and understand the Contract Documents and agree to be bound by the terms of these documents.

DEVELOPER and CONTRACTOR may not begin Work before receiving from OWNER a written notice to proceed. Any Work performed by DEVELOPER and CONTRACTOR before receipt of the notice to proceed shall be done at the risk of DEVELOPER and CONTRACTOR and without obligation of OWNER.

This agreement is entered as of the date written below.

**OWNER Name:** QD-2250 Cherry Road Rock hill SC LLC _____ ,
**OWNER**

_____        09 / 09 / 17
(Signature)                        (Date)

Pun For Li     Manager
(Printed Name and Title)

**DEVELOPER Name:** American Development Partners _____ ,

_____        8/14/17
(Signature)                        (Date)

Manny Butera developer
(Printed Name and Title)

Page 24

**Glossary of Terms**

**Beneficial Occupancy** refers to OWNER'S use of the project premises after Substantial Completion but prior to Final Completion. Beneficial Occupancy may occur when the project or some portion is sufficiently complete and systems operational such that the OWNER could, after obtaining necessary approvals and certificates, occupy and utilize the space for its intended purpose. The time limit for warranties applicable to that portion of the Work begin on the date the OWNER begins Beneficial Occupancy, unless otherwise specified in this Agreement.

**Bond** means the security offered by a licensed surety company which may be used to satisfy a claim of failure to perform obligations undertaken in this Agreement.

**Calendar Day** means any day shown on the calendar beginning at midnight and ending at midnight the following day. Contrast the term Work Day which excludes Saturdays, Sundays and state-recognized holidays.

**Certification of Payment** is acknowledgment by someone not a party to this Agreement that CONTRACTOR is entitled to payment for work completed.

**Change Order** is a written modification of the Contract Price (including all claims for direct, indirect and consequential damages and costs of delay), Time for Completion and Scope of Work under this Agreement. A Change Order, once signed by all parties, is incorporated into and becomes a part of the Contract Documents.

**Claim** means a demand or assertion by one of the parties to this Agreement seeking, as a matter of right, modification, adjustment or interpretation of contract terms, payment of money, extension of time or other relief.

**Code Requirements** means all laws, statutes, regulations, building codes, ordinances, rules, and lawful orders of all public authorities having jurisdiction over OWNER, CONTRACTOR, any Subcontractor, the Project, the Job Site, the Work, or the prosecution of the Work.

**Contract Completion Date** means the day by which the Work must be substantially complete.

**Contract Date** is the day on which the contract becomes binding between CONTRACTOR and OWNER.

**Contract Documents** are this Agreement and all documents incorporated by reference into this Agreement.

**Contract Price** is the amount which will become due in exchange for work performed under this Agreement. Contract Price includes allowances for purchased materials and equipment and may be modified by a Change Order or contract modification. The Contract Price may be paid in one or more installments, including an Initial Payment at or before the start of work, Progress Payments as work is completed, and a Final Payment on final acceptance of the work. Payment Period is the time elapsed

Between applications for progress payments or prior to the first application for progress payment.

**Contract Schedule** is a graphical representation of a practical plan to complete Work within the Contract Time.

**Contract Time** means the period between Date of Commencement and the date of Substantial Completion.

**CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the Work under the terms of this Agreement.

**Defective Work** means construction done under this Agreement that is unsatisfactory, faulty, omitted, incomplete, deficient, or does not conform to the requirements of the Contract Documents, directives of OWNER'S Representative, or the requirements of an inspection, reference standard, test, or approval specified in the Contract Documents.

**Design Professional** means the person, organization or authorized representative who is responsible to the OWNER for design of the Project through preparation of Drawings and Specifications. The term Design Professional may refer to an architect, designer, engineer or landscape architect.

**Drawings** (also called plans or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Drawings include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed Project. A group of drawings adequate to complete construction of the Project may be referred to as a plan set. Drawings can be either paper or electronic media.

**Emergency** means an unforeseen event, combination of circumstances, or a resulting state that poses imminent danger to health, life or property.

**Excusable Delay** means any circumstance which postpones completion of the Work and for which CONTRACTOR is entitled to an adjustment of the Contract Time but not an adjustment to the Contract Price. Contrast Inexcusable Delay which entitles CONTRACTOR to neither an adjustment of the Contract Price nor an adjustment in the Contract Time.

**Extra Work** means any change, interpretation, clarification or correction in the Contract Documents or in applicable law, ordinance or regulation which would increase or decrease the quantity of work, delay, suspend or interfere with the work, require an addition to or omission from the work, change the character, quality or nature of any part of the work or material used in the work, change levels, lines, positions or dimensions of any part of the work, require demolition or removal of any work completed under this Agreement, extend or amend the normal work day, alter the construction schedule or require completion of any part of the work at a time other than provided by this Contract when originally made.

**Final Completion** is the date of OWNER'S acceptance of the Work as fully performed per the

Contract Documents.

**Furnish** means to supply and deliver to the job site.

**General CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking execution of the Work under terms of a Prime Contract.

**Hazardous Materials** means radioactive materials, asbestos, polychlorinated biphenyls, petroleum, crude oil, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, and toxic substances which are restricted, prohibited, or regulated by any agency of government in the manufacture, use, maintenance, storage, Ownership or handling.

**Indemnification** Financial compensation intended to restore someone to their condition before a loss or damage.

**Inspection** is any review of the Project, including a visual review of the Work completed to ascertain compliance with Contract Documents, building codes and construction standards.

**Inspector** is anyone authorized by government or the Design Professional to conduct inspections of contract performance and materials supplied for the Work.

**Install** means to secure in position in compliance with the Contract Documents and includes unloading materials, supplying all necessary equipment and rigs to do the work and performing functional tests which demonstrate fitness for the intended purpose.

**Job Site** is the address or location of the Project.

**Law** means federal or state statutes, municipal ordinances, building codes, regulations adopted pursuant to statute, executive orders, official interpretations, and other rules and directives issued by government.

**Material Supplier** means any manufacturer, fabricator, distributor, material man or vendor who provides material for the Project but does not provide on-site labor.

**Modification** is a written amendment to the Contract signed by both parties.

**OWNER'S Representative** means the person or firm authorized to act and make administrative decisions on behalf of the OWNER during construction. Any notice required to be delivered to the OWNER may be delivered to the OWNER'S Representative. The scope of authority of the OWNER'S Representative is defined in this contract. CONTRACTOR cannot rely on any decision or instruction by OWNER'S Representative that is beyond the representative's defined scope of his authority. Nothing in this contract prevents OWNER from issuing a notice or instructions directly to the CONTRACTOR. The OWNER may change the OWNER'S Representative from time to time and may, if OWNER'S Representative is absent, disabled or otherwise temporarily unavailable, appoint an interim OWNER'S Representative.

**Party (to this contract)** means a person or business organization which has an obligation to perform under the terms of this contract.

**Plans** (also called drawings or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Plans include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed project. A group of plans adequate to complete construction of the Project may be referred to as a plan set. Plans can be either paper or electronic media.

**Prime Contract** is a written agreement between CONTRACTOR and OWNER which binds CONTRACTOR to furnish labor, equipment, or materials or perform certain work for a price to be paid by OWNER.

**Project** means Work to be completed in accord with the Contract Documents. Work at the Job Site may include other projects to be completed by the OWNER or other CONTRACTORs working under other agreements.

**Provide** means furnish and install and includes connecting, testing, and placing in service for the intended use.

**Punch List** is a comprehensive list of incomplete, defective or incorrect Work yet to be completed or which does not comply with Contract Documents. A Punch List may be prepared by the CONTRACTOR, Subcontractor, Design Professional or OWNER. An initial Punch List will be prepared before application for Substantial Completion. A Close-out Punch List will be prepared before Final Completion.

**Requirements** means, in addition to obligations, responsibilities and limitations set out in the Contract Documents, the obligations, responsibilities and limitations imposed by law, rules, orders, ordinances, regulations, statutes, codes and executive orders of governmental authorities or fire rating bureaus.

**Retainage** is a portion of each progress payment temporarily held back or retained by the OWNER. Accumulated retainage is released to CONTRACTOR on satisfactory completion of the work.

**Sample** means a physical example of material; equipment or workmanship intended to be representative of some portion of the Work. When approved, samples establish standards for completion of similar work on the Project.

**Schedule of Values** means the detailed breakdown of cost of materials, equipment and labor necessary to complete the Project as described in the Contract Documents.

**Scope of Work** means the Work as defined by the Contract Documents.

**Separate CONTRACTOR** means a person or firm working under a different contract but on the same site

and at the same time as work will be done under this contract.

**Shop Drawings** are diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data which are prepared by the CONTRACTOR or a Subcontractor, manufacturer, supplier or distributor, and which illustrate or describe some portion of the Work to be completed in compliance with the Contract Documents. Once submitted to the approval authority and approved, Shop Drawings establish standards for completion of work on Project.

**Similar** means having a like kind, quality and characteristics. Similar is not to be construed as meaning identical or by the same manufacturer.

**Specifications** (also called specs) are the part of the Contract Documents which provide descriptions of materials, equipment, construction systems, technique and workmanship to be used on the Project. Specifications are both instructions to be followed by the CONTRACTOR and Subcontractors and a reference for the Building Official to evaluate code compliance.

**Subcontract** is a written agreement between a specialty CONTRACTOR and General CONTRACTOR. Terms of the subcontract require the specialty CONTRACTOR to complete some portion of the work General CONTRACTOR is obligated to perform under another agreement, usually with the OWNER.

**Subcontractor** is any person or business entity under contract to a general CONTRACTOR to perform some portion of the work general CONTRACTOR is obligated to complete under a contract with the OWNER. Subcontractor is an independent CONTRACTOR performing services for another CONTRACTOR rather than for the OWNER. A person or organization providing supplies or materials for the Project but no job site labor is not a Subcontractor.

**Submittals** demonstrate the way by which the CONTRACTOR proposes to conform to the requirements of the Contract Documents. Submittals are shop drawings (diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data) required by the Contract Documents which are prepared for the CONTRACTOR to depict some portion of the Work. Submittals are delivered to the OWNER for approval or disapproval by the OWNER prior to purchase or installation.

**Substantial Completion** means the Project or a designated portion of the Project is nearly in compliance with the Contract Documents and is sufficiently complete to be considered fully operational in all its components and is fit for the intended use. Substantial Completion is reached when a limited number of non-conforming or defective items on a Punch List remain to be completed. Normally, a Project or portion of a Project cannot be considered Substantially Complete until (1) all utilities and services are connected and working, (2) all equipment is installed and in acceptable working condition, (3) additional activity by the CONTRACTOR to correct items on the Punch List will not prevent or disrupt use of the facility, and, (4) a certificate of occupancy has been issued by the appropriate authority.

**Sub-subcontractor** is any person or business entity under contract to a subcontractor or any lower tier subcontractor to perform some portion of the work subcontractor is obligated to complete under a contract with the prime CONTRACTOR. Sub-subcontractors are independent CONTRACTORs

performing services for another CONTRACTOR rather than for the prime CONTRACTOR. A person or organization providing supplies or materials for the Project but no job site labor is not a Sub-subcontractor.

**Superintendent** is the representative of the CONTRACTOR at the job site who is authorized to receive instructions from the OWNER or OWNER'S Representative and who is authorized to direct the performance of work on behalf of the CONTRACTOR.

**Surety** means any qualified individual, firm or corporation other than the CONTRACTOR, which executes a bond to insure its acceptable performance of the contract.

**Tier** refers to the contractual level of a person or business organization doing work on the Project. A first-tier subcontractor has a contract with the general CONTRACTOR but not the OWNER. A second-tier subcontractor has a contract with another subcontractor but not with the general CONTRACTOR or the OWNER.

**Work** means all labor, material, equipment, tools, transportation, permanent and temporary utilities, connections, provisions for safety and management services required to complete the Project in compliance with the Contract Documents. Work may constitute the whole or a part of the Project. Work is to be performed in a safe, expeditious, orderly and professional manner in keeping with current standards of the industry. Work includes everything that is or should be evident to a skilled construction professional after careful examination of the Contract Documents and the Job Site.

**Work Day** means any day, excluding Saturdays, Sundays and state-recognized holidays, shown on the calendar beginning at midnight and ending at midnight the following day.

**EXHIBIT "D"**



**American Development Partners Development Contract**

This agreement is made on the date written above our signatures between
DEVELOPER Name: **REDSTONE LLC DBA American Development Partners** (DEVELOPER) and
OWNER Name: CHC-2015 NORTH WICKHAM ROAD MELBOURNE FL LLC (OWNER).

**DEVELOPER**
DEVELOPER Name: **REDSTONE LLC DBA American Development Partners**
Address: 6004 Cody Cove
City: Spring Hill, State: TN Zip: 37174
Work Phone Number: (615) 818-6982
Email Address: manny@americandevelopmentpartners.com
DEVELOPER Name: **American Development Partners** will be referred to as DEVELOPER throughout this agreement.

**CONTRACTOR**
**CONTRACTOR INFORMATION:**
Address: Phone Number: (615) 330-0629
Email Address: llynp@built-more.com
License Number: 00057609

CONTRACTOR Name: Built-more LLC will be referred to as CONTRACTOR throughout this agreement.

**OWNER**
OWNER Name: CHC-2015 NORTH WICKHAM ROAD MELBOURNE FL LLC, 14103 Chinkapin Drive, Rockville MD 20850 ATTENTION – Mr. Pun For Li
OWNER Name: CHC-2015 NORTH WICKHAM ROAD MELBOURNE FL LLC will be referred to as OWNER throughout this agreement.

**1    Project Description**

A.   For a price identified below, DEVELOPER agrees to complete a new commercial building (identified as the Project in this agreement) for OWNER.

B.   For the Contract Price identified below, DEVELOPER agrees to complete a new commercial building consisting of approximately 1850 sq. ft. +/- square feet of air-conditioned space and 300 square feet of a connected outdoor patio used as a Church's Chicken Restaurant (identified as the "Project" in this Agreement), for TENANT's use and OWNERS ownership on the Land in accordance with the plans

C.   The term "Total Build Cost" shall mean the aggregate of (1) the Total Project Cost, (2) the

Contract Price, (3) the Contingencies of the Project, (4) the cost of the Work and the Extra Work, (5) other costs, charges and fees under this Agreement (collectively, the "Other Agreements") (the Other Agreements shall include but not be limited to any contractor or subcontractor agreements and the cost of all materials and labor).

D.    The term "Budget" shall mean the Total Build Cost less the cost to acquire the Land.

E.    The term "Property" shall mean the Land and all improvements thereon including but not limited to the Project.

F.    Contract Price / OWNERS Cost Cap / Developer

G.    DEVELOPER shall earn in addition to any other charges specified in this agreement, OWNER agrees to pay a 10% development fee for completing the Work described as the Project. DEVELOPER fee is paid off total project cost that includes land / building, construction and all numbers that are used to factor total project cost.

H.    Notwithstanding any contrary provision in this Agreement or otherwise, OWNERS maximum monetary liability under this Agreement and for the Project towards all amounts, including but not limited to the Total Build Cost, shall not exceed, and shall be capped at, the sum of: (**$2,375,796.50) said amount referred to as the (OWNERS GROSS MAX)**.  Notwithstanding any contrary provision in this Agreement or otherwise, DEVELOPER shall be solely responsible under this Agreement and to OWNER, for any projects overruns that are above the gross max number provided to OWNER.

## 2   Contract Price

I.    DEVELOPER shall earn and OWNER agrees to pay a development fee of 10% of total project cost in addition to any other charges specified in this agreement. In addition to any other charges specified in this agreement, OWNER agrees to pay DEVELOPER **$215,981.50 development fee for** completing the Work described as the Project.

## 3 Contingency Budget

II.    It is identified and agreed to by OWNER that DEVELOPER has an estimated budget of **5 %** of project cost for "contingencies". CONTRACTOR will submit to DEVELOPER a "change order" for approval by DEVELOPER and OWNER any proposed change order. Contingencies are limited to change orders due to error or omission by a licensed architect after plans were received and reviewed by contractor, all state or federal codes changes that were mandated after contractor received stamped plans and or building permit.

## 4 Scheduled Start of Construction

A.    Work under this agreement will begin within 5 Calendar Days after the following contingencies have been met.

1.    Complete Plans and Specifications have been approved and initialed by both OWNER, DEVELOPER and CONTRACTOR.

2.    OWNER has shown proof of funds or other financing acceptable to DEVELOPER.

3.    DEVELOPER has obtained all architectural approvals from any franchise and or corporate authorities.

4.     OWNER has furnished DEVELOPER with evidence of Ownership of the property satisfactory to DEVELOPER.

5.     All appropriate building permits have been issued.

6.     DEVELOPER has received written notice from the lien holder or the title company insuring lien holder's security interest in the property that all documents required to be recorded prior to the commencement of construction have been properly recorded.

7.     The contract has been signed by OWNER, DEVELOPER and CONTRACTOR.

## 5 Scheduled Completion of Construction

A.     Work under this agreement will be Substantially Completed within 125 Calendar Days after the date construction begins (building permit is issued) however it is understood and will go without penalty for acts that our outside of the control of the DEVELOPER and CONTRACTOR.

## 6 Documents Incorporated

A.     The Glossary of Terms which follows our signatures is incorporated into this contract as though included in full as part of this agreement.

B.     This agreement incorporates by reference certain documents which define and describe the Work to be done. The following documents are incorporated as though included in full as part of this agreement.

## 7 Ownership of Plans

A.     All Plans, Drawings, Specifications and other documents prepared by or for OWNER for use under this agreement will be paid for and are the property of DEVELOPER and remain the property of DEVELOPER. Plans, Drawings and Specifications, whether in paper or electronic form, prepared for use in construction under this agreement shall not be modified or used on any other project without written consent of DEVELOPER. DEVELOPER shall hold harmless and Indemnify OWNER from and against all Claims, actions, suits, costs, damages, losses, expenses and attorney's fees arising out of use of the Project Plans, Drawings, or Specifications for any purpose other than construction to be completed under this agreement. DEVELOPER, CONTRACTOR and Subcontractors are granted a limited license to use and reproduce applicable portions of the Plans, Specifications and Drawings as required for construction under this agreement. All copies made under this license shall bear a notice showing OWNER as copyright holder. DEVELOPER may retain one record set of the Plans, Drawings and Specifications. All other sets shall be accounted for by DEVELOPER and CONTRACTOR and returned to OWNER. Submittal or distribution of Project Plans, Drawings or Specifications to meet Official Regulatory Requirements is not to be construed as publication in derogation of the rights of OWNER.

## 8 Plans on Site

A.     DEVELOPER and CONTRACTOR will keep a full set of Project Plans available on-site to authorized personnel during the period of construction.

## 9 Documents Supplied to CONTRACTOR

A.     OWNER will furnish to DEVELOPER and CONTRACTOR at no cost (this is part of total project cost)

1.     A full set of Plans and Specifications for all trades in electronic format.

2.     DEVELOPER and CONTRACTOR will distribute Contract Documents as required by Subcontractors.

## 10 Scope of Work

A.    DEVELOPER and CONTRACTOR shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Project in compliance with the Contract Documents.

B.    Develop and CONTRACTOR are responsible for coordination of the various trades and deliveries of equipment, materials and supplies to minimize interference which could delay the Work or pose a hazard to life or property. DEVELOPER shall be responsible for allocation of tasks between trades and will be the final authority on location and routing of equipment and storage of materials on the Job Site.

C.    DEVELOPER will ensure that Subcontractors, their agents, and employees adhere to these Contract Documents. DEVELOPER and CONTRACTOR accepts responsibility for all Work performed under this contract, including Work performed by employees of Subcontractors.

D.    CONTRACTOR shall provide on the Job Site during the period of construction a temporary chemical toilet or water closet which shall be serviced no less than weekly. Upon completion of the Project, CONTRACTOR will remove temporary toilet facilities from the site.

E.    DEVELOPER and CONTRACTOR shall provide temporary elevators and lifts as may be required by construction personnel, including Subcontractors, Material Suppliers, Inspectors, and Representatives of OWNER. Elevators and lifts will comply with all federal, state and local Laws and ordinances in effect at the Job Site. Upon completion of the Project, DEVELOPER and CONTRACTOR will dismantle and remove temporary elevators and lifts.

F.    DEVELOPER and CONTRACTOR shall develop and present to OWNER for approval (which shall not be withheld unreasonably), a site logistics plan drawn to scale, showing proposed secure and fenced areas, locations and types of temporary barricades, material storage and staging areas, property entrances used for material deliveries, and special material or equipment storage Requirements. This plan will include a description and proposed location for any temporary office, storage trailer, sanitary facilities, and parking for construction personnel.

## 11 Submittals

A.    Architectural Drawings will indicate in detail all parts of the building components, Installation details, and coordination with Work of other trades or other CONTRACTORS. Architectural Drawings for structural steel, timbers and pre-cast concrete will include engineering calculations, fabrication details and erection Drawings that show physical characteristics, dimensions, shapes, inserts, attaching points and methods, and other information required for manufacture, assembly and erection, in compliance with the Contract Documents.

B.    Approval by OWNER'S Representative does not relieve DEVELOPER and CONTRACTOR of responsibility for compliance with the Contract Documents except as follows: If a Submittal does not comply with Contract Documents, DEVELOPER and CONTRACTOR will attach to the Submittal, prior to approval, a written request for variation showing the change in Contract Price and Contract Time, if any, that will result from the variation. If OWNER'S Representative approves a Submittal which includes a written request for a variation and which requires a change in the Contract Price or Contract Time, OWNER'S Representative will issue a contract Modification confirming the change. If OWNER'S Representative approves a Submittal with a written request for a minor variation which does not require a change in the Contract Price or Contract Time, no contract Modification is needed. A minor variation is anything which does not materially alter the quality or performance of the Work. Approved variations are subject to all terms of this agreement and without prejudice to any rights granted to OWNER'S Representative under a Surety Bond.

C.    DEVELOPER and CONTRACTOR is entitled to expect that corrections to Submittals by OWNER'S Representative be clearly noted and easily understood so that prompt resubmission is possible without further instructions from OWNER'S Representative.

D.    OWNER'S Representative will review Submittals and notify DEVELOPER and CONTRACTOR of approval or rejection within **2** Calendar Days of receipt.

E.    OWNER'S Representative will review Submittals of DEVELOPER and CONTRACTOR for conformance with Requirements of the Contract Documents and will approve or take other appropriate action upon those Submittals.  OWNER'S Representative will advise DEVELOPER and CONTRACTOR of any errors or omissions which OWNER'S Representative may detect during this review. Submittals approved by OWNER'S Representative become additions to the Contract Documents and can be relied on by DEVELOPER and CONTRACTOR in completing the Work. Nothing in any approved Submittal shall be interpreted to limit DEVELOPER and CONTRACTOR in selection of the means, method, technique, sequence or procedure of construction.

## 12 Record Documents

A.    DEVELOPER and CONTRACTOR will note on a record set of Project Drawings any Work done that is not shown on the original Plans and not described in other Contract Documents. The record set of Project documents will be delivered to OWNER at the same time as final payment is requested.

## 13 Job Site Safety

A.    DEVELOPER and CONTRACTOR will always take all reasonable precautions for the safety of employees and the public at the Job Site and will comply with all applicable safety Laws and regulations of federal, state, and local authorities (including building codes) and safety Requirements of OWNER.

## 14    Hazardous Materials Used in Construction

A.    Except as provided elsewhere in the Contract Documents, CONTRACTOR is responsible for all Hazardous Materials brought to the Job Site by CONTRACTOR or Subcontractors.

## 15    Hazardous Materials Discovered on Site

A.    Except as provided elsewhere in the Contract Documents, OWNER is responsible for all Hazardous Materials discovered on the Job Site so long as those materials were not brought on the Job Site by CONTRACTOR, Subcontractors, or anyone directly or indirectly employed by them. Nothing in this paragraph shall relieve DEVELOPER and CONTRACTOR from liability for negligence in handling or removing hazardous materials as required under the terms of this agreement.

B.    Except as provided in the Contract Documents or as agreed by mutual consent, DEVELOPER and CONTRACTOR shall not be required to perform Work relating to asbestos, polychlorinated biphenyl (PCB), radioactive material, toxic mold or any other Hazardous Material.

C.    OWNER shall defend, Indemnify and hold harmless DEVELOPER  and CONTRACTOR from and against all loss, liability, claims, costs, damage and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from the discovery or existence of Hazardous Material on the Job Site, whether or not identified in the Contract Documents, provided such loss, liability, costs, damage and economic detriment is not the result of any negligent act or omissions of DEVELOPER and CONTRACTOR, Subcontractors or anyone directly or indirectly employed by them. Indemnification by OWNER under this paragraph shall apply even if OWNER is in no way responsible for the loss to DEVELOPER and CONTRACTOR.

## 16    Compliance with Law

A.      CONTRACTOR and OWNER mutually commit to use reasonable care to meet the Requirements of state, federal and local Law when discharging their responsibilities under this agreement.

B.      If DEVELOPER and CONTRACTOR observe that Drawings, Specifications, or other Contract Documents do not comply with applicable Law, DEVELOPER and CONTRACTOR shall promptly notify OWNER or OWNER'S Representative of the variance. Any changes made to the Contract Documents because of this notice shall be handled in the form of a Change Order under this agreement.

C.      DEVELOPER and CONTRACTOR shall bear none of the cost of correcting Work completed per Contract Documents but not in compliance with Law if CONTRACTOR did not know that Contract Documents or instructions from OWNER or OWNER'S Representative did not comply with the Law.

D.      If Law enacted after the Contract Date changes the Scope of Work under this agreement, DEVELOPER and CONTRACTOR and OWNER will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

## 17      Layout

A.      DEVELOPER and CONTRACTOR shall be responsible for alignment and elevation of the Work and will set grade stakes, batter boards, and other working points, lines and elevations required to complete the Project as described in the Contract Documents.

## 18      Permits and Fees

A.      DEVELOPER and CONTRACTOR shall secure all permits, licenses and renewals required by government authority to complete construction of the Project. If permits are required for Subcontracted Work, Subcontractors will secure those permits. OWNER may request a copy of each permit, license and renewal issued by government authority for the Project. All permits and fees are considered a fee that is enclosed in the project plan.

B.      Project budget will include the building permit fee, Plan check fee, and charges levied by government for testing, Inspection and Re-Inspection of the Project. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

C.      Except as provided elsewhere in this agreement, Project budget  will include all fees and application charges imposed by government authority, including, but not limited to, grading permit fees, drainage permit fees, traffic control charges, thoroughfare charges, impact fees, special district fees, sewer fees, water fees, planning fees, school fees, elevator permit fees, charges for temporary access or use of the public right of way, and charges for document processing, hearings, and certifications. Project budget will also pay all fees and application charges imposed by any association of property OWNERs having authority over the Job Site. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

D.      Except as provided elsewhere in this agreement, Project budget will include all application fees and connection charges imposed by utility companies or government agencies for bringing service to the Job Site, and for connecting gas, water, electricity, phone, cable, sewer, and drainage lines. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

E.      Except as provided elsewhere in this agreement, Project budget will include all approvals for the

Project that are required by government authority, including planning, easements, remediation, environmental, and zoning approvals. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## 19    Taxes

A.     If any federal, state or local tax rate increases or if any new federal, state or local tax is imposed, whether by Law, regulation, or interpretation, between the Contract Date and Substantial Completion, the Contract Price shall be increased by the additional tax levied on DEVELOPER and CONTRACTOR but only to the extent that the change in rate or new tax could not have been reasonably foreseen on the Contract Date. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## 20    Temporary Utilities

A.     DEVELOPER and CONTRACTOR have budgeted for all costs associated with use of temporary utilities on the Job Site during construction, including application fees, permits, engineering, and metered service for water, electric power, heating and cooling. Temporary utility systems provided by DEVELOPER CONTRACTOR shall be designed and installed to protect the public and construction personnel and conform to applicable Laws and Regulations.

B.     Utility services shall be re-listed in the name of future building occupant on the Calendar Day following Substantial Completion.

## 21    Permanent Utilities

A.     Project budget shall include Installation, connection, and modification of permanent electric, water, phone, cable, sewer and gas service as required for the completed Project. It will not include any deposits that will be paid by building occupant

## 22    Job Cleanup

A.     DEVELOPER and CONTRACTOR shall regularly remove from the Job Site and storage areas all surplus material, waste and debris resulting from the Work. Construction debris shall be removed to a legal refuse collection site with disposal or recycling fees included in Project budget. At completion of the Work, DEVELOPER and CONTRACTOR shall, in addition, remove from the Job Site all tools, equipment and scaffolding brought to the Job Site by DEVELOPER and CONTRACTOR or Subcontractors. At Substantial Completion, exposed finishes of windows, doors, floors, walls, ceilings, fixtures and trim shall be cleaned and free of grime, stains, over spray, dirt and dust.

B.     DEVELOPER and CONTRACTOR shall provide a trash disposal facility on the Job Site for use by construction personnel. The on-site trash facility provided by DEVELOPER and CONTRACTOR shall be of an appropriate size for the Project and placed in a location approved by OWNER. All construction debris shall either be placed in the trash facility provided by DEVELOPER and CONTRACTOR or hauled to a legal disposal site, at the discretion of DEVELOPER and CONTRACTOR. When any trash container provided by DEVELOPER and CONTRACTOR is full, contents shall be removed to a legal disposal facility at the expense of CONTRACTOR.

## 23    Project Sign

A.     DEVELOPER and CONTRACTOR shall have the right to fabricate and erect a Project sign bearing

the name of the Project, Prime CONTRACTOR, principal Subcontractors, designers, consultants, lead lender, a short Project description, and expected Completion Date. CONTRACTOR may erect directional signs at the Job Site with approval of OWNER with respect to size, style and location. Directional signs may bear the name of CONTRACTOR and a directional symbol. No other signs will be permitted except by permission of OWNER.

## 24    Project Superintendent

A.     DEVELOPER and CONTRACTOR shall employ a competent Superintendent and any necessary assistants or alternates that will be at the job site from start to finish of project. The Superintendent shall not be changed unless the Superintendent is discharged by DEVELOPER and CONTRACTOR. The Superintendent shall have authority to represent DEVELOPER and CONTRACTOR in all matters relating to the Project. Communications with the Superintendent shall have the same force and effect as direct communication with DEVELOPER and CONTRACTOR.

## 25    OWNER'S Responsibilities

A.     OWNER affirms that OWNER has the right to enter this agreement and has the right to contract for construction of the Project on the Job Site. OWNER shall pay all taxes and assessments due on the Job Site during the period of construction and shall take all reasonable actions required to protect marketable title to the Job Site. OWNER is responsible for all standard responsibilities that a property OWNER / landlord would have.

B.     OWNER will ensure that OWNER'S Representative responds in writing and with reasonable promptness to written requests from DEVELOPER and CONTRACTOR for (1) interpretation of the Plans or Specifications, or (2) other information relevant to completion of the Work. DEVELOPER and CONTRACTOR are authorized to rely on written responses from OWNER'S Representative.

C.     OWNER shall have sole responsibility to secure financing for the Project and shall pay all fees, charges, or other costs of such financing, including Inspection fees charged by any lender. The nonperformance of any lender shall not affect the obligation of OWNER to DEVELOPER and CONTRACTOR. OWNER hereby authorizes and directs any lender on the Project to furnish DEVELOPER and CONTRACTOR with full information on undisbursed proceeds when requested by DEVELOPER and CONTRACTOR. Proof of funds must be made available to DEVELOPER prior to project starting.

D.     OWNER will not interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by DEVELOPER and CONTRACTOR or Subcontractors except as provided under this agreement.

## 26    Construction by Others

A.     OWNER shall neither hire nor retain Separate DEVELOPER and CONTRACTOR, Subcontractors, employees or agents of OWNER to perform Work on the Job Site while Work is being done under this agreement by DEVELOPER and CONTRACTOR.

## 27    Authority of OWNER'S Representative

A.     OWNER'S Representative has authority to administer the contract, make construction decisions on behalf of OWNER, and is the primary authority on issues of compliance with the Drawings and Specifications, quality of workmanship, materials used, manner of performance, and rate of progress on the Project.

B.      After the Contract Date, OWNER shall make no change in the responsibilities or authority of OWNER'S Representative without consent of DEVELOPER and CONTRACTOR.

C.      OWNER'S Representative shall have the right to visit the Project and view Work in progress at any time. Any Defective Work found or suspected, either as the result of a site visit or otherwise, shall be reported promptly to DEVELOPER and CONTRACTOR. No actions taken or statements made during site visits shall relieve DEVELOPER and CONTRACTOR of obligations described in the Contract Documents.

D.      Communication between DEVELOPER and CONTRACTOR and OWNER shall be initiated through OWNER'S Representative unless direct communication is required by Law or Contract Documents. Unless otherwise authorized by DEVELOPER and CONTRACTOR, communications between OWNER'S Representative and Subcontractors or Material Suppliers shall be through DEVELOPER and CONTRACTOR.

E.      OWNER'S Representative shall have the authority to reject and order removed any portion of the Work which does not conform to the Contract Documents.

F.      OWNER'S Representative shall have authority to conduct Inspections about Beneficial Occupancy and to determine the dates of Substantial Completion.

## 28      Representations by DEVELOPER and CONTRACTOR

A.      DEVELOPER and CONTRACTOR shall use skill and attention to complete the Work in a timely manner consistent with the Contract Documents.

B.      OWNER has reported to DEVELOPER and CONTRACTOR all conditions known to OWNER which may not be apparent to CONTRACTOR and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the Job Site, unsuitable soil conditions, prior Defective Work of others, latent Defects in the Plans or Specifications, earlier attempts to do Similar or related Work, and obligations imposed by government.

## 29      Disclaimer by OWNER, Reliance by CONTRACTOR

A.      OWNER has provided DEVELOPER and CONTRACTOR with information on subsurface or concealed conditions at the Job Site. Except to the extent that DEVELOPER and CONTRACTOR knows this information to be false, DEVELOPER and CONTRACTOR is entitled to rely on the accuracy of this information.

## 30      Discrepancy between Plans and Field Conditions

A.      DEVELOPER and CONTRACTOR is not a Design Professional and have no obligation to find discrepancies between Job Site conditions and representations or Requirements in the Contract Documents.

B.      DEVELOPER and CONTRACTOR shall not be liable for discrepancies between representations or Requirements in the Contract Documents and conditions at the Job Site unless DEVELOPER and CONTRACTOR knowingly fails to report a discrepancy, in which case DEVELOPER and CONTRACTOR shall be liable for additional costs incurred because of failure to give prompt notification.

C.      If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information

provided by OWNER, DEVELOPER and CONTRACTOR shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall submit a Claim for a Change Order which covers the additional cost incurred because of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

### 31     Use of the Site

A.     OWNER has agreed to furnish all required rights to use the land upon which the Work is to be constructed. OWNER will identify any encumbrances or restrictions related to use of the land furnished and DEVELOPER and CONTRACTOR agrees to comply with those encumbrances or restrictions. If OWNER fails to furnish the land, rights of way, or easements when required, DEVELOPER and CONTRACTOR may make a Claim for extra compensation, additional time, or other relief.

B.     OWNER shall designate a construction entrance which DEVELOPER and CONTRACTOR shall use for all delivery of materials and equipment and which shall be used by all construction personnel.

### 32     Draw Schedule

OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:

**OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:**

**Momentum draw - 10% of the Budget within three (3) Business Days following the closing on land, building or execution of this development contract.  Momentum draw will include all developer's pursuit cost, project soft cost, developer fee and necessary local, state and or federal permitting fees to start the project.**

**Draw 1 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following the commencement of the Work.**

**Draw 2 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 1.**

**Draw 3 - 20% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 2.**

**Final Draw – 10% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request includes a copy of all executed lien releases and final payment affidavits (from CONTRACTOR, Subcontractors and others) being submitted to the clerk of court and recorded in the public records and a copy of the permanent Certificate of Occupancy issued for the Project.**

It is agreed by OWNER and or FUNDING SOURCE that all payments will be made to DEVELOPER. DEVELOPER will disburse funds in a timely manner. The afore mentioned budget that is supported by the GMAX clause is considered total project budget and the DEVELOPER will disburse funds per DEVELOPERS discretion.  No third-party title company will be granted permission to disburse funds to any company or individual on behalf of funding group. Each application for payment shall be submitted

on the form approved by OWNER.

**Discharge of Liens and Payment of Subcontractors**

1.     DEVELOPER and CONTRACTOR warrants that, upon payment, OWNER shall receive clear title to all Work identified in the application for payment, free and clear of all liens and Claims, including Claims of Subcontractors, employees or Material Suppliers. CONTRACTOR also agrees that this vesting of title in OWNER does not impose any obligation on OWNER or relieve CONTRACTOR from any obligation under this contract. CONTRACTOR shall remain responsible for damage to or loss of both the Work and stored materials until Completion.

2.     DEVELOPER and CONTRACTOR warrants and guarantees that no Work, materials, or equipment covered by a request for payment has been acquired by DEVELOPER and CONTRACTOR or by any other person performing the Work or furnishing materials or equipment for the Project subject to an agreement under which an interest therein, or an encumbrance thereon, has been retained by seller or otherwise imposed by CONTRACTOR.

3.     DEVELOPER and CONTRACTOR shall furnish, with each application for payment, executed waivers of liens from DEVELOPER and CONTRACTOR and each Subcontractor and Material Supplier to the Project in the amount of the application for payment. Waivers of liens shall be in a form satisfactory to OWNER, title insurer, and lenders.

4.     DEVELOPER shall disburse funds received from OWNER among DEVELOPER and CONTRACTOR, subcontractors and material suppliers in proportion to the work done and materials received for the project during the pay period.

## 35     Interest

A.     Payments due and not paid under the Contract Documents shall bear interest from the date payment is due at a monthly rate of **10** percent.

B.     Payment of interest does not abrogate or replace any other rights DEVELOPER and CONTRACTOR may have under this agreement.

## 36     Final Payment

A.     DEVELOPER and CONTRACTOR will apply for final payment and will notify OWNER'S Representative when the work has been completed. OWNER'S Representative will issue a certificate of completion on determination that the Project is complete and in compliance with the Contract Documents. When the certificate of completion is issued, the entire unpaid balance of the contract amount, including any retainage, is payable to DEVELOPER.

B.     Making of final payment constitutes waiver of all Claims by OWNER against DEVELOPER and CONTRACTOR except those Claims previously made in writing and delivered to DEVELOPER and CONTRACTOR and those obligations otherwise provided by this agreement or by operation of Law.

C.     The acceptance of final payment by CONTRACTOR constitutes a complete and unconditional waiver and release of any and all Claims by CONTRACTOR of whatever nature, and regardless of whether they are then known or unknown, and a complete and unconditional release of OWNER, and every person for whom OWNER is responsible, for any and all matters related to the contract or otherwise, except those Claims which have been made in writing and identified by CONTRACTOR as not having been settled at that time.

## 37   Changes in the Work

A.     Except as required by changes in the Prime Contract between OWNER and DEVELOPER, no

change to this contract (including Modification, clarification, interpretation or correction of the Plans or Specifications) shall be made without agreement and a written Change Order signed by DEVELOPER and CONTRACTOR and OWNER identifying the change, the cost of the change, and the effect on Project Schedule, if any.

B.     Any change in Plans, Specifications or Contract Documents necessary to conform to existing or future Laws, codes, ordinances or regulations shall be considered Extra Work.

C.     Changes in the Work required due to defects or inconsistencies in Plans or Specifications or other Contract Documents shall be considered Extra Work.

D.     The charge for Extra Work shall be the normal selling price DEVELOPER and CONTRACTOR charges for similar changes on other jobs.

E.     Failure of DEVELOPER and CONTRACTOR and OWNER to agree on the terms of a Change Order shall be resolved under the provisions of this agreement which cover Claims and disputes.

F.     Should DEVELOPER and CONTRACTOR and OWNER fail to agree promptly on the terms of a Change Order, DEVELOPER and CONTRACTOR shall be paid, pending resolution of the dispute, the portion of the cost of the change not in dispute, including the costs of time and materials required to execute the change. Payments required under this paragraph shall be made as the Work progresses, concurrently with progress payments.

## 38     Cooperation of the Parties

A.     OWNER and DEVELOPER acknowledge that open communication and cooperation will be required to complete the Project on time, as estimated, and in compliance with the Contract Documents. DEVELOPER and OWNER each agree to identify a representative who will be available to resolve minor problems, answer questions and reach mutually acceptable solutions. The individuals identified by DEVELOPER and OWNER shall try to reach informal agreement on problems as they arise but are under no obligation to do so.

B.     Both DEVELOPER and OWNER pledge that their relations will be conducted with courtesy and consideration in an environment characterized by mutual respect. OWNER pledges to respond promptly to requests by DEVELOPER for guidance, assistance and payments when due and agrees to extend to DEVELOPER the deference and latitude a dedicated professional deserves. CONTRACTOR pledges to commit the skill and resources required to complete the Project in a manner that complies with both the letter and spirit of the Contract Documents and enhances the reputation of DEVELOPER and for dependability and professionalism.

## 39     Warranty

DEVELOPER and CONTRACTOR warrant that the Work shall be free of Defects due to faulty material or workmanship for the period specified in this agreement.

## A.     General Requirements

1.     Except as otherwise provided in this agreement, the warranty period shall begin from the date of Completion for 12 months.

2.     Work done by CONTRACTOR in compliance with warranty provisions of this agreement does not extend the period of the warranty.

3.     DEVELOPER and CONTRACTOR shall deliver to OWNER all warranties provided by vendors and manufacturers of materials and equipment used to complete the Project. DEVELOPER and CONTRACTOR shall have no obligation under warranties provided by others except to render any

assistance that OWNER may require in enforcing the terms of those warranties.

4.      Except as provided in this agreement, and to the extent permitted by Law, DEVELOPER and CONTRACTOR disclaims all warranties, whether express or implied, whether of fitness for purpose, merchantability, habitability or workmanlike completion.

5.      Failure of OWNER to give notice of a breach of warranty within the warranty period constitutes a waiver of the right to repair or replacement by DEVELOPER and CONTRACTOR.

6.      To make a warranty Claim under this agreement, OWNER must send a clear and specific written complaint to DEVELOPER and CONTRACTOR at the following address within 60 Calendar Days of discovering Defects, unless otherwise specified in the list of items covered under this warranty. DEVELOPER and CONTRACTOR shall make repairs, replacements and corrections promptly and at no expense to OWNER.

**B.      Exclusions from Warranty**

1.      The warranty provided by this contract does not cover any of the following items or conditions:

I.      Damages to private property or bodily injury.

II.      Damages or losses that result from soil movement that is covered by insurance or that is compensated for by legislation.

III.      Insect damage.

IV.      Damage or losses that result from overloading of any floor, wall, ceiling, or roof beyond the design capacity.

V.      Damages caused or made worse by:

A.      Changes, additions, deletions, or any other alterations made to any part of the structure by anyone other than DEVELOPER and CONTRACTOR after the warranty term begins.

B.      Loss that results from failure of OWNER to take timely action to mitigate or minimize damage.

2.      DEVELOPER and CONTRACTOR has no liability for incidental or consequential damages from breach of any warranty provided by this agreement insofar as the loss claimed is covered by insurance of OWNER or for which OWNER has a right of recovery from any other party.

**C.      Basic Warranty Coverage**

1.      It is a breach of warranty if any material or design furnished, or workmanship performed by DEVELOPER and CONTRACTOR or any Subcontractor or Material Supplier, is found to be defective during the first year.

**D.      Warranty on Major Structural Damage**

1.      It is a breach of the major structural damage warranty where there is actual physical damage to designated load-bearing portions of the structure caused by the failure of such designated portions to perform to their load-bearing functions to the extent that it makes the structure unsafe, uninhabitable, or unsanitary during the first 12 months. The following items are designated load-bearing portions:

I.      Foundation Systems and Footings

II.      Beams

III.      Girders

IV.    Lintels

V.    Columns

VI.    Walls and Partitions

VII.    Floor Systems

VIII.    Roof Framing Systems

**40    DEVELOPER and CONTRACTOR Claims**

A.    If DEVELOPER and CONTRACTOR claims that any instruction, Drawing, act or omission of OWNER or any representative of OWNER, or any agency of government, increases costs to DEVELOPER and CONTRACTOR, requires extra time or changes the Scope of Work, CONTRACTOR shall have the right to assert a Claim for such costs or time.

**41    Notice of Claims**

A.    No Claim by DEVELOPER and CONTRACTOR shall be considered unless DEVELOPER and CONTRACTOR provide OWNER or OWNER'S Representative with a notice that there will be a Claim for additional compensation or an extension of time. This notice of Claim shall be made no less than 5 Calendar Days after DEVELOPER and CONTRACTOR recognizes or should have recognized that circumstances exist which support such a Claim. The notice of Claim shall include: (1) The date of the notice, (2) The date the basis for the Claim was discovered, (3) The circumstances that support the Claim, and (4) The estimated additional cost to OWNER or additional time required to complete the Project.

B.    If the Claim involves Extra Work, DEVELOPER and CONTRACTOR shall maintain detailed records which show each expense incurred, including payroll records and receipts for Subcontracted Work, materials and equipment. These detailed records shall be made available to OWNER for verification while Work subject to the Claim is being performed.

C.    The amount Claimed by CONTRACTOR shall be calculated in accord with provisions in this contract on charges for Extra Work.

**42    Arbitration**

A.    Any controversy or Claim arising out of or relating to this contract or contract warranty or the breach thereof which cannot be resolved by mediations shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

B.    Two copies of the demand for arbitration and attachments and the related fee shall be filed with the appropriate regional office of the American Arbitration Association. Copies of the demand and attachments shall be given to all other Parties to the dispute. The demand for arbitration shall be made within a reasonable time after the Claim or dispute has arisen, and in no event after the date when institution of legal or equitable proceedings based on such Claim or dispute would be barred by the applicable statute of limitations.

C.    DEVELOPER, CONTRACTOR and OWNER agree to include in each contract for construction or design services on the Project a clause which requires that disputes under that contract be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules.

D.    Any representative of OWNER or consultant to OWNER or DEVELOPER and CONTRACTOR or any Subcontractor to DEVELOPER and CONTRACTOR on the Project shall have the same rights in any

arbitration proceeding as are afforded by arbitration rules to DEVELOPER and CONTRACTOR and OWNER. If more than one demand for arbitration is made by a Party with respect to the Project, all such Claims shall be consolidated into a single arbitration unless the Parties otherwise agree in writing.

E.     If a Claimant in arbitration recovers less than 50 percent of the amount demanded in arbitration, DEVELOPER and CONTRACTOR and OWNER agree that the Claimant shall pay all costs in arbitration, including the arbitrator's fees and the attorney's fees of the opposing Party.

### 43.     Insurance

**A.     Certificates of Insurance**

1.     DEVELOPER and CONTRACTOR shall provide to OWNER a certificate of insurance for each insurance policy required by this agreement. These certificates shall list OWNER as the certificate holder.

2.     Certificates of insurance shall be issued on a standard form

3.     DEVELOPER and CONTRACTOR shall permit no Subcontractor to begin Work on the Project until OWNER has received certificates of insurance demonstrating that the Subcontractor has coverage of a like kind and with comparable limits to insurance coverage required of DEVELOPER and CONTRACTOR under this agreement.


**B.     Waivers of Subrogation**

1.     OWNER and DEVELOPER and CONTRACTOR waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance except such rights as may exist to the proceeds from insurance held by OWNER as trustee. DEVELOPER and CONTRACTOR shall require similar waivers in Subcontracts for the Project.

**C.     Insurance Details**

1.     If insurance policies meeting the Requirements of this contract are not generally available to DEVELOPER and CONTRACTOR.  DEVELOPER and CONTRACTOR may provide substantially similar coverage and shall so notify OWNER in writing.

2.     DEVELOPER and CONTRACTOR may satisfy the policy limits set by this contract through any combination of underlying and excess liability (umbrella) insurance so long as the total coverage is not less than the policy limits specified in this contract. Any excess liability (umbrella) insurance coverage provided by CONTRACTOR must be written on an occurrence basis, offer coverage at least as broad as the underlying insurance, and have concurrent effective dates. Excess liability (umbrella) insurance provided by DEVELOPER and CONTRACTOR shall provide additional insured endorsements, blanket contractual coverage, and punitive damages coverage (unless prohibited by Law).

**D.     Liability Insurance**

1.     As an alternative to including OWNER as an additional insured under a comprehensive general liability policy, DEVELOPER and CONTRACTOR may provide an OWNER'S and CONTRACTOR's Protective Liability Policy. If DEVELOPER and CONTRACTOR are unable to procure the minimum amounts of insurance in a single policy, CONTRACTOR may provide required policy limits through a combination of a primary OCP Policy and one or more excess policies. OWNER shall be the named insured on the Policy and, if applicable, the excess policy. Each policy shall be endorsed to include each Subcontractor of every Tier as the CONTRACTOR designated in the declarations.

2.     Minimum CONTRACTOR's liability coverage shall be: $1,000,000 combined bodily injury and

property damage single occurrence limit, annual aggregate limit of $2,000,000, products and completed operations aggregate limit of $1,000,000, personal and advertising injury aggregate limit of $1,000,000.

**E.   Builder's Risk Insurance**

1.     OWNER shall provide builder's risk insurance covering property damage to the Project during the construction period. OWNER accepts the risk of damage to the Work during construction and agrees to Indemnify and hold harmless DEVELOPER and CONTRACTOR and Subcontractors at any Tier from losses resulting from uninsured damage to the Work prior to final payment under this agreement.

2.     Builder's risk insurance shall include a loss payable provision naming OWNER as loss payee. OWNER shall have the power to adjust and settle Claims resulting from builder's risk insurance.

3.     Policy limits for builder's risk coverage shall be no less than the completed replacement value of the Project including the value of Change Orders.

## 44     Liability for Damages

**DEVELOPER and CONTRACTOR Liability for Damages**

1.     DEVELOPER and CONTRACTOR shall have no liability for damage to or loss of OWNER'S private property left on the Job Site unless such damage or loss is the direct result of intentional or negligent acts by DEVELOPER and CONTRACTOR.

## 45     Indemnity

A.     DEVELOPER and CONTRACTOR shall defend, Indemnify, and hold harmless OWNER and all officers, employees, agents, and consultants of OWNER from and against all and any losses, liability, Claims, costs, damages and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from performance of Work under this agreement provided such loss, liability, costs, damage and economic detriment is attributable to bodily injury, sickness, disease or death, or to injury or destruction of property (other than the Work itself) caused by the negligent acts or omissions of DEVELOPER and CONTRACTOR, a Subcontractor, or anyone directly or indirectly employed by them, or whether caused by or contributed to by OWNER, unless caused by the sole negligence of OWNER.

B.     Indemnification of OWNER is limited to the extent of insurance coverage required to be carried by DEVELOPER and CONTRACTOR under this agreement.

C.     Indemnification under this agreement shall not exceed any limitation on the amount or type of damages, compensation, or benefits payable by or for DEVELOPER and CONTRACTOR or any Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

## 46     Interpretation of the Contract

A.     Section headings and paragraph numbers have been included in this contract to refer easier and in no way limit, define, or enlarge the terms, scope, or conditions of this contract.

B.     Except as otherwise provided in this contract, OWNER and DEVELOPER and CONTRACTOR intend that this contract be interpreted in accord with the *Restatement of Law, Contracts*, published by the American Law Institute. Specifically: All parts of the Contract Documents should be interpreted together, and conduct of the Parties should be interpreted as a manifestation of intention, and specific provisions should be interpreted as qualifying the meaning of the general provisions.

## 47     Dealing with Plan Defects

A.    At any time, DEVELOPER and CONTRACTOR may request an interpretation or clarification of the Contract Documents from OWNER or OWNER'S Representative. OWNER or OWNER'S Representative shall reply with a written interpretation, clarification, or detailed instructions within a reasonable time.

B.    DEVELOPER and CONTRACTOR will rely on the Contract Documents as the final authority on what is included in the Project. The Contract Documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction DEVELOPER and CONTRACTOR doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. CONTRACTOR bears no responsibility for defects in the Contract Documents.

C.    Unless DEVELOPER and CONTRACTOR has asked for and received a written clarification from OWNER in time to prevent delay in the Work, any omission or ambiguity in the Contract Documents shall be interpreted as requiring the material or construction technique necessary to produce the greater quantity and better quality of Work.

D.    DEVELOPER and CONTRACTOR will report promptly to OWNER any design defects likely to result in problems during construction of the Project. However, DEVELOPER and CONTRACTOR is not a licensed architect or engineer and have no obligation to detect ambiguities, inconsistencies or omissions in the Contract Documents. While acting in good faith, DEVELOPER and CONTRACTOR is entitled to rely on the Work of a trained design specialist selected by and responsible to OWNER.

E.    DEVELOPER and CONTRACTOR is entitled to rely on dimensions and descriptions shown in the Contract Documents when ordering materials for Installation.

F.    Ambiguities, inconsistencies and omissions in the Contract Documents are design defects, not errors by DEVELOPER and CONTRACTOR. The cost of correcting design defects shall be at the expense of OWNER.

G.    If inconsistent, approved changes to the Contract Documents take precedence over the original Contract Documents. Subsequent changes to the Contract Documents take precedence over prior changes to the Contract Documents.

H.    If inconsistent, the construction Drawings take precedence over the Specifications.

I.    If anything in the construction Specifications is inconsistent with anything else in the construction Specifications: (1) A product performance Requirement takes precedence over a named product or manufacturer, and (2) Other clauses in the Specifications take precedence over anything incorporated by reference into the Specifications.

J.    If anything in the construction Drawings is inconsistent with anything else in the construction Drawings: (1) Dimensions written in numbers take precedence over scaled measurements, (2) Notes and schedules take precedence over lines on the Drawings, (3) Large scale Drawings take precedence over small scale Drawings, (4) Schedules take precedence over notes or other directions, (5) Specific notes take precedence over general notes, and (6) Bottom elevations of footings take precedence over any general notes.

K.    If inconsistent, other Contract Documents take precedence over any manual, industry standard, recommendation, regulation, and set of guidelines, code, or instructions incorporated by reference into the Contract Documents.

L.    If inconsistent, any portion of the Contract Documents written in longhand takes precedence over

American Development Partners – Melbourne FL                                      Page 17

anything printed in the Contract Documents.

M.     DEVELOPER and CONTRACTOR has no liability for any omission, inconsistency or ambiguity in the Contract Documents or for any discrepancy between physical conditions at the Job Site and the Contract Documents, unless DEVELOPER and CONTRACTOR fails to report the error to OWNER or OWNER'S Representative.

## 48     Choice of Venue

A.     The Parties agree that venue for any action related to performance of this contract shall be the appropriate court in Tennessee.

## 49     Entire Agreement

A.     The Contract Documents are the entire agreement and constitute a complete integration of all understandings between DEVELOPER and CONTRACTOR and OWNER about the Project. The Contract Documents supersede all prior negotiations, representations and agreements, whether written or oral. No subsequent notation, renewal, addition, deletion, change or amendment to this contract shall have any force or effect unless in the form of a written Change Order or amendment to this contract.

## 50     Severability

A.     If any provision of this contract is interpreted or rendered invalid and unenforceable, then the remainder of this contract shall remain in full force and effect.

## 51     Cumulative Remedies

A.     All rights and remedies provided to DEVELOPER and CONTRACTOR by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to CONTRACTOR at Law or in equity.

## 52     Materials and Substitutions

A.     When the Specifications refer to materials or equipment by performance standard (such as an ASTM identifier), DEVELOPER and CONTRACTOR may select for Installation any product or equipment meeting that standard. When several products or manufacturers are identified as acceptable in the Specifications, DEVELOPER and CONTRACTOR has the option of using any of the products or selecting any of the manufacturers listed without seeking approval from OWNER or OWNER'S Representative.

B.     Except as stated otherwise in the Specifications, any reference in the Specifications to a brand, make, manufacturer, or model denotes only characteristics of quality, workmanship, economy of operation and suitability for the intended purpose. DEVELOPER and CONTRACTOR may use any substantially equivalent material, equipment, or article if approved in advance of Installation by OWNER or OWNER'S Representative.

C.     All materials and equipment used on the Project shall comply with Specifications in the Contract Documents unless a substitution is approved in advance of Installation by OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall apply to OWNER or OWNER'S Representative for approval of a substitute material when: (1) Any item specified is found to be unusable or unavailable when needed for Installation, or (2) The item specified is considered inferior to an equivalent item which is readily available at a Similar cost. With the application, DEVELOPER and CONTRACTOR shall include documentation: (1) Demonstrating that essential features of the substitute item are equal to or exceed similar features of the item specified, and (2) Listing delivered prices for the substitute item based on Material Supplier quotations. OWNER or OWNER'S Representative may deny

any application for substitution if not in the best interest of OWNER. If approved, any savings in cost that result from the substitution will be credited to OWNER. No request for substitution of material shall constitute grounds for extension of the Contract Time. Proposed substitutions shall not be purchased or installed without approval of the substitution by OWNER or OWNER'S Representative.

## 54    Inspections

DEVELOPER and CONTRACTOR shall schedule and coordinate all Inspections required by the Contract Documents and by public authority so as not to delay the progress of the Work or the Work of OWNER or Separate CONTRACTORs. If the Contract Documents require that an Inspection be witnessed or attended by OWNER or OWNER'S Representative, DEVELOPER and CONTRACTOR shall give notice of the time and place of the Inspection. DEVELOPER and CONTRACTOR shall schedule Inspections during regular Work Days and normal business hours, unless mutually agreed by DEVELOPER and CONTRACTOR, OWNER, and Inspector.

B.    Insofar as applicable and except where superseded by other provisions of the Contract Documents or by government regulation, Inspection of the following Work will be required on the Project: (1) Bearing surfaces of excavations before concrete is placed, (2) Reinforcing steel after Installation and before concrete is poured, (3) Structural concrete when poured, (4) Structural framing after erection and prior to being covered or enclosed, (5) Steel welding, (6) Mechanical and plumbing Work following Installation and prior to being covered or enclosed, (7) Electrical Work following Installation and prior to being covered or enclosed, (8) Above-ceiling Work when complete but before the finish ceiling material is installed, and (9) Final Inspections prior to occupancy.

C.    If an Inspection reveals Work of DEVELOPER and CONTRACTOR not in compliance with the Contract Documents or not in compliance with any code or statute, DEVELOPER and CONTRACTOR shall bear the costs of correction, the cost of repeating the Inspection, and any related costs, including reasonable charges by OWNER or OWNER'S Representative for additional services.

## 55    The Construction Schedule

A.    DEVELOPER and CONTRACTOR shall prepare and submit to OWNER for review and approval an estimated progress Schedule for the Work showing completion within the Contract Time. This progress Schedule shall identify expected starting and completion dates for each part of the job and identify tasks critical to timely completion of the Work.

B.    DEVELOPER and CONTRACTOR may select any type of Schedule which: (1) Is suitable for monitoring progress of the Work, (2) Provides easy access to information about the timing of decisions OWNER must make and acts OWNER must perform, (3) Includes sufficient detail to demonstrate adequate planning for the Work, and (4) Presents a practical plan to complete the Work in an acceptable time.

C.    DEVELOPER and CONTRACTOR shall plan, develop, supervise, control, and coordinate the performance of the Work so that job progress, sequence and timing conform to the construction Schedule. If DEVELOPER and DEVELOPER and CONTRACTOR falls materially behind the currently approved construction Schedule, OWNER may require DEVELOPER and CONTRACTOR to prepare and submit for approval, at no cost to OWNER, a plan for completing the Project within the Contract Time. Failure to submit a plan meeting this Requirement shall constitute grounds for termination under the terms of this agreement.

D.    The Schedule shall allow for and depict the following: (1) Beginning and Completion Dates of each significant task (Work breakdown structure) in the job, (2) Delivery and approval of each Submittal, Samples and Shop Drawing, (3) Inspections and tests, (4) The Work of Subcontractors and Separate

CONTRACTORs, and (5) Order dates and delivery dates of significant equipment and key materials. The construction Schedule shall include a legend which identifies the meaning of each symbol and abbreviation.

## 56    Extension of the Time for Completion

A.     OWNER shall execute a Change Order for Excusable Delay by extending the Contract Time for the period of the delay. Any of the following shall constitute excusable delay for which the Contract Time shall be extended: (1) Strike, boycott, embargo, terrorism, armed rebellion, quarantine or other obstructive action by employees, labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or, order of government authority, and (2) Fire, flood, earthquake, tornado, tidal wave, lightning, rain, snow, temperature under 32 degrees, casualty loss, epidemic, or unusually adverse weather.

B.     For delay in delivery of materials, FF&E, equipment or for a shortage of labor that results from unforeseeable circumstances beyond the control and without fault or negligence of either DEVELOPER and CONTRACTOR, or any Subcontractor or Material Supplier of DEVELOPER and CONTRACTOR, OWNER will grant an extension of the Contract Time if: (1) DEVELOPER and CONTRACTOR, notifies OWNER and OWNER'S Representative promptly on discovery of the anticipated shortage, (2) DEVELOPER and CONTRACTOR,  substantiates the delay as unavoidable with a detailed chronology of events and all relevant correspondence, and (3) DEVELOPER and CONTRACTOR, provides an estimated date when the material, equipment or labor will be available.

C.     Any Change Order granted for Excusable Delay shall have no effect on a Claim by DEVELOPER and CONTRACTOR, for damage from the same delay for interruption, hindrance, or disruption.

## 57    DEVELOPER and CONTRACTOR Claims for Delay

A.     The Contract Price shall be adjusted for any increase in the cost of performance of this contract caused by suspension, delay or interruption of the Work due to: (1) An error or omission in the Contract Documents, (2) A decision of OWNER to change the Scope of the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR,, (3) A decision of OWNER to suspend the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR,, (4) A failure by OWNER or OWNER'S Representative to comply with the construction Schedule, (5) Any act or neglect of OWNER or agent of OWNER or any Separate DEVELOPER and CONTRACTOR, (6) Failure of OWNER to yield control of the Job Site to DEVELOPER and CONTRACTOR,, or (7) Failure of OWNER to make payments when due under the terms of this agreement.

B.     Within 3 Working Days after receipt of a notice of Claim for compensation for suspension, delay, or interruption, OWNER shall: (1) Respond with a resolution, remedy, or direction to alleviate the delay, (2) Respond with a notice rejecting the Claim for delay, or (3) Respond with a draft Change Order accepting the Claim for delay. If the issue is not then resolved, DEVELOPER and CONTRACTOR, may request a Change Order.

C.     No change in the Contract Time for completion or the Contract Price shall become part of the Contract Documents without a Change Order.

D.     Compensation to DEVELOPER and CONTRACTOR, for suspension, delay, or interruption of Work shall include direct overhead (Job Site) expense, a proportionate share of unabsorbed indirect (home office) overhead expense, lost efficiency and lost profit taken as 15 percent of total compensable expenses. Direct overhead costs shall include, without limitation: (1) Labor (with taxes, insurance and fringe benefits) for the idle work force, (2) The fair rental cost of idle equipment (such as vehicles,

construction tools and equipment), (3) Facilities (such as temporary structures, water, power, phone, and toilets), (4) The additional cost of Bonds and insurance, (5) Similar direct overhead costs of Subcontractors to whom DEVELOPER and CONTRACTOR, is liable for damages that result from the delay, and (6) Demobilization and re-mobilization costs. Unabsorbed indirect overhead costs shall include, without limitation, the proportionate share of office rent, office supplies, office utilities, office equipment, advertising, professional fees, management salaries, technical services, estimating, selling, accounting, bookkeeping and clerical expense, business licenses, taxes (except income taxes), and insurance.

## 58    Liquidated Damages

A.    Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the Contract Time are considered reasonable by OWNER and DEVELOPER and DEVELOPER and CONTRACTOR, any neglect, refusal or failure of DEVELOPER and CONTRACTOR to reach Substantial Completion within the Contract Time, plus approved extensions of that time, will result in damage to OWNER impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and CONTRACTOR or which may become due CONTRACTOR the sum of $125.00 as liquidated damages for each Calendar Day that Substantial Completion is delayed beyond the Contract Time, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

B.    Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the time for Completion are considered reasonable by OWNER and CONTRACTOR. Any neglect, refusal or failure of DEVELOPER and CONTRACTOR, to reach Completion within the time provided in this contract, plus approved extensions of that time, will result in damage in the form of inconvenience, loss of opportunities, and higher Inspection, Superintendence, and administrative costs to OWNER. These costs are impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and DEVELOPER and CONTRACTOR or which may become due DEVELOPER and CONTRACTOR, the sum of $125.00 as liquidated damages for each Calendar Day that Completion is delayed beyond the time provided in this contract, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

C.    Achieving Substantial Completion sooner than the Contract Time, plus approved extensions of that time, shall earn additional compensation to DEVELOPER and CONTRACTOR of $125.00 for each Calendar Day that Substantial Completion is achieved prior to the Contract Time, plus approved extensions of that time.

D.    DEVELOPER and CONTRACTOR, shall not be charged liquidated damages for any failure, neglect or refusal to complete the Work on Schedule to the extent that the proximate cause of the delay was: (1) Strike, boycott, embargo, terrorism, armed rebellion, quarantine, delay in delivery of FF&E, or other obstructive action by employees, franchise owner, franchisor or labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or by order of government authority, (2) Fire, flood, earthquake, tornado, tidal wave, lightning, casualty loss, epidemic, rain, snow or unusually adverse weather, (3) Any delay of Subcontractors or vendors resulting from items listed in sections 1 or 2 above, or (4) Any act or omission of OWNER or anyone acting on behalf of OWNER.

E.    Except as provided elsewhere in this contract, liquidated damages are the exclusive damage remedy for OWNER for any failure of DEVELOPER and CONTRACTOR to complete Work per Schedule. No damages of any other type or description shall be awarded OWNER for failure of DEVELOPER and

CONTRACTOR to comply with the construction Schedule.

## 59    Consequential Damages

A.      DEVELOPER and CONTRACTOR, and OWNER waive all Claims for consequential damages against each other, their respective officers, directors, partners, employees, agents, consultants and Subcontractors, arising out of or relating to this contract or the termination of this contract, except those consequential damages covered by insurance or specifically provided elsewhere in this agreement.

## 60    Right to Stop Work for Non-Payment

A.      If DEVELOPER and CONTRACTOR, is not paid any amount not in dispute within 7 Calendar Days after the date due, CONTRACTOR shall post on the Job Site and deliver to OWNER and all Subcontractors a notice of intention to stop the Work if payments then due are not received in full within 10 Calendar Days. Thereafter, CONTRACTOR may suspend the Work until delinquent payments have been received, pursuant to Tennessee Civil Code § 3260.2.

B.      Neither DEVELOPER and CONTRACTOR, nor Surety of CONTRACTOR, nor any Subcontractor of DEVELOPER and CONTRACTOR shall be liable for delay or damage that OWNER may suffer as a result of suspension of the Work for failure to receive payments due under this agreement so long as: (1) Work was suspended by DEVELOPER and CONTRACTOR in compliance with the terms of this contract and with applicable Law, and (2) There is no good faith dispute that payment is due DEVELOPER and CONTRACTOR,  at the time of suspension. A good faith dispute exists if OWNER provides: (1) A list of specific reasons for nonpayment, including labor, materials, or equipment not in compliance with the Contract Documents, and (2) CONTRACTOR is afforded a reasonable opportunity to correct the Defects cited or issue a credit compensating OWNER for Defects that cannot be cured promptly.

## 61    Early Partial Occupancy

A.      Without prior approval of DEVELOPER and CONTRACTOR, OWNER shall not occupy or use any portion of the Work until Substantial Completion of the Project. If OWNER occupies or uses any portion of the Work before Substantial Completion of the Project and without prior approval of DEVELOPER and CONTRACTOR, the portion or portions used or occupied shall be considered complete, finished, accepted and the responsibility of OWNER.

B.      No Partial Use or occupancy of the Work by OWNER shall commence prior to Substantial Completion without a Change Order confirming the responsibility of OWNER for maintenance, utilities, operation of equipment, and security during early Partial Use or occupancy.

C.      If any portion of the Project is used or occupied by OWNER prior to Substantial Completion and if the Project is not completed within the Contract Time, liability of DEVELOPER and CONTRACTOR, for delayed completion shall be reduced by the proportion of the Project used or occupied by OWNER and for the time used or occupied by OWNER prior to Substantial Completion.

## 61 Substantial Completion

A.      When, in the opinion of DEVELOPER and CONTRACTOR, the Work is Substantially Complete, DEVELOPER and CONTRACTOR shall prepare a preliminary Punch List of Work remaining to be done and deliver that Punch List to OWNER'S Representative with a request for evaluation of Substantial Completion. If, in the opinion of OWNER'S Representative, items on the preliminary Punch List are consistent with Substantial Completion, OWNER'S Representative shall conduct an Inspection of the Work to evaluate compliance with the Contract Documents.

B. before OWNER takes possession or occupancy of the Project, DEVELOPER and CONTRACTOR,

shall receive a comprehensive Punch List of discrepancies to be corrected or Work to be finished by CONTRACTOR and a date for completing this Work. DEVELOPER and CONTRACTOR, shall complete and correct items on the Punch List by the designated date.

C. the Punch List given to DEVELOPER and CONTRACTOR, is a complete and final list of Defective or incomplete Work on the Project. OWNER shall be deemed to have accepted Work not on the Punch List. Nothing in this paragraph shall be interpreted as relieving DEVELOPER and CONTRACTOR, of the obligation to meet warranty and call-back obligations.

D.     DEVELOPER and CONTRACTOR, shall annotate the Punch List with: (1) A detailed breakdown of the Work required to complete or correct each item, (2) The Subcontractor or trade responsible for the Work, and (3) The dates Work will commence and be finished on each item. No annotation is required for any item on the Punch List which is beyond the control of DEVELOPER and CONTRACTOR. Failure of CONTRACTOR to furnish a detailed completion Schedule for items on the Punch List shall constitute grounds for withdrawing acknowledgment of Substantial Completion.

E.     OWNER'S Representative will prepare a certificate of Substantial Completion for signature by OWNER and DEVELOPER and CONTRACTOR, when the Project or a specific portion of the Project is ready for occupancy. Except as otherwise provided in the Contract Documents, signing of the certificate of completion shall: (1) Transfer to OWNER responsibility for maintenance, safety, utility expense, controlling access at the site, and (2) Begin running of any warranty or call-back period on the Project.

H. after Substantial Completion, DEVELOPER and CONTRACTOR, shall remain responsible for: (1) Damage caused by DEVELOPER and CONTRACTOR, while completing the Work, and (2) Safety of crews when completing the Work.

## 62     Delivery of Notices

A.     Any written notice required by this contract can be: (1) Delivered by hand at the last known address of the addressee, or (2) Delivered by hand to the addressee or representative of the addressee, wherever found. Notice is effective upon delivery.

B.     Any written notice required by this contract can be: (1) Delivered by enclosing in a stamped envelope addressed to the last known address of the intended recipient and either deposited in a United States Postal Service mailbox or given to a USPS employee, or (2) Consigned to a commercial courier service and addressed to the last known address of the intended recipient. Notice is effective upon delivery if proof of delivery is provided; where no proof of delivery is available, notice is effective 5 Calendar Days after mailing or consignment to a courier service.

**Signatures**

The signatures that follow constitute confirmation by those signing that they have examined and understand the Contract Documents and agree to be bound by the terms of these documents.

DEVELOPER and CONTRACTOR may not begin Work before receiving from OWNER a written notice to proceed. Any Work performed by DEVELOPER and CONTRACTOR before receipt of the notice to proceed shall be done at the risk of DEVELOPER and CONTRACTOR and without obligation of OWNER.

This agreement is entered as of the date written below.

**OWNER Name:** CHC-2015 NORTH WICKHAM ROAD MELBOURNE FL LLC,
**OWNER**

_____     09 / 09 / 17
(Signature)                          (Date)

Pun For Li        Manager
(Printed Name and Title)

**DEVELOPER Name:** American Development Partners,

_____     8/14/17
(Signature)                          (Date)

Manny Butera Developer
(Printed Name and Title)

Page 24

**Glossary of Terms**

**Beneficial Occupancy** refers to OWNER'S use of the project premises after Substantial Completion but prior to Final Completion. Beneficial Occupancy may occur when the project or some portion is sufficiently complete and systems operational such that the OWNER could, after obtaining necessary approvals and certificates, occupy and utilize the space for its intended purpose. The time limit for warranties applicable to that portion of the Work begin on the date the OWNER begins Beneficial Occupancy, unless otherwise specified in this Agreement.

**Bond** means the security offered by a licensed surety company which may be used to satisfy a claim of failure to perform obligations undertaken in this Agreement.

**Calendar Day** means any day shown on the calendar beginning at midnight and ending at midnight the following day. Contrast the term Work Day which excludes Saturdays, Sundays and state-recognized holidays.

**Certification of Payment** is acknowledgment by someone not a party to this Agreement that CONTRACTOR is entitled to payment for work completed.

**Change Order** is a written modification of the Contract Price (including all claims for direct, indirect and consequential damages and costs of delay), Time for Completion and Scope of Work under this Agreement. A Change Order, once signed by all parties, is incorporated into and becomes a part of the Contract Documents.

**Claim** means a demand or assertion by one of the parties to this Agreement seeking, as a matter of right, modification, adjustment or interpretation of contract terms, payment of money, extension of time or other relief.

**Code Requirements** means all laws, statutes, regulations, building codes, ordinances, rules, and lawful orders of all public authorities having jurisdiction over OWNER, CONTRACTOR, any Subcontractor, the Project, the Job Site, the Work, or the prosecution of the Work.

**Contract Completion Date** means the day by which the Work must be substantially complete.

**Contract Date** is the day on which the contract becomes binding between CONTRACTOR and OWNER.

**Contract Documents** are this Agreement and all documents incorporated by reference into this Agreement.

**Contract Price** is the amount which will become due in exchange for work performed under this Agreement. Contract Price includes allowances for purchased materials and equipment and may be modified by a Change Order or contract modification. The Contract Price may be paid in one or more installments, including an Initial Payment at or before the start of work, Progress Payments as work is completed, and a Final Payment on final acceptance of the work. Payment Period is the time elapsed

Between applications for progress payments or prior to the first application for progress payment.

**Contract Schedule** is a graphical representation of a practical plan to complete Work within the Contract Time.

**Contract Time** means the period between Date of Commencement and the date of Substantial Completion.

**CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the Work under the terms of this Agreement.

**Defective Work** means construction done under this Agreement that is unsatisfactory, faulty, omitted, incomplete, deficient, or does not conform to the requirements of the Contract Documents, directives of OWNER'S Representative, or the requirements of an inspection, reference standard, test, or approval specified in the Contract Documents.

**Design Professional** means the person, organization or authorized representative who is responsible to the OWNER for design of the Project through preparation of Drawings and Specifications. The term Design Professional may refer to an architect, designer, engineer or landscape architect.

**Drawings** (also called plans or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Drawings include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed Project. A group of drawings adequate to complete construction of the Project may be referred to as a plan set. Drawings can be either paper or electronic media.

**Emergency** means an unforeseen event, combination of circumstances, or a resulting state that poses imminent danger to health, life or property.

**Excusable Delay** means any circumstance which postpones completion of the Work and for which CONTRACTOR is entitled to an adjustment of the Contract Time but not an adjustment to the Contract Price. Contrast Inexcusable Delay which entitles CONTRACTOR to neither an adjustment of the Contract Price nor an adjustment in the Contract Time.

**Extra Work** means any change, interpretation, clarification or correction in the Contract Documents or in applicable law, ordinance or regulation which would increase or decrease the quantity of work, delay, suspend or interfere with the work, require an addition to or omission from the work, change the character, quality or nature of any part of the work or material used in the work, change levels, lines, positions or dimensions of any part of the work, require demolition or removal of any work completed under this Agreement, extend or amend the normal work day, alter the construction schedule or require completion of any part of the work at a time other than provided by this Contract when originally made.

**Final Completion** is the date of OWNER'S acceptance of the Work as fully performed per the

Contract Documents.

**Furnish** means to supply and deliver to the job site.

**General CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking execution of the Work under terms of a Prime Contract.

**Hazardous Materials** means radioactive materials, asbestos, polychlorinated biphenyls, petroleum, crude oil, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, and toxic substances which are restricted, prohibited, or regulated by any agency of government in the manufacture, use, maintenance, storage, Ownership or handling.

**Indemnification** Financial compensation intended to restore someone to their condition before a loss or damage.

**Inspection** is any review of the Project, including a visual review of the Work completed to ascertain compliance with Contract Documents, building codes and construction standards.

**Inspector** is anyone authorized by government or the Design Professional to conduct inspections of contract performance and materials supplied for the Work.

**Install** means to secure in position in compliance with the Contract Documents and includes unloading materials, supplying all necessary equipment and rigs to do the work and performing functional tests which demonstrate fitness for the intended purpose.

**Job Site** is the address or location of the Project.

**Law** means federal or state statutes, municipal ordinances, building codes, regulations adopted pursuant to statute, executive orders, official interpretations, and other rules and directives issued by government.

**Material Supplier** means any manufacturer, fabricator, distributor, material man or vendor who provides material for the Project but does not provide on-site labor.

**Modification** is a written amendment to the Contract signed by both parties.

**OWNER'S Representative** means the person or firm authorized to act and make administrative decisions on behalf of the OWNER during construction. Any notice required to be delivered to the OWNER may be delivered to the OWNER'S Representative. The scope of authority of the OWNER'S Representative is defined in this contract. CONTRACTOR cannot rely on any decision or instruction by OWNER'S Representative that is beyond the representative's defined scope of his authority. Nothing in this contract prevents OWNER from issuing a notice or instructions directly to the CONTRACTOR. The OWNER may change the OWNER'S Representative from time to time and may, if OWNER'S Representative is absent, disabled or otherwise temporarily unavailable, appoint an interim OWNER'S Representative.

**Party (to this contract)** means a person or business organization which has an obligation to perform under the terms of this contract.

**Plans** (also called drawings or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Plans include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed project. A group of plans adequate to complete construction of the Project may be referred to as a plan set. Plans can be either paper or electronic media.

**Prime Contract** is a written agreement between CONTRACTOR and OWNER which binds CONTRACTOR to furnish labor, equipment, or materials or perform certain work for a price to be paid by OWNER.

**Project** means Work to be completed in accord with the Contract Documents. Work at the Job Site may include other projects to be completed by the OWNER or other CONTRACTORs working under other agreements.

**Provide** means furnish and install and includes connecting, testing, and placing in service for the intended use.

**Punch List** is a comprehensive list of incomplete, defective or incorrect Work yet to be completed or which does not comply with Contract Documents. A Punch List may be prepared by the CONTRACTOR, Subcontractor, Design Professional or OWNER. An initial Punch List will be prepared before application for Substantial Completion. A Close-out Punch List will be prepared before Final Completion.

**Requirements** means, in addition to obligations, responsibilities and limitations set out in the Contract Documents, the obligations, responsibilities and limitations imposed by law, rules, orders, ordinances, regulations, statutes, codes and executive orders of governmental authorities or fire rating bureaus.

**Retainage** is a portion of each progress payment temporarily held back or retained by the OWNER. Accumulated retainage is released to CONTRACTOR on satisfactory completion of the work.

**Sample** means a physical example of material; equipment or workmanship intended to be representative of some portion of the Work. When approved, samples establish standards for completion of similar work on the Project.

**Schedule of Values** means the detailed breakdown of cost of materials, equipment and labor necessary to complete the Project as described in the Contract Documents.

**Scope of Work** means the Work as defined by the Contract Documents.

**Separate CONTRACTOR** means a person or firm working under a different contract but on the same site

Page 28

and at the same time as work will be done under this contract.

**Shop Drawings** are diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data which are prepared by the CONTRACTOR or a Subcontractor, manufacturer, supplier or distributor, and which illustrate or describe some portion of the Work to be completed in compliance with the Contract Documents. Once submitted to the approval authority and approved, Shop Drawings establish standards for completion of work on Project.

**Similar** means having a like kind, quality and characteristics. Similar is not to be construed as meaning identical or by the same manufacturer.

**Specifications** (also called specs) are the part of the Contract Documents which provide descriptions of materials, equipment, construction systems, technique and workmanship to be used on the Project. Specifications are both instructions to be followed by the CONTRACTOR and Subcontractors and a reference for the Building Official to evaluate code compliance.

**Subcontract** is a written agreement between a specialty CONTRACTOR and General CONTRACTOR. Terms of the subcontract require the specialty CONTRACTOR to complete some portion of the work General CONTRACTOR is obligated to perform under another agreement, usually with the OWNER.

**Subcontractor** is any person or business entity under contract to a general CONTRACTOR to perform some portion of the work general CONTRACTOR is obligated to complete under a contract with the OWNER. Subcontractor is an independent CONTRACTOR performing services for another CONTRACTOR rather than for the OWNER. A person or organization providing supplies or materials for the Project but no job site labor is not a Subcontractor.

**Submittals** demonstrate the way by which the CONTRACTOR proposes to conform to the requirements of the Contract Documents. Submittals are shop drawings (diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data) required by the Contract Documents which are prepared for the CONTRACTOR to depict some portion of the Work. Submittals are delivered to the OWNER for approval or disapproval by the OWNER prior to purchase or installation.

**Substantial Completion** means the Project or a designated portion of the Project is nearly in compliance with the Contract Documents and is sufficiently complete to be considered fully operational in all its components and is fit for the intended use. Substantial Completion is reached when a limited number of non-conforming or defective items on a Punch List remain to be completed. Normally, a Project or portion of a Project cannot be considered Substantially Complete until (1) all utilities and services are connected and working, (2) all equipment is installed and in acceptable working condition, (3) additional activity by the CONTRACTOR to correct items on the Punch List will not prevent or disrupt use of the facility, and, (4) a certificate of occupancy has been issued by the appropriate authority.

**Sub-subcontractor** is any person or business entity under contract to a subcontractor or any lower tier subcontractor to perform some portion of the work subcontractor is obligated to complete under a contract with the prime CONTRACTOR. Sub-subcontractors are independent CONTRACTORs

performing services for another CONTRACTOR rather than for the prime CONTRACTOR. A person or organization providing supplies or materials for the Project but no job site labor is not a Sub-subcontractor.

**Superintendent** is the representative of the CONTRACTOR at the job site who is authorized to receive instructions from the OWNER or OWNER'S Representative and who is authorized to direct the performance of work on behalf of the CONTRACTOR.

**Surety** means any qualified individual, firm or corporation other than the CONTRACTOR, which executes a bond to insure its acceptable performance of the contract.

**Tier** refers to the contractual level of a person or business organization doing work on the Project. A first-tier subcontractor has a contract with the general CONTRACTOR but not the OWNER. A second-tier subcontractor has a contract with another subcontractor but not with the general CONTRACTOR or the OWNER.

**Work** means all labor, material, equipment, tools, transportation, permanent and temporary utilities, connections, provisions for safety and management services required to complete the Project in compliance with the Contract Documents. Work may constitute the whole or a part of the Project. Work is to be performed in a safe, expeditious, orderly and professional manner in keeping with current standards of the industry. Work includes everything that is or should be evident to a skilled construction professional after careful examination of the Contract Documents and the Job Site.

**Work Day** means any day, excluding Saturdays, Sundays and state-recognized holidays, shown on the calendar beginning at midnight and ending at midnight the following day.

**<u>EXHIBIT "E"</u>**



**American Development Partners Development Contract**

This agreement is made on the date written above our signatures between
DEVELOPER Name: **REDSTONE LLC DBA American Development Partners** (DEVELOPER) and
OWNER Name: CC-1601 N WOODLAND BLVD DELAND FL LLC (OWNER).

**DEVELOPER**
DEVELOPER Name: **REDSTONE LLC DBA American Development Partners**
Address: PO Box 681982
City: Franklin, State: TN Zip: 37064
Work Phone Number: (615) 818-6982
Email Address: manny@americandevelopmentpartners.com
DEVELOPER Name: **American Development Partners** will be referred to as DEVELOPER throughout
this agreement.

**CONTRACTOR**
**CONTRACTOR INFORMATION:**
Address: Phone Number: (615) 330-0629
Email Address: llynp@built-more.com
License Number: 00057609


CONTRACTOR Name: Built-more LLC will be referred to as CONTRACTOR throughout this
agreement.

**OWNER**
OWNER Name: CC-1601 N WOODLAND BLVD DELAND FL LLC, 14103 Chinkapin Drive,
Rockville MD
 20850 ATTENTION – Mr. Pun For Li
OWNER Name: CC-1601 N WOODLAND BLVD DELAND FL LLC will be referred to as OWNER
throughout this agreement.


1      **Project Description**

A.      For a price identified below, DEVELOPER agrees to complete a new commercial building
(identified as the Project in this agreement) for OWNER.

B.      For the Contract Price identified below, DEVELOPER agrees to complete a new commercial
building consisting of approximately 1850 sq. ft. +/- square feet of air-conditioned space and
300 square feet of a connected outdoor patio used as a Church's Chicken Restaurant (identified
as the "Project" in this Agreement), for TENANT's use and OWNERS ownership on the Land
in accordance with the plans

Contract Price, (3) the Contingencies of the Project, (4) the cost of the Work and the Extra Work, (5) other costs, charges and fees under this Agreement (collectively, the "Other Agreements") (the Other Agreements shall include but not be limited to any contractor or subcontractor agreements and the cost of all materials and labor).

D.   The term "Budget" shall mean the Total Build Cost less the cost to acquire the Land.

E.   The term "Property" shall mean the Land and all improvements thereon including but not limited to the Project.

F.   Contract Price / OWNERS Cost Cap / Developer

G.   DEVELOPER shall earn in addition to any other charges specified in this agreement, OWNER agrees to pay a 10% development fee for completing the Work described as the Project. DEVELOPER fee is paid off total project cost that includes land / building, construction and all numbers that are used to factor total project cost.

H.   Notwithstanding any contrary provision in this Agreement or otherwise, OWNERS maximum monetary liability under this Agreement and for the Project towards all amounts, including but not limited to the Total Build Cost, shall not exceed, and shall be capped at, the sum of: **($2,283,596.70) said amount referred to as the (OWNERS GROSS MAX)**. Notwithstanding any contrary provision in this Agreement or otherwise, DEVELOPER shall be solely responsible under this Agreement and to OWNER, for any projects overruns that are above the gross max number provided to OWNER.

## 2   Contract Price

I.   DEVELOPER shall earn and OWNER agrees to pay a development fee of 10% of total project cost in addition to any other charges specified in this agreement. In addition to any other charges specified in this agreement, OWNER agrees to pay DEVELOPER **$207,599.70 development fee for** completing the Work described as the Project.

## 3 Contingency Budget

II.   It is identified and agreed to by OWNER that DEVELOPER has an estimated budget of **5 %** of project cost for "contingencies". CONTRACTOR will submit to DEVELOPER a "change order" for approval by DEVELOPER and OWNER any proposed change order. Contingencies are limited to change orders due to error or omission by a licensed architect after plans were received and reviewed by contractor, all state or federal codes changes that were mandated after contractor received stamped plans and or building permit.

## 4 Scheduled Start of Construction

A.   Work under this agreement will begin within 5 Calendar Days after the following contingencies have been met.

1.   Complete Plans and Specifications have been approved and initialed by both OWNER, DEVELOPER and CONTRACTOR.

2.   OWNER has shown proof of funds or other financing acceptable to DEVELOPER.

3.   DEVELOPER has obtained all architectural approvals from any franchise and or corporate authorities.

4.     OWNER has furnished DEVELOPER with evidence of Ownership of the property satisfactory to DEVELOPER.

5.     All appropriate building permits have been issued.

6.     DEVELOPER has received written notice from the lien holder or the title company insuring lien holder's security interest in the property that all documents required to be recorded prior to the commencement of construction have been properly recorded.

7.     The contract has been signed by OWNER, DEVELOPER and CONTRACTOR.

### 5 Scheduled Completion of Construction

A.     Work under this agreement will be Substantially Completed within 125 Calendar Days after the date construction begins (building permit is issued) however it is understood and will go without penalty for acts that our outside of the control of the DEVELOPER and CONTRACTOR.

### 6 Documents Incorporated

A.     The Glossary of Terms which follows our signatures is incorporated into this contract as though included in full as part of this agreement.

B.     This agreement incorporates by reference certain documents which define and describe the Work to be done. The following documents are incorporated as though included in full as part of this agreement.

### 7 Ownership of Plans

A.     All Plans, Drawings, Specifications and other documents prepared by or for OWNER for use under this agreement will be paid for and are the property of DEVELOPER and remain the property of DEVELOPER. Plans, Drawings and Specifications, whether in paper or electronic form, prepared for use in construction under this agreement shall not be modified or used on any other project without written consent of DEVELOPER. DEVELOPER shall hold harmless and Indemnify OWNER from and against all Claims, actions, suits, costs, damages, losses, expenses and attorney's fees arising out of use of the Project Plans, Drawings, or Specifications for any purpose other than construction to be completed under this agreement. DEVELOPER, CONTRACTOR and Subcontractors are granted a limited license to use and reproduce applicable portions of the Plans, Specifications and Drawings as required for construction under this agreement. All copies made under this license shall bear a notice showing OWNER as copyright holder. DEVELOPER may retain one record set of the Plans, Drawings and Specifications. All other sets shall be accounted for by DEVELOPER and CONTRACTOR and returned to OWNER. Submittal or distribution of Project Plans, Drawings or Specifications to meet Official Regulatory Requirements is not to be construed as publication in derogation of the rights of OWNER.

### 8 Plans on Site

A.     DEVELOPER and CONTRACTOR will keep a full set of Project Plans available on-site to authorized personnel during the period of construction.

### 9 Documents Supplied to CONTRACTOR

A.     OWNER will furnish to DEVELOPER and CONTRACTOR at no cost (this is part of total project cost)

1.     A full set of Plans and Specifications for all trades in electronic format.

2.     DEVELOPER and CONTRACTOR will distribute Contract Documents as required by Subcontractors.

## 10 Scope of Work

A.     DEVELOPER and CONTRACTOR shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Project in compliance with the Contract Documents.

B.     Develop and CONTRACTOR are responsible for coordination of the various trades and deliveries of equipment, materials and supplies to minimize interference which could delay the Work or pose a hazard to life or property. DEVELOPER shall be responsible for allocation of tasks between trades and will be the final authority on location and routing of equipment and storage of materials on the Job Site.

C.     DEVELOPER will ensure that Subcontractors, their agents, and employees adhere to these Contract Documents. DEVELOPER and CONTRACTOR accepts responsibility for all Work performed under this contract, including Work performed by employees of Subcontractors.

D.     CONTRACTOR shall provide on the Job Site during the period of construction a temporary chemical toilet or water closet which shall be serviced no less than weekly. Upon completion of the Project, CONTRACTOR will remove temporary toilet facilities from the site.

E.     DEVELOPER and CONTRACTOR shall provide temporary elevators and lifts as may be required by construction personnel, including Subcontractors, Material Suppliers, Inspectors, and Representatives of OWNER. Elevators and lifts will comply with all federal, state and local Laws and ordinances in effect at the Job Site. Upon completion of the Project, DEVELOPER and CONTRACTOR will dismantle and remove temporary elevators and lifts.

F.     DEVELOPER and CONTRACTOR shall develop and present to OWNER for approval (which shall not be withheld unreasonably), a site logistics plan drawn to scale, showing proposed secure and fenced areas, locations and types of temporary barricades, material storage and staging areas, property entrances used for material deliveries, and special material or equipment storage Requirements. This plan will include a description and proposed location for any temporary office, storage trailer, sanitary facilities, and parking for construction personnel.

## 11 Submittals

A.     Architectural Drawings will indicate in detail all parts of the building components, Installation details, and coordination with Work of other trades or other CONTRACTORS. Architectural Drawings for structural steel, timbers and pre-cast concrete will include engineering calculations, fabrication details and erection Drawings that show physical characteristics, dimensions, shapes, inserts, attaching points and methods, and other information required for manufacture, assembly and erection, in compliance with the Contract Documents.

B.     Approval by OWNER'S Representative does not relieve DEVELOPER and CONTRACTOR of responsibility for compliance with the Contract Documents except as follows: If a Submittal does not comply with Contract Documents, DEVELOPER and CONTRACTOR will attach to the Submittal, prior to approval, a written request for variation showing the change in Contract Price and Contract Time, if any, that will result from the variation. If OWNER'S Representative approves a Submittal which includes a written request for a variation and which requires a change in the Contract Price or Contract Time, OWNER'S Representative will issue a contract Modification confirming the change. If OWNER'S Representative approves a Submittal with a written request for a minor variation which does not require a change in the Contract Price or Contract Time, no contract Modification is needed. A minor variation is anything which does not materially alter the quality or performance of the Work. Approved variations are subject to all terms of this agreement and without prejudice to any rights granted to OWNER'S Representative under a Surety Bond.

C.     DEVELOPER and CONTRACTOR is entitled to expect that corrections to Submittals by OWNER'S Representative be clearly noted and easily understood so that prompt resubmission is possible without further instructions from OWNER'S Representative.

D.     OWNER'S Representative will review Submittals and notify DEVELOPER and CONTRACTOR of approval or rejection within **2** Calendar Days of receipt.

E.     OWNER'S Representative will review Submittals of DEVELOPER and CONTRACTOR for conformance with Requirements of the Contract Documents and will approve or take other appropriate action upon those Submittals. OWNER'S Representative will advise DEVELOPER and CONTRACTOR of any errors or omissions which OWNER'S Representative may detect during this review. Submittals approved by OWNER'S Representative become additions to the Contract Documents and can be relied on by DEVELOPER and CONTRACTOR in completing the Work. Nothing in any approved Submittal shall be interpreted to limit DEVELOPER and CONTRACTOR in selection of the means, method, technique, sequence or procedure of construction.

## 12 Record Documents

A.     DEVELOPER and CONTRACTOR will note on a record set of Project Drawings any Work done that is not shown on the original Plans and not described in other Contract Documents. The record set of Project documents will be delivered to OWNER at the same time as final payment is requested.

## 13 Job Site Safety

A.     DEVELOPER and CONTRACTOR will always take all reasonable precautions for the safety of employees and the public at the Job Site and will comply with all applicable safety Laws and regulations of federal, state, and local authorities (including building codes) and safety Requirements of OWNER.

## 14     Hazardous Materials Used in Construction

A.     Except as provided elsewhere in the Contract Documents, CONTRACTOR is responsible for all Hazardous Materials brought to the Job Site by CONTRACTOR or Subcontractors.

## 15     Hazardous Materials Discovered on Site

A.     Except as provided elsewhere in the Contract Documents, OWNER is responsible for all Hazardous Materials discovered on the Job Site so long as those materials were not brought on the Job Site by CONTRACTOR, Subcontractors, or anyone directly or indirectly employed by them. Nothing in this paragraph shall relieve DEVELOPER and CONTRACTOR from liability for negligence in handling or removing hazardous materials as required under the terms of this agreement.

B.     Except as provided in the Contract Documents or as agreed by mutual consent, DEVELOPER and CONTRACTOR shall not be required to perform Work relating to asbestos, polychlorinated biphenyl (PCB), radioactive material, toxic mold or any other Hazardous Material.

C.     OWNER shall defend, Indemnify and hold harmless DEVELOPER  and CONTRACTOR from and against all loss, liability, claims, costs, damage and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from the discovery or existence of Hazardous Material on the Job Site, whether or not identified in the Contract Documents, provided such loss, liability, costs, damage and economic detriment is not the result of any negligent act or omissions of DEVELOPER and CONTRACTOR, Subcontractors or anyone directly or indirectly employed by them. Indemnification by OWNER under this paragraph shall apply even if OWNER is in no way responsible for the loss to DEVELOPER and CONTRACTOR.

## 16     Compliance with Law

A.    CONTRACTOR and OWNER mutually commit to use reasonable care to meet the Requirements of state, federal and local Law when discharging their responsibilities under this agreement.

B.    If DEVELOPER and CONTRACTOR observe that Drawings, Specifications, or other Contract Documents do not comply with applicable Law, DEVELOPER and CONTRACTOR shall promptly notify OWNER or OWNER'S Representative of the variance. Any changes made to the Contract Documents because of this notice shall be handled in the form of a Change Order under this agreement.

C.    DEVELOPER and CONTRACTOR shall bear none of the cost of correcting Work completed per Contract Documents but not in compliance with Law if CONTRACTOR did not know that Contract Documents or instructions from OWNER or OWNER'S Representative did not comply with the Law.

D.    If Law enacted after the Contract Date changes the Scope of Work under this agreement, DEVELOPER and CONTRACTOR and OWNER will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

## 17    Layout

A.    DEVELOPER and CONTRACTOR shall be responsible for alignment and elevation of the Work and will set grade stakes, batter boards, and other working points, lines and elevations required to complete the Project as described in the Contract Documents.

## 18    Permits and Fees

A.    DEVELOPER and CONTRACTOR shall secure all permits, licenses and renewals required by government authority to complete construction of the Project. If permits are required for Subcontracted Work, Subcontractors will secure those permits. OWNER may request a copy of each permit, license and renewal issued by government authority for the Project. All permits and fees are considered a fee that is enclosed in the project plan.

B.    Project budget will include the building permit fee, Plan check fee, and charges levied by government for testing, Inspection and Re-Inspection of the Project. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

C.    Except as provided elsewhere in this agreement, Project budget  will include all fees and application charges imposed by government authority, including, but not limited to, grading permit fees, drainage permit fees, traffic control charges, thoroughfare charges, impact fees, special district fees, sewer fees, water fees, planning fees, school fees, elevator permit fees, charges for temporary access or use of the public right of way, and charges for document processing, hearings, and certifications. Project budget will also pay all fees and application charges imposed by any association of property OWNERs having authority over the Job Site. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

D.    Except as provided elsewhere in this agreement, Project budget will include all application fees and connection charges imposed by utility companies or government agencies for bringing service to the Job Site, and for connecting gas, water, electricity, phone, cable, sewer, and drainage lines. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

E.    Except as provided elsewhere in this agreement, Project budget will include all approvals for the

Project that are required by government authority, including planning, easements, remediation, environmental, and zoning approvals. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## 19     Taxes

A.     If any federal, state or local tax rate increases or if any new federal, state or local tax is imposed, whether by Law, regulation, or interpretation, between the Contract Date and Substantial Completion, the Contract Price shall be increased by the additional tax levied on DEVELOPER and CONTRACTOR but only to the extent that the change in rate or new tax could not have been reasonably foreseen on the Contract Date. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## 20     Temporary Utilities

A.     DEVELOPER and CONTRACTOR have budgeted for all costs associated with use of temporary utilities on the Job Site during construction, including application fees, permits, engineering, and metered service for water, electric power, heating and cooling. Temporary utility systems provided by DEVELOPER CONTRACTOR shall be designed and installed to protect the public and construction personnel and conform to applicable Laws and Regulations.

B.     Utility services shall be re-listed in the name of future building occupant on the Calendar Day following Substantial Completion.

## 21     Permanent Utilities

A.     Project budget shall include Installation, connection, and modification of permanent electric, water, phone, cable, sewer and gas service as required for the completed Project. It will not include any deposits that will be paid by building occupant

## 22     Job Cleanup

A.     DEVELOPER and CONTRACTOR shall regularly remove from the Job Site and storage areas all surplus material, waste and debris resulting from the Work. Construction debris shall be removed to a legal refuse collection site with disposal or recycling fees included in Project budget. At completion of the Work, DEVELOPER and CONTRACTOR shall, in addition, remove from the Job Site all tools, equipment and scaffolding brought to the Job Site by DEVELOPER and CONTRACTOR or Subcontractors. At Substantial Completion, exposed finishes of windows, doors, floors, walls, ceilings, fixtures and trim shall be cleaned and free of grime, stains, over spray, dirt and dust.

B.     DEVELOPER and CONTRACTOR shall provide a trash disposal facility on the Job Site for use by construction personnel. The on-site trash facility provided by DEVELOPER and CONTRACTOR shall be of an appropriate size for the Project and placed in a location approved by OWNER. All construction debris shall either be placed in the trash facility provided by DEVELOPER and CONTRACTOR or hauled to a legal disposal site, at the discretion of DEVELOPER and CONTRACTOR. When any trash container provided by DEVELOPER and CONTRACTOR is full, contents shall be removed to a legal disposal facility at the expense of CONTRACTOR.

## 23     Project Sign

A.     DEVELOPER and CONTRACTOR shall have the right to fabricate and erect a Project sign bearing

the name of the Project, Prime CONTRACTOR, principal Subcontractors, designers, consultants, lead lender, a short Project description, and expected Completion Date. CONTRACTOR may erect directional signs at the Job Site with approval of OWNER with respect to size, style and location. Directional signs may bear the name of CONTRACTOR and a directional symbol. No other signs will be permitted except by permission of OWNER.

## 24   Project Superintendent

A.   DEVELOPER and CONTRACTOR shall employ a competent Superintendent and any necessary assistants or alternates that will be at the job site from start to finish of project. The Superintendent shall not be changed unless the Superintendent is discharged by DEVELOPER and CONTRACTOR. The Superintendent shall have authority to represent DEVELOPER and CONTRACTOR in all matters relating to the Project. Communications with the Superintendent shall have the same force and effect as direct communication with DEVELOPER and CONTRACTOR.

## 25   OWNER'S Responsibilities

A.   OWNER affirms that OWNER has the right to enter this agreement and has the right to contract for construction of the Project on the Job Site. OWNER shall pay all taxes and assessments due on the Job Site during the period of construction and shall take all reasonable actions required to protect marketable title to the Job Site. OWNER is responsible for all standard responsibilities that a property OWNER / landlord would have.

B.   OWNER will ensure that OWNER'S Representative responds in writing and with reasonable promptness to written requests from DEVELOPER and CONTRACTOR for (1) interpretation of the Plans or Specifications, or (2) other information relevant to completion of the Work. DEVELOPER and CONTRACTOR are authorized to rely on written responses from OWNER'S Representative.

C.   OWNER shall have sole responsibility to secure financing for the Project and shall pay all fees, charges, or other costs of such financing, including Inspection fees charged by any lender. The nonperformance of any lender shall not affect the obligation of OWNER to DEVELOPER and CONTRACTOR. OWNER hereby authorizes and directs any lender on the Project to furnish DEVELOPER and CONTRACTOR with full information on undisbursed proceeds when requested by DEVELOPER and CONTRACTOR. Proof of funds must be made available to DEVELOPER prior to project starting.

D.   OWNER will not interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by DEVELOPER and CONTRACTOR or Subcontractors except as provided under this agreement.

## 26   Construction by Others

A.   OWNER shall neither hire nor retain Separate DEVELOPER and CONTRACTOR, Subcontractors, employees or agents of OWNER to perform Work on the Job Site while Work is being done under this agreement by DEVELOPER and CONTRACTOR.

## 27   Authority of OWNER'S Representative

A.   OWNER'S Representative has authority to administer the contract, make construction decisions on behalf of OWNER, and is the primary authority on issues of compliance with the Drawings and Specifications, quality of workmanship, materials used, manner of performance, and rate of progress on the Project.

B.      After the Contract Date, OWNER shall make no change in the responsibilities or authority of OWNER'S Representative without consent of DEVELOPER and CONTRACTOR.

C.      OWNER'S Representative shall have the right to visit the Project and view Work in progress at any time. Any Defective Work found or suspected, either as the result of a site visit or otherwise, shall be reported promptly to DEVELOPER and CONTRACTOR. No actions taken or statements made during site visits shall relieve DEVELOPER and CONTRACTOR of obligations described in the Contract Documents.

D.      Communication between DEVELOPER and CONTRACTOR and OWNER shall be initiated through OWNER'S Representative unless direct communication is required by Law or Contract Documents. Unless otherwise authorized by DEVELOPER and CONTRACTOR, communications between OWNER'S Representative and Subcontractors or Material Suppliers shall be through DEVELOPER and CONTRACTOR.

E.      OWNER'S Representative shall have the authority to reject and order removed any portion of the Work which does not conform to the Contract Documents.

F.      OWNER'S Representative shall have authority to conduct Inspections about Beneficial Occupancy and to determine the dates of Substantial Completion.

### 28      Representations by DEVELOPER and CONTRACTOR

A.      DEVELOPER and CONTRACTOR shall use skill and attention to complete the Work in a timely manner consistent with the Contract Documents.

B.      OWNER has reported to DEVELOPER and CONTRACTOR all conditions known to OWNER which may not be apparent to CONTRACTOR and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the Job Site, unsuitable soil conditions, prior Defective Work of others, latent Defects in the Plans or Specifications, earlier attempts to do Similar or related Work, and obligations imposed by government.

### 29      Disclaimer by OWNER, Reliance by CONTRACTOR

A.      OWNER has provided DEVELOPER and CONTRACTOR with information on subsurface or concealed conditions at the Job Site. Except to the extent that DEVELOPER and CONTRACTOR knows this information to be false, DEVELOPER and CONTRACTOR is entitled to rely on the accuracy of this information.

### 30      Discrepancy between Plans and Field Conditions

A.      DEVELOPER and CONTRACTOR is not a Design Professional and have no obligation to find discrepancies between Job Site conditions and representations or Requirements in the Contract Documents.

B.      DEVELOPER and CONTRACTOR shall not be liable for discrepancies between representations or Requirements in the Contract Documents and conditions at the Job Site unless DEVELOPER and CONTRACTOR knowingly fails to report a discrepancy, in which case DEVELOPER and CONTRACTOR shall be liable for additional costs incurred because of failure to give prompt notification.

C.      If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information

provided by OWNER, DEVELOPER and CONTRACTOR shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall submit a Claim for a Change Order which covers the additional cost incurred because of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

### 31     Use of the Site

A.     OWNER has agreed to furnish all required rights to use the land upon which the Work is to be constructed. OWNER will identify any encumbrances or restrictions related to use of the land furnished and DEVELOPER and CONTRACTOR agrees to comply with those encumbrances or restrictions. If OWNER fails to furnish the land, rights of way, or easements when required, DEVELOPER and CONTRACTOR may make a Claim for extra compensation, additional time, or other relief.

B.     OWNER shall designate a construction entrance which DEVELOPER and CONTRACTOR shall use for all delivery of materials and equipment and which shall be used by all construction personnel.

### 32     Draw Schedule

OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:

**OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:**

**Momentum draw - 10% of the Budget within three (3) Business Days following the closing on land, building or execution of this development contract.  Momentum draw will include all developer's pursuit cost, project soft cost, developer fee and necessary local, state and or federal permitting fees to start the project.**

**Draw 1 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following the commencement of the Work.**

**Draw 2 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 1.**

**Draw 3 - 20% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 2.**

**Final Draw – 10% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request includes a copy of all executed lien releases and final payment affidavits (from CONTRACTOR, Subcontractors and others) being submitted to the clerk of court and recorded in the public records and a copy of the permanent Certificate of Occupancy issued for the Project.**

It is agreed by OWNER and or FUNDING SOURCE that all payments will be made to DEVELOPER. DEVELOPER will disburse funds in a timely manner. The afore mentioned budget that is supported by the GMAX clause is considered total project budget and the DEVELOPER will disburse funds per DEVELOPERS discretion.  No third-party title company will be granted permission to disburse funds to any company or individual on behalf of funding group. Each application for payment shall be submitted

on the form approved by OWNER.

**Discharge of Liens and Payment of Subcontractors**

1.     DEVELOPER and CONTRACTOR warrants that, upon payment, OWNER shall receive clear title to all Work identified in the application for payment, free and clear of all liens and Claims, including Claims of Subcontractors, employees or Material Suppliers. CONTRACTOR also agrees that this vesting of title in OWNER does not impose any obligation on OWNER or relieve CONTRACTOR from any obligation under this contract. CONTRACTOR shall remain responsible for damage to or loss of both the Work and stored materials until Completion.

2.     DEVELOPER and CONTRACTOR warrants and guarantees that no Work, materials, or equipment covered by a request for payment has been acquired by DEVELOPER and CONTRACTOR or by any other person performing the Work or furnishing materials or equipment for the Project subject to an agreement under which an interest therein, or an encumbrance thereon, has been retained by seller or otherwise imposed by CONTRACTOR.

3.     DEVELOPER and CONTRACTOR shall furnish, with each application for payment, executed waivers of liens from DEVELOPER and CONTRACTOR and each Subcontractor and Material Supplier to the Project in the amount of the application for payment. Waivers of liens shall be in a form satisfactory to OWNER, title insurer, and lenders.

4.     DEVELOPER shall disburse funds received from OWNER among DEVELOPER and CONTRACTOR, subcontractors and material suppliers in proportion to the work done and materials received for the project during the pay period.

### 35     Interest

A.     Payments due and not paid under the Contract Documents shall bear interest from the date payment is due at a monthly rate of **10** percent.

B.     Payment of interest does not abrogate or replace any other rights DEVELOPER and CONTRACTOR may have under this agreement.

### 36     Final Payment

A.     DEVELOPER and CONTRACTOR will apply for final payment and will notify OWNER'S Representative when the work has been completed. OWNER'S Representative will issue a certificate of completion on determination that the Project is complete and in compliance with the Contract Documents. When the certificate of completion is issued, the entire unpaid balance of the contract amount, including any retainage, is payable to DEVELOPER.

B.     Making of final payment constitutes waiver of all Claims by OWNER against DEVELOPER and CONTRACTOR except those Claims previously made in writing and delivered to DEVELOPER and CONTRACTOR and those obligations otherwise provided by this agreement or by operation of Law.

C.     The acceptance of final payment by CONTRACTOR constitutes a complete and unconditional waiver and release of any and all Claims by CONTRACTOR of whatever nature, and regardless of whether they are then known or unknown, and a complete and unconditional release of OWNER, and every person for whom OWNER is responsible, for any and all matters related to the contract or otherwise, except those Claims which have been made in writing and identified by CONTRACTOR as not having been settled at that time.

### 37   Changes in the Work

A.     Except as required by changes in the Prime Contract between OWNER and DEVELOPER, no

change to this contract (including Modification, clarification, interpretation or correction of the Plans or Specifications) shall be made without agreement and a written Change Order signed by DEVELOPER and CONTRACTOR and OWNER identifying the change, the cost of the change, and the effect on Project Schedule, if any.

B.    Any change in Plans, Specifications or Contract Documents necessary to conform to existing or future Laws, codes, ordinances or regulations shall be considered Extra Work.

C.    Changes in the Work required due to defects or inconsistencies in Plans or Specifications or other Contract Documents shall be considered Extra Work.

D.    The charge for Extra Work shall be the normal selling price DEVELOPER and CONTRACTOR charges for similar changes on other jobs.

E.    Failure of DEVELOPER and CONTRACTOR and OWNER to agree on the terms of a Change Order shall be resolved under the provisions of this agreement which cover Claims and disputes.

F.    Should DEVELOPER and CONTRACTOR and OWNER fail to agree promptly on the terms of a Change Order, DEVELOPER and CONTRACTOR shall be paid, pending resolution of the dispute, the portion of the cost of the change not in dispute, including the costs of time and materials required to execute the change. Payments required under this paragraph shall be made as the Work progresses, concurrently with progress payments.

## 38    Cooperation of the Parties

A.    OWNER and DEVELOPER acknowledge that open communication and cooperation will be required to complete the Project on time, as estimated, and in compliance with the Contract Documents. DEVELOPER and OWNER each agree to identify a representative who will be available to resolve minor problems, answer questions and reach mutually acceptable solutions. The individuals identified by DEVELOPER and OWNER shall try to reach informal agreement on problems as they arise but are under no obligation to do so.

B.    Both DEVELOPER and OWNER pledge that their relations will be conducted with courtesy and consideration in an environment characterized by mutual respect. OWNER pledges to respond promptly to requests by DEVELOPER for guidance, assistance and payments when due and agrees to extend to DEVELOPER the deference and latitude a dedicated professional deserves. CONTRACTOR pledges to commit the skill and resources required to complete the Project in a manner that complies with both the letter and spirit of the Contract Documents and enhances the reputation of DEVELOPER and for dependability and professionalism.

## 39    Warranty

DEVELOPER and CONTRACTOR warrant that the Work shall be free of Defects due to faulty material or workmanship for the period specified in this agreement.

**A.    General Requirements**

1.    Except as otherwise provided in this agreement, the warranty period shall begin from the date of Completion for 12 months.

2.    Work done by CONTRACTOR in compliance with warranty provisions of this agreement does not extend the period of the warranty.

3.    DEVELOPER and CONTRACTOR shall deliver to OWNER all warranties provided by vendors and manufacturers of materials and equipment used to complete the Project. DEVELOPER and CONTRACTOR shall have no obligation under warranties provided by others except to render any

assistance that OWNER may require in enforcing the terms of those warranties.

4.     Except as provided in this agreement, and to the extent permitted by Law, DEVELOPER and CONTRACTOR disclaims all warranties, whether express or implied, whether of fitness for purpose, merchantability, habitability or workmanlike completion.

5.     Failure of OWNER to give notice of a breach of warranty within the warranty period constitutes a waiver of the right to repair or replacement by DEVELOPER and CONTRACTOR.

6.     To make a warranty Claim under this agreement, OWNER must send a clear and specific written complaint to DEVELOPER and CONTRACTOR at the following address within 60 Calendar Days of discovering Defects, unless otherwise specified in the list of items covered under this warranty. DEVELOPER and CONTRACTOR shall make repairs, replacements and corrections promptly and at no expense to OWNER.

**B.     Exclusions from Warranty**

1.     The warranty provided by this contract does not cover any of the following items or conditions:

I.     Damages to private property or bodily injury.

II.     Damages or losses that result from soil movement that is covered by insurance or that is compensated for by legislation.

III.     Insect damage.

IV.     Damage or losses that result from overloading of any floor, wall, ceiling, or roof beyond the design capacity.

V.     Damages caused or made worse by:

A.     Changes, additions, deletions, or any other alterations made to any part of the structure by anyone other than DEVELOPER and CONTRACTOR after the warranty term begins.

B.     Loss that results from failure of OWNER to take timely action to mitigate or minimize damage.

2.     DEVELOPER and CONTRACTOR has no liability for incidental or consequential damages from breach of any warranty provided by this agreement insofar as the loss claimed is covered by insurance of OWNER or for which OWNER has a right of recovery from any other party.

**C.     Basic Warranty Coverage**

1.     It is a breach of warranty if any material or design furnished, or workmanship performed by DEVELOPER and CONTRACTOR or any Subcontractor or Material Supplier, is found to be defective during the first year.

**D.     Warranty on Major Structural Damage**

1.     It is a breach of the major structural damage warranty where there is actual physical damage to designated load-bearing portions of the structure caused by the failure of such designated portions to perform to their load-bearing functions to the extent that it makes the structure unsafe, uninhabitable, or unsanitary during the first 12 months. The following items are designated load-bearing portions:

I.     Foundation Systems and Footings

II.     Beams

III.     Girders

IV.     Lintels

V.      Columns

VI.     Walls and Partitions

VII.    Floor Systems

VIII.   Roof Framing Systems

## 40     DEVELOPER and CONTRACTOR Claims

A.     If DEVELOPER and CONTRACTOR claims that any instruction, Drawing, act or omission of OWNER or any representative of OWNER, or any agency of government, increases costs to DEVELOPER and CONTRACTOR, requires extra time or changes the Scope of Work, CONTRACTOR shall have the right to assert a Claim for such costs or time.

## 41     Notice of Claims

A.     No Claim by DEVELOPER and CONTRACTOR shall be considered unless DEVELOPER and CONTRACTOR provide OWNER or OWNER'S Representative with a notice that there will be a Claim for additional compensation or an extension of time. This notice of Claim shall be made no less than 5 Calendar Days after DEVELOPER and CONTRACTOR recognizes or should have recognized that circumstances exist which support such a Claim. The notice of Claim shall include: (1) The date of the notice, (2) The date the basis for the Claim was discovered, (3) The circumstances that support the Claim, and (4) The estimated additional cost to OWNER or additional time required to complete the Project.

B.     If the Claim involves Extra Work, DEVELOPER and CONTRACTOR shall maintain detailed records which show each expense incurred, including payroll records and receipts for Subcontracted Work, materials and equipment. These detailed records shall be made available to OWNER for verification while Work subject to the Claim is being performed.

C.     The amount Claimed by CONTRACTOR shall be calculated in accord with provisions in this contract on charges for Extra Work.

## 42     Arbitration

A.     Any controversy or Claim arising out of or relating to this contract or contract warranty or the breach thereof which cannot be resolved by mediations shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

B.     Two copies of the demand for arbitration and attachments and the related fee shall be filed with the appropriate regional office of the American Arbitration Association. Copies of the demand and attachments shall be given to all other Parties to the dispute. The demand for arbitration shall be made within a reasonable time after the Claim or dispute has arisen, and in no event after the date when institution of legal or equitable proceedings based on such Claim or dispute would be barred by the applicable statute of limitations.

C.     DEVELOPER, CONTRACTOR and OWNER agree to include in each contract for construction or design services on the Project a clause which requires that disputes under that contract be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules.

D.     Any representative of OWNER or consultant to OWNER or DEVELOPER and CONTRACTOR or any Subcontractor to DEVELOPER and CONTRACTOR on the Project shall have the same rights in any

arbitration proceeding as are afforded by arbitration rules to DEVELOPER and CONTRACTOR and OWNER. If more than one demand for arbitration is made by a Party with respect to the Project, all such Claims shall be consolidated into a single arbitration unless the Parties otherwise agree in writing.

E.    If a Claimant in arbitration recovers less than 50 percent of the amount demanded in arbitration, DEVELOPER and CONTRACTOR and OWNER agree that the Claimant shall pay all costs in arbitration, including the arbitrator's fees and the attorney's fees of the opposing Party.

## 43.    Insurance

**A.    Certificates of Insurance**

1.    DEVELOPER and CONTRACTOR shall provide to OWNER a certificate of insurance for each insurance policy required by this agreement. These certificates shall list OWNER as the certificate holder.

2.    Certificates of insurance shall be issued on a standard form

3.    DEVELOPER and CONTRACTOR shall permit no Subcontractor to begin Work on the Project until OWNER has received certificates of insurance demonstrating that the Subcontractor has coverage of a like kind and with comparable limits to insurance coverage required of DEVELOPER and CONTRACTOR under this agreement.

**B.    Waivers of Subrogation**

1.    OWNER and DEVELOPER and CONTRACTOR waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance except such rights as may exist to the proceeds from insurance held by OWNER as trustee. DEVELOPER and CONTRACTOR shall require similar waivers in Subcontracts for the Project.

**C.    Insurance Details**

1.    If insurance policies meeting the Requirements of this contract are not generally available to DEVELOPER and CONTRACTOR. DEVELOPER and CONTRACTOR may provide substantially similar coverage and shall so notify OWNER in writing.

2.    DEVELOPER and CONTRACTOR may satisfy the policy limits set by this contract through any combination of underlying and excess liability (umbrella) insurance so long as the total coverage is not less than the policy limits specified in this contract. Any excess liability (umbrella) insurance coverage provided by CONTRACTOR must be written on an occurrence basis, offer coverage at least as broad as the underlying insurance, and have concurrent effective dates. Excess liability (umbrella) insurance provided by DEVELOPER and CONTRACTOR shall provide additional insured endorsements, blanket contractual coverage, and punitive damages coverage (unless prohibited by Law).

**D.    Liability Insurance**

1.    As an alternative to including OWNER as an additional insured under a comprehensive general liability policy, DEVELOPER and CONTRACTOR may provide an OWNER'S and CONTRACTOR's Protective Liability Policy. If DEVELOPER and CONTRACTOR are unable to procure the minimum amounts of insurance in a single policy, CONTRACTOR may provide required policy limits through a combination of a primary OCP Policy and one or more excess policies. OWNER shall be the named insured on the Policy and, if applicable, the excess policy. Each policy shall be endorsed to include each Subcontractor of every Tier as the CONTRACTOR designated in the declarations.

2.    Minimum CONTRACTOR's liability coverage shall be: $1,000,000 combined bodily injury and

property damage single occurrence limit, annual aggregate limit of $2,000,000, products and completed operations aggregate limit of $1,000,000, personal and advertising injury aggregate limit of $1,000,000.

**E.   Builder's Risk Insurance**

1.   OWNER shall provide builder's risk insurance covering property damage to the Project during the construction period. OWNER accepts the risk of damage to the Work during construction and agrees to Indemnify and hold harmless DEVELOPER and CONTRACTOR and Subcontractors at any Tier from losses resulting from uninsured damage to the Work prior to final payment under this agreement.

2.   Builder's risk insurance shall include a loss payable provision naming OWNER as loss payee. OWNER shall have the power to adjust and settle Claims resulting from builder's risk insurance.

3.   Policy limits for builder's risk coverage shall be no less than the completed replacement value of the Project including the value of Change Orders.

### 44   Liability for Damages

**DEVELOPER and CONTRACTOR Liability for Damages**

1.   DEVELOPER and CONTRACTOR shall have no liability for damage to or loss of OWNER'S private property left on the Job Site unless such damage or loss is the direct result of intentional or negligent acts by DEVELOPER and CONTRACTOR.

### 45   Indemnity

A.   DEVELOPER and CONTRACTOR shall defend, Indemnify, and hold harmless OWNER and all officers, employees, agents, and consultants of OWNER from and against all and any losses, liability, Claims, costs, damages and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from performance of Work under this agreement provided such loss, liability, costs, damage and economic detriment is attributable to bodily injury, sickness, disease or death, or to injury or destruction of property (other than the Work itself) caused by the negligent acts or omissions of DEVELOPER and CONTRACTOR, a Subcontractor, or anyone directly or indirectly employed by them, or whether caused by or contributed to by OWNER, unless caused by the sole negligence of OWNER.

B.   Indemnification of OWNER is limited to the extent of insurance coverage required to be carried by DEVELOPER and CONTRACTOR under this agreement.

C.   Indemnification under this agreement shall not exceed any limitation on the amount or type of damages, compensation, or benefits payable by or for DEVELOPER and CONTRACTOR or any Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

### 46   Interpretation of the Contract

A.   Section headings and paragraph numbers have been included in this contract to refer easier and in no way limit, define, or enlarge the terms, scope, or conditions of this contract.

B.   Except as otherwise provided in this contract, OWNER and DEVELOPER and CONTRACTOR intend that this contract be interpreted in accord with the *Restatement of Law, Contracts*, published by the American Law Institute. Specifically: All parts of the Contract Documents should be interpreted together, and conduct of the Parties should be interpreted as a manifestation of intention, and specific provisions should be interpreted as qualifying the meaning of the general provisions.

### 47   Dealing with Plan Defects

A.     At any time, DEVELOPER and CONTRACTOR may request an interpretation or clarification of the Contract Documents from OWNER or OWNER'S Representative. OWNER or OWNER'S Representative shall reply with a written interpretation, clarification, or detailed instructions within a reasonable time.

B.     DEVELOPER and CONTRACTOR will rely on the Contract Documents as the final authority on what is included in the Project. The Contract Documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction DEVELOPER and CONTRACTOR doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. CONTRACTOR bears no responsibility for defects in the Contract Documents.

C.     Unless DEVELOPER and CONTRACTOR has asked for and received a written clarification from OWNER in time to prevent delay in the Work, any omission or ambiguity in the Contract Documents shall be interpreted as requiring the material or construction technique necessary to produce the greater quantity and better quality of Work.

D.     DEVELOPER and CONTRACTOR will report promptly to OWNER any design defects likely to result in problems during construction of the Project. However, DEVELOPER and CONTRACTOR is not a licensed architect or engineer and have no obligation to detect ambiguities, inconsistencies or omissions in the Contract Documents. While acting in good faith, DEVELOPER and CONTRACTOR is entitled to rely on the Work of a trained design specialist selected by and responsible to OWNER.

E.     DEVELOPER and CONTRACTOR is entitled to rely on dimensions and descriptions shown in the Contract Documents when ordering materials for Installation.

F.     Ambiguities, inconsistencies and omissions in the Contract Documents are design defects, not errors by DEVELOPER and CONTRACTOR. The cost of correcting design defects shall be at the expense of OWNER.

G.     If inconsistent, approved changes to the Contract Documents take precedence over the original Contract Documents. Subsequent changes to the Contract Documents take precedence over prior changes to the Contract Documents.

H.     If inconsistent, the construction Drawings take precedence over the Specifications.

I.     If anything in the construction Specifications is inconsistent with anything else in the construction Specifications: (1) A product performance Requirement takes precedence over a named product or manufacturer, and (2) Other clauses in the Specifications take precedence over anything incorporated by reference into the Specifications.

J.     If anything in the construction Drawings is inconsistent with anything else in the construction Drawings: (1) Dimensions written in numbers take precedence over scaled measurements, (2) Notes and schedules take precedence over lines on the Drawings, (3) Large scale Drawings take precedence over small scale Drawings, (4) Schedules take precedence over notes or other directions, (5) Specific notes take precedence over general notes, and (6) Bottom elevations of footings take precedence over any general notes.

K.     If inconsistent, other Contract Documents take precedence over any manual, industry standard, recommendation, regulation, and set of guidelines, code, or instructions incorporated by reference into the Contract Documents.

L.     If inconsistent, any portion of the Contract Documents written in longhand takes precedence over

anything printed in the Contract Documents.

M.     DEVELOPER and CONTRACTOR has no liability for any omission, inconsistency or ambiguity in the Contract Documents or for any discrepancy between physical conditions at the Job Site and the Contract Documents, unless DEVELOPER and CONTRACTOR fails to report the error to OWNER or OWNER'S Representative.

## 48     Choice of Venue

A.     The Parties agree that venue for any action related to performance of this contract shall be the appropriate court in Tennessee.

## 49     Entire Agreement

A.     The Contract Documents are the entire agreement and constitute a complete integration of all understandings between DEVELOPER and CONTRACTOR and OWNER about the Project. The Contract Documents supersede all prior negotiations, representations and agreements, whether written or oral. No subsequent notation, renewal, addition, deletion, change or amendment to this contract shall have any force or effect unless in the form of a written Change Order or amendment to this contract.

## 50     Severability

A.     If any provision of this contract is interpreted or rendered invalid and unenforceable, then the remainder of this contract shall remain in full force and effect.

## 51     Cumulative Remedies

A.     All rights and remedies provided to DEVELOPER and CONTRACTOR by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to CONTRACTOR at Law or in equity.

## 52     Materials and Substitutions

A.     When the Specifications refer to materials or equipment by performance standard (such as an ASTM identifier), DEVELOPER and CONTRACTOR may select for Installation any product or equipment meeting that standard. When several products or manufacturers are identified as acceptable in the Specifications, DEVELOPER and CONTRACTOR has the option of using any of the products or selecting any of the manufacturers listed without seeking approval from OWNER or OWNER'S Representative.

B.     Except as stated otherwise in the Specifications, any reference in the Specifications to a brand, make, manufacturer, or model denotes only characteristics of quality, workmanship, economy of operation and suitability for the intended purpose. DEVELOPER and CONTRACTOR may use any substantially equivalent material, equipment, or article if approved in advance of Installation by OWNER or OWNER'S Representative.

C.     All materials and equipment used on the Project shall comply with Specifications in the Contract Documents unless a substitution is approved in advance of Installation by OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall apply to OWNER or OWNER'S Representative for approval of a substitute material when: (1) Any item specified is found to be unusable or unavailable when needed for Installation, or (2) The item specified is considered inferior to an equivalent item which is readily available at a Similar cost. With the application, DEVELOPER and CONTRACTOR shall include documentation: (1) Demonstrating that essential features of the substitute item are equal to or exceed similar features of the item specified, and (2) Listing delivered prices for the substitute item based on Material Supplier quotations. OWNER or OWNER'S Representative may deny

any application for substitution if not in the best interest of OWNER. If approved, any savings in cost that result from the substitution will be credited to OWNER. No request for substitution of material shall constitute grounds for extension of the Contract Time. Proposed substitutions shall not be purchased or installed without approval of the substitution by OWNER or OWNER'S Representative.

### 54    Inspections

DEVELOPER and CONTRACTOR shall schedule and coordinate all Inspections required by the Contract Documents and by public authority so as not to delay the progress of the Work or the Work of OWNER or Separate CONTRACTORs. If the Contract Documents require that an Inspection be witnessed or attended by OWNER or OWNER'S Representative, DEVELOPER and CONTRACTOR shall give notice of the time and place of the Inspection. DEVELOPER and CONTRACTOR shall schedule Inspections during regular Work Days and normal business hours, unless mutually agreed by DEVELOPER and CONTRACTOR, OWNER, and Inspector.

B.     Insofar as applicable and except where superseded by other provisions of the Contract Documents or by government regulation, Inspection of the following Work will be required on the Project: (1) Bearing surfaces of excavations before concrete is placed, (2) Reinforcing steel after Installation and before concrete is poured, (3) Structural concrete when poured, (4) Structural framing after erection and prior to being covered or enclosed, (5) Steel welding, (6) Mechanical and plumbing Work following Installation and prior to being covered or enclosed, (7) Electrical Work following Installation and prior to being covered or enclosed, (8) Above-ceiling Work when complete but before the finish ceiling material is installed, and (9) Final Inspections prior to occupancy.

C.     If an Inspection reveals Work of DEVELOPER and CONTRACTOR not in compliance with the Contract Documents or not in compliance with any code or statute, DEVELOPER and CONTRACTOR shall bear the costs of correction, the cost of repeating the Inspection, and any related costs, including reasonable charges by OWNER or OWNER'S Representative for additional services.

### 55    The Construction Schedule

A.     DEVELOPER and CONTRACTOR shall prepare and submit to OWNER for review and approval an estimated progress Schedule for the Work showing completion within the Contract Time. This progress Schedule shall identify expected starting and completion dates for each part of the job and identify tasks critical to timely completion of the Work.

B.     DEVELOPER and CONTRACTOR may select any type of Schedule which: (1) Is suitable for monitoring progress of the Work, (2) Provides easy access to information about the timing of decisions OWNER must make and acts OWNER must perform, (3) Includes sufficient detail to demonstrate adequate planning for the Work, and (4) Presents a practical plan to complete the Work in an acceptable time.

C.     DEVELOPER and CONTRACTOR shall plan, develop, supervise, control, and coordinate the performance of the Work so that job progress, sequence and timing conform to the construction Schedule. If DEVELOPER and DEVELOPER and CONTRACTOR falls materially behind the currently approved construction Schedule, OWNER may require DEVELOPER and CONTRACTOR to prepare and submit for approval, at no cost to OWNER, a plan for completing the Project within the Contract Time. Failure to submit a plan meeting this Requirement shall constitute grounds for termination under the terms of this agreement.

D.     The Schedule shall allow for and depict the following: (1) Beginning and Completion Dates of each significant task (Work breakdown structure) in the job, (2) Delivery and approval of each Submittal, Samples and Shop Drawing, (3) Inspections and tests, (4) The Work of Subcontractors and Separate

CONTRACTORs, and (5) Order dates and delivery dates of significant equipment and key materials. The construction Schedule shall include a legend which identifies the meaning of each symbol and abbreviation.

## 56    Extension of the Time for Completion

A.    OWNER shall execute a Change Order for Excusable Delay by extending the Contract Time for the period of the delay. Any of the following shall constitute excusable delay for which the Contract Time shall be extended: (1) Strike, boycott, embargo, terrorism, armed rebellion, quarantine or other obstructive action by employees, labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or, order of government authority, and (2) Fire, flood, earthquake, tornado, tidal wave, lightning, rain, snow, temperature under 32 degrees, casualty loss, epidemic, or unusually adverse weather.

B.    For delay in delivery of materials, FF&E, equipment or for a shortage of labor that results from unforeseeable circumstances beyond the control and without fault or negligence of either DEVELOPER and CONTRACTOR, or any Subcontractor or Material Supplier of DEVELOPER and CONTRACTOR, OWNER will grant an extension of the Contract Time if: (1) DEVELOPER and CONTRACTOR, notifies OWNER or OWNER'S Representative promptly on discovery of the anticipated shortage, (2) DEVELOPER and CONTRACTOR,  substantiates the delay as unavoidable with a detailed chronology of events and all relevant correspondence, and (3) DEVELOPER and CONTRACTOR, provides an estimated date when the material, equipment or labor will be available.

C.    Any Change Order granted for Excusable Delay shall have no effect on a Claim by DEVELOPER and CONTRACTOR, for damage from the same delay for interruption, hindrance, or disruption.

## 57   DEVELOPER and CONTRACTOR Claims for Delay

A.    The Contract Price shall be adjusted for any increase in the cost of performance of this contract caused by suspension, delay or interruption of the Work due to: (1) An error or omission in the Contract Documents, (2) A decision of OWNER to change the Scope of the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR,, (3) A decision of OWNER to suspend the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR,, (4) A failure by OWNER or OWNER'S Representative to comply with the construction Schedule, (5) Any act or neglect of OWNER or agent of OWNER or any Separate DEVELOPER and CONTRACTOR, (6) Failure of OWNER to yield control of the Job Site to DEVELOPER and CONTRACTOR,, or (7) Failure of OWNER to make payments when due under the terms of this agreement.

B.    Within 3 Working Days after receipt of a notice of Claim for compensation for suspension, delay, or interruption, OWNER shall: (1) Respond with a resolution, remedy, or direction to alleviate the delay, (2) Respond with a notice rejecting the Claim for delay, or (3) Respond with a draft Change Order accepting the Claim for delay. If the issue is not then resolved, DEVELOPER and CONTRACTOR, may request a Change Order.

C.    No change in the Contract Time for completion or the Contract Price shall become part of the Contract Documents without a Change Order.

D.    Compensation to DEVELOPER and CONTRACTOR, for suspension, delay, or interruption of Work shall include direct overhead (Job Site) expense, a proportionate share of unabsorbed indirect (home office) overhead expense, lost efficiency and lost profit taken as 15 percent of total compensable expenses. Direct overhead costs shall include, without limitation: (1) Labor (with taxes, insurance and fringe benefits) for the idle work force, (2) The fair rental cost of idle equipment (such as vehicles,

construction tools and equipment), (3) Facilities (such as temporary structures, water, power, phone, and toilets), (4) The additional cost of Bonds and insurance, (5) Similar direct overhead costs of Subcontractors to whom DEVELOPER and CONTRACTOR, is liable for damages that result from the delay, and (6) Demobilization and re-mobilization costs. Unabsorbed indirect overhead costs shall include, without limitation, the proportionate share of office rent, office supplies, office utilities, office equipment, advertising, professional fees, management salaries, technical services, estimating, selling, accounting, bookkeeping and clerical expense, business licenses, taxes (except income taxes), and insurance.

<h3 style="text-align:center">58   Liquidated Damages</h3>

A.    Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the Contract Time are considered reasonable by OWNER and DEVELOPER and DEVELOPER and CONTRACTOR, any neglect, refusal or failure of DEVELOPER and CONTRACTOR to reach Substantial Completion within the Contract Time, plus approved extensions of that time, will result in damage to OWNER impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and CONTRACTOR or which may become due CONTRACTOR the sum of $125.00 as liquidated damages for each Calendar Day that Substantial Completion is delayed beyond the Contract Time, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

B.    Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the time for Completion are considered reasonable by OWNER and CONTRACTOR. Any neglect, refusal or failure of DEVELOPER and CONTRACTOR, to reach Completion within the time provided in this contract, plus approved extensions of that time, will result in damage in the form of inconvenience, loss of opportunities, and higher Inspection, Superintendence, and administrative costs to OWNER. These costs are impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and DEVELOPER and CONTRACTOR or which may become due DEVELOPER and CONTRACTOR, the sum of $125.00 as liquidated damages for each Calendar Day that Completion is delayed beyond the time provided in this contract, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

C.    Achieving Substantial Completion sooner than the Contract Time, plus approved extensions of that time, shall earn additional compensation to DEVELOPER and CONTRACTOR of $125.00 for each Calendar Day that Substantial Completion is achieved prior to the Contract Time, plus approved extensions of that time.

D.    DEVELOPER and CONTRACTOR, shall not be charged liquidated damages for any failure, neglect or refusal to complete the Work on Schedule to the extent that the proximate cause of the delay was: (1) Strike, boycott, embargo, terrorism, armed rebellion, quarantine, delay in delivery of FF&E, or other obstructive action by employees, franchise owner, franchisor or labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or by order of government authority, (2) Fire, flood, earthquake, tornado, tidal wave, lightning, casualty loss, epidemic, rain, snow or unusually adverse weather, (3) Any delay of Subcontractors or vendors resulting from items listed in sections 1 or 2 above, or (4) Any act or omission of OWNER or anyone acting on behalf of OWNER.

E.    Except as provided elsewhere in this contract, liquidated damages are the exclusive damage remedy for OWNER for any failure of DEVELOPER and CONTRACTOR to complete Work per Schedule. No damages of any other type or description shall be awarded OWNER for failure of DEVELOPER and

CONTRACTOR to comply with the construction Schedule.

## 59   Consequential Damages

A.     DEVELOPER and CONTRACTOR, and OWNER waive all Claims for consequential damages against each other, their respective officers, directors, partners, employees, agents, consultants and Subcontractors, arising out of or relating to this contract or the termination of this contract, except those consequential damages covered by insurance or specifically provided elsewhere in this agreement.

## 60   Right to Stop Work for Non-Payment

A.     If DEVELOPER and CONTRACTOR, is not paid any amount not in dispute within 7 Calendar Days after the date due, CONTRACTOR shall post on the Job Site and deliver to OWNER and all Subcontractors a notice of intention to stop the Work if payments then due are not received in full within 10 Calendar Days. Thereafter, CONTRACTOR may suspend the Work until delinquent payments have been received, pursuant to Tennessee Civil Code § 3260.2.

B.     Neither DEVELOPER and CONTRACTOR, nor Surety of CONTRACTOR, nor any Subcontractor of DEVELOPER and CONTRACTOR shall be liable for delay or damage that OWNER may suffer as a result of suspension of the Work for failure to receive payments due under this agreement so long as: (1) Work was suspended by DEVELOPER and CONTRACTOR in compliance with the terms of this contract and with applicable Law, and (2) There is no good faith dispute that payment is due DEVELOPER and CONTRACTOR,  at the time of suspension. A good faith dispute exists if OWNER provides: (1) A list of specific reasons for nonpayment, including labor, materials, or equipment not in compliance with the Contract Documents, and (2) CONTRACTOR is afforded a reasonable opportunity to correct the Defects cited or issue a credit compensating OWNER for Defects that cannot be cured promptly.

## 61   Early Partial Occupancy

A.     Without prior approval of DEVELOPER and CONTRACTOR, OWNER shall not occupy or use any portion of the Work until Substantial Completion of the Project. If OWNER occupies or uses any portion of the Work before Substantial Completion of the Project and without prior approval of DEVELOPER and CONTRACTOR, the portion or portions used or occupied shall be considered complete, finished, accepted and the responsibility of OWNER.

B.     No Partial Use or occupancy of the Work by OWNER shall commence prior to Substantial Completion without a Change Order confirming the responsibility of OWNER for maintenance, utilities, operation of equipment, and security during early Partial Use or occupancy.

C.     If any portion of the Project is used or occupied by OWNER prior to Substantial Completion and if the Project is not completed within the Contract Time, liability of DEVELOPER and CONTRACTOR, for delayed completion shall be reduced by the proportion of the Project used or occupied by OWNER and for the time used or occupied by OWNER prior to Substantial Completion.

## 61 Substantial Completion

A.     When, in the opinion of DEVELOPER and CONTRACTOR, the Work is Substantially Complete, DEVELOPER and CONTRACTOR shall prepare a preliminary Punch List of Work remaining to be done and deliver that Punch List to OWNER'S Representative with a request for evaluation of Substantial Completion. If, in the opinion of OWNER'S Representative, items on the preliminary Punch List are consistent with Substantial Completion, OWNER'S Representative shall conduct an Inspection of the Work to evaluate compliance with the Contract Documents.

B. before OWNER takes possession or occupancy of the Project, DEVELOPER and CONTRACTOR,

shall receive a comprehensive Punch List of discrepancies to be corrected or Work to be finished by CONTRACTOR and a date for completing this Work. DEVELOPER and CONTRACTOR, shall complete and correct items on the Punch List by the designated date.

C. the Punch List given to DEVELOPER and CONTRACTOR, is a complete and final list of Defective or incomplete Work on the Project. OWNER shall be deemed to have accepted Work not on the Punch List. Nothing in this paragraph shall be interpreted as relieving DEVELOPER and CONTRACTOR, of the obligation to meet warranty and call-back obligations.

D.    DEVELOPER and CONTRACTOR, shall annotate the Punch List with: (1) A detailed breakdown of the Work required to complete or correct each item, (2) The Subcontractor or trade responsible for the Work, and (3) The dates Work will commence and be finished on each item. No annotation is required for any item on the Punch List which is beyond the control of DEVELOPER and CONTRACTOR. Failure of CONTRACTOR to furnish a detailed completion Schedule for items on the Punch List shall constitute grounds for withdrawing acknowledgment of Substantial Completion.

E.    OWNER'S Representative will prepare a certificate of Substantial Completion for signature by OWNER and DEVELOPER and CONTRACTOR, when the Project or a specific portion of the Project is ready for occupancy. Except as otherwise provided in the Contract Documents, signing of the certificate of completion shall: (1) Transfer to OWNER responsibility for maintenance, safety, utility expense, controlling access at the site, and (2) Begin running of any warranty or call-back period on the Project.

H. after Substantial Completion, DEVELOPER and CONTRACTOR, shall remain responsible for: (1) Damage caused by DEVELOPER and CONTRACTOR, while completing the Work, and (2) Safety of crews when completing the Work.

## 62    Delivery of Notices

A.    Any written notice required by this contract can be: (1) Delivered by hand at the last known address of the addressee, or (2) Delivered by hand to the addressee or representative of the addressee, wherever found. Notice is effective upon delivery.

B.    Any written notice required by this contract can be: (1) Delivered by enclosing in a stamped envelope addressed to the last known address of the intended recipient and either deposited in a United States Postal Service mailbox or given to a USPS employee, or (2) Consigned to a commercial courier service and addressed to the last known address of the intended recipient. Notice is effective upon delivery if proof of delivery is provided; where no proof of delivery is available, notice is effective 5 Calendar Days after mailing or consignment to a courier service.

**Signatures**

The signatures that follow constitute confirmation by those signing that they have examined and understand the Contract Documents and agree to be bound by the terms of these documents.

DEVELOPER and CONTRACTOR may not begin Work before receiving from OWNER a written notice to proceed. Any Work performed by DEVELOPER and CONTRACTOR before receipt of the notice to proceed shall be done at the risk of DEVELOPER and CONTRACTOR and without obligation of OWNER.

This agreement is entered as of the date written below.

**OWNER Name:** CC-1601 N WOODLAND BLVD DELAND FL LLC ,
**OWNER**

_____                    10/18/17
(Signature)                                        (Date)

Pun For Li          Manager
(Printed Name and Title)

**DEVELOPER Name:** REDSTONE LLC DBA AMERICAN DEVELOPMENT PARTNERS,

_____           10/17/17
(Signature)                              (Date)

Manny Butera Developer
(Printed Name and Title)

**Glossary of Terms**

**Beneficial Occupancy** refers to OWNER'S use of the project premises after Substantial Completion but prior to Final Completion. Beneficial Occupancy may occur when the project or some portion is sufficiently complete and systems operational such that the OWNER could, after obtaining necessary approvals and certificates, occupy and utilize the space for its intended purpose. The time limit for warranties applicable to that portion of the Work begin on the date the OWNER begins Beneficial Occupancy, unless otherwise specified in this Agreement.

**Bond** means the security offered by a licensed surety company which may be used to satisfy a claim of failure to perform obligations undertaken in this Agreement.

**Calendar Day** means any day shown on the calendar beginning at midnight and ending at midnight the following day. Contrast the term Work Day which excludes Saturdays, Sundays and state-recognized holidays.

**Certification of Payment** is acknowledgment by someone not a party to this Agreement that CONTRACTOR is entitled to payment for work completed.

**Change Order** is a written modification of the Contract Price (including all claims for direct, indirect and consequential damages and costs of delay), Time for Completion and Scope of Work under this Agreement. A Change Order, once signed by all parties, is incorporated into and becomes a part of the Contract Documents.

**Claim** means a demand or assertion by one of the parties to this Agreement seeking, as a matter of right, modification, adjustment or interpretation of contract terms, payment of money, extension of time or other relief.

**Code Requirements** means all laws, statutes, regulations, building codes, ordinances, rules, and lawful orders of all public authorities having jurisdiction over OWNER, CONTRACTOR, any Subcontractor, the Project, the Job Site, the Work, or the prosecution of the Work.

**Contract Completion Date** means the day by which the Work must be substantially complete.

**Contract Date** is the day on which the contract becomes binding between CONTRACTOR and OWNER.

**Contract Documents** are this Agreement and all documents incorporated by reference into this Agreement.

**Contract Price** is the amount which will become due in exchange for work performed under this Agreement. Contract Price includes allowances for purchased materials and equipment and may be modified by a Change Order or contract modification. The Contract Price may be paid in one or more installments, including an Initial Payment at or before the start of work, Progress Payments as work is completed, and a Final Payment on final acceptance of the work. Payment Period is the time elapsed

Between applications for progress payments or prior to the first application for progress payment.

**Contract Schedule** is a graphical representation of a practical plan to complete Work within the Contract Time.

**Contract Time** means the period between Date of Commencement and the date of Substantial Completion.

**CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the Work under the terms of this Agreement.

**Defective Work** means construction done under this Agreement that is unsatisfactory, faulty, omitted, incomplete, deficient, or does not conform to the requirements of the Contract Documents, directives of OWNER'S Representative, or the requirements of an inspection, reference standard, test, or approval specified in the Contract Documents.

**Design Professional** means the person, organization or authorized representative who is responsible to the OWNER for design of the Project through preparation of Drawings and Specifications. The term Design Professional may refer to an architect, designer, engineer or landscape architect.

**Drawings** (also called plans or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Drawings include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed Project. A group of drawings adequate to complete construction of the Project may be referred to as a plan set. Drawings can be either paper or electronic media.

**Emergency** means an unforeseen event, combination of circumstances, or a resulting state that poses imminent danger to health, life or property.

**Excusable Delay** means any circumstance which postpones completion of the Work and for which CONTRACTOR is entitled to an adjustment of the Contract Time but not an adjustment to the Contract Price. Contrast Inexcusable Delay which entitles CONTRACTOR to neither an adjustment of the Contract Price nor an adjustment in the Contract Time.

**Extra Work** means any change, interpretation, clarification or correction in the Contract Documents or in applicable law, ordinance or regulation which would increase or decrease the quantity of work, delay, suspend or interfere with the work, require an addition to or omission from the work, change the character, quality or nature of any part of the work or material used in the work, change levels, lines, positions or dimensions of any part of the work, require demolition or removal of any work completed under this Agreement, extend or amend the normal work day, alter the construction schedule or require completion of any part of the work at a time other than provided by this Contract when originally made.

**Final Completion** is the date of OWNER'S acceptance of the Work as fully performed per the

Contract Documents.

**Furnish** means to supply and deliver to the job site.

**General CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking execution of the Work under terms of a Prime Contract.

**Hazardous Materials** means radioactive materials, asbestos, polychlorinated biphenyls, petroleum, crude oil, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, and toxic substances which are restricted, prohibited, or regulated by any agency of government in the manufacture, use, maintenance, storage, Ownership or handling.

**Indemnification** Financial compensation intended to restore someone to their condition before a loss or damage.

**Inspection** is any review of the Project, including a visual review of the Work completed to ascertain compliance with Contract Documents, building codes and construction standards.

**Inspector** is anyone authorized by government or the Design Professional to conduct inspections of contract performance and materials supplied for the Work.

**Install** means to secure in position in compliance with the Contract Documents and includes unloading materials, supplying all necessary equipment and rigs to do the work and performing functional tests which demonstrate fitness for the intended purpose.

**Job Site** is the address or location of the Project.

**Law** means federal or state statutes, municipal ordinances, building codes, regulations adopted pursuant to statute, executive orders, official interpretations, and other rules and directives issued by government.

**Material Supplier** means any manufacturer, fabricator, distributor, material man or vendor who provides material for the Project but does not provide on-site labor.

**Modification** is a written amendment to the Contract signed by both parties.

**OWNER'S Representative** means the person or firm authorized to act and make administrative decisions on behalf of the OWNER during construction. Any notice required to be delivered to the OWNER may be delivered to the OWNER'S Representative. The scope of authority of the OWNER'S Representative is defined in this contract. CONTRACTOR cannot rely on any decision or instruction by OWNER'S Representative that is beyond the representative's defined scope of his authority. Nothing in this contract prevents OWNER from issuing a notice or instructions directly to the CONTRACTOR. The OWNER may change the OWNER'S Representative from time to time and may, if OWNER'S Representative is absent, disabled or otherwise temporarily unavailable, appoint an interim OWNER'S Representative.

**Party (to this contract)** means a person or business organization which has an obligation to perform under the terms of this contract.

**Plans** (also called drawings or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Plans include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed project. A group of plans adequate to complete construction of the Project may be referred to as a plan set. Plans can be either paper or electronic media.

**Prime Contract** is a written agreement between CONTRACTOR and OWNER which binds CONTRACTOR to furnish labor, equipment, or materials or perform certain work for a price to be paid by OWNER.

**Project** means Work to be completed in accord with the Contract Documents. Work at the Job Site may include other projects to be completed by the OWNER or other CONTRACTORs working under other agreements.

**Provide** means furnish and install and includes connecting, testing, and placing in service for the intended use.

**Punch List** is a comprehensive list of incomplete, defective or incorrect Work yet to be completed or which does not comply with Contract Documents. A Punch List may be prepared by the CONTRACTOR, Subcontractor, Design Professional or OWNER. An initial Punch List will be prepared before application for Substantial Completion. A Close-out Punch List will be prepared before Final Completion.

**Requirements** means, in addition to obligations, responsibilities and limitations set out in the Contract Documents, the obligations, responsibilities and limitations imposed by law, rules, orders, ordinances, regulations, statutes, codes and executive orders of governmental authorities or fire rating bureaus.

**Retainage** is a portion of each progress payment temporarily held back or retained by the OWNER. Accumulated retainage is released to CONTRACTOR on satisfactory completion of the work.

**Sample** means a physical example of material; equipment or workmanship intended to be representative of some portion of the Work. When approved, samples establish standards for completion of similar work on the Project.

**Schedule of Values** means the detailed breakdown of cost of materials, equipment and labor necessary to complete the Project as described in the Contract Documents.

**Scope of Work** means the Work as defined by the Contract Documents.

**Separate CONTRACTOR** means a person or firm working under a different contract but on the same site

and at the same time as work will be done under this contract.

**Shop Drawings** are diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data which are prepared by the CONTRACTOR or a Subcontractor, manufacturer, supplier or distributor, and which illustrate or describe some portion of the Work to be completed in compliance with the Contract Documents. Once submitted to the approval authority and approved, Shop Drawings establish standards for completion of work on Project.

**Similar** means having a like kind, quality and characteristics. Similar is not to be construed as meaning identical or by the same manufacturer.

**Specifications** (also called specs) are the part of the Contract Documents which provide descriptions of materials, equipment, construction systems, technique and workmanship to be used on the Project. Specifications are both instructions to be followed by the CONTRACTOR and Subcontractors and a reference for the Building Official to evaluate code compliance.

**Subcontract** is a written agreement between a specialty CONTRACTOR and General CONTRACTOR. Terms of the subcontract require the specialty CONTRACTOR to complete some portion of the work General CONTRACTOR is obligated to perform under another agreement, usually with the OWNER.

**Subcontractor** is any person or business entity under contract to a general CONTRACTOR to perform some portion of the work general CONTRACTOR is obligated to complete under a contract with the OWNER. Subcontractor is an independent CONTRACTOR performing services for another CONTRACTOR rather than for the OWNER. A person or organization providing supplies or materials for the Project but no job site labor is not a Subcontractor.

**Submittals** demonstrate the way by which the CONTRACTOR proposes to conform to the requirements of the Contract Documents. Submittals are shop drawings (diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data) required by the Contract Documents which are prepared for the CONTRACTOR to depict some portion of the Work. Submittals are delivered to the OWNER for approval or disapproval by the OWNER prior to purchase or installation.

**Substantial Completion** means the Project or a designated portion of the Project is nearly in compliance with the Contract Documents and is sufficiently complete to be considered fully operational in all its components and is fit for the intended use. Substantial Completion is reached when a limited number of non-conforming or defective items on a Punch List remain to be completed. Normally, a Project or portion of a Project cannot be considered Substantially Complete until (1) all utilities and services are connected and working, (2) all equipment is installed and in acceptable working condition, (3) additional activity by the CONTRACTOR to correct items on the Punch List will not prevent or disrupt use of the facility, and, (4) a certificate of occupancy has been issued by the appropriate authority.

**Sub-subcontractor** is any person or business entity under contract to a subcontractor or any lower tier subcontractor to perform some portion of the work subcontractor is obligated to complete under a contract with the prime CONTRACTOR. Sub-subcontractors are independent CONTRACTORs

performing services for another CONTRACTOR rather than for the prime CONTRACTOR. A person or organization providing supplies or materials for the Project but no job site labor is not a Sub-subcontractor.

**Superintendent** is the representative of the CONTRACTOR at the job site who is authorized to receive instructions from the OWNER or OWNER'S Representative and who is authorized to direct the performance of work on behalf of the CONTRACTOR.

**Surety** means any qualified individual, firm or corporation other than the CONTRACTOR, which executes a bond to insure its acceptable performance of the contract.

**Tier** refers to the contractual level of a person or business organization doing work on the Project. A first-tier subcontractor has a contract with the general CONTRACTOR but not the OWNER. A second-tier subcontractor has a contract with another subcontractor but not with the general CONTRACTOR or the OWNER.

**Work** means all labor, material, equipment, tools, transportation, permanent and temporary utilities, connections, provisions for safety and management services required to complete the Project in compliance with the Contract Documents. Work may constitute the whole or a part of the Project. Work is to be performed in a safe, expeditious, orderly and professional manner in keeping with current standards of the industry. Work includes everything that is or should be evident to a skilled construction professional after careful examination of the Contract Documents and the Job Site.

**Work Day** means any day, excluding Saturdays, Sundays and state-recognized holidays, shown on the calendar beginning at midnight and ending at midnight the following day.

**<u>EXHIBIT "F"</u>**



**American Development Partners Development Contract**

**THIS AGREEMENT** is made on this the 6th day of February 2018, by and between **REDSTONE, LLC, a Tennessee limited liability company, D/B/A American Development Partners** (hereinafter "DEVELOPER") and **CHC-HOLMES CORNER CHEYENNE WY LLC, a Florida limited liability company** (hereinafter "OWNER").

**DEVELOPER**

DEVELOPER Name: **REDSTONE LLC DBA American Development Partners ®**
PO Box 681982
Franklin, TN 37064
Office - (615) 368-3412
Attn:  Manny Butera
Email Address: manny@americandevelopmentpartners.com

DEVELOPER Name: **American Development Partners ®** will be referred to as DEVELOPER throughout this agreement.

**CONTRACTOR**
**CONTRACTOR INFORMATION:**
Address: Phone Number: (615) 330-0629
Email Address: llynp@built-more.com
License Number: 00057609

CONTRACTOR Name: Built-more LLC will be referred to as CONTRACTOR throughout this agreement.

**OWNER**
OWNER AGENT:

**CHC-HOLMES CORNER CHEYENNE WY LLC**
201 Madeira Avenue
Coral Gables, FL 33134
Attn:  Pun For Li
Email Address:  fli@fg-llc.com

With a Copy to:
Jose L. Torres, P.A.
224 Palermo Avenue
Coral Gables, FL 33134
Email Address: jtorres@jltorrespa.com

OWNER Name:

**CHC-HOLMES CORNER CHEYENNE WY LLC**
201 Madeira Avenue
Coral Gables, FL 33134
Attn:  Pun For Li
Email Address:  fli@fg-llc.com

## SECTION ONE. PROJECT DESCRIPTION.

1.1  For a price identified below, DEVELOPER agrees to complete a new commercial building (identified as the Project in this agreement) for OWNER.

1.2  For the Contract Price identified below, DEVELOPER agrees to complete a new commercial building consisting of approximately 1850 sq. ft. +/- square feet of air-conditioned space plus patio and used as a CHURCH'S CHICKEN or other similar Quick Service Restaurant (identified as the "Project" in this Agreement), for TENANT's use and OWNERS ownership on the Land in accordance with the plans

1.3  The term "Total Build Cost" shall mean the aggregate of (1) the Total Project Cost, (2) the Contract Price, (3) the Contingencies of the Project, (4) the cost of the Work and the Extra Work, (5) other costs, charges and fees under this Agreement (collectively, the "Other Agreements") (the Other Agreements shall include but not be limited to any contractor or subcontractor agreements and the cost of all materials and labor), but shall not exceed $2,179,789.00.

1.4  The term "Budget" shall mean the Total Build Cost less the cost to acquire the Land.

1.5  The term "Property" shall mean the Land and all improvements thereon including but not limited to the Project.

1.6  Contract Price / OWNERS Cost Cap / Developer.

1.7 DEVELOPER shall earn in addition to any other charges specified in this agreement, OWNER agrees to pay a 10% development fee for completing the Work described as the Project. DEVELOPER fee is paid off total project cost that includes building, construction and all numbers that are used to factor total project cost.

1.8 Notwithstanding any contrary provision in this Agreement or otherwise, OWNERS maximum monetary liability under this Agreement and for the Project towards all amounts, including but not limited to the Total Build Cost, shall not exceed, and shall

Page 2

be capped at, the sum of $2,179,789.00 said amount referred to as the (OWNERS GROSS MAX).  Notwithstanding any contrary provision in this Agreement or otherwise, DEVELOPER shall be solely responsible under this Agreement and to OWNER, for any projects overruns that are above the gross max number provided to OWNER.

## SECTION TWO. CONTRACT PRICE.

DEVELOPER shall earn and OWNER agrees to pay a development fee of 10% of total project cost in addition to any other charges specified in this agreement. In addition to any other charges specified in this agreement, OWNER agrees to pay DEVELOPER $198,162.67 development fee for completing the Work described as the Project.

## SECTION THREE. CONTINGENCY BUDGET.

It is identified and agreed to by OWNER that DEVELOPER has an estimated budget of **5 %** of project cost for "contingencies". CONTRACTOR will submit to DEVELOPER a "change order" for approval by DEVELOPER and OWNER any proposed change order. Contingencies are limited to change orders due to error or omission by a licensed architect after plans were received and reviewed by contractor, all state or federal codes changes that were mandated after contractor received stamped plans and or building permit.

## SECTION FOUR. SCHEDULED START OF CONSTRUCTION.

4.1       Work under this agreement will begin within 5 Calendar Days after the following contingencies have been met.

4.1(a) Complete Plans and Specifications have been approved and initialed by both OWNER, DEVELOPER, and CONTRACTOR.

4.1(b) OWNER has shown proof of funds or other financing acceptable to DEVELOPER.

4.1(c)      DEVELOPER has obtained all architectural approvals from any franchise and or corporate authorities.

4.1(d)      OWNER has furnished DEVELOPER with evidence of Ownership of the property satisfactory to DEVELOPER.

4.1(e) All appropriate building permits have been issued.

4.1(f) DEVELOPER has received written notice from the lien holder or the title company insuring lien holder's security interest in the property that all documents required to be recorded prior to the commencement of construction have been properly recorded.

4.1(g) The contract has been signed by OWNER, DEVELOPER and CONTRACTOR.

## SECTION FIVE. SCHEDULED COMPLETION OF CONSTRUCTION

Contractor shall achieve Substantial Completion of the entire work not later than ONE HUNDRED TWENTY-FIVE (125) calendar days from the date the building permit is issued, or the date reflected in the site investigation report ("SIR") whichever is the earlier of the two. This is only for projects where land owner has approved developer to finalize full architectural and engineering plans to be completed during the due diligence period.  If the landowner does not approve developer to finalize full architectural and engineering plans to be completed during the due diligence period, then the Contractor shall achieve Substantial Completion of the entire work not later than ONE HUNDRED TWENTY-FIVE (125) calendar days from the date the building permit is issued. The Substantial Completion date may be modified as reasonably necessary by Contractor after final plans, specifications, and bidding process.  "Substantial Completion" for purposes of this Agreement shall mean the date when Work has been sufficiently completed in accordance with the Contract Documents, so the Owner can occupy or utilize the Property for its Intended Use.  "Intended Use" for purposes of this Agreement shall mean the intended use of the property as a quick serve restaurant. This is subject this Clause, "Event of Force Majeure" means an event beyond the control of the developer or contractor, which prevents a them from complying with any of its obligations under this Contract, including but not limited to, act of God (such as, but not limited to, fires, explosions, earthquakes, drought, rain, snow, tidal waves and floods); war, hostilities (whether war be declared or not), invasion, act of foreign enemies, mobilization, requisition, or embargo; rebellion, revolution, insurrection, or military or usurped power, or civil war; contamination by radio-activity from any nuclear fuel, or from any nuclear waste from the combustion of nuclear fuel, radio-active toxic explosive, or other hazardous properties of any explosive nuclear assembly or nuclear component of such assembly; riot, commotion, strikes, go slows, lock outs or disorder, unless solely restricted to employees of the Supplier or of his Subcontractors; or acts or threats of terrorism.
In any event, a time extension may be granted only for an excusable delay that is beyond Contractor's control and occurs without the Contractor's fault or negligence.  No time extension will be granted in the absence of a written claim for the time extension.

## SECTION SIX. DOCUMENTS INCORPORATED

6.1     The Glossary of Terms which follows our signatures is incorporated into this contract as though included in full as part of this agreement.

6.2     This agreement incorporates by reference certain documents which define and describe the Work to be done. The following documents are incorporated as though included in full as part of this agreement.

## SECTION SEVEN. OWNERSHIP OF PLANS.

All Plans, Drawings, Specifications and other documents prepared by or for OWNER for use under this agreement will be paid for and are the property of DEVELOPER and remain the property of DEVELOPER. Plans, Drawings and Specifications, whether in paper or electronic form, prepared for use in construction under this agreement shall not be modified or used on any other project without written consent of DEVELOPER. DEVELOPER shall hold harmless and Indemnify OWNER from and against all Claims, actions, suits, costs, damages, losses, expenses and attorney's fees arising out of use of the Project Plans, Drawings, or Specifications for any purpose other than construction to be completed under this agreement. DEVELOPER,

Page 4

CONTRACTOR and Subcontractors are granted a limited license to use and reproduce applicable portions of the Plans, Specifications and Drawings as required for construction under this agreement. All copies made under this license shall bear a notice showing OWNER as copyright holder. DEVELOPER may retain one record set of the Plans, Drawings and Specifications. All other sets shall be accounted for by DEVELOPER and CONTRACTOR and returned to OWNER. Submittal or distribution of Project Plans, Drawings or Specifications to meet Official Regulatory Requirements is not to be construed as publication in derogation of the rights of OWNER.

## SECTION EIGHT. PLANS ON SITE.

DEVELOPER and CONTRACTOR will keep a full set of Project Plans available on-site to authorized personnel during the period of construction.

## SECTION NINE. DOCUMENTS SUPPLIED BY CONTRACTOR.

OWNER will furnish to DEVELOPER and CONTRACTOR at no cost (this is part of total project cost)

9.1(a) A full set of Plans and Specifications for all trades in electronic format.

9.2(b) DEVELOPER and CONTRACTOR will distribute Contract Documents as required by Subcontractors.

## SECTION TEN. SCOPE OF WORK.

10.1     DEVELOPER and CONTRACTOR shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Project in compliance with the Contract Documents.

10.2     DEVELOPER and CONTRACTOR are responsible for coordination of the various trades and deliveries of equipment, materials and supplies to minimize interference which could delay the Work or pose a hazard to life or property. DEVELOPER shall be responsible for allocation of tasks between trades and will be the final authority on location and routing of equipment and storage of materials on the Job Site.

10.3     DEVELOPER will ensure that Subcontractors, their agents, and employees adhere to these Contract Documents. DEVELOPER and CONTRACTOR accepts responsibility for all Work performed under this contract, including Work performed by employees of Subcontractors.

10.4     CONTRACTOR shall provide on the Job Site during the period of construction a temporary chemical toilet or water closet which shall be serviced no less than weekly. Upon completion of the Project, CONTRACTOR will remove temporary toilet facilities from the site.

10.5     DEVELOPER and CONTRACTOR shall provide temporary elevators and lifts as may be required by construction personnel, including Subcontractors, Material Suppliers, Inspectors, and Representatives of OWNER. Elevators and lifts will comply with all federal, state and local Laws and ordinances in effect at the Job Site. Upon completion of the Project, DEVELOPER and CONTRACTOR will dismantle and remove temporary elevators and lifts.

10.6     DEVELOPER and CONTRACTOR shall develop and present to OWNER for approval (which shall not be withheld unreasonably), a site logistics plan drawn to scale, showing proposed secure and fenced areas, locations and types of temporary barricades, material storage and staging areas, property entrances used for material deliveries, and special material or equipment storage Requirements. This plan will include a description and proposed location for any temporary office, storage trailer, sanitary facilities, and parking for construction personnel.

## SECTION ELEVEN. SUBMITTALS.

11.1     Architectural Drawings will indicate in detail all parts of the building components, Installation details, and coordination with Work of other trades or other CONTRACTORS. Architectural Drawings for structural steel, timbers and pre-cast concrete will include engineering calculations, fabrication details and erection Drawings that show physical characteristics, dimensions, shapes, inserts, attaching points and methods, and other information required for manufacture, assembly and erection, in compliance with the Contract Documents.

11.2     Approval by OWNER'S Representative does not relieve DEVELOPER and CONTRACTOR of responsibility for compliance with the Contract Documents except as follows: If a Submittal does not comply with Contract Documents, DEVELOPER and CONTRACTOR will attach to the Submittal, prior to approval, a written request for variation showing the change in Contract Price and Contract Time, if any, that will result from the variation. If OWNER'S Representative approves a Submittal which includes a written request for a variation and which requires a change in the Contract Price or Contract Time, OWNER'S Representative will issue a contract Modification confirming the change. If OWNER'S Representative approves a Submittal with a written request for a minor variation which does not require a change in the Contract Price or Contract Time, no contract Modification is needed. A minor variation is anything which does not materially alter the quality or performance of the Work. Approved variations are subject to all terms of this agreement and without prejudice to any rights granted to OWNER'S Representative under a Surety Bond.

11.3     DEVELOPER and CONTRACTOR is entitled to expect that corrections to Submittals by OWNER'S Representative be clearly noted and easily understood so that prompt resubmission is possible without further instructions from OWNER'S Representative.

11.4     OWNER'S Representative will review Submittals and notify DEVELOPER and CONTRACTOR of approval or rejection within TWO (**2**) Calendar Days of receipt.

11.5     OWNER'S Representative will review Submittals of DEVELOPER and CONTRACTOR for conformance with Requirements of the Contract Documents and will approve or take other appropriate action upon those Submittals.  OWNER'S Representative will advise DEVELOPER and CONTRACTOR of any errors or omissions which OWNER'S Representative may detect during this review. Submittals approved by OWNER'S Representative become additions to the Contract Documents and can be relied on by DEVELOPER and CONTRACTOR in completing the Work. Nothing in any approved Submittal shall be interpreted to limit DEVELOPER and CONTRACTOR in selection of the means, method, technique, sequence or procedure of construction.

## SECTION TWELVE. RECORD DOCUMENTS.

DEVELOPER and CONTRACTOR will note on a record set of Project Drawings any Work done that is not shown on the original Plans and not described in other Contract Documents. The record set of Project documents will be delivered to OWNER at the same time as final payment is requested.

## SECTION THIRTEEN. JOB SITE SAFETY.

DEVELOPER and CONTRACTOR will always take all reasonable precautions for the safety of employees and the public at the Job Site and will comply with all applicable safety Laws and regulations of federal, state, and local authorities (including building codes) and safety Requirements of OWNER.

## SECTION FOURTEEN.  HAZARDOUS MATERIALS USED IN CONSTRUCTION.

Except as provided elsewhere in the Contract Documents, CONTRACTOR is responsible for all Hazardous Materials brought to the Job Site by CONTRACTOR or Subcontractors.

## SECTION FIFTEEN.  HAZARDOUS MATERIALS DISCOVERED ON SITE.

15.1      Except as provided elsewhere in the Contract Documents, OWNER is responsible for all Hazardous Materials discovered on the Job Site so long as those materials were not brought on the Job Site by CONTRACTOR, Subcontractors, or anyone directly or indirectly employed by them. Nothing in this paragraph shall relieve DEVELOPER and CONTRACTOR from liability for negligence in handling or removing hazardous materials as required under the terms of this agreement.

15.2      Except as provided in the Contract Documents or as agreed by mutual consent, DEVELOPER and CONTRACTOR shall not be required to perform Work relating to asbestos, polychlorinated biphenyl (PCB), radioactive material, toxic mold or any other Hazardous Material.

15.3      OWNER shall defend, Indemnify and hold harmless DEVELOPER  and CONTRACTOR from and against all loss, liability, claims, costs, damage and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from the discovery or existence of Hazardous Material on the Job Site, whether or not identified in the Contract Documents, provided such loss, liability, costs, damage and economic detriment is not the result of any negligent act or omissions of DEVELOPER and CONTRACTOR, Subcontractors or anyone directly or indirectly employed by them. Indemnification by OWNER under this paragraph shall apply even if OWNER is in no way responsible for the loss to DEVELOPER and CONTRACTOR.

**SECTION SIXTEEN. COMPLIANCE WITH FEDERAL, STATE, AND LOCAL LAW.**

16.1     CONTRACTOR and OWNER mutually commit to use reasonable care to meet the Requirements of state, federal and local Law when discharging their responsibilities under this agreement.

16.2     If DEVELOPER and CONTRACTOR observe that Drawings, Specifications, or other Contract Documents do not comply with applicable Law, DEVELOPER and CONTRACTOR shall promptly notify OWNER or OWNER'S Representative of the variance. Any changes made to the Contract Documents because of this notice shall be handled in the form of a Change Order under this agreement.

16.3     DEVELOPER and CONTRACTOR shall bear none of the cost of correcting Work completed per Contract Documents but not in compliance with Law if CONTRACTOR did not know that Contract Documents or instructions from OWNER or OWNER'S Representative did not comply with the Law.

16.4     If Law enacted after the Contract Date changes the Scope of Work under this agreement, DEVELOPER and CONTRACTOR and OWNER will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

**SECTION SEVENTEEN. LAYOUT.**

DEVELOPER and CONTRACTOR shall be responsible for alignment and elevation of the Work and will set grade stakes, batter boards, and other working points, lines and elevations required to complete the Project as described in the Contract Documents.

**SECTION EIGHTEEN. PERMIT AND FEES.**

18.1     DEVELOPER and CONTRACTOR shall secure all permits, licenses and renewals required by government authority to complete construction of the Project. If permits are required for Subcontracted Work, Subcontractors will secure those permits. OWNER may request a copy of each permit, license and renewal issued by government authority for the Project. All permits and fees are considered a fee that is enclosed in the project plan.

18.2     Project budget will include the building permit fee, Plan check fee, and charges levied by government for testing, Inspection and Re-Inspection of the Project. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.3     Except as provided elsewhere in this agreement, Project budget  will include all fees and application charges imposed by government authority, including, but not limited to, grading permit fees, drainage permit fees, traffic control charges, thoroughfare charges, impact fees, special district fees, sewer fees, water fees, planning fees, school fees, elevator permit fees, charges for temporary access or use of the public right of way, and charges for document processing, hearings, and certifications. Project budget will also pay all fees and application

Page 8

charges imposed by any association of property OWNERs having authority over the Job Site. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.4     Except as provided elsewhere in this agreement, Project budget will include all application fees and connection charges imposed by utility companies or government agencies for bringing service to the Job Site, and for connecting gas, water, electricity, phone, cable, sewer, and drainage lines. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.5     Except as provided elsewhere in this agreement, Project budget will include all approvals for the Project that are required by government authority, including planning, easements, remediation, environmental, and zoning approvals. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## SECTION NINETEEN. TAXES.

If any federal, state or local tax rate increases or if any new federal, state or local tax is imposed, whether by Law, regulation, or interpretation, between the Contract Date and Substantial Completion, the Contract Price shall be increased by the additional tax levied on DEVELOPER and CONTRACTOR but only to the extent that the change in rate or new tax could not have been reasonably foreseen on the Contract Date. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## SECTION TWENTY. TEMPORARY UTILITIES.

20.1     DEVELOPER and CONTRACTOR have budgeted for all costs associated with use of temporary utilities on the Job Site during construction, including application fees, permits, engineering, and metered service for water, electric power, heating and cooling. Temporary utility systems provided by DEVELOPER CONTRACTOR shall be designed and installed to protect the public and construction personnel and conform to applicable Laws and Regulations.

20.2     Utility services shall be re-listed in the name of future building occupant on the Calendar Day following Substantial Completion.

## SECTION TWENTY-ONE. PERMANENT UTILITIES.

Project budget shall include Installation, connection, and modification of permanent electric, water, phone, cable, sewer and gas service as required for the completed Project. It will not include any deposits that will be paid by building occupant.

### SECTION TWENTY-TWO. JOB CLEAN UP.

22.1     DEVELOPER and CONTRACTOR shall regularly remove from the Job Site and storage areas all surplus material, waste and debris resulting from the Work. Construction debris shall be removed to a legal refuse collection site with disposal or recycling fees included in Project budget. At completion of the Work, DEVELOPER and CONTRACTOR shall, in addition, remove from the Job Site all tools, equipment and scaffolding brought to the Job Site by DEVELOPER and CONTRACTOR or Subcontractors. At Substantial Completion, exposed finishes of windows, doors, floors, walls, ceilings, fixtures and trim shall be cleaned and free of grime, stains, over spray, dirt and dust.

22.2     DEVELOPER and CONTRACTOR shall provide a trash disposal facility on the Job Site for use by construction personnel. The on-site trash facility provided by DEVELOPER and CONTRACTOR shall be of an appropriate size for the Project and placed in a location approved by OWNER. All construction debris shall either be placed in the trash facility provided by DEVELOPER and CONTRACTOR or hauled to a legal disposal site, at the discretion of DEVELOPER and CONTRACTOR. When any trash container provided by DEVELOPER and CONTRACTOR is full, contents shall be removed to a legal disposal facility at the expense of CONTRACTOR.

### SECTION TWENTY-THREE. PROJECT SIGN.

DEVELOPER and CONTRACTOR shall have the right to fabricate and erect a Project sign bearing the name of the Project, Prime CONTRACTOR, principal Subcontractors, designers, consultants, lead lender, a short Project description, and expected Completion Date. CONTRACTOR may erect directional signs at the Job Site with approval of OWNER with respect to size, style and location. Directional signs may bear the name of CONTRACTOR and a directional symbol. No other signs will be permitted except by permission of OWNER.

### SECTION TWENTY-FOUR.  PROJECT SUPERINTENDENT.

DEVELOPER and CONTRACTOR shall employ a competent Superintendent and any necessary assistants or alternates that will be at the job site from start to finish of project. The Superintendent shall not be changed unless the Superintendent is discharged by DEVELOPER and CONTRACTOR. The Superintendent shall have authority to represent DEVELOPER and CONTRACTOR in all matters relating to the Project. Communications with the Superintendent shall have the same force and effect as direct communication with DEVELOPER and CONTRACTOR.

### SECTION TWENTY-FIVE. OWNER'S RESPONSIBILITIES.

25.1     OWNER affirms that OWNER has the right to enter this agreement and has the right to contract for construction of the Project on the Job Site. OWNER shall pay all taxes and assessments due on the Job Site during the period of construction and shall take all reasonable actions required to protect marketable title to the Job Site. OWNER is responsible for all standard responsibilities that a property OWNER / landlord would have.

25.2     OWNER will ensure that OWNER'S Representative responds in writing and with reasonable promptness to written requests from DEVELOPER and CONTRACTOR for (1)

interpretation of the Plans or Specifications, or (2) other information relevant to completion of the Work. DEVELOPER and CONTRACTOR are authorized to rely on written responses from OWNER'S Representative.

25.3     OWNER shall have sole responsibility to secure financing for the Project and shall pay all fees, charges, or other costs of such financing, including Inspection fees charged by any lender. The nonperformance of any lender shall not affect the obligation of OWNER to DEVELOPER and CONTRACTOR. OWNER hereby authorizes and directs any lender on the Project to furnish DEVELOPER and CONTRACTOR with full information on undisbursed proceeds when requested by DEVELOPER and CONTRACTOR. Proof of funds must be made available to DEVELOPER prior to project starting.

25.4     OWNER will not interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by DEVELOPER and CONTRACTOR or Subcontractors except as provided under this agreement.

### SECTION TWENTY-SIX. CONSTRUCTION BY OTHERS.

OWNER shall neither hire nor retain Separate DEVELOPER and CONTRACTOR, Subcontractors, employees or agents of OWNER to perform Work on the Job Site while Work is being done under this agreement by DEVELOPER and CONTRACTOR.

### SECTION TWENTY-SEVEN.  AUTHOIRTY OF OWNER'S REPRESENTATIVE.

27.1     OWNER'S Representative has authority to administer the contract, make construction decisions on behalf of OWNER, and is the primary authority on issues of compliance with the Drawings and Specifications, quality of workmanship, materials used, manner of performance, and rate of progress on the Project.

27.2     After the Contract Date, OWNER shall make no change in the responsibilities or authority of OWNER'S Representative without consent of DEVELOPER and CONTRACTOR.

27.3     OWNER'S Representative shall have the right to visit the Project and view Work in progress at any time. Any Defective Work found or suspected, either as the result of a site visit or otherwise, shall be reported promptly to DEVELOPER and CONTRACTOR. No actions taken, or statements made during site visits shall relieve DEVELOPER and CONTRACTOR of obligations described in the Contract Documents.

27.4     Communication between DEVELOPER and CONTRACTOR and OWNER shall be initiated through OWNER'S Representative unless direct communication is required by Law or Contract Documents. Unless otherwise authorized by DEVELOPER and CONTRACTOR, communications between OWNER'S Representative and Subcontractors or Material Suppliers shall be through DEVELOPER and CONTRACTOR.

27.5     OWNER'S Representative shall have the authority to reject and order removed any portion of the Work which does not conform to the Contract Documents.

27.6     OWNER'S Representative shall have authority to conduct Inspections about Beneficial Occupancy and to determine the dates of Substantial Completion.

**SECTION TWENTY-EIGHT.  REPRESENTATIONS BY DEVELOPER AND CONTRACTOR.**

28.1     DEVELOPER and CONTRACTOR shall use skill and attention to complete the Work in a timely manner consistent with the Contract Documents.

28.2     OWNER has reported to DEVELOPER and CONTRACTOR all conditions known to OWNER which may not be apparent to CONTRACTOR and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the Job Site, unsuitable soil conditions, prior Defective Work of others, latent Defects in the Plans or Specifications, earlier attempts to do Similar or related Work, and obligations imposed by government.

**SECTION TWENTY-NINE.  DISCLAIMER BY OWNER, RELIANCE BY CONRACTOR.**

OWNER has provided DEVELOPER and CONTRACTOR with information on subsurface or concealed conditions at the Job Site. Except to the extent that DEVELOPER and CONTRACTOR knows this information to be false, DEVELOPER and CONTRACTOR is entitled to rely on the accuracy of this information.

**SECTION THIRTY.  DISCREPANCY BETWEEN PLANS AND FIELD CONDITIONS.**

30.1     DEVELOPER and CONTRACTOR is not a Design Professional and have no obligation to find discrepancies between Job Site conditions and representations or Requirements in the Contract Documents.

30.2     DEVELOPER and CONTRACTOR shall not be liable for discrepancies between representations or Requirements in the Contract Documents and conditions at the Job Site unless DEVELOPER and CONTRACTOR knowingly fails to report a discrepancy, in which case DEVELOPER and CONTRACTOR shall be liable for additional costs incurred because of failure to give prompt notification.

30.3     If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information provided by OWNER, DEVELOPER and CONTRACTOR shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall submit a Claim for a Change Order which covers the additional cost incurred because of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

**SECTION THIRTY-ONE. USE OF SITE.**

31.1     OWNER has agreed to furnish all required rights to use the land upon which the Work is to be constructed. OWNER will identify any encumbrances or restrictions related to use of the land furnished and DEVELOPER and CONTRACTOR agrees to comply with those encumbrances or restrictions. If OWNER fails to furnish the land, rights of way, or easements when required, DEVELOPER and CONTRACTOR may make a Claim for extra compensation, additional time, or other relief.

31.2   OWNER shall designate a construction entrance which DEVELOPER and CONTRACTOR shall use for all delivery of materials and equipment and which shall be used by all construction personnel.

## SECTION THIRTY-TWO. DRAW SCHEDULE.

32.1   OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:

**OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:**

**Momentum draw - 10% of the Budget within three (3) Business Days following the closing on land, building or execution of this development contract.  Momentum draw will include all developer's pursuit cost, project soft cost, developer fee and necessary local, state and or federal permitting fees to start the project.**

**Draw 1 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following the commencement of the Work.**

**Draw 2 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 1.**

**Draw 3 - 20% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 2.**

**Final Draw – 10% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request includes a copy of all executed lien releases and final payment affidavits (from CONTRACTOR, Subcontractors and others) being submitted to the clerk of court and recorded in the public records and a copy of the permanent Certificate of Occupancy issued for the Project.**

32.2   It is agreed by OWNER and or FUNDING SOURCE that all payments will be made to DEVELOPER. DEVELOPER will disburse funds in a timely manner. The afore mentioned budget that is supported by the GMAX clause is considered total project budget and the DEVELOPER will disburse funds per DEVELOPERS discretion.  No third-party title company will be granted permission to disburse funds to any company or individual on behalf of funding group. Each application for payment shall be submitted on the form approved by OWNER.

**SECTION THIRTY-THREE.**
**DISCHARGE OF LIENS AND PAYMENT OF SUBCONTRACTORS.**

33.1    DEVELOPER and CONTRACTOR warrants that, upon payment, OWNER shall receive clear title to all Work identified in the application for payment, free and clear of all liens and Claims, including Claims of Subcontractors, employees or Material Suppliers. CONTRACTOR also agrees that this vesting of title in OWNER does not impose any obligation on OWNER or relieve CONTRACTOR from any obligation under this contract. CONTRACTOR shall remain responsible for damage to or loss of both the Work and stored materials until Completion.

33.2    DEVELOPER and CONTRACTOR warrants and guarantees that no Work, materials, or equipment covered by a request for payment has been acquired by DEVELOPER and CONTRACTOR or by any other person performing the Work or furnishing materials or equipment for the Project subject to an agreement under which an interest therein, or an encumbrance thereon, has been retained by seller or otherwise imposed by CONTRACTOR.

33.3    DEVELOPER and CONTRACTOR shall furnish, with each application for payment, and as a condition to Owner's obligations to pay, executed waivers of liens from DEVELOPER and CONTRACTOR and each Subcontractor and Material Supplier to the Project in the amount of the application for payment. Waivers of liens shall be in a form satisfactory to OWNER, title insurer, and lenders.

33.4    DEVELOPER shall disburse funds received from OWNER among DEVELOPER and CONTRACTOR, subcontractors and material suppliers in proportion to the work done and materials received for the project during the pay period.

**SECTION THIRTY-FOUR. INTEREST.**

34.1    Payments due and not paid under the Contract Documents shall bear interest from the date payment is due at a monthly rate of **TEN PERCENT (10%)**.

34.2    Payment of interest does not abrogate or replace any other rights DEVELOPER and CONTRACTOR may have under this agreement.

**SECTION THIRTY-FIVE. FINAL PAYMENT.**

35.1   DEVELOPER and CONTRACTOR will apply for final payment and will notify OWNER'S Representative when the work has been completed. OWNER'S Representative will issue a certificate of completion on determination that the Project is complete and in compliance with the Contract Documents. When the certificate of completion is issued, the entire unpaid balance of the contract amount, including any retainage, is payable to DEVELOPER.

35.2   Making of final payment constitutes waiver of all Claims by OWNER against DEVELOPER and CONTRACTOR except those Claims previously made in writing and delivered to DEVELOPER and CONTRACTOR and those obligations otherwise provided by this agreement or by operation of Law.

35.3   The acceptance of final payment by CONTRACTOR constitutes a complete and unconditional waiver and release of any and all Claims by CONTRACTOR of whatever nature, and regardless of whether they are then known or unknown, and a complete and unconditional release of OWNER, and every person for whom OWNER is responsible, for any and all matters related to the contract or otherwise, except those Claims which have been made in writing and identified by CONTRACTOR as not having been settled at that time.

## SECTION THIRTY-SIX.  CHANGES IN WORK.

36.1   Except as required by changes in the Prime Contract between OWNER and DEVELOPER, no change to this contract (including Modification, clarification, interpretation or correction of the Plans or Specifications) shall be made without agreement and a written Change Order signed by DEVELOPER and CONTRACTOR and OWNER identifying the change, the cost of the change, and the effect on Project Schedule, if any.

36.2   Any change in Plans, Specifications or Contract Documents necessary to conform to existing or future Laws, codes, ordinances or regulations shall be considered Extra Work.

36.3   Changes in the Work required due to defects or inconsistencies in Plans or Specifications or other Contract Documents shall be considered Extra Work.

36.4   The charge for Extra Work shall be the normal selling price DEVELOPER and CONTRACTOR charges for similar changes on other jobs.

36.5 Failure of DEVELOPER and CONTRACTOR and OWNER to agree on the terms of a Change Order shall be resolved under the provisions of this agreement which cover Claims and disputes.

36.6 Should DEVELOPER and CONTRACTOR and OWNER fail to agree promptly on the terms of a Change Order, DEVELOPER and CONTRACTOR shall be paid, pending resolution of the dispute, the portion of the cost of the change not in dispute, including the costs of time and materials required to execute the change. Payments required under this paragraph shall be made as the Work progresses, concurrently with progress payments.

## SECTION THIRTY-SEVEN.  COOPERATION OF THE PARTIES.

37.1   OWNER and DEVELOPER acknowledge that open communication and cooperation will be required to complete the Project on time, as estimated, and in compliance with the Contract Documents. DEVELOPER and OWNER each agree to identify a representative who will be available to resolve minor problems, answer questions and reach mutually acceptable solutions. The individuals identified by DEVELOPER and OWNER shall try to reach informal agreement on problems as they arise but are under no obligation to do so.

37.2   Both DEVELOPER and OWNER pledge that their relations will be conducted with courtesy and consideration in an environment characterized by mutual respect. OWNER pledges to respond promptly to requests by DEVELOPER for guidance, assistance and payments when due and agrees to extend to DEVELOPER the deference and latitude a dedicated professional deserves. CONTRACTOR pledges to commit the skill and resources required to complete the Project in a manner that complies with both the letter and spirit of the

Contract Documents and enhances the reputation of DEVELOPER and for dependability and professionalism.

## SECTION THIRTY-EIGHT. WARRANTY.

38.1 DEVELOPER and CONTRACTOR warrant that the Work shall be free of Defects due to faulty material or workmanship for the period specified in this agreement.

**38.1(a)** General **Requirements.**

38.1(a)(I)      Except as otherwise provided in this agreement, the warranty period shall begin from the date of Completion for 12 months.

38.1(a)(ii)      Work done by CONTRACTOR in compliance with warranty provisions of this agreement does not extend the period of the warranty.

38.1(a)(iii)      DEVELOPER and CONTRACTOR shall deliver to OWNER all warranties provided by vendors and manufacturers of materials and equipment used to complete the Project. DEVELOPER and CONTRACTOR shall have no obligation under warranties provided by others except to render any assistance that OWNER may require in enforcing the terms of those warranties.

38.1(a)(iv)      Except as provided in this agreement, and to the extent permitted by Law, DEVELOPER and CONTRACTOR disclaims all warranties, whether express or implied, whether of fitness for purpose, merchantability, habitability or workmanlike completion.

38.1(a)(v)      Failure of OWNER to give notice of a breach of warranty within the warranty period constitutes a waiver of the right to repair or replacement by DEVELOPER and CONTRACTOR.

38.1(a)(vi)      To make a warranty Claim under this agreement, OWNER must send a clear and specific written complaint to DEVELOPER and CONTRACTOR at the following address within 60 Calendar Days of discovering Defects, unless otherwise specified in the list of items covered under this warranty. DEVELOPER and CONTRACTOR shall make repairs, replacements and corrections promptly and at no expense to OWNER.

**38.1(b) Exclusions from Warranty**

38.1(b)(i) The warranty provided by this contract does not cover any of the following items or conditions:

38.1(b)(i)(A) Damages to private property or bodily injury.

38.1(b)(i)(B) Damages or losses that result from soil movement that is covered by insurance or that is compensated for by legislation.

38.1(b)(i)(C)      Insect damage.

38.1(b)(i)(D)      Damage or losses that result from overloading of any floor, wall, ceiling, or roof

beyond the design capacity.

38.1(b)(i)(E) Damages caused or made worse by:

38.1(b)(i)(E)(1)      Changes, additions, deletions, or any other alterations made to any part of the structure by anyone other than DEVELOPER and CONTRACTOR after the warranty term begins.

38.1(b)(i)(E)(2)      Loss that results from failure of OWNER to take timely action to mitigate or minimize damage.

38.1(b)(ii) DEVELOPER and CONTRACTOR has no liability for incidental or consequential damages from breach of any warranty provided by this agreement insofar as the loss claimed is covered by insurance of OWNER or for which OWNER has a right of recovery from any other party.

38.1(b)(iii) Basic **Warranty Coverage**

It is a breach of warranty if any material or design furnished, or workmanship performed by DEVELOPER and CONTRACTOR or any Subcontractor or Material Supplier, is found to be defective during the first year.

38.1(b)(iv) Warranty **on Major Structural Damage**

It is a breach of the major structural damage warranty where there is actual physical damage to designated load-bearing portions of the structure caused by the failure of such designated portions to perform to their load-bearing functions to the extent that it makes the structure unsafe, uninhabitable, or unsanitary during the first 12 months. The following items are designated load-bearing portions:

(A)    Foundation Systems and Footings
(B)    Beams
(C)    Girders
(D)    Lintels
(E)    Columns
(F)    Walls and Partitions
(G)    Floor Systems
(H)    Roof Framing Systems

### SECTION THIRTY-NINE.  DEVELOPER AND CONTRACTOR CLAIMS.

If DEVELOPER and CONTRACTOR claims that any instruction, Drawing, act or omission of OWNER or any representative of OWNER, or any agency of government, increases costs to DEVELOPER and CONTRACTOR, requires extra time or changes the Scope of Work, CONTRACTOR shall have the right to assert a Claim for such costs or time.

## SECTION FORTY. NOTICE OF CLAIMS.

40.1 No Claim by DEVELOPER and CONTRACTOR shall be considered unless DEVELOPER and CONTRACTOR provide OWNER or OWNER'S Representative with a notice that there will be a Claim for additional compensation or an extension of time. This notice of Claim shall be made no less than 5 Calendar Days after DEVELOPER and CONTRACTOR recognizes or should have recognized that circumstances exist which support such a Claim. The notice of Claim shall include: (a) The date of the notice, (b) The date the basis for the Claim was discovered, (c) The circumstances that support the Claim, and (d) The estimated additional cost to OWNER or additional time required to complete the Project.  Owner shall have exclusive authority and discretion to approve or deny any claim.

40.2 If the Claim involves Extra Work, DEVELOPER and CONTRACTOR shall maintain detailed records which show each expense incurred, including payroll records and receipts for Subcontracted Work, materials and equipment. These detailed records shall be made available to OWNER for verification while Work subject to the Claim is being performed. Developer and Contractor shall obtain written approval from Owner prior to performing any extra work.

40.3 The amount Claimed by CONTRACTOR shall be calculated in accord with provisions in this contract on charges for Extra Work.

## SECTION FORTY-ONE. DISPUTE RESOLUTION.

### 41.1   Choice of Forum, Law and Venue

About any controversy in any way arising out of or relating to the execution or performance of the Agreement, the method of binding dispute resolution shall be litigation and the parties hereby irrevocably agree that any suit, action, or legal proceeding shall be brought in the U.S. District Court for the Middle District of Florida, unless such court lacks jurisdiction, in which case, a state court of record in Manatee County, Florida.  The parties further irrevocably (i) consent to the jurisdiction of such federal or state court in any such suit, action, or legal proceeding, (ii) waive any objection to the laying of venue of any such suit, action, or legal proceeding in such federal or state court, and (iii) waive any defense based upon inconvenient forum or improper venue.  The parties further agree that all disputes arising out of or relating to the Agreement or the performance of it by either party shall be adjudicated solely by and be governed by the laws of the State of Florida without regard to conflicts of law analysis.

### 41.2   Attorneys' Fees.

If either party brings an Action to enforce their rights under this agreement, the prevailing party may recover its expenses (including reasonable attorneys' fees) incurred in connection with the Action and any appeal from the losing party.

## SECTION FORTY-TWO. INSURANCE.

### 42.1   Certificates of Insurance

42.1(a) DEVELOPER and CONTRACTOR shall provide to OWNER a certificate of insurance for each insurance policy required by this agreement. These certificates shall list OWNER as the

certificate holder.

42.1(b) Certificates of insurance shall be issued on a standard form.

42.1(c)    DEVELOPER and CONTRACTOR shall permit no Subcontractor to begin Work on the Project until OWNER has received certificates of insurance demonstrating that the Subcontractor has coverage of a like kind and with comparable limits to insurance coverage required of DEVELOPER and CONTRACTOR under this agreement.

## 42.2   Waivers of Subrogation

OWNER and DEVELOPER and CONTRACTOR waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance except such rights as may exist to the proceeds from insurance held by OWNER as trustee. DEVELOPER and CONTRACTOR shall require similar waivers in Subcontracts for the Project.

## 42.3   Insurance Details

42.3(a) **If** insurance policies meeting the Requirements of this contract are not generally available to DEVELOPER and CONTRACTOR.   DEVELOPER and CONTRACTOR may provide substantially similar coverage and shall so notify OWNER in writing.

42.3(b) **DEVELOPER** and CONTRACTOR may satisfy the policy limits set by this contract through any combination of underlying and excess liability (umbrella) insurance so long as the total coverage is not less than the policy limits specified in this contract. Any excess liability (umbrella) insurance coverage provided by CONTRACTOR must be written on an occurrence basis, offer coverage at least as broad as the underlying insurance, and have concurrent effective dates. Excess liability (umbrella) insurance provided by DEVELOPER and CONTRACTOR shall provide additional insured endorsements, blanket contractual coverage, and punitive damages coverage (unless prohibited by Law).

## 42.4   Liability Insurance

42.4(a) **As** an alternative to including OWNER as an additional insured under a comprehensive general liability policy, DEVELOPER and CONTRACTOR may provide an OWNER'S and CONTRACTOR's Protective Liability Policy. If DEVELOPER and CONTRACTOR are unable to procure the minimum amounts of insurance in a single policy, CONTRACTOR may provide required policy limits through a combination of a primary OCP Policy and one or more excess policies. OWNER shall be the named insured on the Policy and, if applicable, the excess policy. Each policy shall be endorsed to include each Subcontractor of every Tier as the CONTRACTOR designated in the declarations.

42.4(b) **Minimum** CONTRACTOR's liability coverage shall be: $2,000,000 combined bodily injury and property damage single occurrence limit, annual aggregate limit of $2,000,000, products and completed operations aggregate limit of $1,000,000, personal and advertising injury aggregate limit of $1,000,000.

## 42.5    Builder's Risk Insurance

42.5(a) OWNER shall provide builder's risk insurance covering property damage to the Project during the construction period. OWNER accepts the risk of damage to the Work during construction and agrees to Indemnify and hold harmless DEVELOPER and CONTRACTOR and Subcontractors at any Tier from losses resulting from uninsured damage to the Work prior to final payment under this agreement.

42.5(b) Builder's risk insurance shall include a loss payable provision naming OWNER as loss payee. OWNER shall have the power to adjust and settle Claims resulting from builder's risk insurance.

42.5(c)    Policy limits for builder's risk coverage shall be no less than the completed replacement value of the Project including the value of Change Orders.

### SECTION FORTY-THREE. LIABILITY FOR DAMAGES.
### (DEVELOPER AND CONTRACTOR LIABILITY FOR DAMAGES)

DEVELOPER and CONTRACTOR shall have no liability for damage to or loss of OWNER'S private property left on the Job Site unless such damage or loss is the direct result of intentional or negligent acts by DEVELOPER and CONTRACTOR.

### SECTION FORTY-FOUR. INDEMNITY.

44.1    DEVELOPER and CONTRACTOR shall defend, Indemnify, and hold harmless OWNER and all officers, employees, agents, and consultants of OWNER from and against all and any losses, liability, Claims, costs, damages and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from performance of Work under this agreement provided such loss, liability, costs, damage and economic detriment is attributable to bodily injury, sickness, disease or death, or to injury or destruction of property (other than the Work itself) caused by the negligent acts or omissions of DEVELOPER and CONTRACTOR, a Subcontractor, or anyone directly or indirectly employed by them, or whether caused by or contributed to by OWNER, unless caused by the sole negligence of OWNER.

44.2    Indemnification of OWNER is limited to the extent of insurance coverage required to be carried by DEVELOPER and CONTRACTOR under this agreement.

44.3    Indemnification under this agreement shall not exceed any limitation on the amount or type of damages, compensation, or benefits payable by or for DEVELOPER and CONTRACTOR or any Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

### SECTION FORTY-FIVE. INTERPRETATION OF THE CONTRACT.

45.1    Section headings and paragraph numbers have been included in this contract to refer easier and in no way limit, define, or enlarge the terms, scope, or conditions of this contract.

45.2    Except as otherwise provided in this contract, OWNER and DEVELOPER and CONTRACTOR intend that this contract be interpreted in accord with the *Restatement of Law, Contracts*, published by the American Law Institute. Specifically: All parts of the Contract Documents should be interpreted together and conduct of the Parties should be interpreted as a

manifestation of intention, and specific provisions should be interpreted as qualifying the meaning of the general provisions.

## SECTION FORTY-SIX. DEALING WITH PLAN DEFECTS.

46.1       At any time, DEVELOPER and CONTRACTOR may request an interpretation or clarification of the Contract Documents from OWNER or OWNER'S Representative. OWNER or OWNER'S Representative shall reply with a written interpretation, clarification, or detailed instructions within a reasonable time.

46.2       DEVELOPER and CONTRACTOR will rely on the Contract Documents as the final authority on what is included in the Project. The Contract Documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction DEVELOPER and CONTRACTOR doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. CONTRACTOR bears no responsibility for defects in the Contract Documents.

46.3       Unless DEVELOPER and CONTRACTOR has asked for and received a written clarification from OWNER in time to prevent delay in the Work, any omission or ambiguity in the Contract Documents shall be interpreted as requiring the material or construction technique necessary to produce the greater quantity and better quality of Work.

46.4       DEVELOPER and CONTRACTOR will report promptly to OWNER any design defects likely to result in problems during construction of the Project. However, DEVELOPER and CONTRACTOR is not a licensed architect or engineer and have no obligation to detect ambiguities, inconsistencies or omissions in the Contract Documents. While acting in good faith, DEVELOPER and CONTRACTOR is entitled to rely on the Work of a trained design specialist selected by and responsible to OWNER.

46.5   DEVELOPER and CONTRACTOR is entitled to rely on dimensions and descriptions shown in the Contract Documents when ordering materials for Installation.

46.6       Ambiguities, inconsistencies and omissions in the Contract Documents are design defects, not errors by DEVELOPER and CONTRACTOR. The cost of correcting design defects shall be at the expense of OWNER.

46.7     If inconsistent, approved changes to the Contract Documents take precedence over the original Contract Documents. Subsequent changes to the Contract Documents take precedence over prior changes to the Contract Documents.

46.8   If inconsistent, the construction Drawings take precedence over the Specifications.

46.9 If anything in the construction Specifications is inconsistent with anything else in the construction Specifications: (a) A product performance Requirement takes precedence over a named product or manufacturer, and (b) Other clauses in the Specifications take precedence over anything incorporated by reference into the Specifications.

46.10     If anything in the construction Drawings is inconsistent with anything else in the construction Drawings: (a) Dimensions written in numbers take precedence over scaled measurements, (b) Notes and schedules take precedence over lines on the Drawings, (c) Large scale Drawings take precedence over small scale Drawings, (d) Schedules take precedence over notes or other directions, (e) Specific notes take precedence over general notes, and (f) Bottom elevations of footings take precedence over any general notes.

46.11     If inconsistent, other Contract Documents take precedence over any manual, industry standard, recommendation, regulation, and set of guidelines, code, or instructions incorporated by reference into the Contract Documents.

46.12     If inconsistent, any portion of the Contract Documents written in longhand takes precedence over anything printed in the Contract Documents.

46.13     DEVELOPER and CONTRACTOR has no liability for any omission, inconsistency or ambiguity in the Contract Documents or for any discrepancy between physical conditions at the Job Site and the Contract Documents, unless DEVELOPER and CONTRACTOR fails to report the error to OWNER or OWNER'S Representative.

## SECTION FORTY-SEVEN. ENTIRE AGREEMENT.

The Contract Documents are the entire agreement and constitute a complete integration of all understandings between DEVELOPER, CONTRACTOR, and OWNER about the Project. The Contract Documents supersede all prior negotiations, representations and agreements, whether written or oral. No subsequent notation, renewal, addition, deletion, change or amendment to this contract shall have any force or effect unless in the form of a written Change Order or amendment to this contract.

## SECTION FORTY-EIGHT. AUTHORSHIP; REPRESENTATION BY COUNSEL.

DEVELOPER, CONTRACTOR, and OWNER agree that the terms and language of this Agreement were the result of negotiations between the DEVELOPER, CONTRACTOR, and OWNER and, as a result, there shall be no presumption that any ambiguities in this Agreement shall be resolved against any party. Any controversy over construction of this Agreement shall be decided without regard to events of authorship or negotiation.  Furthermore, DEVELOPER, CONTRACTOR, and OWNER acknowledge that it has been represented by independent counsel of its choice throughout all negotiations that have preceded the execution of this Agreement.

## SECTION FORTY-NINE. SEVERABILITY.

If any provision of this contract is interpreted or rendered invalid and unenforceable, then the remainder of this contract shall remain in full force and effect.

## SECTION FIFTY. CUMULATIVE REMEDIES.

All rights and remedies provided to DEVELOPER and CONTRACTOR by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to CONTRACTOR at Law or in equity.

**SECTION FIFTY-ONE. MATERIALS AND SUBSTITUTIONS.**

51.1    When the Specifications refer to materials or equipment by performance standard (such as an ASTM identifier), DEVELOPER and CONTRACTOR may select for Installation any product or equipment meeting that standard. When several products or manufacturers are identified as acceptable in the Specifications, DEVELOPER and CONTRACTOR has the option of using any of the products or selecting any of the manufacturers listed without seeking approval from OWNER or OWNER'S Representative.

51.2    Except as stated otherwise in the Specifications, any reference in the Specifications to a brand, make, manufacturer, or model denotes only characteristics of quality, workmanship, economy of operation and suitability for the intended purpose. DEVELOPER and CONTRACTOR may use any substantially equivalent material, equipment, or article if approved in advance of Installation by OWNER or OWNER'S Representative.

51.3    All materials and equipment used on the Project shall comply with Specifications in the Contract Documents unless a substitution is approved in advance of Installation by OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall apply to OWNER or OWNER'S Representative for approval of a substitute material when: (a) Any item specified is found to be unusable or unavailable when needed for Installation, or (b) The item specified is considered inferior to an equivalent item which is readily available at a Similar cost. With the application, DEVELOPER and CONTRACTOR shall include documentation: (a) Demonstrating that essential features of the substitute item are equal to or exceed similar features of the item specified, and (b) Listing delivered prices for the substitute item based on Material Supplier quotations. OWNER or OWNER'S Representative may deny any application for substitution if not in the best interest of OWNER. If approved, any savings in cost that result from the substitution will be credited to OWNER. No request for substitution of material shall constitute grounds for extension of the Contract Time. Proposed substitutions shall not be purchased or installed without approval of the substitution by OWNER or OWNER'S Representative.

**SECTION FIFTY-TWO. INSPECTIONS.**

52.1 DEVELOPER and CONTRACTOR shall schedule and coordinate all Inspections required by the Contract Documents and by public authority so as not to delay the progress of the Work or the Work of OWNER or Separate CONTRACTORs. If the Contract Documents require that an Inspection be witnessed or attended by OWNER or OWNER'S Representative, DEVELOPER and CONTRACTOR shall give notice of the time and place of the Inspection. DEVELOPER and CONTRACTOR shall schedule Inspections during regular Work Days and normal business hours, unless mutually agreed by DEVELOPER and CONTRACTOR, OWNER, and Inspector.

52.2    Insofar as applicable and except where superseded by other provisions of the Contract Documents or by government regulation, Inspection of the following Work will be required on the Project: (a) Bearing surfaces of excavations before concrete is placed, (b) Reinforcing steel after Installation and before concrete is poured, (c) Structural concrete when poured, (d) Structural framing after erection and prior to being covered or enclosed, (e) Steel welding, (f) Mechanical and plumbing Work following Installation and prior to being covered or enclosed, (g) Electrical Work following Installation and prior to being covered or enclosed, (h) Above-ceiling Work when

Page 23

complete but before the finish ceiling material is installed, and (I) Final Inspections prior to occupancy.

52.3     If an Inspection reveals Work of DEVELOPER and CONTRACTOR not in compliance with the Contract Documents or not in compliance with any code or statute, DEVELOPER and CONTRACTOR shall bear the costs of correction, the cost of repeating the Inspection, and any related costs, including reasonable charges by OWNER or OWNER'S Representative for additional services.

## SECTION FIFTY-THREE. THE CONSTRUCTION SCHEDULE.

53.1     DEVELOPER and CONTRACTOR shall prepare and submit to OWNER for review and approval an estimated progress Schedule for the Work showing completion within the Contract Time. This progress Schedule shall identify expected starting and completion dates for each part of the job and identify tasks critical to timely completion of the Work.

53.2     DEVELOPER and CONTRACTOR may select any type of Schedule which: (a) Is suitable for monitoring progress of the Work, (b) Provides easy access to information about the timing of decisions OWNER must make and acts OWNER must perform, (c) Includes sufficient detail to demonstrate adequate planning for the Work, and (d) Presents a practical plan to complete the Work in an acceptable time.

53.3     DEVELOPER and CONTRACTOR shall plan, develop, supervise, control, and coordinate the performance of the Work so that job progress, sequence and timing conform to the construction Schedule. If DEVELOPER and DEVELOPER and CONTRACTOR falls materially behind the currently approved construction Schedule, OWNER may require DEVELOPER and CONTRACTOR to prepare and submit for approval, at no cost to OWNER, a plan for completing the Project within the Contract Time. Failure to submit a plan meeting this Requirement shall constitute grounds for termination under the terms of this agreement.

53.4     The Schedule shall allow for and depict the following: (a) Beginning and Completion Dates of each significant task (Work breakdown structure) in the job, (b) Delivery and approval of each Submittal, Samples and Shop Drawing, (c) Inspections and tests, (d) The Work of Subcontractors and Separate CONTRACTORs, and (e) Order dates and delivery dates of significant equipment and key materials. The construction Schedule shall include a legend which identifies the meaning of each symbol and abbreviation.

## SECTION FIFTY-FOUR.  EXTENSION OF THE TIME FOR COMPLETIONS.

54.1   OWNER shall execute a Change Order for Excusable Delay by extending the Contract Time for the period of the delay. Any of the following shall constitute excusable delay for which the Contract Time shall be extended: (a) Strike, boycott, embargo, terrorism, armed rebellion, quarantine or other obstructive action by employees, labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or, order of government authority, and (b) Fire, flood, earthquake, tornado, tidal wave, lightning, rain, snow, temperature under 32 degrees, casualty loss, epidemic, or unusually adverse weather.

54.2     For delay in delivery of materials, FF&E, equipment or for a shortage of labor that

results from unforeseeable circumstances beyond the control and without fault or negligence of either DEVELOPER and CONTRACTOR, or any Subcontractor or Material Supplier of DEVELOPER and CONTRACTOR, OWNER will grant an extension of the Contract Time if: (a) DEVELOPER and CONTRACTOR,  notifies OWNER or OWNER'S Representative promptly on discovery of the anticipated shortage, (b) DEVELOPER and CONTRACTOR,  substantiates the delay as unavoidable with a detailed chronology of events and all relevant correspondence, and (c) DEVELOPER and CONTRACTOR, provides an estimated date when the material, equipment or labor will be available.

54.3      Any Change Order granted for Excusable Delay shall have no effect on a Claim by DEVELOPER and CONTRACTOR, for damage from the same delay for interruption, hindrance, or disruption.

## SECTION FIFTY-FIVE. DEVELOPER AND CONTRACTOR CLAIMS FOR DELAY.

55.1      The Contract Price shall be adjusted for any increase in the cost of performance of this contract caused by suspension, delay or interruption of the Work due to: (a) An error or omission in the Contract Documents, (b) A decision of OWNER to change the Scope of the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR, (c) A decision of OWNER to suspend the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR, (d) A failure by OWNER or OWNER'S Representative to comply with the construction Schedule, (e) Any act or neglect of OWNER or agent of OWNER or any Separate DEVELOPER and CONTRACTOR, (f) Failure of OWNER to yield control of the Job Site to DEVELOPER and CONTRACTOR, or (g) Failure of OWNER to make payments when due under the terms of this agreement.

55.2   Within 3 Working Days after receipt of a notice of Claim for compensation for suspension, delay, or interruption, OWNER shall: (a) Respond with a resolution, remedy, or direction to alleviate the delay, (b) Respond with a notice rejecting the Claim for delay, or (c) Respond with a draft Change Order accepting the Claim for delay. If the issue is not then resolved, DEVELOPER and CONTRACTOR, may request a Change Order.

55.3      No change in the Contract Time for completion or the Contract Price shall become part of the Contract Documents without a Change Order.

55.4  Compensation to DEVELOPER and CONTRACTOR, for suspension, delay, or interruption of Work shall include direct overhead (Job Site) expense, a proportionate share of unabsorbed indirect (home office) overhead expense, lost efficiency and lost profit taken as 15 percent of total compensable expenses. Direct overhead costs shall include, without limitation: (a) Labor (with taxes, insurance and fringe benefits) for the idle work force, (b) The fair rental cost of idle equipment (such as vehicles, construction tools and equipment), (c) Facilities (such as temporary structures, water, power, phone, and toilets), (d) The additional cost of Bonds and insurance, (e) Similar direct overhead costs of Subcontractors to whom DEVELOPER and CONTRACTOR, is liable for damages that result from the delay, and (f) Demobilization and re-mobilization costs. Unabsorbed indirect overhead costs shall include, without limitation, the proportionate share of office rent, office supplies, office utilities, office equipment, advertising, professional fees, management salaries, technical services, estimating, selling, accounting, bookkeeping and clerical expense, business licenses, taxes (except income taxes), and

insurance.

## SECTION FIFTY-SIX. LIQUIDATED DAMAGES.

56.1     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the Contract Time are considered reasonable by OWNER and DEVELOPER and DEVELOPER and CONTRACTOR, any neglect, refusal or failure of DEVELOPER and CONTRACTOR to reach Substantial Completion within the Contract Time, plus approved extensions of that time, will result in damage to OWNER impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and CONTRACTOR or which may become due CONTRACTOR the sum of $150.00 as liquidated damages for each Calendar Day that Substantial Completion is delayed beyond the Contract Time, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

56.2     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the time for Completion are considered reasonable by OWNER and CONTRACTOR. Any neglect, refusal or failure of DEVELOPER and CONTRACTOR, to reach Completion within the time provided in this contract, plus approved extensions of that time, will result in damage in the form of inconvenience, loss of opportunities, and higher Inspection, Superintendence, and administrative costs to OWNER. These costs are impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and DEVELOPER and CONTRACTOR or which may become due DEVELOPER and CONTRACTOR, the sum of $150.00 as liquidated damages for each Calendar Day that Completion is delayed beyond the time provided in this contract, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

56.3     Achieving Substantial Completion sooner than the Contract Time, plus approved extensions of that time, shall earn additional compensation to DEVELOPER and CONTRACTOR of $ N/A for each Calendar Day that Substantial Completion is achieved prior to the Contract Time, plus approved extensions of that time.

56.4     DEVELOPER and CONTRACTOR, shall not be charged liquidated damages for any failure, neglect or refusal to complete the Work on Schedule to the extent that the proximate cause of the delay was: (a) Strike, boycott, embargo, terrorism, armed rebellion, quarantine, delay in delivery of FF&E, or other obstructive action by employees, franchise owner, franchisor or labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or by order of government authority, (b) Fire, flood, earthquake, tornado, tidal wave, lightning, casualty loss, epidemic, rain, snow or unusually adverse weather, (c) Any delay of Subcontractors or vendors resulting from items listed in sections a or b above, or (d) Any act or omission of OWNER or anyone acting on behalf of OWNER.

56.5     Except as provided elsewhere in this contract, liquidated damages are the exclusive damage remedy for OWNER for any failure of DEVELOPER and CONTRACTOR to complete Work per Schedule. No damages of any other type or description shall be awarded OWNER for failure of DEVELOPER and CONTRACTOR to comply with the construction Schedule.

## SECTION FIFTY-SEVEN. CONSEQUENTIAL DAMAGES.

DEVELOPER and CONTRACTOR, and OWNER waive all Claims for consequential damages against each other, their respective officers, directors, partners, employees, agents, consultants and Subcontractors, arising out of or relating to this contract or the termination of this contract, except those consequential damages covered by insurance or specifically provided elsewhere in this agreement.

## SECTION FIFTY-EIGHT. RIGHT TO STOP WORK FOR NON-PAYMENT.

58.1     If DEVELOPER and CONTRACTOR, is not paid any amount not in dispute within 7 Calendar Days after the date due, CONTRACTOR shall post on the Job Site and deliver to OWNER and all Subcontractors a notice of intention to stop the Work if payments then due are not received in full within 10 Calendar Days. Thereafter, CONTRACTOR may suspend the Work until delinquent payments have been received, pursuant to Florida code.

58.2     Neither DEVELOPER and CONTRACTOR, nor Surety of CONTRACTOR, nor any Subcontractor of DEVELOPER and CONTRACTOR shall be liable for delay or damage that OWNER may suffer as a result of suspension of the Work for failure to receive payments due under this agreement so long as: (a) Work was suspended by DEVELOPER and CONTRACTOR in compliance with the terms of this contract and with applicable Law, and (b) There is no good faith dispute that payment is due DEVELOPER and CONTRACTOR,  at the time of suspension. A good faith dispute exists if OWNER provides: (a) A list of specific reasons for nonpayment, including labor, materials, or equipment not in compliance with the Contract Documents, and (b) CONTRACTOR is afforded a reasonable opportunity to correct the Defects cited or issue a credit compensating OWNER for Defects that cannot be cured promptly.

## SECTION FIFTY-NINE.  EARLY PARTIAL OCCUPANCY.

59.1     Without prior approval of DEVELOPER and CONTRACTOR, OWNER shall not occupy or use any portion of the Work until Substantial Completion of the Project. If OWNER occupies or uses any portion of the Work before Substantial Completion of the Project and without prior approval of DEVELOPER and CONTRACTOR, the portion or portions used or occupied shall be considered complete, finished, accepted and the responsibility of OWNER.

59.2     No Partial Use or occupancy of the Work by OWNER shall commence prior to Substantial Completion without a Change Order confirming the responsibility of OWNER for maintenance, utilities, operation of equipment, and security during early Partial Use or occupancy.

59.3     If any portion of the Project is used or occupied by OWNER prior to Substantial Completion and if the Project is not completed within the Contract Time, liability of DEVELOPER and CONTRACTOR, for delayed completion shall be reduced by the proportion of the Project used or occupied by OWNER and for the time used or occupied by OWNER prior to Substantial Completion.

## SECTION SIXTY. SUBSTANTIAL COMPLETION.

60.1      When, in the opinion of DEVELOPER and CONTRACTOR, the Work is Substantially Complete, DEVELOPER and CONTRACTOR shall prepare a preliminary Punch List of Work remaining to be done and deliver that Punch List to OWNER'S Representative with a request for evaluation of Substantial Completion. If, in the opinion of OWNER'S Representative, items on the preliminary Punch List are consistent with Substantial Completion, OWNER'S Representative shall conduct an Inspection of the Work to evaluate compliance with the Contract Documents.

60.2 Before OWNER takes possession or occupancy of the Project, DEVELOPER and CONTRACTOR, shall receive a comprehensive Punch List of discrepancies to be corrected or Work to be finished by CONTRACTOR and a date for completing this Work. DEVELOPER and CONTRACTOR, shall complete and correct items on the Punch List by the designated date.

60.3   The Punch List given to DEVELOPER and CONTRACTOR, is a complete and final list of Defective or incomplete Work on the Project. OWNER shall be deemed to have accepted Work not on the Punch List. Nothing in this paragraph shall be interpreted as relieving DEVELOPER and CONTRACTOR, of the obligation to meet warranty and call-back obligations.

60.4      DEVELOPER and CONTRACTOR, shall annotate the Punch List with: (a) A detailed breakdown of the Work required to complete or correct each item, (b) The Subcontractor or trade responsible for the Work, and (c) The dates Work will commence and be finished on each item. No annotation is required for any item on the Punch List which is beyond the control of DEVELOPER and CONTRACTOR. Failure of CONTRACTOR to furnish a detailed completion Schedule for items on the Punch List shall constitute grounds for withdrawing acknowledgment of Substantial Completion.

60.5   OWNER'S Representative will prepare a certificate of Substantial Completion for signature by OWNER and DEVELOPER and CONTRACTOR, when the Project or a specific portion of the Project is ready for occupancy. Except as otherwise provided in the Contract Documents, signing of the certificate of completion shall: (1) Transfer to OWNER responsibility for maintenance, safety, utility expense, controlling access at the site, and (2) Begin running of any warranty or call-back period on the Project.

60.6   after Substantial Completion, DEVELOPER and CONTRACTOR, shall remain responsible for: (a) Damage caused by DEVELOPER and CONTRACTOR, while completing the Work, and (b) Safety of crews when completing the Work.

## SECTION SIXTY-ONE. DELIVERY OF NOTICES.

60.1   Any written notice required by this contract can be: (a) Delivered by hand at the last known address of the addressee, or (b) Delivered by hand to the addressee or representative of the addressee, wherever found. Notice is effective upon delivery.

60.2   Any written notice required by this contract can be: (a) Delivered by enclosing in a stamped envelope addressed to the last known address of the intended recipient and either deposited in a United States Postal Service mailbox or given to a USPS employee, or (b) Consigned to a commercial courier service and addressed to the last known address of the intended recipient. Notice is effective upon delivery if proof of delivery is provided; where no proof of delivery is available, notice is effective 5 Calendar Days after mailing or consignment to a courier service.

**[PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE TO FOLLOW]**

SIGNATURES

The signatures that follow constitute confirmation by those signing that they have examined and understand the Contract Documents and agree to be bound by the terms of these documents.

DEVELOPER and CONTRACTOR may not begin Work before receiving from OWNER a written notice to proceed. Any Work performed by DEVELOPER and CONTRACTOR before receipt of the notice to proceed shall be done at the risk of DEVELOPER and CONTRACTOR and without obligation of OWNER.

This agreement is entered as of the date written below.


**OWNER Name:**

**CHC-HOLMES CORNER CHEYENNE WY LLC,**
**a Florida limited liability company**

FG-MGR, LLC, a Maryland limited liability company
Manager

BY: _____
           Pun For Li, Manager

Date: _____2018-02-06_____


**DEVELOPER:**

REDSTONE, LLC, a Tennessee limited liability company
D/B/A AMERICAN DEVELOPMENT PARTNERS

BY: _____
           Manny Butera, Developer and Authorized Signatory
           on behalf of REDSTONE, LLC

Date: _____2/6/18_____

## Glossary of Terms

**Beneficial Occupancy** refers to OWNER'S use of the project premises after Substantial Completion but prior to Completion. Beneficial Occupancy may occur when the project or some portion is sufficiently complete and systems operational such that the OWNER could, after obtaining necessary approvals and certificates, occupy and utilize the space for its intended purpose. The time limit for warranties applicable to that portion of the Work begin on the date the OWNER begins Beneficial Occupancy, unless otherwise specified in this Agreement.

**Bond** means the security offered by a licensed surety company which may be used to satisfy a claim of failure to perform obligations undertaken in this Agreement.

**Calendar Day** means any day shown on the calendar beginning at midnight and ending at midnight the following day. Contrast the term Work Day which excludes Saturdays, Sundays and state-recognized holidays.

**Certification of Payment** is acknowledgment by someone not a party to this Agreement that CONTRACTOR is entitled to payment for work completed.

**Change Order** is a written modification of the Contract Price (including all claims for direct, indirect and consequential damages and costs of delay), Time for Completion and Scope of Work under this Agreement. A Change Order, once signed by all parties, is incorporated into and becomes a part of the Contract Documents.

**Claim** means a demand or assertion by one of the parties to this Agreement seeking, as a matter of right, modification, adjustment or interpretation of contract terms, payment of money, extension of time or other relief.

**Code Requirements** means all laws, statutes, regulations, building codes, ordinances, rules, and lawful orders of all public authorities having jurisdiction over OWNER, CONTRACTOR, any Subcontractor, the Project, the Job Site, the Work, or the prosecution of the Work.

**Contract Completion Date** means the day by which the Work must be substantially complete.

**Contract Date** is the day on which the contract becomes binding between CONTRACTOR and OWNER.

**Contract Documents** are this Agreement and all documents incorporated by reference into this Agreement.

**Contract Price** is the amount which will become due in exchange for work performed under this Agreement. Contract Price includes allowances for purchased materials and equipment and may be modified by a Change Order or contract modification. The Contract Price may be paid in one or more installments, including an Initial Payment at or before the start of work, Progress Payments as work is completed, and a Final Payment on final acceptance of the work. Payment

Between applications for progress payments or prior to the first application for progress payment.

**Contract Schedule** is a graphical representation of a practical plan to complete Work within the Contract Time.

**Contract Time** means the period between Date of Commencement and the date of Substantial Completion.

**CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the Work under the terms of this Agreement.

**Defective Work** means construction done under this Agreement that is unsatisfactory, faulty, omitted, incomplete, deficient, or does not conform to the requirements of the Contract Documents, directives of OWNER'S Representative, or the requirements of an inspection, reference standard, test, or approval specified in the Contract Documents.

**Design Professional** means the person, organization or authorized representative who is responsible to the OWNER for design of the Project through preparation of Drawings and Specifications. The term Design Professional may refer to an architect, designer, engineer or landscape architect.

**Drawings** (also called plans or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Drawings include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed Project. A group of drawings adequate to complete construction of the Project may be referred to as a plan set. Drawings can be either paper or electronic media.

**Emergency** means an unforeseen event, combination of circumstances, or a resulting state that poses imminent danger to health, life or property.

**Excusable Delay** means any circumstance which postpones completion of the Work and for which CONTRACTOR is entitled to an adjustment of the Contract Time but not an adjustment to the Contract Price. Contrast Inexcusable Delay which entitles CONTRACTOR to neither an adjustment of the Contract Price nor an adjustment in the Contract Time.

**Extra Work** means any change, interpretation, clarification or correction in the Contract Documents or in applicable law, ordinance or regulation which would increase or decrease the quantity of work, delay, suspend or interfere with the work, require an addition to or omission from the work, change the character, quality or nature of any part of the work or material used in the work, change levels, lines, positions or dimensions of any part of the work, require demolition or removal of any work completed under this Agreement, extend or amend the normal work day, alter the construction schedule or require completion of any part of the work at a time other than provided by this Contract when originally made.

Page 32

**Completion** is the date of OWNER'S acceptance of the Work as fully performed per the Contract Documents.

**Furnish** means to supply and deliver to the job site.

**General CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking execution of the Work under terms of a Prime Contract.

**Hazardous Materials** means radioactive materials, asbestos, polychlorinated biphenyls, petroleum, crude oil, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, and toxic substances which are restricted, prohibited, or regulated by any agency of government in the manufacture, use, maintenance, storage, Ownership or handling.

**Indemnification** Financial compensation intended to restore someone to their condition before a loss or damage.

**Inspection** is any review of the Project, including a visual review of the Work completed to ascertain compliance with Contract Documents, building codes and construction standards.

**Inspector** is anyone authorized by government or the Design Professional to conduct inspections of contract performance and materials supplied for the Work.

**Install** means to secure in position in compliance with the Contract Documents and includes unloading materials, supplying all necessary equipment and rigs to do the work and performing functional tests which demonstrate fitness for the intended purpose.

**Job Site** is the address or location of the Project.

**Law** means federal or state statutes, municipal ordinances, building codes, regulations adopted pursuant to statute, executive orders, official interpretations, and other rules and directives issued by government.

**Material Supplier** means any manufacturer, fabricator, distributor, material man or vendor who provides material for the Project but does not provide on-site labor.

**Modification** is a written amendment to the Contract signed by both parties.

**OWNER'S Representative** means the person or firm authorized to act and make administrative decisions on behalf of the OWNER during construction. Any notice required to be delivered to the OWNER may be delivered to the OWNER'S Representative. The scope of authority of the OWNER'S Representative is defined in this contract. CONTRACTOR cannot rely on any decision or instruction by OWNER'S Representative that is beyond the representative's defined scope of his authority. Nothing in this contract prevents OWNER from issuing a notice or instructions directly to the CONTRACTOR. The OWNER may change the OWNER'S Representative from time to time and may, if OWNER'S Representative is absent, disabled or

otherwise temporarily unavailable, appoint an interim OWNER'S Representative.

**Party (to this contract)** means a person or business organization which has an obligation to perform under the terms of this contract.

**Plans** (also called drawings or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Plans include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed project. A group of plans adequate to complete construction of the Project may be referred to as a plan set. Plans can be either paper or electronic media.

**Prime Contract** is a written agreement between CONTRACTOR and OWNER which binds CONTRACTOR to furnish labor, equipment, or materials or perform certain work for a price to be paid by OWNER.

**Project** means Work to be completed in accord with the Contract Documents. Work at the Job Site may include other projects to be completed by the OWNER or other CONTRACTORs working under other agreements.

**Provide** means furnish and install and includes connecting, testing, and placing in service for the intended use.

**Punch List** is a comprehensive list of incomplete, defective or incorrect Work yet to be completed or which does not comply with Contract Documents. A Punch List may be prepared by the CONTRACTOR, Subcontractor, Design Professional or OWNER. An initial Punch List will be prepared before application for Substantial Completion. A Close-out Punch List will be prepared before Completion.

**Requirements** means, in addition to obligations, responsibilities and limitations set out in the Contract Documents, the obligations, responsibilities and limitations imposed by law, rules, orders, ordinances, regulations, statutes, codes and executive orders of governmental authorities or fire rating bureaus.

**Retainage** is a portion of each progress payment temporarily held back or retained by the OWNER. Accumulated retainage is released to CONTRACTOR on satisfactory completion of the work.

**Sample** means a physical example of material; equipment or workmanship intended to be representative of some portion of the Work. When approved, samples establish standards for completion of similar work on the Project.

**Schedule of Values** means the detailed breakdown of cost of materials, equipment and labor necessary to complete the Project as described in the Contract Documents.

Page 34

**Scope of Work** means the Work as defined by the Contract Documents.

**Separate CONTRACTOR** means a person or firm working under a different contract but on the same site and at the same time as work will be done under this contract.

**Shop Drawings** are diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data which are prepared by the CONTRACTOR or a Subcontractor, manufacturer, supplier or distributor, and which illustrate or describe some portion of the Work to be completed in compliance with the Contract Documents. Once submitted to the approval authority and approved, Shop Drawings establish standards for completion of work on Project.

**Similar** means having a like kind, quality and characteristics. Similar is not to be construed as meaning identical or by the same manufacturer.

**Specifications** (also called specs) are the part of the Contract Documents which provide descriptions of materials, equipment, construction systems, technique and workmanship to be used on the Project. Specifications are both instructions to be followed by the CONTRACTOR and Subcontractors and a reference for the Building Official to evaluate code compliance.

**Subcontract** is a written agreement between a specialty CONTRACTOR and General CONTRACTOR. Terms of the subcontract require the specialty CONTRACTOR to complete some portion of the work General CONTRACTOR is obligated to perform under another agreement, usually with the OWNER.

**Subcontractor** is any person or business entity under contract to a general CONTRACTOR to perform some portion of the work general CONTRACTOR is obligated to complete under a contract with the OWNER. Subcontractor is an independent CONTRACTOR performing services for another CONTRACTOR rather than for the OWNER. A person or organization providing supplies or materials for the Project, but no job site labor is not a Subcontractor.

**Submittals** demonstrate the way by which the CONTRACTOR proposes to conform to the requirements of the Contract Documents. Submittals are shop drawings (diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data) required by the Contract Documents which are prepared for the CONTRACTOR to depict some portion of the Work. Submittals are delivered to the OWNER for approval or disapproval by the OWNER prior to purchase or installation.

**Substantial Completion** means the Project, or a designated portion of the Project is nearly in compliance with the Contract Documents and is sufficiently complete to be considered fully operational in all its components and is fit for the intended use. Substantial Completion is reached when a limited number of non-conforming or defective items on a Punch List remain to be completed. Normally, a Project or portion of a Project cannot be considered Substantially Complete until (1) all utilities and services are connected and working, (2) all equipment is installed and in acceptable working condition, (3) additional activity by the CONTRACTOR to correct items on the Punch List will not prevent or disrupt use of the facility, and, (4) a certificate

of occupancy has been issued by the appropriate authority.

**Sub-subcontractor** is any person or business entity under contract to a subcontractor or any lower tier subcontractor to perform some portion of the work subcontractor is obligated to complete under a
contract with the prime CONTRACTOR. Sub-subcontractors are independent CONTRACTORs performing services for another CONTRACTOR rather than for the prime CONTRACTOR. A person or organization providing supplies or materials for the Project, but no job site labor is not a Sub-subcontractor.

**Superintendent** is the representative of the CONTRACTOR at the job site who is authorized to receive instructions from the OWNER or OWNER'S Representative and who is authorized to direct the performance of work on behalf of the CONTRACTOR.

**Surety** means any qualified individual, firm or corporation other than the CONTRACTOR, which executes a bond to insure its acceptable performance of the contract.

**Tier** refers to the contractual level of a person or business organization doing work on the Project. A first-tier subcontractor has a contract with the general CONTRACTOR but not the OWNER. A second-tier subcontractor has a contract with another subcontractor but not with the general CONTRACTOR or the OWNER.

**Work** means all labor, material, equipment, tools, transportation, permanent and temporary utilities, connections, provisions for safety and management services required to complete the Project in compliance with the Contract Documents. Work may constitute the whole or a part of the Project. Work is to be performed in a safe, expeditious, orderly and professional manner in keeping with current standards of the industry. Work includes everything that is or should be evident to a skilled construction professional after careful examination of the Contract Documents and the Job Site.

**Work Day** means any day, excluding Saturdays, Sundays and state-recognized holidays, shown on the calendar beginning at midnight and ending at midnight the following day.

**EXHIBIT "G"**



**American Development Partners Development Contract**

**THIS AGREEMENT** is made on this the 23rd day of February 2018, by and between **REDSTONE, LLC, a Tennessee limited liability company, D/B/A American Development Partners** (hereinafter "DEVELOPER") and **CD-1204 WADE HAMPTON BLVD GREER SC LLC, a Florida limited liability company** (hereinafter "OWNER").

**DEVELOPER**

DEVELOPER Name: **REDSTONE LLC DBA American Development Partners ®**
PO Box 681982
Franklin, TN 37064
Office - (615) 368-3412
Attn:  Manny Butera
Email Address: manny@americandevelopmentpartners.com

DEVELOPER Name: **American Development Partners ®** will be referred to as DEVELOPER throughout this agreement.

**CONTRACTOR**
<u>**CONTRACTOR INFORMATION:**</u>
Address: Phone Number: (615) 330-0629
Email Address: llynp@built-more.com
License Number: 00057609

CONTRACTOR Name: Built-more LLC will be referred to as CONTRACTOR throughout this agreement.

**OWNER**
OWNER AGENT:

**CD-1204 WADE HAMPTON BLVD GREER SC LLC**
201 Madeira Avenue
Coral Gables, FL 33134
Attn:  Pun For Li
Email Address:  ~~fli@fg-llc.com~~  fli@fg-companies.com

With a Copy to:
Jose L. Torres, P.A.
224 Palermo Avenue
Coral Gables, FL 33134
Email Address: jtorres@jltorrespa.com

OWNER Name:

**CD-1204 WADE HAMPTON BLVD GREER SC LLC**
201 Madeira Avenue
Coral Gables, FL 33134
Attn:  Pun For Li
Email Address:  ~~fli@fg-llc.com~~   fli@fg-companies.com

## SECTION ONE. PROJECT DESCRIPTION.

1.1  For a price identified below, DEVELOPER agrees to complete a new commercial building (identified as the Project in this agreement) for OWNER.

1.2  For the Contract Price identified below, DEVELOPER agrees to complete a new commercial building consisting of approximately 2400 sq. ft. +/- square feet of air-conditioned space plus patio 800 + / - square feet and used as a CAPTAIN D'S or other similar Quick Service Restaurant (identified as the "Project" in this Agreement), for TENANT's use and OWNERS ownership on the Land in accordance with the plans

1.3  The term "Total Build Cost" shall mean the aggregate of (1) the Total Project Cost, (2) the Contract Price, (3) the Contingencies of the Project, (4) the cost of the Work and the Extra Work, (5) other costs, charges and fees under this Agreement (collectively, the "Other Agreements") (the Other Agreements shall include but not be limited to any contractor or subcontractor agreements and the cost of all materials and labor), but shall not exceed $2,189,949.18.

1.4  The term "Budget" shall mean the Total Build Cost less the cost to acquire the Land.

1.5  The term "Property" shall mean the Land and all improvements thereon including but not limited to the Project.

1.6  Contract Price / OWNERS Cost Cap / Developer.

1.7  DEVELOPER shall earn in addition to any other charges specified in this agreement, OWNER agrees to pay a 10% development fee for completing the Work described as the Project. DEVELOPER fee is paid off total project cost that includes building, construction and all numbers that are used to factor total project cost.

1.8  Notwithstanding any contrary provision in this Agreement or otherwise, OWNERS maximum monetary liability under this Agreement and for the Project towards all amounts, including but not limited to the Total Build Cost, shall not exceed, and shall

Page 2

be capped at, the sum of $2,189,949.18 said amount referred to as the (OWNERS GROSS MAX). Notwithstanding any contrary provision in this Agreement or otherwise, DEVELOPER shall be solely responsible under this Agreement and to OWNER, for any projects overruns that are above the gross max number provided to OWNER.

## SECTION TWO. CONTRACT PRICE.

DEVELOPER shall earn and OWNER agrees to pay a development fee of 10% of total project cost in addition to any other charges specified in this agreement. In addition to any other charges specified in this agreement, OWNER agrees to pay DEVELOPER $199,086.29 development fee for completing the Work described as the Project.

## SECTION THREE. CONTINGENCY BUDGET.

It is identified and agreed to by OWNER that DEVELOPER has an estimated budget of **5 %** of project cost for "contingencies". CONTRACTOR will submit to DEVELOPER a "change order" for approval by DEVELOPER and OWNER any proposed change order. Contingencies are limited to change orders due to error or omission by a licensed architect after plans were received and reviewed by contractor, all state or federal codes changes that were mandated after contractor received stamped plans and or building permit.

## SECTION FOUR. SCHEDULED START OF CONSTRUCTION.

4.1      Work under this agreement will begin within 5 Calendar Days after the following contingencies have been met.

4.1(a) Complete Plans and Specifications have been approved and initialed by both OWNER, DEVELOPER, and CONTRACTOR.

4.1(b) OWNER has shown proof of funds or other financing acceptable to DEVELOPER.

4.1(c)      DEVELOPER has obtained all architectural approvals from any franchise and or corporate authorities.

4.1(d)      OWNER has furnished DEVELOPER with evidence of Ownership of the property satisfactory to DEVELOPER.

4.1(e) All appropriate building permits have been issued.

4.1(f) DEVELOPER has received written notice from the lien holder or the title company insuring lien holder's security interest in the property that all documents required to be recorded prior to the commencement of construction have been properly recorded.

4.1(g) The contract has been signed by OWNER, DEVELOPER and CONTRACTOR.

## SECTION FIVE. SCHEDULED COMPLETION OF CONSTRUCTION

Contractor shall achieve Substantial Completion of the entire work not later than ONE HUNDRED TWENTY-FIVE (125) calendar days from the date the building permit is issued, or the date reflected in the site investigation report ("SIR") whichever is the earlier of the two. This is only for projects where land owner has approved developer to finalize full architectural and engineering plans to be completed during the due diligence period.  If the landowner does not approve developer to finalize full architectural and engineering plans to be completed during the due diligence period, then the Contractor shall achieve Substantial Completion of the entire work not later than ONE HUNDRED TWENTY-FIVE (125) calendar days from the date the building permit is issued. The Substantial Completion date may be modified as reasonably necessary by Contractor after final plans, specifications, and bidding process.  "Substantial Completion" for purposes of this Agreement shall mean the date when Work has been sufficiently completed in accordance with the Contract Documents, so the Owner can occupy or utilize the Property for its Intended Use.  "Intended Use" for purposes of this Agreement shall mean the intended use of the property as a quick serve restaurant. This is subject this Clause, "Event of Force Majeure" means an event beyond the control of the developer or contractor, which prevents a them from complying with any of its obligations under this Contract, including but not limited to, act of God (such as, but not limited to, fires, explosions, earthquakes, drought, rain, snow, tidal waves and floods); war, hostilities (whether war be declared or not), invasion, act of foreign enemies, mobilization, requisition, or embargo; rebellion, revolution, insurrection, or military or usurped power, or civil war; contamination by radio-activity from any nuclear fuel, or from any nuclear waste from the combustion of nuclear fuel, radio-active toxic explosive, or other hazardous properties of any explosive nuclear assembly or nuclear component of such assembly; riot, commotion, strikes, go slows, lock outs or disorder, unless solely restricted to employees of the Supplier or of his Subcontractors; or acts or threats of terrorism.

In any event, a time extension may be granted only for an excusable delay that is beyond Contractor's control and occurs without the Contractor's fault or negligence.  No time extension will be granted in the absence of a written claim for the time extension.

## SECTION SIX. DOCUMENTS INCORPORATED

6.1     The Glossary of Terms which follows our signatures is incorporated into this contract as though included in full as part of this agreement.

6.2     This agreement incorporates by reference certain documents which define and describe the Work to be done. The following documents are incorporated as though included in full as part of this agreement.

## SECTION SEVEN. OWNERSHIP OF PLANS.

All Plans, Drawings, Specifications and other documents prepared by or for OWNER for use under this agreement will be paid for and are the property of DEVELOPER and remain the property of DEVELOPER. Plans, Drawings and Specifications, whether in paper or electronic form, prepared for use in construction under this agreement shall not be modified or used on any other project without written consent of DEVELOPER. DEVELOPER shall hold harmless and Indemnify OWNER from and against all Claims, actions, suits, costs, damages, losses, expenses and attorney's fees arising out of use of the Project Plans, Drawings, or Specifications for any purpose other than construction to be completed under this agreement. DEVELOPER,

Page 4

CONTRACTOR and Subcontractors are granted a limited license to use and reproduce applicable portions of the Plans, Specifications and Drawings as required for construction under this agreement. All copies made under this license shall bear a notice showing OWNER as copyright holder. DEVELOPER may retain one record set of the Plans, Drawings and Specifications. All other sets shall be accounted for by DEVELOPER and CONTRACTOR and returned to OWNER. Submittal or distribution of Project Plans, Drawings or Specifications to meet Official Regulatory Requirements is not to be construed as publication in derogation of the rights of OWNER.

## SECTION EIGHT. PLANS ON SITE.

DEVELOPER and CONTRACTOR will keep a full set of Project Plans available on-site to authorized personnel during the period of construction.

## SECTION NINE. DOCUMENTS SUPPLIED BY CONTRACTOR.

OWNER will furnish to DEVELOPER and CONTRACTOR at no cost (this is part of total project cost)

9.1(a) A full set of Plans and Specifications for all trades in electronic format.

9.2(b) DEVELOPER and CONTRACTOR will distribute Contract Documents as required by Subcontractors.

## SECTION TEN. SCOPE OF WORK.

10.1    DEVELOPER and CONTRACTOR shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Project in compliance with the Contract Documents.

10.2    DEVELOPER and CONTRACTOR are responsible for coordination of the various trades and deliveries of equipment, materials and supplies to minimize interference which could delay the Work or pose a hazard to life or property. DEVELOPER shall be responsible for allocation of tasks between trades and will be the final authority on location and routing of equipment and storage of materials on the Job Site.

10.3    DEVELOPER will ensure that Subcontractors, their agents, and employees adhere to these Contract Documents. DEVELOPER and CONTRACTOR accepts responsibility for all Work performed under this contract, including Work performed by employees of Subcontractors.

10.4    CONTRACTOR shall provide on the Job Site during the period of construction a temporary chemical toilet or water closet which shall be serviced no less than weekly. Upon completion of the Project, CONTRACTOR will remove temporary toilet facilities from the site.

10.5    DEVELOPER and CONTRACTOR shall provide temporary elevators and lifts as may be required by construction personnel, including Subcontractors, Material Suppliers, Inspectors, and Representatives of OWNER. Elevators and lifts will comply with all federal, state and local Laws and ordinances in effect at the Job Site. Upon completion of the Project, DEVELOPER and CONTRACTOR will dismantle and remove temporary elevators and lifts.

10.6     DEVELOPER and CONTRACTOR shall develop and present to OWNER for approval (which shall not be withheld unreasonably), a site logistics plan drawn to scale, showing proposed secure and fenced areas, locations and types of temporary barricades, material storage and staging areas, property entrances used for material deliveries, and special material or equipment storage Requirements. This plan will include a description and proposed location for any temporary office, storage trailer, sanitary facilities, and parking for construction personnel.

## SECTION ELEVEN. SUBMITTALS.

11.1     Architectural Drawings will indicate in detail all parts of the building components, Installation details, and coordination with Work of other trades or other CONTRACTORS. Architectural Drawings for structural steel, timbers and pre-cast concrete will include engineering calculations, fabrication details and erection Drawings that show physical characteristics, dimensions, shapes, inserts, attaching points and methods, and other information required for manufacture, assembly and erection, in compliance with the Contract Documents.

11.2     Approval by OWNER'S Representative does not relieve DEVELOPER and CONTRACTOR of responsibility for compliance with the Contract Documents except as follows: If a Submittal does not comply with Contract Documents, DEVELOPER and CONTRACTOR will attach to the Submittal, prior to approval, a written request for variation showing the change in Contract Price and Contract Time, if any, that will result from the variation. If OWNER'S Representative approves a Submittal which includes a written request for a variation and which requires a change in the Contract Price or Contract Time, OWNER'S Representative will issue a contract Modification confirming the change. If OWNER'S Representative approves a Submittal with a written request for a minor variation which does not require a change in the Contract Price or Contract Time, no contract Modification is needed. A minor variation is anything which does not materially alter the quality or performance of the Work. Approved variations are subject to all terms of this agreement and without prejudice to any rights granted to OWNER'S Representative under a Surety Bond.

11.3     DEVELOPER and CONTRACTOR is entitled to expect that corrections to Submittals by OWNER'S Representative be clearly noted and easily understood so that prompt resubmission is possible without further instructions from OWNER'S Representative.

11.4     OWNER'S Representative will review Submittals and notify DEVELOPER and CONTRACTOR of approval or rejection within TWO (**2**) Calendar Days of receipt.

11.5     OWNER'S Representative will review Submittals of DEVELOPER and CONTRACTOR for conformance with Requirements of the Contract Documents and will approve or take other appropriate action upon those Submittals.  OWNER'S Representative will advise DEVELOPER and CONTRACTOR of any errors or omissions which OWNER'S Representative may detect during this review. Submittals approved by OWNER'S Representative become additions to the Contract Documents and can be relied on by DEVELOPER and CONTRACTOR in completing the Work. Nothing in any approved Submittal shall be interpreted to limit DEVELOPER and CONTRACTOR in selection of the means, method, technique, sequence or procedure of construction.

## SECTION TWELVE. RECORD DOCUMENTS.

DEVELOPER and CONTRACTOR will note on a record set of Project Drawings any Work done that is not shown on the original Plans and not described in other Contract Documents. The record set of Project documents will be delivered to OWNER at the same time as final payment is requested.

## SECTION THIRTEEN. JOB SITE SAFETY.

DEVELOPER and CONTRACTOR will always take all reasonable precautions for the safety of employees and the public at the Job Site and will comply with all applicable safety Laws and regulations of federal, state, and local authorities (including building codes) and safety Requirements of OWNER.

## SECTION FOURTEEN.  HAZARDOUS MATERIALS USED IN CONSTRUCTION.

Except as provided elsewhere in the Contract Documents, CONTRACTOR is responsible for all Hazardous Materials brought to the Job Site by CONTRACTOR or Subcontractors.

## SECTION FIFTEEN.  HAZARDOUS MATERIALS DISCOVERED ON SITE.

15.1    Except as provided elsewhere in the Contract Documents, OWNER is responsible for all Hazardous Materials discovered on the Job Site so long as those materials were not brought on the Job Site by CONTRACTOR, Subcontractors, or anyone directly or indirectly employed by them. Nothing in this paragraph shall relieve DEVELOPER and CONTRACTOR from liability for negligence in handling or removing hazardous materials as required under the terms of this agreement.

15.2     Except as provided in the Contract Documents or as agreed by mutual consent, DEVELOPER and CONTRACTOR shall not be required to perform Work relating to asbestos, polychlorinated biphenyl (PCB), radioactive material, toxic mold or any other Hazardous Material.

15.3    OWNER shall defend, Indemnify and hold harmless DEVELOPER  and CONTRACTOR from and against all loss, liability, claims, costs, damage and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from the discovery or existence of Hazardous Material on the Job Site, whether or not identified in the Contract Documents, provided such loss, liability, costs, damage and economic detriment is not the result of any negligent act or omissions of DEVELOPER and CONTRACTOR, Subcontractors or anyone directly or indirectly employed by them. Indemnification by OWNER under this paragraph shall apply even if OWNER is in no way responsible for the loss to DEVELOPER and CONTRACTOR.

**SECTION SIXTEEN. COMPLIANCE WITH FEDERAL, STATE, AND LOCAL LAW.**

16.1      CONTRACTOR and OWNER mutually commit to use reasonable care to meet the Requirements of state, federal and local Law when discharging their responsibilities under this agreement.

16.2      If DEVELOPER and CONTRACTOR observe that Drawings, Specifications, or other Contract Documents do not comply with applicable Law, DEVELOPER and CONTRACTOR shall promptly notify OWNER or OWNER'S Representative of the variance. Any changes made to the Contract Documents because of this notice shall be handled in the form of a Change Order under this agreement.

16.3      DEVELOPER and CONTRACTOR shall bear none of the cost of correcting Work completed per Contract Documents but not in compliance with Law if CONTRACTOR did not know that Contract Documents or instructions from OWNER or OWNER'S Representative did not comply with the Law.

16.4       If Law enacted after the Contract Date changes the Scope of Work under this agreement, DEVELOPER and CONTRACTOR and OWNER will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

**SECTION SEVENTEEN. LAYOUT.**

DEVELOPER and CONTRACTOR shall be responsible for alignment and elevation of the Work and will set grade stakes, batter boards, and other working points, lines and elevations required to complete the Project as described in the Contract Documents.

**SECTION EIGHTEEN. PERMIT AND FEES.**

18.1      DEVELOPER and CONTRACTOR shall secure all permits, licenses and renewals required by government authority to complete construction of the Project. If permits are required for Subcontracted Work, Subcontractors will secure those permits. OWNER may request a copy of each permit, license and renewal issued by government authority for the Project. All permits and fees are considered a fee that is enclosed in the project plan.

18.2      Project budget will include the building permit fee, Plan check fee, and charges levied by government for testing, Inspection and Re-Inspection of the Project. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.3      Except as provided elsewhere in this agreement, Project budget  will include all fees and application charges imposed by government authority, including, but not limited to, grading permit fees, drainage permit fees, traffic control charges, thoroughfare charges, impact fees, special district fees, sewer fees, water fees, planning fees, school fees, elevator permit fees, charges for temporary access or use of the public right of way, and charges for document processing, hearings, and certifications. Project budget will also pay all fees and application

Page 8

charges imposed by any association of property OWNERs having authority over the Job Site. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.4    Except as provided elsewhere in this agreement, Project budget will include all application fees and connection charges imposed by utility companies or government agencies for bringing service to the Job Site, and for connecting gas, water, electricity, phone, cable, sewer, and drainage lines. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.5    Except as provided elsewhere in this agreement, Project budget will include all approvals for the Project that are required by government authority, including planning, easements, remediation, environmental, and zoning approvals. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## SECTION NINETEEN. TAXES.

If any federal, state or local tax rate increases or if any new federal, state or local tax is imposed, whether by Law, regulation, or interpretation, between the Contract Date and Substantial Completion, the Contract Price shall be increased by the additional tax levied on DEVELOPER and CONTRACTOR but only to the extent that the change in rate or new tax could not have been reasonably foreseen on the Contract Date. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## SECTION TWENTY. TEMPORARY UTILITIES.

20.1    DEVELOPER and CONTRACTOR have budgeted for all costs associated with use of temporary utilities on the Job Site during construction, including application fees, permits, engineering, and metered service for water, electric power, heating and cooling. Temporary utility systems provided by DEVELOPER CONTRACTOR shall be designed and installed to protect the public and construction personnel and conform to applicable Laws and Regulations.

20.2    Utility services shall be re-listed in the name of future building occupant on the Calendar Day following Substantial Completion.

## SECTION TWENTY-ONE. PERMANENT UTILITIES.

Project budget shall include Installation, connection, and modification of permanent electric, water, phone, cable, sewer and gas service as required for the completed Project. It will not include any deposits that will be paid by building occupant.

### SECTION TWENTY-TWO. JOB CLEAN UP.

22.1     DEVELOPER and CONTRACTOR shall regularly remove from the Job Site and storage areas all surplus material, waste and debris resulting from the Work. Construction debris shall be removed to a legal refuse collection site with disposal or recycling fees included in Project budget. At completion of the Work, DEVELOPER and CONTRACTOR shall, in addition, remove from the Job Site all tools, equipment and scaffolding brought to the Job Site by DEVELOPER and CONTRACTOR or Subcontractors. At Substantial Completion, exposed finishes of windows, doors, floors, walls, ceilings, fixtures and trim shall be cleaned and free of grime, stains, over spray, dirt and dust.

22.2     DEVELOPER and CONTRACTOR shall provide a trash disposal facility on the Job Site for use by construction personnel. The on-site trash facility provided by DEVELOPER and CONTRACTOR shall be of an appropriate size for the Project and placed in a location approved by OWNER. All construction debris shall either be placed in the trash facility provided by DEVELOPER and CONTRACTOR or hauled to a legal disposal site, at the discretion of DEVELOPER and CONTRACTOR. When any trash container provided by DEVELOPER and CONTRACTOR is full, contents shall be removed to a legal disposal facility at the expense of CONTRACTOR.

### SECTION TWENTY-THREE. PROJECT SIGN.

DEVELOPER and CONTRACTOR shall have the right to fabricate and erect a Project sign bearing the name of the Project, Prime CONTRACTOR, principal Subcontractors, designers, consultants, lead lender, a short Project description, and expected Completion Date. CONTRACTOR may erect directional signs at the Job Site with approval of OWNER with respect to size, style and location. Directional signs may bear the name of CONTRACTOR and a directional symbol. No other signs will be permitted except by permission of OWNER.

### SECTION TWENTY-FOUR.  PROJECT SUPERINTENDENT.

DEVELOPER and CONTRACTOR shall employ a competent Superintendent and any necessary assistants or alternates that will be at the job site from start to finish of project. The Superintendent shall not be changed unless the Superintendent is discharged by DEVELOPER and CONTRACTOR. The Superintendent shall have authority to represent DEVELOPER and CONTRACTOR in all matters relating to the Project. Communications with the Superintendent shall have the same force and effect as direct communication with DEVELOPER and CONTRACTOR.

### SECTION TWENTY-FIVE. OWNER'S RESPONSIBILITIES.

25.1     OWNER affirms that OWNER has the right to enter this agreement and has the right to contract for construction of the Project on the Job Site. OWNER shall pay all taxes and assessments due on the Job Site during the period of construction and shall take all reasonable actions required to protect marketable title to the Job Site. OWNER is responsible for all standard responsibilities that a property OWNER / landlord would have.

25.2     OWNER will ensure that OWNER'S Representative responds in writing and with reasonable promptness to written requests from DEVELOPER and CONTRACTOR for (1)

interpretation of the Plans or Specifications, or (2) other information relevant to completion of the Work. DEVELOPER and CONTRACTOR are authorized to rely on written responses from OWNER'S Representative.

25.3    OWNER shall have sole responsibility to secure financing for the Project and shall pay all fees, charges, or other costs of such financing, including Inspection fees charged by any lender. The nonperformance of any lender shall not affect the obligation of OWNER to DEVELOPER and CONTRACTOR. OWNER hereby authorizes and directs any lender on the Project to furnish DEVELOPER and CONTRACTOR with full information on undisbursed proceeds when requested by DEVELOPER and CONTRACTOR. Proof of funds must be made available to DEVELOPER prior to project starting.

25.4    OWNER will not interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by DEVELOPER and CONTRACTOR or Subcontractors except as provided under this agreement.

## SECTION TWENTY-SIX. CONSTRUCTION BY OTHERS.

OWNER shall neither hire nor retain Separate DEVELOPER and CONTRACTOR, Subcontractors, employees or agents of OWNER to perform Work on the Job Site while Work is being done under this agreement by DEVELOPER and CONTRACTOR.

## SECTION TWENTY-SEVEN.  AUTHOIRTY OF OWNER'S REPRESENTATIVE.

27.1    OWNER'S Representative has authority to administer the contract, make construction decisions on behalf of OWNER, and is the primary authority on issues of compliance with the Drawings and Specifications, quality of workmanship, materials used, manner of performance, and rate of progress on the Project.

27.2    After the Contract Date, OWNER shall make no change in the responsibilities or authority of OWNER'S Representative without consent of DEVELOPER and CONTRACTOR.

27.3    OWNER'S Representative shall have the right to visit the Project and view Work in progress at any time. Any Defective Work found or suspected, either as the result of a site visit or otherwise, shall be reported promptly to DEVELOPER and CONTRACTOR. No actions taken, or statements made during site visits shall relieve DEVELOPER and CONTRACTOR of obligations described in the Contract Documents.

27.4    Communication between DEVELOPER and CONTRACTOR and OWNER shall be initiated through OWNER'S Representative unless direct communication is required by Law or Contract Documents. Unless otherwise authorized by DEVELOPER and CONTRACTOR, communications between OWNER'S Representative and Subcontractors or Material Suppliers shall be through DEVELOPER and CONTRACTOR.

27.5    OWNER'S Representative shall have the authority to reject and order removed any portion of the Work which does not conform to the Contract Documents.

27.6    OWNER'S Representative shall have authority to conduct Inspections about Beneficial Occupancy and to determine the dates of Substantial Completion.

**SECTION TWENTY-EIGHT.  REPRESENTATIONS BY DEVELOPER AND CONTRACTOR.**

28.1     DEVELOPER and CONTRACTOR shall use skill and attention to complete the Work in a timely manner consistent with the Contract Documents.

28.2     OWNER has reported to DEVELOPER and CONTRACTOR all conditions known to OWNER which may not be apparent to CONTRACTOR and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the Job Site, unsuitable soil conditions, prior Defective Work of others, latent Defects in the Plans or Specifications, earlier attempts to do Similar or related Work, and obligations imposed by government.

**SECTION TWENTY-NINE.  DISCLAIMER BY OWNER, RELIANCE BY CONRACTOR.**

OWNER has provided DEVELOPER and CONTRACTOR with information on subsurface or concealed conditions at the Job Site. Except to the extent that DEVELOPER and CONTRACTOR knows this information to be false, DEVELOPER and CONTRACTOR is entitled to rely on the accuracy of this information.

**SECTION THIRTY.  DISCREPANCY BETWEEN PLANS AND FIELD CONDITIONS.**

30.1     DEVELOPER and CONTRACTOR is not a Design Professional and have no obligation to find discrepancies between Job Site conditions and representations or Requirements in the Contract Documents.

30.2     DEVELOPER and CONTRACTOR shall not be liable for discrepancies between representations or Requirements in the Contract Documents and conditions at the Job Site unless DEVELOPER and CONTRACTOR knowingly fails to report a discrepancy, in which case DEVELOPER and CONTRACTOR shall be liable for additional costs incurred because of failure to give prompt notification.

30.3     If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information provided by OWNER, DEVELOPER and CONTRACTOR shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall submit a Claim for a Change Order which covers the additional cost incurred because of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

**SECTION THIRTY-ONE. USE OF SITE.**

31.1     OWNER has agreed to furnish all required rights to use the land upon which the Work is to be constructed. OWNER will identify any encumbrances or restrictions related to use of the land furnished and DEVELOPER and CONTRACTOR agrees to comply with those encumbrances or restrictions. If OWNER fails to furnish the land, rights of way, or easements when required, DEVELOPER and CONTRACTOR may make a Claim for extra compensation, additional time, or other relief.

31.2   OWNER shall designate a construction entrance which DEVELOPER and CONTRACTOR shall use for all delivery of materials and equipment and which shall be used by all construction personnel.

## SECTION THIRTY-TWO. DRAW SCHEDULE.

31.1   OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:

**OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:**

**Momentum draw - 10% of the Budget within three (3) Business Days following the closing on land, building or execution of this development contract.  Momentum draw will include all developer's pursuit cost, project soft cost, developer fee and necessary local, state and or federal permitting fees to start the project.**

**Draw 1 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following the commencement of the Work.**

**Draw 2 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 1.**

**Draw 3 - 20% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 2.**

**Final Draw – 10% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request includes a copy of all executed lien releases and final payment affidavits (from CONTRACTOR, Subcontractors and others) being submitted to the clerk of court and recorded in the public records and a copy of the permanent Certificate of Occupancy issued for the Project.**

32.2   It is agreed by OWNER and or FUNDING SOURCE that all payments will be made to DEVELOPER. DEVELOPER will disburse funds in a timely manner. The afore mentioned budget that is supported by the GMAX clause is considered total project budget and the DEVELOPER will disburse funds per DEVELOPERS discretion.  No third-party title company will be granted permission to disburse funds to any company or individual on behalf of funding group. Each application for payment shall be submitted on the form approved by OWNER.

Page 13

**SECTION THIRTY-THREE.**
**DISCHARGE OF LIENS AND PAYMENT OF SUBCONTRACTORS.**

33.1    DEVELOPER and CONTRACTOR warrants that, upon payment, OWNER shall receive clear title to all Work identified in the application for payment, free and clear of all liens and Claims, including Claims of Subcontractors, employees or Material Suppliers. CONTRACTOR also agrees that this vesting of title in OWNER does not impose any obligation on OWNER or relieve CONTRACTOR from any obligation under this contract. CONTRACTOR shall remain responsible for damage to or loss of both the Work and stored materials until Completion.

33.2    DEVELOPER and CONTRACTOR warrants and guarantees that no Work, materials, or equipment covered by a request for payment has been acquired by DEVELOPER and CONTRACTOR or by any other person performing the Work or furnishing materials or equipment for the Project subject to an agreement under which an interest therein, or an encumbrance thereon, has been retained by seller or otherwise imposed by CONTRACTOR.

33.3    DEVELOPER and CONTRACTOR shall furnish, with each application for payment, and as a condition to Owner's obligations to pay, executed waivers of liens from DEVELOPER and CONTRACTOR and each Subcontractor and Material Supplier to the Project in the amount of the application for payment. Waivers of liens shall be in a form satisfactory to OWNER, title insurer, and lenders.

33.4    DEVELOPER shall disburse funds received from OWNER among DEVELOPER and CONTRACTOR, subcontractors and material suppliers in proportion to the work done and materials received for the project during the pay period.

**SECTION THIRTY-FOUR. INTEREST.**

34.1    Payments due and not paid under the Contract Documents shall bear interest from the date payment is due at a monthly rate of **TEN PERCENT (10%)**.

34.2    Payment of interest does not abrogate or replace any other rights DEVELOPER and CONTRACTOR may have under this agreement.

**SECTION THIRTY-FIVE. FINAL PAYMENT.**

35.1    DEVELOPER and CONTRACTOR will apply for final payment and will notify OWNER'S Representative when the work has been completed. OWNER'S Representative will issue a certificate of completion on determination that the Project is complete and in compliance with the Contract Documents. When the certificate of completion is issued, the entire unpaid balance of the contract amount, including any retainage, is payable to DEVELOPER.

35.2    Making of final payment constitutes waiver of all Claims by OWNER against DEVELOPER and CONTRACTOR except those Claims previously made in writing and delivered to DEVELOPER and CONTRACTOR and those obligations otherwise provided by this agreement or by operation of Law.

35.3    The acceptance of final payment by CONTRACTOR constitutes a complete and

unconditional waiver and release of any and all Claims by CONTRACTOR of whatever nature, and regardless of whether they are then known or unknown, and a complete and unconditional release of OWNER, and every person for whom OWNER is responsible, for any and all matters related to the contract or otherwise, except those Claims which have been made in writing and identified by CONTRACTOR as not having been settled at that time.

## SECTION THIRTY-SIX.  CHANGES IN WORK.

36.1   Except as required by changes in the Prime Contract between OWNER and DEVELOPER, no change to this contract (including Modification, clarification, interpretation or correction of the Plans or Specifications) shall be made without agreement and a written Change Order signed by DEVELOPER and CONTRACTOR and OWNER identifying the change, the cost of the change, and the effect on Project Schedule, if any.

36.2   Any change in Plans, Specifications or Contract Documents necessary to conform to existing or future Laws, codes, ordinances or regulations shall be considered Extra Work.

36.3   Changes in the Work required due to defects or inconsistencies in Plans or Specifications or other Contract Documents shall be considered Extra Work.

36.4   The charge for Extra Work shall be the normal selling price DEVELOPER and CONTRACTOR charges for similar changes on other jobs.

36.5 Failure of DEVELOPER and CONTRACTOR and OWNER to agree on the terms of a Change Order shall be resolved under the provisions of this agreement which cover Claims and disputes.

36.6 Should DEVELOPER and CONTRACTOR and OWNER fail to agree promptly on the terms of a Change Order, DEVELOPER and CONTRACTOR shall be paid, pending resolution of the dispute, the portion of the cost of the change not in dispute, including the costs of time and materials required to execute the change. Payments required under this paragraph shall be made as the Work progresses, concurrently with progress payments.

## SECTION THIRTY-SEVEN.  COOPERATION OF THE PARTIES.

37.1    OWNER and DEVELOPER acknowledge that open communication and cooperation will be required to complete the Project on time, as estimated, and in compliance with the Contract Documents. DEVELOPER and OWNER each agree to identify a representative who will be available to resolve minor problems, answer questions and reach mutually acceptable solutions. The individuals identified by DEVELOPER and OWNER shall try to reach informal agreement on problems as they arise but are under no obligation to do so.

37.2    Both DEVELOPER and OWNER pledge that their relations will be conducted with courtesy and consideration in an environment characterized by mutual respect. OWNER pledges to respond promptly to requests by DEVELOPER for guidance, assistance and payments when due and agrees to extend to DEVELOPER the deference and latitude a dedicated professional deserves. CONTRACTOR pledges to commit the skill and resources required to complete the Project in a manner that complies with both the letter and spirit of the Contract Documents and enhances the reputation of DEVELOPER and for dependability and

professionalism.

## SECTION THIRTY-EIGHT. WARRANTY.

38.1 DEVELOPER and CONTRACTOR warrant that the Work shall be free of Defects due to faulty material or workmanship for the period specified in this agreement.

**38.1(a)** General **Requirements.**

38.1(a)(I)     Except as otherwise provided in this agreement, the warranty period shall begin from the date of Completion for 12 months.

38.1(a)(ii)     Work done by CONTRACTOR in compliance with warranty provisions of this agreement does not extend the period of the warranty.

38.1(a)(iii)     DEVELOPER and CONTRACTOR shall deliver to OWNER all warranties provided by vendors and manufacturers of materials and equipment used to complete the Project. DEVELOPER and CONTRACTOR shall have no obligation under warranties provided by others except to render any assistance that OWNER may require in enforcing the terms of those warranties.

38.1(a)(iv)     Except as provided in this agreement, and to the extent permitted by Law, DEVELOPER and CONTRACTOR disclaims all warranties, whether express or implied, whether of fitness for purpose, merchantability, habitability or workmanlike completion.

38.1(a)(v)     Failure of OWNER to give notice of a breach of warranty within the warranty period constitutes a waiver of the right to repair or replacement by DEVELOPER and CONTRACTOR.

38.1(a)(vi)     To make a warranty Claim under this agreement, OWNER must send a clear and specific written complaint to DEVELOPER and CONTRACTOR at the following address within 60 Calendar Days of discovering Defects, unless otherwise specified in the list of items covered under this warranty. DEVELOPER and CONTRACTOR shall make repairs, replacements and corrections promptly and at no expense to OWNER.

**38.1(b) Exclusions from Warranty**

38.1(b)(i) The warranty provided by this contract does not cover any of the following items or conditions:

38.1(b)(i)(A) Damages to private property or bodily injury.

38.1(b)(i)(B) Damages or losses that result from soil movement that is covered by insurance or that is compensated for by legislation.

38.1(b)(i)(C)     Insect damage.

38.1(b)(i)(D)     Damage or losses that result from overloading of any floor, wall, ceiling, or roof beyond the design capacity.

Page 16

38.1(b)(i)(E) Damages caused or made worse by:

38.1(b)(i)(E)(1)      Changes, additions, deletions, or any other alterations made to any part of the structure by anyone other than DEVELOPER and CONTRACTOR after the warranty term begins.

38.1(b)(i)(E)(2)      Loss that results from failure of OWNER to take timely action to mitigate or minimize damage.

38.1(b)(ii) DEVELOPER and CONTRACTOR has no liability for incidental or consequential damages from breach of any warranty provided by this agreement insofar as the loss claimed is covered by insurance of OWNER or for which OWNER has a right of recovery from any other party.

38.1(b)(iii) Basic **Warranty Coverage**

It is a breach of warranty if any material or design furnished, or workmanship performed by DEVELOPER and CONTRACTOR or any Subcontractor or Material Supplier, is found to be defective during the first year.

38.1(b)(iv) Warranty **on Major Structural Damage**

It is a breach of the major structural damage warranty where there is actual physical damage to designated load-bearing portions of the structure caused by the failure of such designated portions to perform to their load-bearing functions to the extent that it makes the structure unsafe, uninhabitable, or unsanitary during the first 12 months. The following items are designated load-bearing portions:

(A)     Foundation Systems and Footings
(B)     Beams
(C)     Girders
(D)     Lintels
(E)     Columns
(F)     Walls and Partitions
(G)     Floor Systems
(H)     Roof Framing Systems

**SECTION THIRTY-NINE.  DEVELOPER AND CONTRACTOR CLAIMS.**

If DEVELOPER and CONTRACTOR claims that any instruction, Drawing, act or omission of OWNER or any representative of OWNER, or any agency of government, increases costs to DEVELOPER and CONTRACTOR, requires extra time or changes the Scope of Work, CONTRACTOR shall have the right to assert a Claim for such costs or time.

**SECTION FORTY. NOTICE OF CLAIMS.**

Page 17

40.1 No Claim by DEVELOPER and CONTRACTOR shall be considered unless DEVELOPER and CONTRACTOR provide OWNER or OWNER'S Representative with a notice that there will be a Claim for additional compensation or an extension of time. This notice of Claim shall be made no less than 5 Calendar Days after DEVELOPER and CONTRACTOR recognizes or should have recognized that circumstances exist which support such a Claim. The notice of Claim shall include: (a) The date of the notice, (b) The date the basis for the Claim was discovered, (c) The circumstances that support the Claim, and (d) The estimated additional cost to OWNER or additional time required to complete the Project.  Owner shall have exclusive authority and discretion to approve or deny any claim.

40.2 If the Claim involves Extra Work, DEVELOPER and CONTRACTOR shall maintain detailed records which show each expense incurred, including payroll records and receipts for Subcontracted Work, materials and equipment. These detailed records shall be made available to OWNER for verification while Work subject to the Claim is being performed. Developer and Contractor shall obtain written approval from Owner prior to performing any extra work.

40.3 The amount Claimed by CONTRACTOR shall be calculated in accord with provisions in this contract on charges for Extra Work.

## SECTION FORTY-ONE. DISPUTE RESOLUTION.

### 41.1   Choice of Forum, Law and Venue

About any controversy in any way arising out of or relating to the execution or performance of the Agreement, the method of binding dispute resolution shall be litigation and the parties hereby irrevocably agree that any suit, action, or legal proceeding shall be brought in the U.S. District Court for the Middle District of Florida, unless such court lacks jurisdiction, in which case, a state court of record in Manatee County, Florida.  The parties further irrevocably (i) consent to the jurisdiction of such federal or state court in any such suit, action, or legal proceeding, (ii) waive any objection to the laying of venue of any such suit, action, or legal proceeding in such federal or state court, and (iii) waive any defense based upon inconvenient forum or improper venue.  The parties further agree that all disputes arising out of or relating to the Agreement or the performance of it by either party shall be adjudicated solely by and be governed by the laws of the State of Florida without regard to conflicts of law analysis.

### 41.2   Attorneys' Fees.

If either party brings an Action to enforce their rights under this agreement, the prevailing party may recover its expenses (including reasonable attorneys' fees) incurred in connection with the Action and any appeal from the losing party.

## SECTION FORTY-TWO. INSURANCE.

### 42.1   Certificates of Insurance

42.1(a) DEVELOPER and CONTRACTOR shall provide to OWNER a certificate of insurance for each insurance policy required by this agreement. These certificates shall list OWNER as the certificate holder.

42.1(b) Certificates of insurance shall be issued on a standard form.

42.1(c)      DEVELOPER and CONTRACTOR shall permit no Subcontractor to begin Work on the Project until OWNER has received certificates of insurance demonstrating that the Subcontractor has coverage of a like kind and with comparable limits to insurance coverage required of DEVELOPER and CONTRACTOR under this agreement.

## 42.2   Waivers of Subrogation

OWNER and DEVELOPER and CONTRACTOR waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance except such rights as may exist to the proceeds from insurance held by OWNER as trustee. DEVELOPER and CONTRACTOR shall require similar waivers in Subcontracts for the Project.

## 42.3   Insurance Details

42.3(a) **If** insurance policies meeting the Requirements of this contract are not generally available to DEVELOPER and CONTRACTOR.   DEVELOPER and CONTRACTOR may provide substantially similar coverage and shall so notify OWNER in writing.

42.3(b) **DEVELOPER** and CONTRACTOR may satisfy the policy limits set by this contract through any combination of underlying and excess liability (umbrella) insurance so long as the total coverage is not less than the policy limits specified in this contract. Any excess liability (umbrella) insurance coverage provided by CONTRACTOR must be written on an occurrence basis, offer coverage at least as broad as the underlying insurance, and have concurrent effective dates. Excess liability (umbrella) insurance provided by DEVELOPER and CONTRACTOR shall provide additional insured endorsements, blanket contractual coverage, and punitive damages coverage (unless prohibited by Law).

## 42.4   Liability Insurance

42.4(a) **As** an alternative to including OWNER as an additional insured under a comprehensive general liability policy, DEVELOPER and CONTRACTOR may provide an OWNER'S and CONTRACTOR's Protective Liability Policy. If DEVELOPER and CONTRACTOR are unable to procure the minimum amounts of insurance in a single policy, CONTRACTOR may provide required policy limits through a combination of a primary OCP Policy and one or more excess policies. OWNER shall be the named insured on the Policy and, if applicable, the excess policy. Each policy shall be endorsed to include each Subcontractor of every Tier as the CONTRACTOR designated in the declarations.

42.4(b) **Minimum** CONTRACTOR's liability coverage shall be: $2,000,000 combined bodily injury and property damage single occurrence limit, annual aggregate limit of $2,000,000, products and completed operations aggregate limit of $1,000,000, personal and advertising injury aggregate limit of $1,000,000.

## 42.5   Builder's Risk Insurance

42.5(a) OWNER shall provide builder's risk insurance covering property damage to the Project

during the construction period. OWNER accepts the risk of damage to the Work during construction and agrees to Indemnify and hold harmless DEVELOPER and CONTRACTOR and Subcontractors at any Tier from losses resulting from uninsured damage to the Work prior to final payment under this agreement.

42.5(b) Builder's risk insurance shall include a loss payable provision naming OWNER as loss payee. OWNER shall have the power to adjust and settle Claims resulting from builder's risk insurance.

42.5(c)    Policy limits for builder's risk coverage shall be no less than the completed replacement value of the Project including the value of Change Orders.

## SECTION FORTY-THREE. LIABILITY FOR DAMAGES.
## (DEVELOPER AND CONTRACTOR LIABILITY FOR DAMAGES)

DEVELOPER and CONTRACTOR shall have no liability for damage to or loss of OWNER'S private property left on the Job Site unless such damage or loss is the direct result of intentional or negligent acts by DEVELOPER and CONTRACTOR.

## SECTION FORTY-FOUR. INDEMNITY.

44.1    DEVELOPER and CONTRACTOR shall defend, Indemnify, and hold harmless OWNER and all officers, employees, agents, and consultants of OWNER from and against all and any losses, liability, Claims, costs, damages and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from performance of Work under this agreement provided such loss, liability, costs, damage and economic detriment is attributable to bodily injury, sickness, disease or death, or to injury or destruction of property (other than the Work itself) caused by the negligent acts or omissions of DEVELOPER and CONTRACTOR, a Subcontractor, or anyone directly or indirectly employed by them, or whether caused by or contributed to by OWNER, unless caused by the sole negligence of OWNER.

44.2    Indemnification of OWNER is limited to the extent of insurance coverage required to be carried by DEVELOPER and CONTRACTOR under this agreement.

44.3    Indemnification under this agreement shall not exceed any limitation on the amount or type of damages, compensation, or benefits payable by or for DEVELOPER and CONTRACTOR or any Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

## SECTION FORTY-FIVE. INTERPRETATION OF THE CONTRACT.

45.1    Section headings and paragraph numbers have been included in this contract to refer easier and in no way limit, define, or enlarge the terms, scope, or conditions of this contract.

45.2    Except as otherwise provided in this contract, OWNER and DEVELOPER and CONTRACTOR intend that this contract be interpreted in accord with the *Restatement of Law, Contracts*, published by the American Law Institute. Specifically: All parts of the Contract Documents should be interpreted together and conduct of the Parties should be interpreted as a manifestation of intention, and specific provisions should be interpreted as qualifying the

meaning of the general provisions.

## SECTION FORTY-SIX. DEALING WITH PLAN DEFECTS.

46.1       At any time, DEVELOPER and CONTRACTOR may request an interpretation or clarification of the Contract Documents from OWNER or OWNER'S Representative. OWNER or OWNER'S Representative shall reply with a written interpretation, clarification, or detailed instructions within a reasonable time.

46.2       DEVELOPER and CONTRACTOR will rely on the Contract Documents as the final authority on what is included in the Project. The Contract Documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction DEVELOPER and CONTRACTOR doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. CONTRACTOR bears no responsibility for defects in the Contract Documents.

46.3       Unless DEVELOPER and CONTRACTOR has asked for and received a written clarification from OWNER in time to prevent delay in the Work, any omission or ambiguity in the Contract Documents shall be interpreted as requiring the material or construction technique necessary to produce the greater quantity and better quality of Work.

46.4       DEVELOPER and CONTRACTOR will report promptly to OWNER any design defects likely to result in problems during construction of the Project. However, DEVELOPER and CONTRACTOR is not a licensed architect or engineer and have no obligation to detect ambiguities, inconsistencies or omissions in the Contract Documents. While acting in good faith, DEVELOPER and CONTRACTOR is entitled to rely on the Work of a trained design specialist selected by and responsible to OWNER.

46.5   DEVELOPER and CONTRACTOR is entitled to rely on dimensions and descriptions shown in the Contract Documents when ordering materials for Installation.

46.6       Ambiguities, inconsistencies and omissions in the Contract Documents are design defects, not errors by DEVELOPER and CONTRACTOR. The cost of correcting design defects shall be at the expense of OWNER.

46.7   If inconsistent, approved changes to the Contract Documents take precedence over the original Contract Documents. Subsequent changes to the Contract Documents take precedence over prior changes to the Contract Documents.

46.8   If inconsistent, the construction Drawings take precedence over the Specifications.

46.9 If anything in the construction Specifications is inconsistent with anything else in the construction Specifications: (a) A product performance Requirement takes precedence over a named product or manufacturer, and (b) Other clauses in the Specifications take precedence over anything incorporated by reference into the Specifications.

46.10       If anything in the construction Drawings is inconsistent with anything else in the

construction Drawings: (a) Dimensions written in numbers take precedence over scaled measurements, (b) Notes and schedules take precedence over lines on the Drawings, (c) Large scale Drawings take precedence over small scale Drawings, (d) Schedules take precedence over notes or other directions, (e) Specific notes take precedence over general notes, and (f) Bottom elevations of footings take precedence over any general notes.

46.11     If inconsistent, other Contract Documents take precedence over any manual, industry standard, recommendation, regulation, and set of guidelines, code, or instructions incorporated by reference into the Contract Documents.

46.12      If inconsistent, any portion of the Contract Documents written in longhand takes precedence over anything printed in the Contract Documents.

46.13      DEVELOPER and CONTRACTOR has no liability for any omission, inconsistency or ambiguity in the Contract Documents or for any discrepancy between physical conditions at the Job Site and the Contract Documents, unless DEVELOPER and CONTRACTOR fails to report the error to OWNER or OWNER'S Representative.

## SECTION FORTY-SEVEN. ENTIRE AGREEMENT.

The Contract Documents are the entire agreement and constitute a complete integration of all understandings between DEVELOPER, CONTRACTOR, and OWNER about the Project. The Contract Documents supersede all prior negotiations, representations and agreements, whether written or oral. No subsequent notation, renewal, addition, deletion, change or amendment to this contract shall have any force or effect unless in the form of a written Change Order or amendment to this contract.

## SECTION FORTY-EIGHT. AUTHORSHIP; REPRESENTATION BY COUNSEL.

DEVELOPER, CONTRACTOR, and OWNER agree that the terms and language of this Agreement were the result of negotiations between the DEVELOPER, CONTRACTOR, and OWNER and, as a result, there shall be no presumption that any ambiguities in this Agreement shall be resolved against any party. Any controversy over construction of this Agreement shall be decided without regard to events of authorship or negotiation.  Furthermore, DEVELOPER, CONTRACTOR, and OWNER acknowledge that it has been represented by independent counsel of its choice throughout all negotiations that have preceded the execution of this Agreement.

## SECTION FORTY-NINE. SEVERABILITY.

If any provision of this contract is interpreted or rendered invalid and unenforceable, then the remainder of this contract shall remain in full force and effect.

## SECTION FIFTY. CUMULATIVE REMEDIES.

All rights and remedies provided to DEVELOPER and CONTRACTOR by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to CONTRACTOR at Law or in equity.

## SECTION FIFTY-ONE. MATERIALS AND SUBSTITUTIONS.

51.1     When the Specifications refer to materials or equipment by performance standard (such as an ASTM identifier), DEVELOPER and CONTRACTOR may select for Installation any product or equipment meeting that standard. When several products or manufacturers are identified as acceptable in the Specifications, DEVELOPER and CONTRACTOR has the option of using any of the products or selecting any of the manufacturers listed without seeking approval from OWNER or OWNER'S Representative.

51.2     Except as stated otherwise in the Specifications, any reference in the Specifications to a brand, make, manufacturer, or model denotes only characteristics of quality, workmanship, economy of operation and suitability for the intended purpose. DEVELOPER and CONTRACTOR may use any substantially equivalent material, equipment, or article if approved in advance of Installation by OWNER or OWNER'S Representative.

51.3     All materials and equipment used on the Project shall comply with Specifications in the Contract Documents unless a substitution is approved in advance of Installation by OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall apply to OWNER or OWNER'S Representative for approval of a substitute material when: (a) Any item specified is found to be unusable or unavailable when needed for Installation, or (b) The item specified is considered inferior to an equivalent item which is readily available at a Similar cost. With the application, DEVELOPER and CONTRACTOR shall include documentation: (a) Demonstrating that essential features of the substitute item are equal to or exceed similar features of the item specified, and (b) Listing delivered prices for the substitute item based on Material Supplier quotations. OWNER or OWNER'S Representative may deny any application for substitution if not in the best interest of OWNER. If approved, any savings in cost that result from the substitution will be credited to OWNER. No request for substitution of material shall constitute grounds for extension of the Contract Time. Proposed substitutions shall not be purchased or installed without approval of the substitution by OWNER or OWNER'S Representative.

## SECTION FIFTY-TWO. INSPECTIONS.

52.1 DEVELOPER and CONTRACTOR shall schedule and coordinate all Inspections required by the Contract Documents and by public authority so as not to delay the progress of the Work or the Work of OWNER or Separate CONTRACTORs. If the Contract Documents require that an Inspection be witnessed or attended by OWNER or OWNER'S Representative, DEVELOPER and CONTRACTOR shall give notice of the time and place of the Inspection. DEVELOPER and CONTRACTOR shall schedule Inspections during regular Work Days and normal business hours, unless mutually agreed by DEVELOPER and CONTRACTOR, OWNER, and Inspector.

52.2     Insofar as applicable and except where superseded by other provisions of the Contract Documents or by government regulation, Inspection of the following Work will be required on the Project: (a) Bearing surfaces of excavations before concrete is placed, (b) Reinforcing steel after Installation and before concrete is poured, (c) Structural concrete when poured, (d) Structural framing after erection and prior to being covered or enclosed, (e) Steel welding, (f) Mechanical and plumbing Work following Installation and prior to being covered or enclosed, (g) Electrical Work following Installation and prior to being covered or enclosed, (h) Above-ceiling Work when complete but before the finish ceiling material is installed, and (I) Final Inspections prior to

occupancy.

52.3     If an Inspection reveals Work of DEVELOPER and CONTRACTOR not in compliance with the Contract Documents or not in compliance with any code or statute, DEVELOPER and CONTRACTOR shall bear the costs of correction, the cost of repeating the Inspection, and any related costs, including reasonable charges by OWNER or OWNER'S Representative for additional services.

## SECTION FIFTY-THREE. THE CONSTRUCTION SCHEDULE.

53.1     DEVELOPER and CONTRACTOR shall prepare and submit to OWNER for review and approval an estimated progress Schedule for the Work showing completion within the Contract Time. This progress Schedule shall identify expected starting and completion dates for each part of the job and identify tasks critical to timely completion of the Work.

53.2     DEVELOPER and CONTRACTOR may select any type of Schedule which: (a) Is suitable for monitoring progress of the Work, (b) Provides easy access to information about the timing of decisions OWNER must make and acts OWNER must perform, (c) Includes sufficient detail to demonstrate adequate planning for the Work, and (d) Presents a practical plan to complete the Work in an acceptable time.

53.3     DEVELOPER and CONTRACTOR shall plan, develop, supervise, control, and coordinate the performance of the Work so that job progress, sequence and timing conform to the construction Schedule. If DEVELOPER and DEVELOPER and CONTRACTOR falls materially behind the currently approved construction Schedule, OWNER may require DEVELOPER and CONTRACTOR to prepare and submit for approval, at no cost to OWNER, a plan for completing the Project within the Contract Time. Failure to submit a plan meeting this Requirement shall constitute grounds for termination under the terms of this agreement.

53.4     The Schedule shall allow for and depict the following: (a) Beginning and Completion Dates of each significant task (Work breakdown structure) in the job, (b) Delivery and approval of each Submittal, Samples and Shop Drawing, (c) Inspections and tests, (d) The Work of Subcontractors and Separate CONTRACTORs, and (e) Order dates and delivery dates of significant equipment and key materials. The construction Schedule shall include a legend which identifies the meaning of each symbol and abbreviation.

## SECTION FIFTY-FOUR.  EXTENSION OF THE TIME FOR COMPLETIONS.

54.1   OWNER shall execute a Change Order for Excusable Delay by extending the Contract Time for the period of the delay. Any of the following shall constitute excusable delay for which the Contract Time shall be extended: (a) Strike, boycott, embargo, terrorism, armed rebellion, quarantine or other obstructive action by employees, labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or, order of government authority, and (b) Fire, flood, earthquake, tornado, tidal wave, lightning, rain, snow, temperature under 32 degrees, casualty loss, epidemic, or unusually adverse weather.

54.2     For delay in delivery of materials, FF&E, equipment or for a shortage of labor that results from unforeseeable circumstances beyond the control and without fault or negligence of

either DEVELOPER and CONTRACTOR, or any Subcontractor or Material Supplier of DEVELOPER and CONTRACTOR, OWNER will grant an extension of the Contract Time if: (a) DEVELOPER and CONTRACTOR, notifies OWNER or OWNER'S Representative promptly on discovery of the anticipated shortage, (b) DEVELOPER and CONTRACTOR, substantiates the delay as unavoidable with a detailed chronology of events and all relevant correspondence, and (c) DEVELOPER and CONTRACTOR, provides an estimated date when the material, equipment or labor will be available.

54.3     Any Change Order granted for Excusable Delay shall have no effect on a Claim by DEVELOPER and CONTRACTOR, for damage from the same delay for interruption, hindrance, or disruption.

### SECTION FIFTY-FIVE. DEVELOPER AND CONTRACTOR CLAIMS FOR DELAY.

55.1     The Contract Price shall be adjusted for any increase in the cost of performance of this contract caused by suspension, delay or interruption of the Work due to: (a) An error or omission in the Contract Documents, (b) A decision of OWNER to change the Scope of the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR, (c) A decision of OWNER to suspend the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR, (d) A failure by OWNER or OWNER'S Representative to comply with the construction Schedule, (e) Any act or neglect of OWNER or agent of OWNER or any Separate DEVELOPER and CONTRACTOR, (f) Failure of OWNER to yield control of the Job Site to DEVELOPER and CONTRACTOR, or (g) Failure of OWNER to make payments when due under the terms of this agreement.

55.2   Within 3 Working Days after receipt of a notice of Claim for compensation for suspension, delay, or interruption, OWNER shall: (a) Respond with a resolution, remedy, or direction to alleviate the delay, (b) Respond with a notice rejecting the Claim for delay, or (c) Respond with a draft Change Order accepting the Claim for delay. If the issue is not then resolved, DEVELOPER and CONTRACTOR, may request a Change Order.

55.3     No change in the Contract Time for completion or the Contract Price shall become part of the Contract Documents without a Change Order.

55.4   Compensation to DEVELOPER and CONTRACTOR, for suspension, delay, or interruption of Work shall include direct overhead (Job Site) expense, a proportionate share of unabsorbed indirect (home office) overhead expense, lost efficiency and lost profit taken as 15 percent of total compensable expenses. Direct overhead costs shall include, without limitation: (a) Labor (with taxes, insurance and fringe benefits) for the idle work force, (b) The fair rental cost of idle equipment (such as vehicles, construction tools and equipment), (c) Facilities (such as temporary structures, water, power, phone, and toilets), (d) The additional cost of Bonds and insurance, (e) Similar direct overhead costs of Subcontractors to whom DEVELOPER and CONTRACTOR, is liable for damages that result from the delay, and (f) Demobilization and re-mobilization costs. Unabsorbed indirect overhead costs shall include, without limitation, the proportionate share of office rent, office supplies, office utilities, office equipment, advertising, professional fees, management salaries, technical services, estimating, selling, accounting, bookkeeping and clerical expense, business licenses, taxes (except income taxes), and insurance.

## SECTION FIFTY-SIX. LIQUIDATED DAMAGES.

56.1     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the Contract Time are considered reasonable by OWNER and DEVELOPER and DEVELOPER and CONTRACTOR, any neglect, refusal or failure of DEVELOPER and CONTRACTOR to reach Substantial Completion within the Contract Time, plus approved extensions of that time, will result in damage to OWNER impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and CONTRACTOR or which may become due CONTRACTOR the sum of $150.00 as liquidated damages for each Calendar Day that Substantial Completion is delayed beyond the Contract Time, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

56.2     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the time for Completion are considered reasonable by OWNER and CONTRACTOR. Any neglect, refusal or failure of DEVELOPER and CONTRACTOR, to reach Completion within the time provided in this contract, plus approved extensions of that time, will result in damage in the form of inconvenience, loss of opportunities, and higher Inspection, Superintendence, and administrative costs to OWNER. These costs are impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and DEVELOPER and CONTRACTOR or which may become due DEVELOPER and CONTRACTOR, the sum of $150.00 as liquidated damages for each Calendar Day that Completion is delayed beyond the time provided in this contract, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

56.3     Achieving Substantial Completion sooner than the Contract Time, plus approved extensions of that time, shall earn additional compensation to DEVELOPER and CONTRACTOR of $ N/A for each Calendar Day that Substantial Completion is achieved prior to the Contract Time, plus approved extensions of that time.

56.4     DEVELOPER and CONTRACTOR, shall not be charged liquidated damages for any failure, neglect or refusal to complete the Work on Schedule to the extent that the proximate cause of the delay was: (a) Strike, boycott, embargo, terrorism, armed rebellion, quarantine, delay in delivery of FF&E, or other obstructive action by employees, franchise owner, franchisor or labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or by order of government authority, (b) Fire, flood, earthquake, tornado, tidal wave, lightning, casualty loss, epidemic, rain, snow or unusually adverse weather, (c) Any delay of Subcontractors or vendors resulting from items listed in sections a or b above, or (d) Any act or omission of OWNER or anyone acting on behalf of OWNER.

56.5     Except as provided elsewhere in this contract, liquidated damages are the exclusive damage remedy for OWNER for any failure of DEVELOPER and CONTRACTOR to complete Work per Schedule. No damages of any other type or description shall be awarded OWNER for failure of DEVELOPER and CONTRACTOR to comply with the construction Schedule.

## SECTION FIFTY-SEVEN. CONSEQUENTIAL DAMAGES.

DEVELOPER and CONTRACTOR, and OWNER waive all Claims for consequential damages against each other, their respective officers, directors, partners, employees, agents, consultants and Subcontractors, arising out of or relating to this contract or the termination of this contract, except those consequential damages covered by insurance or specifically provided elsewhere in this agreement.

## SECTION FIFTY-EIGHT. RIGHT TO STOP WORK FOR NON-PAYMENT.

58.1    If DEVELOPER and CONTRACTOR, is not paid any amount not in dispute within 7 Calendar Days after the date due, CONTRACTOR shall post on the Job Site and deliver to OWNER and all Subcontractors a notice of intention to stop the Work if payments then due are not received in full within 10 Calendar Days. Thereafter, CONTRACTOR may suspend the Work until delinquent payments have been received, pursuant to Florida code.

58.2    Neither DEVELOPER and CONTRACTOR, nor Surety of CONTRACTOR, nor any Subcontractor of DEVELOPER and CONTRACTOR shall be liable for delay or damage that OWNER may suffer as a result of suspension of the Work for failure to receive payments due under this agreement so long as: (a) Work was suspended by DEVELOPER and CONTRACTOR in compliance with the terms of this contract and with applicable Law, and (b) There is no good faith dispute that payment is due DEVELOPER and CONTRACTOR,  at the time of suspension. A good faith dispute exists if OWNER provides: (a) A list of specific reasons for nonpayment, including labor, materials, or equipment not in compliance with the Contract Documents, and (b) CONTRACTOR is afforded a reasonable opportunity to correct the Defects cited or issue a credit compensating OWNER for Defects that cannot be cured promptly.

## SECTION FIFTY-NINE.  EARLY PARTIAL OCCUPANCY.

59.1    Without prior approval of DEVELOPER and CONTRACTOR, OWNER shall not occupy or use any portion of the Work until Substantial Completion of the Project. If OWNER occupies or uses any portion of the Work before Substantial Completion of the Project and without prior approval of DEVELOPER AND CONTRACTOR, the portion or portions used or occupied shall be considered complete, finished, accepted and the responsibility of OWNER.

59.2    No Partial Use or occupancy of the Work by OWNER shall commence prior to Substantial Completion without a Change Order confirming the responsibility of OWNER for maintenance, utilities, operation of equipment, and security during early Partial Use or occupancy.

59.3    If any portion of the Project is used or occupied by OWNER prior to Substantial Completion and if the Project is not completed within the Contract Time, liability of DEVELOPER and CONTRACTOR, for delayed completion shall be reduced by the proportion of the Project used or occupied by OWNER and for the time used or occupied by OWNER prior to Substantial Completion.

**SECTION SIXTY. SUBSTANTIAL COMPLETION.**

60.1      When, in the opinion of DEVELOPER and CONTRACTOR, the Work is Substantially Complete, DEVELOPER and CONTRACTOR shall prepare a preliminary Punch List of Work remaining to be done and deliver that Punch List to OWNER'S Representative with a request for evaluation of Substantial Completion. If, in the opinion of OWNER'S Representative, items on the preliminary Punch List are consistent with Substantial Completion, OWNER'S Representative shall conduct an Inspection of the Work to evaluate compliance with the Contract Documents.

60.2 Before OWNER takes possession or occupancy of the Project, DEVELOPER and CONTRACTOR, shall receive a comprehensive Punch List of discrepancies to be corrected or Work to be finished by CONTRACTOR and a date for completing this Work. DEVELOPER and CONTRACTOR, shall complete and correct items on the Punch List by the designated date.

60.3   The Punch List given to DEVELOPER and CONTRACTOR, is a complete and final list of Defective or incomplete Work on the Project. OWNER shall be deemed to have accepted Work not on the Punch List. Nothing in this paragraph shall be interpreted as relieving DEVELOPER and CONTRACTOR, of the obligation to meet warranty and call-back obligations.

60.4      DEVELOPER and CONTRACTOR, shall annotate the Punch List with: (a) A detailed breakdown of the Work required to complete or correct each item, (b) The Subcontractor or trade responsible for the Work, and (c) The dates Work will commence and be finished on each item. No annotation is required for any item on the Punch List which is beyond the control of DEVELOPER and CONTRACTOR. Failure of CONTRACTOR to furnish a detailed completion Schedule for items on the Punch List shall constitute grounds for withdrawing acknowledgment of Substantial Completion.

60.5   OWNER'S Representative will prepare a certificate of Substantial Completion for signature by OWNER and DEVELOPER and CONTRACTOR, when the Project or a specific portion of the Project is ready for occupancy. Except as otherwise provided in the Contract Documents, signing of the certificate of completion shall: (1) Transfer to OWNER responsibility for maintenance, safety, utility expense, controlling access at the site, and (2) Begin running of any warranty or call-back period on the Project.

60.6    after Substantial Completion, DEVELOPER and CONTRACTOR, shall remain responsible for: (a) Damage caused by DEVELOPER and CONTRACTOR, while completing the Work, and (b) Safety of crews when completing the Work.

**SECTION SIXTY-ONE. DELIVERY OF NOTICES.**

60.1   Any written notice required by this contract can be: (a) Delivered by hand at the last known address of the addressee, or (b) Delivered by hand to the addressee or representative of the addressee, wherever found. Notice is effective upon delivery.

60.2   Any written notice required by this contract can be: (a) Delivered by enclosing in a

Page 28

stamped envelope addressed to the last known address of the intended recipient and either deposited in a United States Postal Service mailbox or given to a USPS employee, or (b) Consigned to a commercial courier service and addressed to the last known address of the intended recipient. Notice is effective upon delivery if proof of delivery is provided; where no proof of delivery is available, notice is effective 5 Calendar Days after mailing or consignment to a courier service.

**[PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE TO FOLLOW]**

<u>SIGNATURES</u>

The signatures that follow constitute confirmation by those signing that they have examined and understand the Contract Documents and agree to be bound by the terms of these documents.

DEVELOPER and CONTRACTOR may not begin Work before receiving from OWNER a written notice to proceed. Any Work performed by DEVELOPER and CONTRACTOR before receipt of the notice to proceed shall be done at the risk of DEVELOPER and CONTRACTOR and without obligation of OWNER.

This agreement is entered as of the date written below.


**OWNER Name:**

**CD-1204 WADE HAMPTON BLVD GREER SC LLC,
a Florida limited liability company**

FG-MGR, LLC, a Maryland limited liability company
<u>Manager</u>

BY: _____
               Pun For Li, Manager

Date: ___2018-02-23___


**DEVELOPER:**

REDSTONE, LLC, a Tennessee limited liability company
D/B/A AMERICAN DEVELOPMENT PARTNERS


BY: _____
          Manny Butera, Developer and Authorized Signatory
          on behalf of REDSTONE, LLC

Date: ▮▮▮▮▮▮▮

Page 30

## Glossary of Terms

**Beneficial Occupancy** refers to OWNER'S use of the project premises after Substantial Completion but prior to Completion. Beneficial Occupancy may occur when the project or some portion is sufficiently complete and systems operational such that the OWNER could, after obtaining necessary approvals and certificates, occupy and utilize the space for its intended purpose. The time limit for warranties applicable to that portion of the Work begin on the date the OWNER begins Beneficial Occupancy, unless otherwise specified in this Agreement.

**Bond** means the security offered by a licensed surety company which may be used to satisfy a claim of failure to perform obligations undertaken in this Agreement.

**Calendar Day** means any day shown on the calendar beginning at midnight and ending at midnight the following day. Contrast the term Work Day which excludes Saturdays, Sundays and state-recognized holidays.

**Certification of Payment** is acknowledgment by someone not a party to this Agreement that CONTRACTOR is entitled to payment for work completed.

**Change Order** is a written modification of the Contract Price (including all claims for direct, indirect and consequential damages and costs of delay), Time for Completion and Scope of Work under this Agreement. A Change Order, once signed by all parties, is incorporated into and becomes a part of the Contract Documents.

**Claim** means a demand or assertion by one of the parties to this Agreement seeking, as a matter of right, modification, adjustment or interpretation of contract terms, payment of money, extension of time or other relief.

**Code Requirements** means all laws, statutes, regulations, building codes, ordinances, rules, and lawful orders of all public authorities having jurisdiction over OWNER, CONTRACTOR, any Subcontractor, the Project, the Job Site, the Work, or the prosecution of the Work.

**Contract Completion Date** means the day by which the Work must be substantially complete.

**Contract Date** is the day on which the contract becomes binding between CONTRACTOR and OWNER.

**Contract Documents** are this Agreement and all documents incorporated by reference into this Agreement.

**Contract Price** is the amount which will become due in exchange for work performed under this Agreement. Contract Price includes allowances for purchased materials and equipment and may be modified by a Change Order or contract modification. The Contract Price may be paid in one or more installments, including an Initial Payment at or before the start of work, Progress Payments as work is completed, and a Final Payment on final acceptance of the work. Payment

Between applications for progress payments or prior to the first application for progress payment.

**Contract Schedule** is a graphical representation of a practical plan to complete Work within the Contract Time.

**Contract Time** means the period between Date of Commencement and the date of Substantial Completion.

**CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the Work under the terms of this Agreement.

**Defective Work** means construction done under this Agreement that is unsatisfactory, faulty, omitted, incomplete, deficient, or does not conform to the requirements of the Contract Documents, directives of OWNER'S Representative, or the requirements of an inspection, reference standard, test, or approval specified in the Contract Documents.

**Design Professional** means the person, organization or authorized representative who is responsible to the OWNER for design of the Project through preparation of Drawings and Specifications. The term Design Professional may refer to an architect, designer, engineer or landscape architect.

**Drawings** (also called plans or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Drawings include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed Project. A group of drawings adequate to complete construction of the Project may be referred to as a plan set. Drawings can be either paper or electronic media.

**Emergency** means an unforeseen event, combination of circumstances, or a resulting state that poses imminent danger to health, life or property.

**Excusable Delay** means any circumstance which postpones completion of the Work and for which CONTRACTOR is entitled to an adjustment of the Contract Time but not an adjustment to the Contract Price. Contrast Inexcusable Delay which entitles CONTRACTOR to neither an adjustment of the Contract Price nor an adjustment in the Contract Time.

**Extra Work** means any change, interpretation, clarification or correction in the Contract Documents or in applicable law, ordinance or regulation which would increase or decrease the quantity of work, delay, suspend or interfere with the work, require an addition to or omission from the work, change the character, quality or nature of any part of the work or material used in the work, change levels, lines, positions or dimensions of any part of the work, require demolition or removal of any work completed under this Agreement, extend or amend the normal work day, alter the construction schedule or require completion of any part of the work at a time other than provided by this Contract when originally made.

**Completion** is the date of OWNER'S acceptance of the Work as fully performed per the Contract Documents.

**Furnish** means to supply and deliver to the job site.

**General CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking execution of the Work under terms of a Prime Contract.

**Hazardous Materials** means radioactive materials, asbestos, polychlorinated biphenyls, petroleum, crude oil, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, and toxic substances which are restricted, prohibited, or regulated by any agency of government in the manufacture, use, maintenance, storage, Ownership or handling.

**Indemnification** Financial compensation intended to restore someone to their condition before a loss or damage.

**Inspection** is any review of the Project, including a visual review of the Work completed to ascertain compliance with Contract Documents, building codes and construction standards.

**Inspector** is anyone authorized by government or the Design Professional to conduct inspections of contract performance and materials supplied for the Work.

**Install** means to secure in position in compliance with the Contract Documents and includes unloading materials, supplying all necessary equipment and rigs to do the work and performing functional tests which demonstrate fitness for the intended purpose.

**Job Site** is the address or location of the Project.

**Law** means federal or state statutes, municipal ordinances, building codes, regulations adopted pursuant to statute, executive orders, official interpretations, and other rules and directives issued by government.

**Material Supplier** means any manufacturer, fabricator, distributor, material man or vendor who provides material for the Project but does not provide on-site labor.

**Modification** is a written amendment to the Contract signed by both parties.

**OWNER'S Representative** means the person or firm authorized to act and make administrative decisions on behalf of the OWNER during construction. Any notice required to be delivered to the OWNER may be delivered to the OWNER'S Representative. The scope of authority of the OWNER'S Representative is defined in this contract. CONTRACTOR cannot rely on any decision or instruction by OWNER'S Representative that is beyond the representative's defined scope of his authority. Nothing in this contract prevents OWNER from issuing a notice or instructions directly to the CONTRACTOR. The OWNER may change the OWNER'S Representative from time to time and may, if OWNER'S Representative is absent, disabled or

otherwise temporarily unavailable, appoint an interim OWNER'S Representative.

**Party (to this contract)** means a person or business organization which has an obligation to perform under the terms of this contract.

**Plans** (also called drawings or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Plans include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed project. A group of plans adequate to complete construction of the Project may be referred to as a plan set. Plans can be either paper or electronic media.

**Prime Contract** is a written agreement between CONTRACTOR and OWNER which binds CONTRACTOR to furnish labor, equipment, or materials or perform certain work for a price to be paid by OWNER.

**Project** means Work to be completed in accord with the Contract Documents. Work at the Job Site may include other projects to be completed by the OWNER or other CONTRACTORs working under other agreements.

**Provide** means furnish and install and includes connecting, testing, and placing in service for the intended use.

**Punch List** is a comprehensive list of incomplete, defective or incorrect Work yet to be completed or which does not comply with Contract Documents. A Punch List may be prepared by the CONTRACTOR, Subcontractor, Design Professional or OWNER. An initial Punch List will be prepared before application for Substantial Completion. A Close-out Punch List will be prepared before Completion.

**Requirements** means, in addition to obligations, responsibilities and limitations set out in the Contract Documents, the obligations, responsibilities and limitations imposed by law, rules, orders, ordinances, regulations, statutes, codes and executive orders of governmental authorities or fire rating bureaus.

**Retainage** is a portion of each progress payment temporarily held back or retained by the OWNER. Accumulated retainage is released to CONTRACTOR on satisfactory completion of the work.

**Sample** means a physical example of material; equipment or workmanship intended to be representative of some portion of the Work. When approved, samples establish standards for completion of similar work on the Project.

**Schedule of Values** means the detailed breakdown of cost of materials, equipment and labor necessary to complete the Project as described in the Contract Documents.

Page 34

**Scope of Work** means the Work as defined by the Contract Documents.

**Separate CONTRACTOR** means a person or firm working under a different contract but on the same site and at the same time as work will be done under this contract.

**Shop Drawings** are diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data which are prepared by the CONTRACTOR or a Subcontractor, manufacturer, supplier or distributor, and which illustrate or describe some portion of the Work to be completed in compliance with the Contract Documents. Once submitted to the approval authority and approved, Shop Drawings establish standards for completion of work on Project.

**Similar** means having a like kind, quality and characteristics. Similar is not to be construed as meaning identical or by the same manufacturer.

**Specifications** (also called specs) are the part of the Contract Documents which provide descriptions of materials, equipment, construction systems, technique and workmanship to be used on the Project. Specifications are both instructions to be followed by the CONTRACTOR and Subcontractors and a reference for the Building Official to evaluate code compliance.

**Subcontract** is a written agreement between a specialty CONTRACTOR and General CONTRACTOR. Terms of the subcontract require the specialty CONTRACTOR to complete some portion of the work General CONTRACTOR is obligated to perform under another agreement, usually with the OWNER.

**Subcontractor** is any person or business entity under contract to a general CONTRACTOR to perform some portion of the work general CONTRACTOR is obligated to complete under a contract with the OWNER. Subcontractor is an independent CONTRACTOR performing services for another CONTRACTOR rather than for the OWNER. A person or organization providing supplies or materials for the Project, but no job site labor is not a Subcontractor.

**Submittals** demonstrate the way by which the CONTRACTOR proposes to conform to the requirements of the Contract Documents. Submittals are shop drawings (diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data) required by the Contract Documents which are prepared for the CONTRACTOR to depict some portion of the Work. Submittals are delivered to the OWNER for approval or disapproval by the OWNER prior to purchase or installation.

**Substantial Completion** means the Project, or a designated portion of the Project is nearly in compliance with the Contract Documents and is sufficiently complete to be considered fully operational in all its components and is fit for the intended use. Substantial Completion is reached when a limited number of non-conforming or defective items on a Punch List remain to be completed. Normally, a Project or portion of a Project cannot be considered Substantially Complete until (1) all utilities and services are connected and working, (2) all equipment is installed and in acceptable working condition, (3) additional activity by the CONTRACTOR to correct items on the Punch List will not prevent or disrupt use of the facility, and, (4) a certificate

of occupancy has been issued by the appropriate authority.

**Sub-subcontractor** is any person or business entity under contract to a subcontractor or any lower tier subcontractor to perform some portion of the work subcontractor is obligated to complete under a
contract with the prime CONTRACTOR. Sub-subcontractors are independent CONTRACTORs performing services for another CONTRACTOR rather than for the prime CONTRACTOR. A person or organization providing supplies or materials for the Project, but no job site labor is not a Sub-subcontractor.

**Superintendent** is the representative of the CONTRACTOR at the job site who is authorized to receive instructions from the OWNER or OWNER'S Representative and who is authorized to direct the performance of work on behalf of the CONTRACTOR.

**Surety** means any qualified individual, firm or corporation other than the CONTRACTOR, which executes a bond to insure its acceptable performance of the contract.

**Tier** refers to the contractual level of a person or business organization doing work on the Project. A first-tier subcontractor has a contract with the general CONTRACTOR but not the OWNER. A second-tier subcontractor has a contract with another subcontractor but not with the general CONTRACTOR or the OWNER.

**Work** means all labor, material, equipment, tools, transportation, permanent and temporary utilities, connections, provisions for safety and management services required to complete the Project in compliance with the Contract Documents. Work may constitute the whole or a part of the Project. Work is to be performed in a safe, expeditious, orderly and professional manner in keeping with current standards of the industry. Work includes everything that is or should be evident to a skilled construction professional after careful examination of the Contract Documents and the Job Site.

**Work Day** means any day, excluding Saturdays, Sundays and state-recognized holidays, shown on the calendar beginning at midnight and ending at midnight the following day.

**EXHIBIT "H"**



**American Development Partners Development Contract**

**THIS AGREEMENT** is made on this 5th day of March 2018, by and between **REDSTONE, LLC, a Tennessee limited liability company, D/B/A American Development Partners** (hereinafter "DEVELOPER") and **AFC WEST ROAD 8040 ULMERTON RD, LARGO FLORIDA LANDCO LLC, a Florida limited liability company** (hereinafter "OWNER").

**DEVELOPER**

DEVELOPER Name: **REDSTONE LLC DBA American Development Partners ®**
PO Box 681982
Franklin, TN 37064
Office - (615) 368-3412
Attn:  Manny Butera
Email Address: manny@americandevelopmentpartners.com

DEVELOPER Name: **American Development Partners** will be referred to as DEVELOPER throughout this agreement.

**CONTRACTOR**
**CONTRACTOR INFORMATION:**
Address: Phone Number: (615) 330-0629
Email Address: llynp@built-more.com
License Number: 00057609

CONTRACTOR Name: Built-more LLC will be referred to as CONTRACTOR throughout this agreement.

**OWNER**
OWNER AGENT:

**AFC-WEST 8040 ULMERTON ROAD LARGO FLORIDA LANDCO LLC**
201 Madeira Avenue
Coral Gables, FL 33134
Attn:  Pun For Li
Email Address:  fli@fg-llc.com

With a Copy to:
Jose L. Torres, P.A.
224 Palermo Avenue
Coral Gables, FL 33134
Email Address: jtorres@jltorrespa.com

OWNER Name:

**AFC-WEST 8040 ULMERTON ROAD LARGO FLORIDA LANDCO LLC**
201 Madeira Avenue
Coral Gables, FL 33134
Attn:  Pun For Li
Email Address:  fli@fg-llc.com

### SECTION ONE. PROJECT DESCRIPTION.

1.1  For a price identified below, DEVELOPER agrees to complete a new commercial building (identified as the Project in this agreement) for OWNER.

1.2  For the Contract Price identified below, DEVELOPER agrees to complete a new commercial building consisting of approximately 3500 sq. ft. +/- square feet of air-conditioned space and used as a AMERICAN FAMILY CARE - URGENT CARE FACILITY (identified as the "Project" in this Agreement), for TENANT's use and OWNERS ownership on the Land in accordance with the plans

1.3  The term "Total Build Cost" shall mean the aggregate of (1) the Total Project Cost, (2) the Contract Price, (3) the Contingencies of the Project, (4) the cost of the Work and the Extra Work, (5) other costs, charges and fees under this Agreement (collectively, the "Other Agreements") (the Other Agreements shall include but not be limited to any contractor or subcontractor agreements and the cost of all materials and labor), but shall not exceed $2,954,870.23.

1.4  The term "Budget" shall mean the Total Build Cost less the cost to acquire the Land.

1.5  The term "Property" shall mean the Land and all improvements thereon including but not limited to the Project.

1.6  Contract Price / OWNERS Cost Cap / Developer.

1.7 DEVELOPER shall earn in addition to any other charges specified in this agreement, OWNER agrees to pay a 10% development fee for completing the Work described as the Project. DEVELOPER fee is paid off total project cost that includes building, construction and all numbers that are used to factor total project cost.

1.8 Notwithstanding any contrary provision in this Agreement or otherwise, OWNERS maximum monetary liability under this Agreement and for the Project towards all amounts, including but not limited to the Total Build Cost, shall not exceed, and shall

Page 2

be capped at, the sum of:   $2,954,870.23 **said amount referred to as the (OWNERS GROSS MAX**).  Notwithstanding any contrary provision in this Agreement or otherwise, DEVELOPER shall be solely responsible under this Agreement and to OWNER, for any projects overruns that are above the gross max number provided to OWNER.

## SECTION TWO. CONTRACT PRICE.

DEVELOPER shall earn, and OWNER agrees to pay a development fee of 10% of total project cost in addition to any other charges specified in this agreement. In addition to any other charges specified in this agreement, OWNER agrees to pay DEVELOPER **$268,624.57 development fee for** completing the Work described as the Project.

## SECTION THREE. CONTINGENCY BUDGET.

It is identified and agreed to by OWNER that DEVELOPER has an estimated budget of **5 %** of project cost for "contingencies". CONTRACTOR will submit to DEVELOPER a "change order" for approval by DEVELOPER and OWNER any proposed change order. Contingencies are limited to change orders due to error or omission by a licensed architect after plans were received and reviewed by contractor, all state or federal codes changes that were mandated after contractor received stamped plans and or building permit.

## SECTION FOUR. SCHEDULED START OF CONSTRUCTION.

4.1      Work under this agreement will begin within 5 Calendar Days after the following contingencies have been met.

4.1(a) Complete Plans and Specifications have been approved and initialed by both OWNER, DEVELOPER, and CONTRACTOR.

4.1(b) OWNER has shown proof of funds or other financing acceptable to DEVELOPER.

4.1(c)      DEVELOPER has obtained all architectural approvals from any franchise and or corporate authorities.

4.1(d)      OWNER has furnished DEVELOPER with evidence of Ownership of the property satisfactory to DEVELOPER.

4.1(e) All appropriate building permits have been issued.

4.1(f) DEVELOPER has received written notice from the lien holder or the title company insuring lien holder's security interest in the property that all documents required to be recorded prior to the commencement of construction have been properly recorded.

4.1(g) The contract has been signed by OWNER, DEVELOPER and CONTRACTOR.

## SECTION FIVE. SCHEDULED COMPLETION OF CONSTRUCTION

Contractor shall achieve Substantial Completion of the entire work not later than ONE HUNDRED TWENTY-FIVE (125) calendar days from the date the building permit is issued, or the date reflected in the site investigation report ("SIR") whichever is the earlier of the two. This is only for projects where land owner has approved developer to finalize full architectural and engineering plans to be completed during the due diligence period.  If the landowner does not approve developer to finalize full architectural and engineering plans to be completed during the due diligence period, then the Contractor shall achieve Substantial Completion of the entire work not later than ONE HUNDRED TWENTY-FIVE (125) calendar days from the date the building permit is issued. The Substantial Completion date may be modified as reasonably necessary by Contractor after final plans, specifications, and bidding process.  "Substantial Completion" for purposes of this Agreement shall mean the date when Work has been sufficiently completed in accordance with the Contract Documents, so the Owner can occupy or utilize the Property for its Intended Use.  "Intended Use" for purposes of this Agreement shall mean the intended use of the property as an URGENT CARE FACILITY. This is subject this Clause, "Event of Force Majeure" means an event beyond the control of the developer or contractor, which prevents a them from complying with any of its obligations under this Contract, including but not limited to: act of God (such as, but not limited to, fires, explosions, earthquakes, drought, rain, snow, tidal waves and floods); war, hostilities (whether war be declared or not), invasion, act of foreign enemies, mobilization, requisition, or embargo; rebellion, revolution, insurrection, or military or usurped power, or civil war; contamination by radio-activity from any nuclear fuel, or from any nuclear waste from the combustion of nuclear fuel, radio-active toxic explosive, or other hazardous properties of any explosive nuclear assembly or nuclear component of such assembly; riot, commotion, strikes, go slows, lock outs or disorder, unless solely restricted to employees of the Supplier or of his Subcontractors; or acts or threats of terrorism.

Contractor shall achieve Final Completion of the entire Work no later than fourteen (14) after Substantial Completion; provide, however, that if Final Completion is delayed for reasons that are beyond the control of Contractor, Contractor may request, before expiration of the fourteen (14) day period, additional time (but not an increase to the Contract Sum unless the delay is caused solely by the Owner in which case Contractor shall be entitled to an adjustment for its extended general condition expenses directly attributable to the delay during this delay period) to achieve Final Completion, in which event the Owner shall not unreasonably deny Contractor's request.

In any event, a time extension may be granted only for an excusable delay that is beyond Contractor's control and occurs without the Contractor's fault or negligence.  No time extension will be granted in the absence of a written claim for the time extension.

## SECTION SIX. DOCUMENTS INCORPORATED

6.1    The Glossary of Terms which follows our signatures is incorporated into this contract as though included in full as part of this agreement.

6.2    This agreement incorporates by reference certain documents which define and describe the Work to be done. The following documents are incorporated as though included in full as part of this agreement.

**SECTION SEVEN. OWNERSHIP OF PLANS.**

All Plans, Drawings, Specifications and other documents prepared by or for OWNER for use under this agreement will be paid for and are the property of DEVELOPER and remain the property of DEVELOPER. Plans, Drawings and Specifications, whether in paper or electronic form, prepared for use in construction under this agreement shall not be modified or used on any other project without written consent of DEVELOPER. DEVELOPER shall hold harmless and Indemnify OWNER from and against all Claims, actions, suits, costs, damages, losses, expenses and attorney's fees arising out of use of the Project Plans, Drawings, or Specifications for any purpose other than construction to be completed under this agreement. DEVELOPER, CONTRACTOR and Subcontractors are granted a limited license to use and reproduce applicable portions of the Plans, Specifications and Drawings as required for construction under this agreement. All copies made under this license shall bear a notice showing OWNER as copyright holder. DEVELOPER may retain one record set of the Plans, Drawings and Specifications. All other sets shall be accounted for by DEVELOPER and CONTRACTOR and returned to OWNER. Submittal or distribution of Project Plans, Drawings or Specifications to meet Official Regulatory Requirements is not to be construed as publication in derogation of the rights of OWNER.

**SECTION EIGHT. PLANS ON SITE.**

DEVELOPER and CONTRACTOR will keep a full set of Project Plans available on-site to authorized personnel during the period of construction.

**SECTION NINE. DOCUMENTS SUPPLIED BY CONTRACTOR.**

OWNER will furnish to DEVELOPER and CONTRACTOR at no cost (this is part of total project cost)

9.1(a) A full set of Plans and Specifications for all trades in electronic format.

9.2(b) DEVELOPER and CONTRACTOR will distribute Contract Documents as required by Subcontractors.

**SECTION TEN. SCOPE OF WORK.**

10.1      DEVELOPER and CONTRACTOR shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Project in compliance with the Contract Documents.

10.2      DEVELOPER and CONTRACTOR are responsible for coordination of the various trades and deliveries of equipment, materials and supplies to minimize interference which could delay the Work or pose a hazard to life or property. DEVELOPER shall be responsible for allocation of tasks between trades and will be the final authority on location and routing of equipment and storage of materials on the Job Site.

10.3      DEVELOPER will ensure that Subcontractors, their agents, and employees adhere to these Contract Documents. DEVELOPER and CONTRACTOR accepts responsibility for all

Work performed under this contract, including Work performed by employees of Subcontractors.

10.4     CONTRACTOR shall provide on the Job Site during the period of construction a temporary chemical toilet or water closet which shall be serviced no less than weekly. Upon completion of the Project, CONTRACTOR will remove temporary toilet facilities from the site.

10.5     DEVELOPER and CONTRACTOR shall provide temporary elevators and lifts as may be required by construction personnel, including Subcontractors, Material Suppliers, Inspectors, and Representatives of OWNER. Elevators and lifts will comply with all federal, state and local Laws and ordinances in effect at the Job Site. Upon completion of the Project, DEVELOPER and CONTRACTOR will dismantle and remove temporary elevators and lifts.

10.6     DEVELOPER and CONTRACTOR shall develop and present to OWNER for approval (which shall not be withheld unreasonably), a site logistics plan drawn to scale, showing proposed secure and fenced areas, locations and types of temporary barricades, material storage and staging areas, property entrances used for material deliveries, and special material or equipment storage Requirements. This plan will include a description and proposed location for any temporary office, storage trailer, sanitary facilities, and parking for construction personnel.

## SECTION ELEVEN. SUBMITTALS.

11.1     Architectural Drawings will indicate in detail all parts of the building components, Installation details, and coordination with Work of other trades or other CONTRACTORS. Architectural Drawings for structural steel, timbers and pre-cast concrete will include engineering calculations, fabrication details and erection Drawings that show physical characteristics, dimensions, shapes, inserts, attaching points and methods, and other information required for manufacture, assembly and erection, in compliance with the Contract Documents.

11.2     Approval by OWNER'S Representative does not relieve DEVELOPER and CONTRACTOR of responsibility for compliance with the Contract Documents except as follows: If a Submittal does not comply with Contract Documents, DEVELOPER and CONTRACTOR will attach to the Submittal, prior to approval, a written request for variation showing the change in Contract Price and Contract Time, if any, that will result from the variation. If OWNER'S Representative approves a Submittal which includes a written request for a variation and which requires a change in the Contract Price or Contract Time, OWNER'S Representative will issue a contract Modification confirming the change. If OWNER'S Representative approves a Submittal with a written request for a minor variation which does not require a change in the Contract Price or Contract Time, no contract Modification is needed. A minor variation is anything which does not materially alter the quality or performance of the Work. Approved variations are subject to all terms of this agreement and without prejudice to any rights granted to OWNER'S Representative under a Surety Bond.

11.3     DEVELOPER and CONTRACTOR is entitled to expect that corrections to Submittals by OWNER'S Representative be clearly noted and easily understood so that prompt resubmission is possible without further instructions from OWNER'S Representative.

11.4     OWNER'S Representative will review Submittals and notify DEVELOPER and

CONTRACTOR of approval or rejection within TWO (**2**) Calendar Days of receipt.

11.5     OWNER'S Representative will review Submittals of DEVELOPER and CONTRACTOR for conformance with Requirements of the Contract Documents and will approve or take other appropriate action upon those Submittals.  OWNER'S Representative will advise DEVELOPER and CONTRACTOR of any errors or omissions which OWNER'S Representative may detect during this review. Submittals approved by OWNER'S Representative become additions to the Contract Documents and can be relied on by DEVELOPER and CONTRACTOR in completing the Work. Nothing in any approved Submittal shall be interpreted to limit DEVELOPER and CONTRACTOR in selection of the means, method, technique, sequence or procedure of construction.

## SECTION TWELVE. RECORD DOCUMENTS.

DEVELOPER and CONTRACTOR will note on a record set of Project Drawings any Work done that is not shown on the original Plans and not described in other Contract Documents. The record set of Project documents will be delivered to OWNER at the same time as final payment is requested.

## SECTION THIRTEEN. JOB SITE SAFETY.

DEVELOPER and CONTRACTOR will always take all reasonable precautions for the safety of employees and the public at the Job Site and will comply with all applicable safety Laws and regulations of federal, state, and local authorities (including building codes) and safety Requirements of OWNER.

## SECTION FOURTEEN.  HAZARDOUS MATERIALS USED IN CONSTRUCTION.

Except as provided elsewhere in the Contract Documents, CONTRACTOR is responsible for all Hazardous Materials brought to the Job Site by CONTRACTOR or Subcontractors.

## SECTION FIFTEEN.  HAZARDOUS MATERIALS DISCOVERED ON SITE.

15.1     Except as provided elsewhere in the Contract Documents, OWNER is responsible for all Hazardous Materials discovered on the Job Site so long as those materials were not brought on the Job Site by CONTRACTOR, Subcontractors, or anyone directly or indirectly employed by them. Nothing in this paragraph shall relieve DEVELOPER and CONTRACTOR from liability for negligence in handling or removing hazardous materials as required under the terms of this agreement.

15.2     Except as provided in the Contract Documents or as agreed by mutual consent, DEVELOPER and CONTRACTOR shall not be required to perform Work relating to asbestos, polychlorinated biphenyl (PCB), radioactive material, toxic mold or any other Hazardous Material.

15.3     OWNER shall defend, Indemnify and hold harmless DEVELOPER  and CONTRACTOR from and against all loss, liability, claims, costs, damage and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from the discovery or existence of Hazardous Material on the Job Site, whether or not identified in the

Contract Documents, provided such loss, liability, costs, damage and economic detriment is not the result of any negligent act or omissions of DEVELOPER and CONTRACTOR, Subcontractors or anyone directly or indirectly employed by them. Indemnification by OWNER under this paragraph shall apply even if OWNER is in no way responsible for the loss to DEVELOPER and CONTRACTOR.

### SECTION SIXTEEN. COMPLIANCE WITH FEDERAL, STATE, AND LOCAL LAW.

16.1     CONTRACTOR and OWNER mutually commit to use reasonable care to meet the Requirements of state, federal and local Law when discharging their responsibilities under this agreement.

16.2     If DEVELOPER and CONTRACTOR observe that Drawings, Specifications, or other Contract Documents do not comply with applicable Law, DEVELOPER and CONTRACTOR shall promptly notify OWNER or OWNER'S Representative of the variance. Any changes made to the Contract Documents because of this notice shall be handled in the form of a Change Order under this agreement.

16.3     DEVELOPER and CONTRACTOR shall bear none of the cost of correcting Work completed per Contract Documents but not in compliance with Law if CONTRACTOR did not know that Contract Documents or instructions from OWNER or OWNER'S Representative did not comply with the Law.

16.4     If Law enacted after the Contract Date changes the Scope of Work under this agreement, DEVELOPER and CONTRACTOR and OWNER will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

### SECTION SEVENTEEN. LAYOUT.

DEVELOPER and CONTRACTOR shall be responsible for alignment and elevation of the Work and will set grade stakes, batter boards, and other working points, lines and elevations required to complete the Project as described in the Contract Documents.

### SECTION EIGHTEEN. PERMIT AND FEES.

18.1     DEVELOPER and CONTRACTOR shall secure all permits, licenses and renewals required by government authority to complete construction of the Project. If permits are required for Subcontracted Work, Subcontractors will secure those permits. OWNER may request a copy of each permit, license and renewal issued by government authority for the Project. All permits and fees are considered a fee that is enclosed in the project plan.

18.2     Project budget will include the building permit fee, Plan check fee, and charges levied by government for testing, Inspection and Re-Inspection of the Project. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.3    Except as provided elsewhere in this agreement, Project budget  will include all fees and application charges imposed by government authority, including, but not limited to, grading permit fees, drainage permit fees, traffic control charges, thoroughfare charges, impact fees, special district fees, sewer fees, water fees, planning fees, school fees, elevator permit fees, charges for temporary access or use of the public right of way, and charges for document processing, hearings, and certifications. Project budget will also pay all fees and application charges imposed by any association of property OWNERs having authority over the Job Site. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.4    Except as provided elsewhere in this agreement, Project budget will include all application fees and connection charges imposed by utility companies or government agencies for bringing service to the Job Site, and for connecting gas, water, electricity, phone, cable, sewer, and drainage lines. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.5    Except as provided elsewhere in this agreement, Project budget will include all approvals for the Project that are required by government authority, including planning, easements, remediation, environmental, and zoning approvals. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## SECTION NINETEEN. TAXES.

If any federal, state or local tax rate increases or if any new federal, state or local tax is imposed, whether by Law, regulation, or interpretation, between the Contract Date and Substantial Completion, the Contract Price shall be increased by the additional tax levied on DEVELOPER and CONTRACTOR but only to the extent that the change in rate or new tax could not have been reasonably foreseen on the Contract Date. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## SECTION TWENTY. TEMPORARY UTILITIES.

20.1    DEVELOPER and CONTRACTOR have budgeted for all costs associated with use of temporary utilities on the Job Site during construction, including application fees, permits, engineering, and metered service for water, electric power, heating and cooling. Temporary utility systems provided by DEVELOPER CONTRACTOR shall be designed and installed to protect the public and construction personnel and conform to applicable Laws and Regulations.

20.2    Utility services shall be re-listed in the name of future building occupant on the Calendar Day following Substantial Completion.

## SECTION TWENTY-ONE. PERMANENT UTILITIES.

Project budget shall include Installation, connection, and modification of permanent electric, water, phone, cable, sewer and gas service as required for the completed Project. It will not include any deposits that will be paid by building occupant.

## SECTION TWENTY-TWO. JOB CLEAN UP.

22.1     DEVELOPER and CONTRACTOR shall regularly remove from the Job Site and storage areas all surplus material, waste and debris resulting from the Work. Construction debris shall be removed to a legal refuse collection site with disposal or recycling fees included in Project budget. At completion of the Work, DEVELOPER and CONTRACTOR shall, in addition, remove from the Job Site all tools, equipment and scaffolding brought to the Job Site by DEVELOPER and CONTRACTOR or Subcontractors. At Substantial Completion, exposed finishes of windows, doors, floors, walls, ceilings, fixtures and trim shall be cleaned and free of grime, stains, over spray, dirt and dust.

22.2     DEVELOPER and CONTRACTOR shall provide a trash disposal facility on the Job Site for use by construction personnel. The on-site trash facility provided by DEVELOPER and CONTRACTOR shall be of an appropriate size for the Project and placed in a location approved by OWNER. All construction debris shall either be placed in the trash facility provided by DEVELOPER and CONTRACTOR or hauled to a legal disposal site, at the discretion of DEVELOPER and CONTRACTOR. When any trash container provided by DEVELOPER and CONTRACTOR is full, contents shall be removed to a legal disposal facility at the expense of CONTRACTOR.

## SECTION TWENTY-THREE. PROJECT SIGN.

DEVELOPER and CONTRACTOR shall have the right to fabricate and erect a Project sign bearing the name of the Project, Prime CONTRACTOR, principal Subcontractors, designers, consultants, lead lender, a short Project description, and expected Completion Date. CONTRACTOR may erect directional signs at the Job Site with approval of OWNER with respect to size, style and location. Directional signs may bear the name of CONTRACTOR and a directional symbol. No other signs will be permitted except by permission of OWNER.

## SECTION TWENTY-FOUR.  PROJECT SUPERINTENDENT.

DEVELOPER and CONTRACTOR shall employ a competent Superintendent and any necessary assistants or alternates that will be at the job site from start to finish of project. The Superintendent shall not be changed unless the Superintendent is discharged by DEVELOPER and CONTRACTOR. The Superintendent shall have authority to represent DEVELOPER and CONTRACTOR in all matters relating to the Project. Communications with the Superintendent shall have the same force and effect as direct communication with DEVELOPER and CONTRACTOR.

## SECTION TWENTY-FIVE. OWNER'S RESPONSIBILITIES.

25.1     OWNER affirms that OWNER has the right to enter this agreement and has the right to contract for construction of the Project on the Job Site. OWNER shall pay all taxes and

assessments due on the Job Site during the period of construction and shall take all reasonable actions required to protect marketable title to the Job Site. OWNER is responsible for all standard responsibilities that a property OWNER / landlord would have.

25.2     OWNER will ensure that OWNER'S Representative responds in writing and with reasonable promptness to written requests from DEVELOPER and CONTRACTOR for (a) interpretation of the Plans or Specifications, or (b) other information relevant to completion of the Work. DEVELOPER and CONTRACTOR are authorized to rely on written responses from OWNER'S Representative.

25.3     OWNER shall have sole responsibility to secure financing for the Project and shall pay all fees, charges, or other costs of such financing, including Inspection fees charged by any lender. The nonperformance of any lender shall not affect the obligation of OWNER to DEVELOPER and CONTRACTOR. OWNER hereby authorizes and directs any lender on the Project to furnish DEVELOPER and CONTRACTOR with full information on undisbursed proceeds when requested by DEVELOPER and CONTRACTOR. Proof of funds must be made available to DEVELOPER prior to project starting.

25.4     OWNER will not interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by DEVELOPER and CONTRACTOR or Subcontractors except as provided under this agreement.

## SECTION TWENTY-SIX. CONSTRUCTION BY OTHERS.

OWNER shall neither hire nor retain Separate DEVELOPER and CONTRACTOR, Subcontractors, employees or agents of OWNER to perform Work on the Job Site while Work is being done under this agreement by DEVELOPER and CONTRACTOR.

## SECTION TWENTY-SEVEN.  AUTHOIRTY OF OWNER'S REPRESENTATIVE.

27.1     OWNER'S Representative has authority to administer the contract, make construction decisions on behalf of OWNER, and is the primary authority on issues of compliance with the Drawings and Specifications, quality of workmanship, materials used, manner of performance, and rate of progress on the Project.

27.2     After the Contract Date, OWNER shall make no change in the responsibilities or authority of OWNER'S Representative without consent of DEVELOPER and CONTRACTOR.

27.3     OWNER'S Representative shall have the right to visit the Project and view Work in progress at any time. Any Defective Work found or suspected, either as the result of a site visit or otherwise, shall be reported promptly to DEVELOPER and CONTRACTOR. No actions taken, or statements made during site visits shall relieve DEVELOPER and CONTRACTOR of obligations described in the Contract Documents.

27.4     Communication between DEVELOPER and CONTRACTOR and OWNER shall be initiated through OWNER'S Representative unless direct communication is required by Law or Contract Documents. Unless otherwise authorized by DEVELOPER and CONTRACTOR, communications between OWNER'S Representative and Subcontractors or Material Suppliers shall be through DEVELOPER and CONTRACTOR.

27.5      OWNER'S Representative shall have the authority to reject and order removed any portion of the Work which does not conform to the Contract Documents.

27.6      OWNER'S Representative shall have authority to conduct Inspections about Beneficial Occupancy and to determine the dates of Substantial Completion.

### SECTION TWENTY-EIGHT.  REPRESENTATIONS BY DEVELOPER AND CONTRACTOR.

28.1      DEVELOPER and CONTRACTOR shall use skill and attention to complete the Work in a timely manner consistent with the Contract Documents.

28.2      OWNER has reported to DEVELOPER and CONTRACTOR all conditions known to OWNER which may not be apparent to CONTRACTOR and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the Job Site, unsuitable soil conditions, prior Defective Work of others, latent Defects in the Plans or Specifications, earlier attempts to do Similar or related Work, and obligations imposed by government.

### SECTION TWENTY-NINE.  DISCLAIMER BY OWNER, RELIANCE BY CONRACTOR.

OWNER has provided DEVELOPER and CONTRACTOR with information on subsurface or concealed conditions at the Job Site. Except to the extent that DEVELOPER and CONTRACTOR knows this information to be false, DEVELOPER and CONTRACTOR is entitled to rely on the accuracy of this information.

### SECTION THIRTY.  DISCREPANCY BETWEEN PLANS AND FIELD CONDITIONS.

30.1      DEVELOPER and CONTRACTOR is not a Design Professional and have no obligation to find discrepancies between Job Site conditions and representations or Requirements in the Contract Documents.

30.2      DEVELOPER and CONTRACTOR shall not be liable for discrepancies between representations or Requirements in the Contract Documents and conditions at the Job Site unless DEVELOPER and CONTRACTOR knowingly fails to report a discrepancy, in which case DEVELOPER and CONTRACTOR shall be liable for additional costs incurred because of failure to give prompt notification.

30.3      If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information provided by OWNER, DEVELOPER and CONTRACTOR shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall submit a Claim for a Change Order which covers the additional cost incurred because of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

### SECTION THIRTY-ONE. USE OF SITE.

31.1      OWNER has agreed to furnish all required rights to use the land upon which the Work is

to be constructed. OWNER will identify any encumbrances or restrictions related to use of the land furnished and DEVELOPER and CONTRACTOR agrees to comply with those encumbrances or restrictions. If OWNER fails to furnish the land, rights of way, or easements when required, DEVELOPER and CONTRACTOR may make a Claim for extra compensation, additional time, or other relief.

31.2   OWNER shall designate a construction entrance which DEVELOPER and CONTRACTOR shall use for all delivery of materials and equipment and which shall be used by all construction personnel.

## SECTION THIRTY-TWO. DRAW SCHEDULE.

32.1   OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:

**OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:**

**Momentum draw - 10% of the Budget within three (3) Business Days following the closing on land, building or execution of this development contract.  Momentum draw will include all developer's pursuit cost, project soft cost, developer fee and necessary local, state and or federal permitting fees to start the project.**

**Draw 1 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following the commencement of the Work.**

**Draw 2 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 1.**

**Draw 3 - 20% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 2.**

**Final Draw – 10% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request includes a copy of all executed lien releases and final payment affidavits (from CONTRACTOR, Subcontractors and others) being submitted to the clerk of court and recorded in the public records and a copy of the permanent Certificate of Occupancy issued for the Project.**

32.2   It is agreed by OWNER and or FUNDING SOURCE that all payments will be made to DEVELOPER. DEVELOPER will disburse funds in a timely manner. The afore mentioned

budget that is supported by the GMAX clause is considered total project budget and the DEVELOPER will disburse funds per DEVELOPERS discretion. No third-party title company will be granted permission to disburse funds to any company or individual on behalf of funding group. Each application for payment shall be submitted on the form approved by OWNER.

## SECTION THIRTY-THREE.
## DISCHARGE OF LIENS AND PAYMENT OF SUBCONTRACTORS.

33.1     DEVELOPER and CONTRACTOR warrants that, upon payment, OWNER shall receive clear title to all Work identified in the application for payment, free and clear of all liens and Claims, including Claims of Subcontractors, employees or Material Suppliers. CONTRACTOR also agrees that this vesting of title in OWNER does not impose any obligation on OWNER or relieve CONTRACTOR from any obligation under this contract. CONTRACTOR shall remain responsible for damage to or loss of both the Work and stored materials until Completion.

33.2     DEVELOPER and CONTRACTOR warrants and guarantees that no Work, materials, or equipment covered by a request for payment has been acquired by DEVELOPER and CONTRACTOR or by any other person performing the Work or furnishing materials or equipment for the Project subject to an agreement under which an interest therein, or an encumbrance thereon, has been retained by seller or otherwise imposed by CONTRACTOR.

33.3     DEVELOPER and CONTRACTOR shall furnish, with each application for payment, and as a condition to Owner's obligations to pay, executed waivers of liens from DEVELOPER and CONTRACTOR and each Subcontractor and Material Supplier to the Project in the amount of the application for payment. Waivers of liens shall be in a form satisfactory to OWNER, title insurer, and lenders.

33.4     DEVELOPER shall disburse funds received from OWNER among DEVELOPER and CONTRACTOR, subcontractors and material suppliers in proportion to the work done and materials received for the project during the pay period.

## SECTION THIRTY-FOUR. INTEREST.

34.1     Payments due and not paid under the Contract Documents shall bear interest from the date payment is due at a monthly rate of **TEN PERCENT (10%)**.

34.2     Payment of interest does not abrogate or replace any other rights DEVELOPER and CONTRACTOR may have under this agreement.

## SECTION THIRTY-FIVE. FINAL PAYMENT.

35.1   DEVELOPER and CONTRACTOR will apply for final payment and will notify OWNER'S Representative when the work has been completed. OWNER'S Representative will issue a certificate of completion on determination that the Project is complete and in compliance with the Contract Documents. When the certificate of completion is issued, the entire unpaid balance of the contract amount, including any retainage, is payable to DEVELOPER.

35.2   Making of final payment constitutes waiver of all Claims by OWNER against DEVELOPER and CONTRACTOR except those Claims previously made in writing and

delivered to DEVELOPER and CONTRACTOR and those obligations otherwise provided by this agreement or by operation of Law.

35.3   The acceptance of final payment by CONTRACTOR constitutes a complete and unconditional waiver and release of any and all Claims by CONTRACTOR of whatever nature, and regardless of whether they are then known or unknown, and a complete and unconditional release of OWNER, and every person for whom OWNER is responsible, for any and all matters related to the contract or otherwise, except those Claims which have been made in writing and identified by CONTRACTOR as not having been settled at that time.

## SECTION THIRTY-SIX.  CHANGES IN WORK.

36.1   Except as required by changes in the Prime Contract between OWNER and DEVELOPER, no change to this contract (including Modification, clarification, interpretation or correction of the Plans or Specifications) shall be made without agreement and a written Change Order signed by DEVELOPER and CONTRACTOR and OWNER identifying the change, the cost of the change, and the effect on Project Schedule, if any.

36.2   Any change in Plans, Specifications or Contract Documents necessary to conform to existing or future Laws, codes, ordinances or regulations shall be considered Extra Work.

36.3   Changes in the Work required due to defects or inconsistencies in Plans or Specifications or other Contract Documents shall be considered Extra Work.

36.4   The charge for Extra Work shall be the normal selling price DEVELOPER and CONTRACTOR charges for similar changes on other jobs.

36.5 Failure of DEVELOPER and CONTRACTOR and OWNER to agree on the terms of a Change Order shall be resolved under the provisions of this agreement which cover Claims and disputes.

36.6 Should DEVELOPER and CONTRACTOR and OWNER fail to agree promptly on the terms of a Change Order, DEVELOPER and CONTRACTOR shall be paid, pending resolution of the dispute, the portion of the cost of the change not in dispute, including the costs of time and materials required to execute the change. Payments required under this paragraph shall be made as the Work progresses, concurrently with progress payments.

## SECTION THIRTY-SEVEN.  COOPERATION OF THE PARTIES.

37.1   OWNER and DEVELOPER acknowledge that open communication and cooperation will be required to complete the Project on time, as estimated, and in compliance with the Contract Documents. DEVELOPER and OWNER each agree to identify a representative who will be available to resolve minor problems, answer questions and reach mutually acceptable solutions. The individuals identified by DEVELOPER and OWNER shall try to reach informal agreement on problems as they arise but are under no obligation to do so.

37.2   Both DEVELOPER and OWNER pledge that their relations will be conducted with courtesy and consideration in an environment characterized by mutual respect. OWNER pledges to respond promptly to requests by DEVELOPER for guidance, assistance and

payments when due and agrees to extend to DEVELOPER the deference and latitude a dedicated professional deserves. CONTRACTOR pledges to commit the skill and resources required to complete the Project in a manner that complies with both the letter and spirit of the Contract Documents and enhances the reputation of DEVELOPER and for dependability and professionalism.

## SECTION THIRTY-EIGHT. WARRANTY.

38.1 DEVELOPER and CONTRACTOR warrant that the Work shall be free of Defects due to faulty material or workmanship for the period specified in this agreement.

**38.1(a)** General **Requirements.**

38.1(a)(i)      Except as otherwise provided in this agreement, the warranty period shall begin from the date of Completion for 12 months.

38.1(a)(ii)      Work done by CONTRACTOR in compliance with warranty provisions of this agreement does not extend the period of the warranty.

38.1(a)(iii)      DEVELOPER and CONTRACTOR shall deliver to OWNER all warranties provided by vendors and manufacturers of materials and equipment used to complete the Project. DEVELOPER and CONTRACTOR shall have no obligation under warranties provided by others except to render any assistance that OWNER may require in enforcing the terms of those warranties.

38.1(a)(iv)      Except as provided in this agreement, and to the extent permitted by Law, DEVELOPER and CONTRACTOR disclaims all warranties, whether express or implied, whether of fitness for purpose, merchantability, habitability or workmanlike completion.

38.1(a)(v)      Failure of OWNER to give notice of a breach of warranty within the warranty period constitutes a waiver of the right to repair or replacement by DEVELOPER and CONTRACTOR.

38.1(a)(vi)      To make a warranty Claim under this agreement, OWNER must send a clear and specific written complaint to DEVELOPER and CONTRACTOR at the following address within 60 Calendar Days of discovering Defects, unless otherwise specified in the list of items covered under this warranty. DEVELOPER and CONTRACTOR shall make repairs, replacements and corrections promptly and at no expense to OWNER.

**38.1(b) Exclusions from Warranty**

38.1(b)(I) The warranty provided by this contract does not cover any of the following items or conditions:

38.1(b)(I)(A) Damages to private property or bodily injury.

38.1(b)(i)(B) Damages or losses that result from soil movement that is covered by insurance or that is compensated for by legislation.

Page 16

38.1(b)(i)(C)     Insect damage.

38.1(b)(i)(D)     Damage or losses that result from overloading of any floor, wall, ceiling, or roof beyond the design capacity.

38.1(b)(i)(E) Damages caused or made worse by:

38.1(b)(i)(E)(1)     Changes, additions, deletions, or any other alterations made to any part of the structure by anyone other than DEVELOPER and CONTRACTOR after the warranty term begins.

38.1(b)(i)(E)(2)     Loss that results from failure of OWNER to take timely action to mitigate or minimize damage.

38.1(b)(ii) DEVELOPER and CONTRACTOR has no liability for incidental or consequential damages from breach of any warranty provided by this agreement insofar as the loss claimed is covered by insurance of OWNER or for which OWNER has a right of recovery from any other party.

38.1(b)(iii) Basic **Warranty Coverage**

It is a breach of warranty if any material or design furnished, or workmanship performed by DEVELOPER and CONTRACTOR or any Subcontractor or Material Supplier, is found to be defective during the first year.

38.1(b)(iv) Warranty **on Major Structural Damage**

It is a breach of the major structural damage warranty where there is actual physical damage to designated load-bearing portions of the structure caused by the failure of such designated portions to perform to their load-bearing functions to the extent that it makes the structure unsafe, uninhabitable, or unsanitary during the first 12 months. The following items are designated load-bearing portions:

(A)     Foundation Systems and Footings
(B)     Beams
(C)     Girders
(D)     Lintels
(E)     Columns
(F)     Walls and Partitions
(G)     Floor Systems
(H)     Roof Framing Systems

### SECTION THIRTY-NINE.  DEVELOPER AND CONTRACTOR CLAIMS.

If DEVELOPER and CONTRACTOR claims that any instruction, Drawing, act or omission of OWNER or any representative of OWNER, or any agency of government, increases costs to DEVELOPER and CONTRACTOR, requires extra time or changes the Scope of Work, CONTRACTOR shall have the right to assert a Claim for such costs or time.

## SECTION FORTY. NOTICE OF CLAIMS.

40.1 No Claim by DEVELOPER and CONTRACTOR shall be considered unless DEVELOPER and CONTRACTOR provide OWNER or OWNER'S Representative with a notice that there will be a Claim for additional compensation or an extension of time. This notice of Claim shall be made no less than 5 Calendar Days after DEVELOPER and CONTRACTOR recognizes or should have recognized that circumstances exist which support such a Claim. The notice of Claim shall include: (1) The date of the notice, (2) The date the basis for the Claim was discovered, (3) The circumstances that support the Claim, and (4) The estimated additional cost to OWNER or additional time required to complete the Project.  Owner shall have exclusive authority and discretion to approve or deny any claim.

40.2 If the Claim involves Extra Work, DEVELOPER and CONTRACTOR shall maintain detailed records which show each expense incurred, including payroll records and receipts for Subcontracted Work, materials and equipment. These detailed records shall be made available to OWNER for verification while Work subject to the Claim is being performed. Developer and Contractor shall obtain written approval from Owner prior to performing any extra work.

40.3 The amount Claimed by CONTRACTOR shall be calculated in accord with provisions in this contract on charges for Extra Work.

## SECTION FORTY-ONE. DISPUTE RESOLUTION.

### 41.1   Choice of Forum, Law and Venue

With regard to any controversy in any way arising out of or relating to the execution or performance of the Agreement, the method of binding dispute resolution shall be litigation and the parties hereby irrevocably agree that any suit, action, or legal proceeding shall be brought in the U.S. District Court for the Middle District of Florida, unless such court lacks jurisdiction, in which case, a state court of record in Manatee County, Florida. The parties further irrevocably (i) consent to the jurisdiction of such federal or state court in any such suit, action, or legal proceeding, (ii) waive any objection to the laying of venue of any such suit, action, or legal proceeding in such federal or state court, and (iii) waive any defense based upon inconvenient forum or improper venue.  The parties further agree that all disputes arising out of or relating to the Agreement or the performance of it by either party shall be adjudicated solely by and be governed by the laws of the State of Florida without regard to conflicts of law analysis.

### 41.2   Attorneys' Fees.

If either party brings an Action to enforce their rights under this agreement, the prevailing party may recover its expenses (including reasonable attorneys' fees) incurred in connection with the Action and any appeal from the losing party.

## SECTION FORTY-TWO. INSURANCE.

### 42.1   Certificates of Insurance

42.1(a) DEVELOPER and CONTRACTOR shall provide to OWNER a certificate of insurance for

each insurance policy required by this agreement. These certificates shall list OWNER as the certificate holder.

42.1(b) Certificates of insurance shall be issued on a standard form.

42.1(c)      DEVELOPER and CONTRACTOR shall permit no Subcontractor to begin Work on the Project until OWNER has received certificates of insurance demonstrating that the Subcontractor has coverage of a like kind and with comparable limits to insurance coverage required of DEVELOPER and CONTRACTOR under this agreement.

## 42.2  Waivers of Subrogation

OWNER and DEVELOPER and CONTRACTOR waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance except such rights as may exist to the proceeds from insurance held by OWNER as trustee. DEVELOPER and CONTRACTOR shall require similar waivers in Subcontracts for the Project.

## 42.3  Insurance Details

42.3(a) **If** insurance policies meeting the Requirements of this contract are not generally available to DEVELOPER and CONTRACTOR.   DEVELOPER and CONTRACTOR may provide substantially similar coverage and shall so notify OWNER in writing.

42.3(b) **DEVELOPER** and CONTRACTOR may satisfy the policy limits set by this contract through any combination of underlying and excess liability (umbrella) insurance so long as the total coverage is not less than the policy limits specified in this contract. Any excess liability (umbrella) insurance coverage provided by CONTRACTOR must be written on an occurrence basis, offer coverage at least as broad as the underlying insurance, and have concurrent effective dates. Excess liability (umbrella) insurance provided by DEVELOPER and CONTRACTOR shall provide additional insured endorsements, blanket contractual coverage, and punitive damages coverage (unless prohibited by Law).

## 42.4  Liability Insurance

42.4(a) **As** an alternative to including OWNER as an additional insured under a comprehensive general liability policy, DEVELOPER and CONTRACTOR may provide an OWNER'S and CONTRACTOR's Protective Liability Policy. If DEVELOPER and CONTRACTOR are unable to procure the minimum amounts of insurance in a single policy, CONTRACTOR may provide required policy limits through a combination of a primary OCP Policy and one or more excess policies. OWNER shall be the named insured on the Policy and, if applicable, the excess policy. Each policy shall be endorsed to include each Subcontractor of every Tier as the CONTRACTOR designated in the declarations.

42.4(b) **Minimum** CONTRACTOR's liability coverage shall be: $2,000,000 combined bodily injury and property damage single occurrence limit, annual aggregate limit of $2,000,000, products and completed operations aggregate limit of $1,000,000, personal and advertising injury aggregate limit of $1,000,000.

**42.5    Builder's Risk Insurance**

42.5(a) OWNER shall provide builder's risk insurance covering property damage to the Project during the construction period. OWNER accepts the risk of damage to the Work during construction and agrees to Indemnify and hold harmless DEVELOPER and CONTRACTOR and Subcontractors at any Tier from losses resulting from uninsured damage to the Work prior to final payment under this agreement.

42.5(b) Builder's risk insurance shall include a loss payable provision naming OWNER as loss payee. OWNER shall have the power to adjust and settle Claims resulting from builder's risk insurance.

42.5(c)       Policy limits for builder's risk coverage shall be no less than the completed replacement value of the Project including the value of Change Orders.

**SECTION FORTY-THREE. LIABILITY FOR DAMAGES.**
**(DEVELOPER AND CONTRACTOR LIABILITY FOR DAMAGES)**

DEVELOPER and CONTRACTOR shall have no liability for damage to or loss of OWNER'S private property left on the Job Site unless such damage or loss is the direct result of intentional or negligent acts by DEVELOPER and CONTRACTOR.

**SECTION FORTY-FOUR. INDEMNITY.**

44.1     DEVELOPER and CONTRACTOR shall defend, Indemnify, and hold harmless OWNER and all officers, employees, agents, and consultants of OWNER from and against all and any losses, liability, Claims, costs, damages and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from performance of Work under this agreement provided such loss, liability, costs, damage and economic detriment is attributable to bodily injury, sickness, disease or death, or to injury or destruction of property (other than the Work itself) caused by the negligent acts or omissions of DEVELOPER and CONTRACTOR, a Subcontractor, or anyone directly or indirectly employed by them, or whether caused by or contributed to by OWNER, unless caused by the sole negligence of OWNER.

44.2     Indemnification of OWNER is limited to the extent of insurance coverage required to be carried by DEVELOPER and CONTRACTOR under this agreement.

44.3     Indemnification under this agreement shall not exceed any limitation on the amount or type of damages, compensation, or benefits payable by or for DEVELOPER and CONTRACTOR or any Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

**SECTION FORTY-FIVE. INTERPRETATION OF THE CONTRACT.**

45.1      Section headings and paragraph numbers have been included in this contract to refer easier and in no way limit, define, or enlarge the terms, scope, or conditions of this contract.

45.2          Except as otherwise provided in this contract, OWNER and DEVELOPER and

CONTRACTOR intend that this contract be interpreted in accord with the *Restatement of Law, Contracts*, published by the American Law Institute. Specifically: All parts of the Contract Documents should be interpreted together and conduct of the Parties should be interpreted as a manifestation of intention, and specific provisions should be interpreted as qualifying the meaning of the general provisions.

## SECTION FORTY-SIX. DEALING WITH PLAN DEFECTS.

46.1       At any time, DEVELOPER and CONTRACTOR may request an interpretation or clarification of the Contract Documents from OWNER or OWNER'S Representative. OWNER or OWNER'S Representative shall reply with a written interpretation, clarification, or detailed instructions within a reasonable time.

46.2       DEVELOPER and CONTRACTOR will rely on the Contract Documents as the final authority on what is included in the Project. The Contract Documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction DEVELOPER and CONTRACTOR doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. CONTRACTOR bears no responsibility for defects in the Contract Documents.

46.3       Unless DEVELOPER and CONTRACTOR has asked for and received a written clarification from OWNER in time to prevent delay in the Work, any omission or ambiguity in the Contract Documents shall be interpreted as requiring the material or construction technique necessary to produce the greater quantity and better quality of Work.

46.4       DEVELOPER and CONTRACTOR will report promptly to OWNER any design defects likely to result in problems during construction of the Project. However, DEVELOPER and CONTRACTOR is not a licensed architect or engineer and have no obligation to detect ambiguities, inconsistencies or omissions in the Contract Documents. While acting in good faith, DEVELOPER and CONTRACTOR is entitled to rely on the Work of a trained design specialist selected by and responsible to OWNER.

46.5   DEVELOPER and CONTRACTOR is entitled to rely on dimensions and descriptions shown in the Contract Documents when ordering materials for Installation.

46.6       Ambiguities, inconsistencies and omissions in the Contract Documents are design defects, not errors by DEVELOPER and CONTRACTOR. The cost of correcting design defects shall be at the expense of OWNER.

46.7     If inconsistent, approved changes to the Contract Documents take precedence over the original Contract Documents. Subsequent changes to the Contract Documents take precedence over prior changes to the Contract Documents.

46.8   If inconsistent, the construction Drawings take precedence over the Specifications.

46.9 If anything in the construction Specifications is inconsistent with anything else in the construction Specifications: (1) A product performance Requirement takes precedence over a

named product or manufacturer, and (2) Other clauses in the Specifications take precedence over anything incorporated by reference into the Specifications.

46.10    If anything in the construction Drawings is inconsistent with anything else in the construction Drawings: (1) Dimensions written in numbers take precedence over scaled measurements, (2) Notes and schedules take precedence over lines on the Drawings, (3) Large scale Drawings take precedence over small scale Drawings, (4) Schedules take precedence over notes or other directions, (5) Specific notes take precedence over general notes, and (6) Bottom elevations of footings take precedence over any general notes.

46.11    If inconsistent, other Contract Documents take precedence over any manual, industry standard, recommendation, regulation, and set of guidelines, code, or instructions incorporated by reference into the Contract Documents.

46.12    If inconsistent, any portion of the Contract Documents written in longhand takes precedence over anything printed in the Contract Documents.

46.13    DEVELOPER and CONTRACTOR has no liability for any omission, inconsistency or ambiguity in the Contract Documents or for any discrepancy between physical conditions at the Job Site and the Contract Documents, unless DEVELOPER and CONTRACTOR fails to report the error to OWNER or OWNER'S Representative.

## SECTION FORTY-SEVEN. ENTIRE AGREEMENT.

The Contract Documents are the entire agreement and constitute a complete integration of all understandings between DEVELOPER, CONTRACTOR, and OWNER about the Project. The Contract Documents supersede all prior negotiations, representations and agreements, whether written or oral. No subsequent notation, renewal, addition, deletion, change or amendment to this contract shall have any force or effect unless in the form of a written Change Order or amendment to this contract.

## SECTION FORTY-EIGHT. AUTHORSHIP; REPRESENTATION BY COUNSEL.

DEVELOPER, CONTRACTOR, and OWNER agree that the terms and language of this Agreement were the result of negotiations between the DEVELOPER, CONTRACTOR, and OWNER and, as a result, there shall be no presumption that any ambiguities in this Agreement shall be resolved against any party. Any controversy over construction of this Agreement shall be decided without regard to events of authorship or negotiation.  Furthermore, DEVELOPER, CONTRACTOR, and OWNER acknowledge that it has been represented by independent counsel of its choice throughout all negotiations that have preceded the execution of this Agreement.

## SECTION FORTY-NINE. SEVERABILITY.

If any provision of this contract is interpreted or rendered invalid and unenforceable, then the remainder of this contract shall remain in full force and effect.

## SECTION FIFTY. CUMULATIVE REMEDIES.

All rights and remedies provided to DEVELOPER and CONTRACTOR by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to CONTRACTOR at Law or in equity.

## SECTION FIFTY-ONE. MATERIALS AND SUBSTITUTIONS.

51.1     When the Specifications refer to materials or equipment by performance standard (such as an ASTM identifier), DEVELOPER and CONTRACTOR may select for Installation any product or equipment meeting that standard. When several products or manufacturers are identified as acceptable in the Specifications, DEVELOPER and CONTRACTOR has the option of using any of the products or selecting any of the manufacturers listed without seeking approval from OWNER or OWNER'S Representative.

51.2     Except as stated otherwise in the Specifications, any reference in the Specifications to a brand, make, manufacturer, or model denotes only characteristics of quality, workmanship, economy of operation and suitability for the intended purpose. DEVELOPER and CONTRACTOR may use any substantially equivalent material, equipment, or article if approved in advance of Installation by OWNER or OWNER'S Representative.

51.3     All materials and equipment used on the Project shall comply with Specifications in the Contract Documents unless a substitution is approved in advance of Installation by OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall apply to OWNER or OWNER'S Representative for approval of a substitute material when: (a) Any item specified is found to be unusable or unavailable when needed for Installation, or (b) The item specified is considered inferior to an equivalent item which is readily available at a Similar cost. With the application, DEVELOPER and CONTRACTOR shall include documentation: (a) Demonstrating that essential features of the substitute item are equal to or exceed similar features of the item specified, and (b) Listing delivered prices for the substitute item based on Material Supplier quotations. OWNER or OWNER'S Representative may deny any application for substitution if not in the best interest of OWNER. If approved, any savings in cost that result from the substitution will be credited to OWNER. No request for substitution of material shall constitute grounds for extension of the Contract Time. Proposed substitutions shall not be purchased or installed without approval of the substitution by OWNER or OWNER'S Representative.

## SECTION FIFTY-TWO. INSPECTIONS.

52.1 DEVELOPER and CONTRACTOR shall schedule and coordinate all Inspections required by the Contract Documents and by public authority so as not to delay the progress of the Work or the Work of OWNER or Separate CONTRACTORs. If the Contract Documents require that an Inspection be witnessed or attended by OWNER or OWNER'S Representative, DEVELOPER and CONTRACTOR shall give notice of the time and place of the Inspection. DEVELOPER and CONTRACTOR shall schedule Inspections during regular Work Days and normal business hours, unless mutually agreed by DEVELOPER and CONTRACTOR, OWNER, and Inspector.

52.2     Insofar as applicable and except where superseded by other provisions of the Contract Documents or by government regulation, Inspection of the following Work will be required on the

Project: (a) Bearing surfaces of excavations before concrete is placed, (b) Reinforcing steel after Installation and before concrete is poured, (c) Structural concrete when poured, (d) Structural framing after erection and prior to being covered or enclosed, (e) Steel welding, (f) Mechanical and plumbing Work following Installation and prior to being covered or enclosed, (g) Electrical Work following Installation and prior to being covered or enclosed, (h) Above-ceiling Work when complete but before the finish ceiling material is installed, and (i) Final Inspections prior to occupancy.

52.3     If an Inspection reveals Work of DEVELOPER and CONTRACTOR not in compliance with the Contract Documents or not in compliance with any code or statute, DEVELOPER and CONTRACTOR shall bear the costs of correction, the cost of repeating the Inspection, and any related costs, including reasonable charges by OWNER or OWNER'S Representative for additional services.

## SECTION FIFTY-THREE. THE CONSTRUCTION SCHEDULE.

53.1     DEVELOPER and CONTRACTOR shall prepare and submit to OWNER for review and approval an estimated progress Schedule for the Work showing completion within the Contract Time. This progress Schedule shall identify expected starting and completion dates for each part of the job and identify tasks critical to timely completion of the Work.

53.2     DEVELOPER and CONTRACTOR may select any type of Schedule which: (a) Is suitable for monitoring progress of the Work, (b) Provides easy access to information about the timing of decisions OWNER must make and acts OWNER must perform, (c) Includes sufficient detail to demonstrate adequate planning for the Work, and (d) Presents a practical plan to complete the Work in an acceptable time.

53.3     DEVELOPER and CONTRACTOR shall plan, develop, supervise, control, and coordinate the performance of the Work so that job progress, sequence and timing conform to the construction Schedule. If DEVELOPER and DEVELOPER and CONTRACTOR falls materially behind the currently approved construction Schedule, OWNER may require DEVELOPER and CONTRACTOR to prepare and submit for approval, at no cost to OWNER, a plan for completing the Project within the Contract Time. Failure to submit a plan meeting this Requirement shall constitute grounds for termination under the terms of this agreement.

53.4     The Schedule shall allow for and depict the following: (a) Beginning and Completion Dates of each significant task (Work breakdown structure) in the job, (b) Delivery and approval of each Submittal, Samples and Shop Drawing, (c) Inspections and tests, (d) The Work of Subcontractors and Separate CONTRACTORs, and (e) Order dates and delivery dates of significant equipment and key materials. The construction Schedule shall include a legend which identifies the meaning of each symbol and abbreviation.

## SECTION FIFTY-FOUR.  EXTENSION OF THE TIME FOR COMPLETIONS.

54.1   OWNER shall execute a Change Order for Excusable Delay by extending the Contract Time for the period of the delay. Any of the following shall constitute excusable delay for which the Contract Time shall be extended: (a) Strike, boycott, embargo, terrorism, armed rebellion, quarantine or other obstructive action by employees, labor organizations, discovery of

archaeological or paleontological artifacts, act or neglect of a public utility, or, order of government authority, and (b) Fire, flood, earthquake, tornado, tidal wave, lightning, rain, snow, temperature under 32 degrees, casualty loss, epidemic, or unusually adverse weather.

54.2     For delay in delivery of materials, FF&E, equipment or for a shortage of labor that results from unforeseeable circumstances beyond the control and without fault or negligence of either DEVELOPER and CONTRACTOR, or any Subcontractor or Material Supplier of DEVELOPER and CONTRACTOR, OWNER will grant an extension of the Contract Time if: (a) DEVELOPER and CONTRACTOR,  notifies OWNER or OWNER'S Representative promptly on discovery of the anticipated shortage, (b) DEVELOPER and CONTRACTOR,  substantiates the delay as unavoidable with a detailed chronology of events and all relevant correspondence, and (c) DEVELOPER and CONTRACTOR, provides an estimated date when the material, equipment or labor will be available.

54.3     Any Change Order granted for Excusable Delay shall have no effect on a Claim by DEVELOPER and CONTRACTOR, for damage from the same delay for interruption, hindrance, or disruption.

**SECTION FIFTY-FIVE. DEVELOPER AND CONTRACTOR CLAIMS FOR DELAY.**

55.1     The Contract Price shall be adjusted for any increase in the cost of performance of this contract caused by suspension, delay or interruption of the Work due to: (a) An error or omission in the Contract Documents, (b) A decision of OWNER to change the Scope of the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR, (c) A decision of OWNER to suspend the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR, (d) A failure by OWNER or OWNER'S Representative to comply with the construction Schedule, (e) Any act or neglect of OWNER or agent of OWNER or any Separate DEVELOPER and CONTRACTOR, (f) Failure of OWNER to yield control of the Job Site to DEVELOPER and CONTRACTOR, or (g) Failure of OWNER to make payments when due under the terms of this agreement.

55.2   Within 3 Working Days after receipt of a notice of Claim for compensation for suspension, delay, or interruption, OWNER shall: (a) Respond with a resolution, remedy, or direction to alleviate the delay, (b) Respond with a notice rejecting the Claim for delay, or (c) Respond with a draft Change Order accepting the Claim for delay. If the issue is not then resolved, DEVELOPER and CONTRACTOR, may request a Change Order.

55.3     No change in the Contract Time for completion or the Contract Price shall become part of the Contract Documents without a Change Order.

55.4   Compensation to DEVELOPER and CONTRACTOR, for suspension, delay, or interruption of Work shall include direct overhead (Job Site) expense, a proportionate share of unabsorbed indirect (home office) overhead expense, lost efficiency and lost profit taken as 15 percent of total compensable expenses. Direct overhead costs shall include, without limitation: (a) Labor (with taxes, insurance and fringe benefits) for the idle work force, (b) The fair rental cost of idle equipment (such as vehicles, construction tools and equipment), (c) Facilities (such as temporary structures, water, power, phone, and toilets), (d) The additional cost of Bonds and insurance, (e) Similar direct overhead costs of Subcontractors to whom DEVELOPER and

CONTRACTOR, is liable for damages that result from the delay, and (f) Demobilization and re-mobilization costs. Unabsorbed indirect overhead costs shall include, without limitation, the proportionate share of office rent, office supplies, office utilities, office equipment, advertising, professional fees, management salaries, technical services, estimating, selling, accounting, bookkeeping and clerical expense, business licenses, taxes (except income taxes), and insurance.

## SECTION FIFTY-SIX. LIQUIDATED DAMAGES.

56.1     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the Contract Time are considered reasonable by OWNER and DEVELOPER and DEVELOPER and CONTRACTOR, any neglect, refusal or failure of DEVELOPER and CONTRACTOR to reach Substantial Completion within the Contract Time, plus approved extensions of that time, will result in damage to OWNER impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and CONTRACTOR or which may become due CONTRACTOR the sum of $765.88 as liquidated damages for each Calendar Day that Substantial Completion is delayed beyond the Contract Time, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

56.2     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the time for Completion are considered reasonable by OWNER and CONTRACTOR. Any neglect, refusal or failure of DEVELOPER and CONTRACTOR, to reach Completion within the time provided in this contract, plus approved extensions of that time, will result in damage in the form of inconvenience, loss of opportunities, and higher Inspection, Superintendence, and administrative costs to OWNER. These costs are impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and DEVELOPER and CONTRACTOR or which may become due DEVELOPER and CONTRACTOR, the sum of $765.88 as liquidated damages for each Calendar Day that Completion is delayed beyond the time provided in this contract, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

56.3     DEVELOPER and CONTRACTOR, shall not be charged liquidated damages for any failure, neglect or refusal to complete the Work on Schedule to the extent that the proximate cause of the delay was: (a) Strike, boycott, embargo, terrorism, armed rebellion, quarantine, delay in delivery of FF&E, or other obstructive action by employees, franchise owner, franchisor or labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or by order of government authority, (b) Fire, flood, earthquake, tornado, tidal wave, lightning, casualty loss, epidemic, rain, snow or unusually adverse weather, (c) Any delay of Subcontractors or vendors resulting from items listed in sections a or b above, or (d) Any act or omission of OWNER or anyone acting on behalf of OWNER.

56.4      Except as provided elsewhere in this contract, liquidated damages are the exclusive damage remedy for OWNER for any failure of DEVELOPER and CONTRACTOR to complete Work per Schedule. No damages of any other type or description shall be awarded OWNER for failure of DEVELOPER and CONTRACTOR to comply with the construction Schedule.

## SECTION FIFTY-SEVEN. CONSEQUENTIAL DAMAGES.

DEVELOPER and CONTRACTOR, and OWNER waive all Claims for consequential damages against each other, their respective officers, directors, partners, employees, agents, consultants and Subcontractors, arising out of or relating to this contract or the termination of this contract, except those consequential damages covered by insurance or specifically provided elsewhere in this agreement.

## SECTION FIFTY-EIGHT. RIGHT TO STOP WORK FOR NON-PAYMENT.

58.1     If DEVELOPER and CONTRACTOR, is not paid any amount not in dispute within 7 Calendar Days after the date due, CONTRACTOR shall post on the Job Site and deliver to OWNER and all Subcontractors a notice of intention to stop the Work if payments then due are not received in full within 10 Calendar Days. Thereafter, CONTRACTOR may suspend the Work until delinquent payments have been received, pursuant to Florida code.

58.2     Neither DEVELOPER and CONTRACTOR, nor Surety of CONTRACTOR, nor any Subcontractor of DEVELOPER and CONTRACTOR shall be liable for delay or damage that OWNER may suffer as a result of suspension of the Work for failure to receive payments due under this agreement so long as: (a) Work was suspended by DEVELOPER and CONTRACTOR in compliance with the terms of this contract and with applicable Law, and (b) There is no good faith dispute that payment is due DEVELOPER and CONTRACTOR,  at the time of suspension. A good faith dispute exists if OWNER provides: (a) A list of specific reasons for nonpayment, including labor, materials, or equipment not in compliance with the Contract Documents, and (b) CONTRACTOR is afforded a reasonable opportunity to correct the Defects cited or issue a credit compensating OWNER for Defects that cannot be cured promptly.

## SECTION FIFTY-NINE.  EARLY PARTIAL OCCUPANCY.

59.1     Without prior approval of DEVELOPER and CONTRACTOR, OWNER shall not occupy or use any portion of the Work until Substantial Completion of the Project. If OWNER occupies or uses any portion of the Work before Substantial Completion of the Project and without prior approval of DEVELOPER and CONTRACTOR, the portion or portions used or occupied shall be considered complete, finished, accepted and the responsibility of OWNER.

59.2      No Partial Use or occupancy of the Work by OWNER shall commence prior to Substantial Completion without a Change Order confirming the responsibility of OWNER for maintenance, utilities, operation of equipment, and security during early Partial Use or occupancy.

59.3      If any portion of the Project is used or occupied by OWNER prior to Substantial Completion and if the Project is not completed within the Contract Time, liability of DEVELOPER and CONTRACTOR, for delayed completion shall be reduced by the proportion of the Project used or occupied by OWNER and for the time used or occupied by OWNER prior to Substantial Completion.

## SECTION SIXTY. SUBSTANTIAL COMPLETION.

60.1      When, in the opinion of DEVELOPER and CONTRACTOR, the Work is Substantially Complete, DEVELOPER and CONTRACTOR shall prepare a preliminary Punch List of Work remaining to be done and deliver that Punch List to OWNER'S Representative with a request for evaluation of Substantial Completion. If, in the opinion of OWNER'S Representative, items on the preliminary Punch List are consistent with Substantial Completion, OWNER'S Representative shall conduct an Inspection of the Work to evaluate compliance with the Contract Documents.

60.2   Before OWNER takes possession or occupancy of the Project, DEVELOPER and CONTRACTOR, shall receive a comprehensive Punch List of discrepancies to be corrected or Work to be finished by CONTRACTOR and a date for completing this Work. DEVELOPER and CONTRACTOR, shall complete and correct items on the Punch List by the designated date.

60.3   The Punch List given to DEVELOPER and CONTRACTOR, is a complete and final list of Defective or incomplete Work on the Project. OWNER shall be deemed to have accepted Work not on the Punch List. Nothing in this paragraph shall be interpreted as relieving DEVELOPER and CONTRACTOR, of the obligation to meet warranty and call-back obligations.

60.4      DEVELOPER and CONTRACTOR, shall annotate the Punch List with: (a) A detailed breakdown of the Work required to complete or correct each item, (b) The Subcontractor or trade responsible for the Work, and (c) The dates Work will commence and be finished on each item. No annotation is required for any item on the Punch List which is beyond the control of DEVELOPER and CONTRACTOR. Failure of CONTRACTOR to furnish a detailed completion Schedule for items on the Punch List shall constitute grounds for withdrawing acknowledgment of Substantial Completion.

60.5   OWNER'S Representative will prepare a certificate of Substantial Completion for signature by OWNER and DEVELOPER and CONTRACTOR, when the Project or a specific portion of the Project is ready for occupancy. Except as otherwise provided in the Contract Documents, signing of the certificate of completion shall: (1) Transfer to OWNER responsibility for maintenance, safety, utility expense, controlling access at the site, and (2) Begin running of any warranty or call-back period on the Project.

60.6   after Substantial Completion, DEVELOPER and CONTRACTOR, shall remain responsible for: (a) Damage caused by DEVELOPER and CONTRACTOR, while completing the Work, and (b) Safety of crews when completing the Work.

## SECTION SIXTY-ONE. DELIVERY OF NOTICES.

60.1   Any written notice required by this contract can be: (a) Delivered by hand at the last known address of the addressee, or (b) Delivered by hand to the addressee or representative of the addressee, wherever found. Notice is effective upon delivery.

60.2   Any written notice required by this contract can be: (a) Delivered by enclosing in a stamped envelope addressed to the last known address of the intended recipient and either deposited in a United States Postal Service mailbox or given to a USPS employee, or (b) Consigned to a commercial courier service and addressed to the last known address of the

intended recipient. Notice is effective upon delivery if proof of delivery is provided; where no proof of delivery is available, notice is effective 5 Calendar Days after mailing or consignment to a courier service.

<u>SIGNATURES</u>

The signatures that follow constitute confirmation by those signing that they have examined and understand the Contract Documents and agree to be bound by the terms of these documents.

DEVELOPER and CONTRACTOR may not begin Work before receiving from OWNER a written notice to proceed. Any Work performed by DEVELOPER and CONTRACTOR before receipt of the notice to proceed shall be done at the risk of DEVELOPER and CONTRACTOR and without obligation of OWNER.

This agreement is entered as of the date written below.

**OWNER Name:**

**AFC-WEST 8040 ULMERTON ROAD LARGO FLORIDA LANDCO LLC,
a Florida limited liability company**

FG-MGR, LLC, a Maryland limited liability company
<u>Manager</u>

BY: _____
        Pun for Li, Manager

Date:   2018-03-06

**DEVELOPER:**

REDSTONE, LLC, a Tennessee limited liability company
D/B/A AMERICAN DEVELOPMENT PARTNERS

BY: _____
        Manny Butera, Developer and Authorized Signatory
        on behalf of REDSTONE, LLC
Date:   3/7/18

## Glossary of Terms

**Beneficial Occupancy** refers to OWNER'S use of the project premises after Substantial Completion but prior to Completion. Beneficial Occupancy may occur when the project or some portion is sufficiently complete and systems operational such that the OWNER could, after obtaining necessary approvals and certificates, occupy and utilize the space for its intended purpose. The time limit for warranties applicable to that portion of the Work begin on the date the OWNER begins Beneficial Occupancy, unless otherwise specified in this Agreement.

**Bond** means the security offered by a licensed surety company which may be used to satisfy a claim of failure to perform obligations undertaken in this Agreement.

**Calendar Day** means any day shown on the calendar beginning at midnight and ending at midnight the following day. Contrast the term Work Day which excludes Saturdays, Sundays and state-recognized holidays.

**Certification of Payment** is acknowledgment by someone not a party to this Agreement that CONTRACTOR is entitled to payment for work completed.

**Change Order** is a written modification of the Contract Price (including all claims for direct, indirect and consequential damages and costs of delay), Time for Completion and Scope of Work under this Agreement. A Change Order, once signed by all parties, is incorporated into and becomes a part of the Contract Documents.

**Claim** means a demand or assertion by one of the parties to this Agreement seeking, as a matter of right, modification, adjustment or interpretation of contract terms, payment of money, extension of time or other relief.

**Code Requirements** means all laws, statutes, regulations, building codes, ordinances, rules, and lawful orders of all public authorities having jurisdiction over OWNER, CONTRACTOR, any Subcontractor, the Project, the Job Site, the Work, or the prosecution of the Work.

**Contract Completion Date** means the day by which the Work must be substantially complete.

**Contract Date** is the day on which the contract becomes binding between CONTRACTOR and OWNER.

**Contract Documents** are this Agreement and all documents incorporated by reference into this Agreement.

**Contract Price** is the amount which will become due in exchange for work performed under this Agreement. Contract Price includes allowances for purchased materials and equipment and may be modified by a Change Order or contract modification. The Contract Price may be paid in one or more installments, including an Initial Payment at or before the start of work, Progress Payments as work is completed, and a Final Payment on final acceptance of the work. Payment

Between applications for progress payments or prior to the first application for progress payment.

**Contract Schedule** is a graphical representation of a practical plan to complete Work within the Contract Time.

**Contract Time** means the period between Date of Commencement and the date of Substantial Completion.

**CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the Work under the terms of this Agreement.

**Defective Work** means construction done under this Agreement that is unsatisfactory, faulty, omitted, incomplete, deficient, or does not conform to the requirements of the Contract Documents, directives of OWNER'S Representative, or the requirements of an inspection, reference standard, test, or approval specified in the Contract Documents.

**Design Professional** means the person, organization or authorized representative who is responsible to the OWNER for design of the Project through preparation of Drawings and Specifications. The term Design Professional may refer to an architect, designer, engineer or landscape architect.

**Drawings** (also called plans or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Drawings include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed Project. A group of drawings adequate to complete construction of the Project may be referred to as a plan set. Drawings can be either paper or electronic media.

**Emergency** means an unforeseen event, combination of circumstances, or a resulting state that poses imminent danger to health, life or property.

**Excusable Delay** means any circumstance which postpones completion of the Work and for which CONTRACTOR is entitled to an adjustment of the Contract Time but not an adjustment to the Contract Price. Contrast Inexcusable Delay which entitles CONTRACTOR to neither an adjustment of the Contract Price nor an adjustment in the Contract Time.

**Extra Work** means any change, interpretation, clarification or correction in the Contract Documents or in applicable law, ordinance or regulation which would increase or decrease the quantity of work, delay, suspend or interfere with the work, require an addition to or omission from the work, change the character, quality or nature of any part of the work or material used in the work, change levels, lines, positions or dimensions of any part of the work, require demolition or removal of any work completed under this Agreement, extend or amend the normal work day, alter the construction schedule or require completion of any part of the work at a time other than provided by this Contract when originally made.

Page 31

**Completion** is the date of OWNER'S acceptance of the Work as fully performed per the Contract Documents.

**Furnish** means to supply and deliver to the job site.

**General CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking execution of the Work under terms of a Prime Contract.

**Hazardous Materials** means radioactive materials, asbestos, polychlorinated biphenyls, petroleum, crude oil, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, and toxic substances which are restricted, prohibited, or regulated by any agency of government in the manufacture, use, maintenance, storage, Ownership or handling.

**Indemnification** Financial compensation intended to restore someone to their condition before a loss or damage.

**Inspection** is any review of the Project, including a visual review of the Work completed to ascertain compliance with Contract Documents, building codes and construction standards.

**Inspector** is anyone authorized by government or the Design Professional to conduct inspections of contract performance and materials supplied for the Work.

**Install** means to secure in position in compliance with the Contract Documents and includes unloading materials, supplying all necessary equipment and rigs to do the work and performing functional tests which demonstrate fitness for the intended purpose.

**Job Site** is the address or location of the Project.

**Law** means federal or state statutes, municipal ordinances, building codes, regulations adopted pursuant to statute, executive orders, official interpretations, and other rules and directives issued by government.

**Material Supplier** means any manufacturer, fabricator, distributor, material man or vendor who provides material for the Project but does not provide on-site labor.

**Modification** is a written amendment to the Contract signed by both parties.

**OWNER'S Representative** means the person or firm authorized to act and make administrative decisions on behalf of the OWNER during construction. Any notice required to be delivered to the OWNER may be delivered to the OWNER'S Representative. The scope of authority of the OWNER'S Representative is defined in this contract. CONTRACTOR cannot rely on any decision or instruction by OWNER'S Representative that is beyond the representative's defined scope of his authority. Nothing in this contract prevents OWNER from issuing a notice or instructions directly to the CONTRACTOR. The OWNER may change the OWNER'S Representative from time to time and may, if OWNER'S Representative is absent, disabled or

otherwise temporarily unavailable, appoint an interim OWNER'S Representative.

**Party (to this contract)** means a person or business organization which has an obligation to perform under the terms of this contract.

**Plans** (also called drawings or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Plans include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed project. A group of plans adequate to complete construction of the Project may be referred to as a plan set. Plans can be either paper or electronic media.

**Prime Contract** is a written agreement between CONTRACTOR and OWNER which binds CONTRACTOR to furnish labor, equipment, or materials or perform certain work for a price to be paid by OWNER.

**Project** means Work to be completed in accord with the Contract Documents. Work at the Job Site may include other projects to be completed by the OWNER or other CONTRACTORs working under other agreements.

**Provide** means furnish and install and includes connecting, testing, and placing in service for the intended use.

**Punch List** is a comprehensive list of incomplete, defective or incorrect Work yet to be completed or which does not comply with Contract Documents. A Punch List may be prepared by the CONTRACTOR, Subcontractor, Design Professional or OWNER. An initial Punch List will be prepared before application for Substantial Completion. A Close-out Punch List will be prepared before Completion.

**Requirements** means, in addition to obligations, responsibilities and limitations set out in the Contract Documents, the obligations, responsibilities and limitations imposed by law, rules, orders, ordinances, regulations, statutes, codes and executive orders of governmental authorities or fire rating bureaus.

**Retainage** is a portion of each progress payment temporarily held back or retained by the OWNER. Accumulated retainage is released to CONTRACTOR on satisfactory completion of the work.

**Sample** means a physical example of material; equipment or workmanship intended to be representative of some portion of the Work. When approved, samples establish standards for completion of similar work on the Project.

**Schedule of Values** means the detailed breakdown of cost of materials, equipment and labor necessary to complete the Project as described in the Contract Documents.

**Scope of Work** means the Work as defined by the Contract Documents.

**Separate CONTRACTOR** means a person or firm working under a different contract but on the same site and at the same time as work will be done under this contract.

**Shop Drawings** are diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data which are prepared by the CONTRACTOR or a Subcontractor, manufacturer, supplier or distributor, and which illustrate or describe some portion of the Work to be completed in compliance with the Contract Documents. Once submitted to the approval authority and approved, Shop Drawings establish standards for completion of work on Project.

**Similar** means having a like kind, quality and characteristics. Similar is not to be construed as meaning identical or by the same manufacturer.

**Specifications** (also called specs) are the part of the Contract Documents which provide descriptions of materials, equipment, construction systems, technique and workmanship to be used on the Project. Specifications are both instructions to be followed by the CONTRACTOR and Subcontractors and a reference for the Building Official to evaluate code compliance.

**Subcontract** is a written agreement between a specialty CONTRACTOR and General CONTRACTOR. Terms of the subcontract require the specialty CONTRACTOR to complete some portion of the work General CONTRACTOR is obligated to perform under another agreement, usually with the OWNER.

**Subcontractor** is any person or business entity under contract to a general CONTRACTOR to perform some portion of the work general CONTRACTOR is obligated to complete under a contract with the OWNER. Subcontractor is an independent CONTRACTOR performing services for another CONTRACTOR rather than for the OWNER. A person or organization providing supplies or materials for the Project, but no job site labor is not a Subcontractor.

**Submittals** demonstrate the way by which the CONTRACTOR proposes to conform to the requirements of the Contract Documents. Submittals are shop drawings (diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data) required by the Contract Documents which are prepared for the CONTRACTOR to depict some portion of the Work. Submittals are delivered to the OWNER for approval or disapproval by the OWNER prior to purchase or installation.

**Substantial Completion** means the Project, or a designated portion of the Project is nearly in compliance with the Contract Documents and is sufficiently complete to be considered fully operational in all its components and is fit for the intended use. Substantial Completion is reached when a limited number of non-conforming or defective items on a Punch List remain to be completed. Normally, a Project or portion of a Project cannot be considered Substantially Complete until (1) all utilities and services are connected and working, (2) all equipment is installed and in acceptable working condition, (3) additional activity by the CONTRACTOR to correct items on the Punch List will not prevent or disrupt use of the facility, and, (4) a certificate

of occupancy has been issued by the appropriate authority.

**Sub-subcontractor** is any person or business entity under contract to a subcontractor or any lower tier subcontractor to perform some portion of the work subcontractor is obligated to complete under a
contract with the prime CONTRACTOR. Sub-subcontractors are independent CONTRACTORs performing services for another CONTRACTOR rather than for the prime CONTRACTOR. A person or organization providing supplies or materials for the Project, but no job site labor is not a Sub-subcontractor.

**Superintendent** is the representative of the CONTRACTOR at the job site who is authorized to receive instructions from the OWNER or OWNER'S Representative and who is authorized to direct the performance of work on behalf of the CONTRACTOR.

**Surety** means any qualified individual, firm or corporation other than the CONTRACTOR, which executes a bond to insure its acceptable performance of the contract.

**Tier** refers to the contractual level of a person or business organization doing work on the Project. A first-tier subcontractor has a contract with the general CONTRACTOR but not the OWNER. A second-tier subcontractor has a contract with another subcontractor but not with the general CONTRACTOR or the OWNER.

**Work** means all labor, material, equipment, tools, transportation, permanent and temporary utilities, connections, provisions for safety and management services required to complete the Project in compliance with the Contract Documents. Work may constitute the whole or a part of the Project. Work is to be performed in a safe, expeditious, orderly and professional manner in keeping with current standards of the industry. Work includes everything that is or should be evident to a skilled construction professional after careful examination of the Contract Documents and the Job Site.

**Work Day** means any day, excluding Saturdays, Sundays and state-recognized holidays, shown on the calendar beginning at midnight and ending at midnight the following day.

**EXHIBIT "I"**



**American Development Partners Development Contract**

**THIS AGREEMENT** is made on this the 26th day of March 2018, by and between **REDSTONE, LLC, a Tennessee limited liability company, D/B/A American Development Partners** (hereinafter "DEVELOPER") and **CHC-4684 PATTERSON AVE WINSTON SALEM LANDCO LLC, a Florida limited liability company** (hereinafter "OWNER").

**DEVELOPER**

DEVELOPER Name: **REDSTONE LLC DBA American Development Partners ®**
PO Box 681982
Franklin, TN 37064
Office - (615) 368-3412
Attn:  Manny Butera
Email Address: manny@americandevelopmentpartners.com

DEVELOPER Name: **American Development Partners ®** will be referred to as DEVELOPER throughout this agreement.

**CONTRACTOR**
**CONTRACTOR INFORMATION:**
Address: Phone Number: (615) 330-0629
Email Address: llynp@built-more.com
License Number: 00057609

CONTRACTOR Name: Built-more LLC will be referred to as CONTRACTOR throughout this agreement.

**OWNER**
OWNER AGENT:

**CHC-4684 PATTERSON AVE WINSTON SALEM LANDCO LLC**
201 Madeira Avenue
Coral Gables, FL 33134
Attn:  Pun For Li
Email Address: ~~fli@fg-llc.com~~  fli@fg-companies.com

With a Copy to:
Jose L. Torres, P.A.
224 Palermo Avenue
Coral Gables, FL 33134
Email Address: jtorres@jltorrespa.com

OWNER Name:

**CHC-4684 PATTERSON AVE WINSTON SALEM LANDCO LLC**
201 Madeira Avenue
Coral Gables, FL 33134
Attn:  Pun For Li
Email Address: ~~fli@fg-llc.com~~  fli@fg-companies.com

### SECTION ONE. PROJECT DESCRIPTION.

1.1  For a price identified below, DEVELOPER agrees to complete a new commercial building (identified as the Project in this agreement) for OWNER.

1.2  For the Contract Price identified below, DEVELOPER agrees to complete a new commercial building consisting of approximately 1800 sq. ft. +/- square feet of air-conditioned space plus patio 300 + / - square feet and used as a CHURCH'S CHICKEN or other similar Quick Service Restaurant (identified as the "Project" in this Agreement), for TENANT's use and OWNERS ownership on the Land in accordance with the plans

1.3  The term "Total Build Cost" shall mean the aggregate of (1) the Total Project Cost, (2) the Contract Price, (3) the Contingencies of the Project, (4) the cost of the Work and the Extra Work, (5) other costs, charges and fees under this Agreement (collectively, the "Other Agreements") (the Other Agreements shall include but not be limited to any contractor or subcontractor agreements and the cost of all materials and labor), but shall not exceed  $1,921,729.57.

1.4  The term "Budget" shall mean the Total Build Cost less the cost to acquire the Land.

1.5  The term "Property" shall mean the Land and all improvements thereon including but not limited to the Project.

1.6  Contract Price / OWNERS Cost Cap / Developer.

1.7  DEVELOPER shall earn in addition to any other charges specified in this agreement, OWNER agrees to pay a 10% development fee for completing the Work described as the Project. DEVELOPER fee is paid off total project cost that includes building, construction and all numbers that are used to factor total project cost.

1.8  Notwithstanding any contrary provision in this Agreement or otherwise, OWNERS maximum monetary liability under this Agreement and for the Project towards all

amounts, including but not limited to the Total Build Cost, shall not exceed, and shall be capped at, the sum of $1,921,729.57 said amount referred to as the (OWNERS GROSS MAX). Notwithstanding any contrary provision in this Agreement or otherwise, DEVELOPER shall be solely responsible under this Agreement and to OWNER, for any projects overruns that are above the gross max number provided to OWNER.

## SECTION TWO. CONTRACT PRICE.

DEVELOPER shall earn and OWNER agrees to pay a development fee of 10% of total project cost in addition to any other charges specified in this agreement. In addition to any other charges specified in this agreement, OWNER agrees to pay DEVELOPER $174,702.69 development fee for completing the Work described as the Project.

## SECTION THREE. CONTINGENCY BUDGET.

It is identified and agreed to by OWNER that DEVELOPER has an estimated budget of **5 %** of project cost for "contingencies". CONTRACTOR will submit to DEVELOPER a "change order" for approval by DEVELOPER and OWNER any proposed change order. Contingencies are limited to change orders due to error or omission by a licensed architect after plans were received and reviewed by contractor, all state or federal codes changes that were mandated after contractor received stamped plans and or building permit.

## SECTION FOUR. SCHEDULED START OF CONSTRUCTION.

4.1      Work under this agreement will begin within 5 Calendar Days after the following contingencies have been met.

4.1(a) Complete Plans and Specifications have been approved and initialed by both OWNER, DEVELOPER, and CONTRACTOR.

4.1(b) OWNER has shown proof of funds or other financing acceptable to DEVELOPER.

4.1(c)      DEVELOPER has obtained all architectural approvals from any franchise and or corporate authorities.

4.1(d)      OWNER has furnished DEVELOPER with evidence of Ownership of the property satisfactory to DEVELOPER.

4.1(e) All appropriate building permits have been issued.

4.1(f) DEVELOPER has received written notice from the lien holder or the title company insuring lien holder's security interest in the property that all documents required to be recorded prior to the commencement of construction have been properly recorded.

4.1(g) The contract has been signed by OWNER, DEVELOPER and CONTRACTOR.

## SECTION FIVE. SCHEDULED COMPLETION OF CONSTRUCTION

Contractor shall achieve Substantial Completion of the entire work not later than ONE HUNDRED TWENTY-FIVE (125) calendar days from the date the building permit is issued, or the date reflected in the site investigation report ("SIR") whichever is the later of the two. This is only for projects where land owner has approved developer to finalize full architectural and engineering plans to be completed during the due diligence period.  If the landowner does not approve developer to finalize full architectural and engineering plans to be completed during the due diligence period, then the Contractor shall achieve Substantial Completion of the entire work not later than ONE HUNDRED TWENTY-FIVE (125) calendar days from the date the building permit is issued. The Substantial Completion date may be modified as reasonably necessary by Contractor after final plans, specifications, and bidding process.  "Substantial Completion" for purposes of this Agreement shall mean the date when Work has been sufficiently completed in accordance with the Contract Documents, so the Owner can occupy or utilize the Property for its Intended Use.  "Intended Use" for purposes of this Agreement shall mean the intended use of the property as a quick serve restaurant. This is subject this Clause, "Event of Force Majeure" means an event beyond the control of the developer or contractor, which prevents a them from complying with any of its obligations under this Contract, including but not limited to, act of God (such as, but not limited to, fires, explosions, earthquakes, drought, rain, snow, tidal waves and floods); war, hostilities (whether war be declared or not), invasion, act of foreign enemies, mobilization, requisition, or embargo; rebellion, revolution, insurrection, or military or usurped power, or civil war; contamination by radio-activity from any nuclear fuel, or from any nuclear waste from the combustion of nuclear fuel, radio-active toxic explosive, or other hazardous properties of any explosive nuclear assembly or nuclear component of such assembly; riot, commotion, strikes, go slows, lock outs or disorder, unless solely restricted to employees of the Supplier or of his Subcontractors; or acts or threats of terrorism.

In any event, a time extension may be granted only for an excusable delay that is beyond Contractor's control and occurs without the Contractor's fault or negligence.  No time extension will be granted in the absence of a written claim for the time extension.

## SECTION SIX. DOCUMENTS INCORPORATED

6.1     The Glossary of Terms which follows our signatures is incorporated into this contract as though included in full as part of this agreement.

6.2     This agreement incorporates by reference certain documents which define and describe the Work to be done. The following documents are incorporated as though included in full as part of this agreement.

## SECTION SEVEN. OWNERSHIP OF PLANS.

All Plans, Drawings, Specifications and other documents prepared by or for OWNER for use under this agreement will be paid for and are the property of DEVELOPER and remain the property of DEVELOPER. Plans, Drawings and Specifications, whether in paper or electronic form, prepared for use in construction under this agreement shall not be modified or used on any other project without written consent of DEVELOPER. DEVELOPER shall hold harmless and Indemnify OWNER from and against all Claims, actions, suits, costs, damages, losses, expenses and attorney's fees arising out of use of the Project Plans, Drawings, or Specifications

for any purpose other than construction to be completed under this agreement. DEVELOPER, CONTRACTOR and Subcontractors are granted a limited license to use and reproduce applicable portions of the Plans, Specifications and Drawings as required for construction under this agreement. All copies made under this license shall bear a notice showing OWNER as copyright holder. DEVELOPER may retain one record set of the Plans, Drawings and Specifications. All other sets shall be accounted for by DEVELOPER and CONTRACTOR and returned to OWNER. Submittal or distribution of Project Plans, Drawings or Specifications to meet Official Regulatory Requirements is not to be construed as publication in derogation of the rights of OWNER.

## SECTION EIGHT. PLANS ON SITE.

DEVELOPER and CONTRACTOR will keep a full set of Project Plans available on-site to authorized personnel during the period of construction.

## SECTION NINE. DOCUMENTS SUPPLIED BY CONTRACTOR.

OWNER will furnish to DEVELOPER and CONTRACTOR at no cost (this is part of total project cost)

9.1(a) A full set of Plans and Specifications for all trades in electronic format.

9.2(b) DEVELOPER and CONTRACTOR will distribute Contract Documents as required by Subcontractors.

## SECTION TEN. SCOPE OF WORK.

10.1    DEVELOPER and CONTRACTOR shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Project in compliance with the Contract Documents.

10.2    DEVELOPER and CONTRACTOR are responsible for coordination of the various trades and deliveries of equipment, materials and supplies to minimize interference which could delay the Work or pose a hazard to life or property. DEVELOPER shall be responsible for allocation of tasks between trades and will be the final authority on location and routing of equipment and storage of materials on the Job Site.

10.3    DEVELOPER will ensure that Subcontractors, their agents, and employees adhere to these Contract Documents. DEVELOPER and CONTRACTOR accepts responsibility for all Work performed under this contract, including Work performed by employees of Subcontractors.

10.4    CONTRACTOR shall provide on the Job Site during the period of construction a temporary chemical toilet or water closet which shall be serviced no less than weekly. Upon completion of the Project, CONTRACTOR will remove temporary toilet facilities from the site.

10.5    DEVELOPER and CONTRACTOR shall provide temporary elevators and lifts as may be required by construction personnel, including Subcontractors, Material Suppliers, Inspectors, and Representatives of OWNER. Elevators and lifts will comply with all federal, state and local Laws and ordinances in effect at the Job Site. Upon completion of the Project, DEVELOPER

and CONTRACTOR will dismantle and remove temporary elevators and lifts.

10.6       DEVELOPER and CONTRACTOR shall develop and present to OWNER for approval (which shall not be withheld unreasonably), a site logistics plan drawn to scale, showing proposed secure and fenced areas, locations and types of temporary barricades, material storage and staging areas, property entrances used for material deliveries, and special material or equipment storage Requirements. This plan will include a description and proposed location for any temporary office, storage trailer, sanitary facilities, and parking for construction personnel.

## SECTION ELEVEN. SUBMITTALS.

11.1       Architectural Drawings will indicate in detail all parts of the building components, Installation details, and coordination with Work of other trades or other CONTRACTORS. Architectural Drawings for structural steel, timbers and pre-cast concrete will include engineering calculations, fabrication details and erection Drawings that show physical characteristics, dimensions, shapes, inserts, attaching points and methods, and other information required for manufacture, assembly and erection, in compliance with the Contract Documents.

11.2       Approval by OWNER'S Representative does not relieve DEVELOPER and CONTRACTOR of responsibility for compliance with the Contract Documents except as follows: If a Submittal does not comply with Contract Documents, DEVELOPER and CONTRACTOR will attach to the Submittal, prior to approval, a written request for variation showing the change in Contract Price and Contract Time, if any, that will result from the variation. If OWNER'S Representative approves a Submittal which includes a written request for a variation and which requires a change in the Contract Price or Contract Time, OWNER'S Representative will issue a contract Modification confirming the change. If OWNER'S Representative approves a Submittal with a written request for a minor variation which does not require a change in the Contract Price or Contract Time, no contract Modification is needed. A minor variation is anything which does not materially alter the quality or performance of the Work. Approved variations are subject to all terms of this agreement and without prejudice to any rights granted to OWNER'S Representative under a Surety Bond.

11.3       DEVELOPER and CONTRACTOR is entitled to expect that corrections to Submittals by OWNER'S Representative be clearly noted and easily understood so that prompt resubmission is possible without further instructions from OWNER'S Representative.

11.4       OWNER'S Representative will review Submittals and notify DEVELOPER and CONTRACTOR of approval or rejection within TWO (**2**) Calendar Days of receipt.

11.5       OWNER'S Representative will review Submittals of DEVELOPER and CONTRACTOR for conformance with Requirements of the Contract Documents and will approve or take other appropriate action upon those Submittals.  OWNER'S Representative will advise DEVELOPER and CONTRACTOR of any errors or omissions which OWNER'S Representative may detect during this review. Submittals approved by OWNER'S Representative become additions to the Contract Documents and can be relied on by DEVELOPER and CONTRACTOR in completing the Work. Nothing in any approved Submittal shall be interpreted to limit DEVELOPER and CONTRACTOR in selection of the means, method, technique, sequence or procedure of

construction.

## SECTION TWELVE. RECORD DOCUMENTS.

DEVELOPER and CONTRACTOR will note on a record set of Project Drawings any Work done that is not shown on the original Plans and not described in other Contract Documents. The record set of Project documents will be delivered to OWNER at the same time as final payment is requested.

## SECTION THIRTEEN. JOB SITE SAFETY.

DEVELOPER and CONTRACTOR will always take all reasonable precautions for the safety of employees and the public at the Job Site and will comply with all applicable safety Laws and regulations of federal, state, and local authorities (including building codes) and safety Requirements of OWNER.

## SECTION FOURTEEN.  HAZARDOUS MATERIALS USED IN CONSTRUCTION.

Except as provided elsewhere in the Contract Documents, CONTRACTOR is responsible for all Hazardous Materials brought to the Job Site by CONTRACTOR or Subcontractors.

## SECTION FIFTEEN.  HAZARDOUS MATERIALS DISCOVERED ON SITE.

15.1     Except as provided elsewhere in the Contract Documents, OWNER is responsible for all Hazardous Materials discovered on the Job Site so long as those materials were not brought on the Job Site by CONTRACTOR, Subcontractors, or anyone directly or indirectly employed by them. Nothing in this paragraph shall relieve DEVELOPER and CONTRACTOR from liability for negligence in handling or removing hazardous materials as required under the terms of this agreement.

15.2      Except as provided in the Contract Documents or as agreed by mutual consent, DEVELOPER and CONTRACTOR shall not be required to perform Work relating to asbestos, polychlorinated biphenyl (PCB), radioactive material, toxic mold or any other Hazardous Material.

15.3     OWNER shall defend, Indemnify and hold harmless DEVELOPER  and CONTRACTOR from and against all loss, liability, claims, costs, damage and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from the discovery or existence of Hazardous Material on the Job Site, whether or not identified in the Contract Documents, provided such loss, liability, costs, damage and economic detriment is not the result of any negligent act or omissions of DEVELOPER and CONTRACTOR, Subcontractors or anyone directly or indirectly employed by them. Indemnification by OWNER under this paragraph shall apply even if OWNER is in no way responsible for the loss to DEVELOPER and CONTRACTOR.

**SECTION SIXTEEN. COMPLIANCE WITH FEDERAL, STATE, AND LOCAL LAW.**

16.1     CONTRACTOR and OWNER mutually commit to use reasonable care to meet the Requirements of state, federal and local Law when discharging their responsibilities under this agreement.

16.2     If DEVELOPER and CONTRACTOR observe that Drawings, Specifications, or other Contract Documents do not comply with applicable Law, DEVELOPER and CONTRACTOR shall promptly notify OWNER or OWNER'S Representative of the variance. Any changes made to the Contract Documents because of this notice shall be handled in the form of a Change Order under this agreement.

16.3     DEVELOPER and CONTRACTOR shall bear none of the cost of correcting Work completed per Contract Documents but not in compliance with Law if CONTRACTOR did not know that Contract Documents or instructions from OWNER or OWNER'S Representative did not comply with the Law.

16.4      If Law enacted after the Contract Date changes the Scope of Work under this agreement, DEVELOPER and CONTRACTOR and OWNER will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

**SECTION SEVENTEEN. LAYOUT.**

DEVELOPER and CONTRACTOR shall be responsible for alignment and elevation of the Work and will set grade stakes, batter boards, and other working points, lines and elevations required to complete the Project as described in the Contract Documents.

**SECTION EIGHTEEN. PERMIT AND FEES.**

18.1     DEVELOPER and CONTRACTOR shall secure all permits, licenses and renewals required by government authority to complete construction of the Project. If permits are required for Subcontracted Work, Subcontractors will secure those permits. OWNER may request a copy of each permit, license and renewal issued by government authority for the Project. All permits and fees are considered a fee that is enclosed in the project plan.

18.2     Project budget will include the building permit fee, Plan check fee, and charges levied by government for testing, Inspection and Re-Inspection of the Project. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.3     Except as provided elsewhere in this agreement, Project budget  will include all fees and application charges imposed by government authority, including, but not limited to, grading permit fees, drainage permit fees, traffic control charges, thoroughfare charges, impact fees, special district fees, sewer fees, water fees, planning fees, school fees, elevator permit fees, charges for temporary access or use of the public right of way, and charges for document

processing, hearings, and certifications. Project budget will also pay all fees and application charges imposed by any association of property OWNERs having authority over the Job Site. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.4     Except as provided elsewhere in this agreement, Project budget will include all application fees and connection charges imposed by utility companies or government agencies for bringing service to the Job Site, and for connecting gas, water, electricity, phone, cable, sewer, and drainage lines. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.5     Except as provided elsewhere in this agreement, Project budget will include all approvals for the Project that are required by government authority, including planning, easements, remediation, environmental, and zoning approvals. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## SECTION NINETEEN. TAXES.

If any federal, state or local tax rate increases or if any new federal, state or local tax is imposed, whether by Law, regulation, or interpretation, between the Contract Date and Substantial Completion, the Contract Price shall be increased by the additional tax levied on DEVELOPER and CONTRACTOR but only to the extent that the change in rate or new tax could not have been reasonably foreseen on the Contract Date. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

## SECTION TWENTY. TEMPORARY UTILITIES.

20.1     DEVELOPER and CONTRACTOR have budgeted for all costs associated with use of temporary utilities on the Job Site during construction, including application fees, permits, engineering, and metered service for water, electric power, heating and cooling. Temporary utility systems provided by DEVELOPER CONTRACTOR shall be designed and installed to protect the public and construction personnel and conform to applicable Laws and Regulations.

20.2     Utility services shall be re-listed in the name of future building occupant on the Calendar Day following Substantial Completion.

## SECTION TWENTY-ONE. PERMANENT UTILITIES.

Project budget shall include Installation, connection, and modification of permanent electric, water, phone, cable, sewer and gas service as required for the completed Project. It will not include any deposits that will be paid by building occupant.

## SECTION TWENTY-TWO. JOB CLEAN UP.

22.1     DEVELOPER and CONTRACTOR shall regularly remove from the Job Site and storage areas all surplus material, waste and debris resulting from the Work. Construction debris shall be removed to a legal refuse collection site with disposal or recycling fees included in Project budget. At completion of the Work, DEVELOPER and CONTRACTOR shall, in addition, remove from the Job Site all tools, equipment and scaffolding brought to the Job Site by DEVELOPER and CONTRACTOR or Subcontractors. At Substantial Completion, exposed finishes of windows, doors, floors, walls, ceilings, fixtures and trim shall be cleaned and free of grime, stains, over spray, dirt and dust.

22.2     DEVELOPER and CONTRACTOR shall provide a trash disposal facility on the Job Site for use by construction personnel. The on-site trash facility provided by DEVELOPER and CONTRACTOR shall be of an appropriate size for the Project and placed in a location approved by OWNER. All construction debris shall either be placed in the trash facility provided by DEVELOPER and CONTRACTOR or hauled to a legal disposal site, at the discretion of DEVELOPER and CONTRACTOR. When any trash container provided by DEVELOPER and CONTRACTOR is full, contents shall be removed to a legal disposal facility at the expense of CONTRACTOR.

## SECTION TWENTY-THREE. PROJECT SIGN.

DEVELOPER and CONTRACTOR shall have the right to fabricate and erect a Project sign bearing the name of the Project, Prime CONTRACTOR, principal Subcontractors, designers, consultants, lead lender, a short Project description, and expected Completion Date. CONTRACTOR may erect directional signs at the Job Site with approval of OWNER with respect to size, style and location. Directional signs may bear the name of CONTRACTOR and a directional symbol. No other signs will be permitted except by permission of OWNER.

## SECTION TWENTY-FOUR.  PROJECT SUPERINTENDENT.

DEVELOPER and CONTRACTOR shall employ a competent Superintendent and any necessary assistants or alternates that will be at the job site from start to finish of project. The Superintendent shall not be changed unless the Superintendent is discharged by DEVELOPER and CONTRACTOR. The Superintendent shall have authority to represent DEVELOPER and CONTRACTOR in all matters relating to the Project. Communications with the Superintendent shall have the same force and effect as direct communication with DEVELOPER and CONTRACTOR.

## SECTION TWENTY-FIVE. OWNER'S RESPONSIBILITIES.

25.1     OWNER affirms that OWNER has the right to enter this agreement and has the right to contract for construction of the Project on the Job Site. OWNER shall pay all taxes and assessments due on the Job Site during the period of construction and shall take all reasonable actions required to protect marketable title to the Job Site. OWNER is responsible for all standard responsibilities that a property OWNER / landlord would have.

25.2     OWNER will ensure that OWNER'S Representative responds in writing and with

reasonable promptness to written requests from DEVELOPER and CONTRACTOR for (1) interpretation of the Plans or Specifications, or (2) other information relevant to completion of the Work. DEVELOPER and CONTRACTOR are authorized to rely on written responses from OWNER'S Representative.

25.3     OWNER shall have sole responsibility to secure financing for the Project and shall pay all fees, charges, or other costs of such financing, including Inspection fees charged by any lender. The nonperformance of any lender shall not affect the obligation of OWNER to DEVELOPER and CONTRACTOR. OWNER hereby authorizes and directs any lender on the Project to furnish DEVELOPER and CONTRACTOR with full information on undisbursed proceeds when requested by DEVELOPER and CONTRACTOR. Proof of funds must be made available to DEVELOPER prior to project starting.

25.4     OWNER will not interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by DEVELOPER and CONTRACTOR or Subcontractors except as provided under this agreement.

## SECTION TWENTY-SIX. CONSTRUCTION BY OTHERS.

OWNER shall neither hire nor retain Separate DEVELOPER and CONTRACTOR, Subcontractors, employees or agents of OWNER to perform Work on the Job Site while Work is being done under this agreement by DEVELOPER and CONTRACTOR.

## SECTION TWENTY-SEVEN.  AUTHOIRTY OF OWNER'S REPRESENTATIVE.

27.1     OWNER'S Representative has authority to administer the contract, make construction decisions on behalf of OWNER, and is the primary authority on issues of compliance with the Drawings and Specifications, quality of workmanship, materials used, manner of performance, and rate of progress on the Project.

27.2      After the Contract Date, OWNER shall make no change in the responsibilities or authority of OWNER'S Representative without consent of DEVELOPER and CONTRACTOR.

27.3     OWNER'S Representative shall have the right to visit the Project and view Work in progress at any time. Any Defective Work found or suspected, either as the result of a site visit or otherwise, shall be reported promptly to DEVELOPER and CONTRACTOR. No actions taken, or statements made during site visits shall relieve DEVELOPER and CONTRACTOR of obligations described in the Contract Documents.

27.4      Communication between DEVELOPER and CONTRACTOR and OWNER shall be initiated through OWNER'S Representative unless direct communication is required by Law or Contract Documents. Unless otherwise authorized by DEVELOPER and CONTRACTOR, communications between OWNER'S Representative and Subcontractors or Material Suppliers shall be through DEVELOPER and CONTRACTOR.

27.5     OWNER'S Representative shall have the authority to reject and order removed any portion of the Work which does not conform to the Contract Documents.

27.6     OWNER'S Representative shall have authority to conduct Inspections about Beneficial

Occupancy and to determine the dates of Substantial Completion.

### SECTION TWENTY-EIGHT.  REPRESENTATIONS BY DEVELOPER AND CONTRACTOR.

28.1      DEVELOPER and CONTRACTOR shall use skill and attention to complete the Work in a timely manner consistent with the Contract Documents.

28.2      OWNER has reported to DEVELOPER and CONTRACTOR all conditions known to OWNER which may not be apparent to CONTRACTOR and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the Job Site, unsuitable soil conditions, prior Defective Work of others, latent Defects in the Plans or Specifications, earlier attempts to do Similar or related Work, and obligations imposed by government.

### SECTION TWENTY-NINE.  DISCLAIMER BY OWNER, RELIANCE BY CONRACTOR.

OWNER has provided DEVELOPER and CONTRACTOR with information on subsurface or concealed conditions at the Job Site. Except to the extent that DEVELOPER and CONTRACTOR knows this information to be false, DEVELOPER and CONTRACTOR is entitled to rely on the accuracy of this information.

### SECTION THIRTY.  DISCREPANCY BETWEEN PLANS AND FIELD CONDITIONS.

30.1      DEVELOPER and CONTRACTOR is not a Design Professional and have no obligation to find discrepancies between Job Site conditions and representations or Requirements in the Contract Documents.

30.2      DEVELOPER and CONTRACTOR shall not be liable for discrepancies between representations or Requirements in the Contract Documents and conditions at the Job Site unless DEVELOPER and CONTRACTOR knowingly fails to report a discrepancy, in which case DEVELOPER and CONTRACTOR shall be liable for additional costs incurred because of failure to give prompt notification.

30.3      If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information provided by OWNER, DEVELOPER and CONTRACTOR shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall submit a Claim for a Change Order which covers the additional cost incurred because of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

### SECTION THIRTY-ONE. USE OF SITE.

31.1      OWNER has agreed to furnish all required rights to use the land upon which the Work is to be constructed. OWNER will identify any encumbrances or restrictions related to use of the land furnished and DEVELOPER and CONTRACTOR agrees to comply with those encumbrances or restrictions. If OWNER fails to furnish the land, rights of way, or easements when required, DEVELOPER and CONTRACTOR may make a Claim for extra compensation,

additional time, or other relief.

31.2 OWNER shall designate a construction entrance which DEVELOPER and CONTRACTOR shall use for all delivery of materials and equipment and which shall be used by all construction personnel.

## SECTION THIRTY-TWO. DRAW SCHEDULE.

32.1 OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:

> **OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:**

> **Momentum draw - 10% of the Budget within three (3) Business Days following the closing on land, building or execution of this development contract. Momentum draw will include all developer's pursuit cost, project soft cost, developer fee and necessary local, state and or federal permitting fees to start the project.**

> **Draw 1 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following the commencement of the Work.**

> **Draw 2 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 1.**

> **Draw 3 - 20% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 2.**

> **Final Draw – 10% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request includes a copy of all executed lien releases and final payment affidavits (from CONTRACTOR, Subcontractors and others) being submitted to the clerk of court and recorded in the public records and a copy of the permanent Certificate of Occupancy issued for the Project.**

32.2 It is agreed by OWNER and or FUNDING SOURCE that all payments will be made to DEVELOPER. DEVELOPER will disburse funds in a timely manner. The afore mentioned budget that is supported by the GMAX clause is considered total project budget and the DEVELOPER will disburse funds per DEVELOPERS discretion. No third-party title company will be granted permission to disburse funds to any company or individual on behalf of funding group. Each application for payment shall be submitted on the form approved by OWNER.

**SECTION THIRTY-THREE.**
**DISCHARGE OF LIENS AND PAYMENT OF SUBCONTRACTORS.**

33.1     DEVELOPER and CONTRACTOR warrants that, upon payment, OWNER shall receive clear title to all Work identified in the application for payment, free and clear of all liens and Claims, including Claims of Subcontractors, employees or Material Suppliers. CONTRACTOR also agrees that this vesting of title in OWNER does not impose any obligation on OWNER or relieve CONTRACTOR from any obligation under this contract. CONTRACTOR shall remain responsible for damage to or loss of both the Work and stored materials until Completion.

33.2     DEVELOPER and CONTRACTOR warrants and guarantees that no Work, materials, or equipment covered by a request for payment has been acquired by DEVELOPER and CONTRACTOR or by any other person performing the Work or furnishing materials or equipment for the Project subject to an agreement under which an interest therein, or an encumbrance thereon, has been retained by seller or otherwise imposed by CONTRACTOR.

33.3     DEVELOPER and CONTRACTOR shall furnish, with each application for payment, and as a condition to Owner's obligations to pay, executed waivers of liens from DEVELOPER and CONTRACTOR and each Subcontractor and Material Supplier to the Project in the amount of the application for payment. Waivers of liens shall be in a form satisfactory to OWNER, title insurer, and lenders.

33.4     DEVELOPER shall disburse funds received from OWNER among DEVELOPER and CONTRACTOR, subcontractors and material suppliers in proportion to the work done and materials received for the project during the pay period.

**SECTION THIRTY-FOUR. INTEREST.**

34.1     Payments due and not paid under the Contract Documents shall bear interest from the date payment is due at a monthly rate of **TEN PERCENT (10%)**.

34.2     Payment of interest does not abrogate or replace any other rights DEVELOPER and CONTRACTOR may have under this agreement.

**SECTION THIRTY-FIVE. FINAL PAYMENT.**

35.1   DEVELOPER and CONTRACTOR will apply for final payment and will notify OWNER'S Representative when the work has been completed. OWNER'S Representative will issue a certificate of completion on determination that the Project is complete and in compliance with the Contract Documents. When the certificate of completion is issued, the entire unpaid balance of the contract amount, including any retainage, is payable to DEVELOPER.

35.2   Making of final payment constitutes waiver of all Claims by OWNER against DEVELOPER and CONTRACTOR except those Claims previously made in writing and delivered to DEVELOPER and CONTRACTOR and those obligations otherwise provided by this agreement or by operation of Law.

35.3   The acceptance of final payment by CONTRACTOR constitutes a complete and unconditional waiver and release of any and all Claims by CONTRACTOR of whatever nature, and regardless of whether they are then known or unknown, and a complete and unconditional release of OWNER, and every person for whom OWNER is responsible, for any and all matters related to the contract or otherwise, except those Claims which have been made in writing and identified by CONTRACTOR as not having been settled at that time.

### SECTION THIRTY-SIX.  CHANGES IN WORK.

36.1   Except as required by changes in the Prime Contract between OWNER and DEVELOPER, no change to this contract (including Modification, clarification, interpretation or correction of the Plans or Specifications) shall be made without agreement and a written Change Order signed by DEVELOPER and CONTRACTOR and OWNER identifying the change, the cost of the change, and the effect on Project Schedule, if any.

36.2   Any change in Plans, Specifications or Contract Documents necessary to conform to existing or future Laws, codes, ordinances or regulations shall be considered Extra Work.

36.3   Changes in the Work required due to defects or inconsistencies in Plans or Specifications or other Contract Documents shall be considered Extra Work.

36.4   The charge for Extra Work shall be the normal selling price DEVELOPER and CONTRACTOR charges for similar changes on other jobs.

36.5 Failure of DEVELOPER and CONTRACTOR and OWNER to agree on the terms of a Change Order shall be resolved under the provisions of this agreement which cover Claims and disputes.

36.6 Should DEVELOPER and CONTRACTOR and OWNER fail to agree promptly on the terms of a Change Order, DEVELOPER and CONTRACTOR shall be paid, pending resolution of the dispute, the portion of the cost of the change not in dispute, including the costs of time and materials required to execute the change. Payments required under this paragraph shall be made as the Work progresses, concurrently with progress payments.

### SECTION THIRTY-SEVEN.  COOPERATION OF THE PARTIES.

37.1   OWNER and DEVELOPER acknowledge that open communication and cooperation will be required to complete the Project on time, as estimated, and in compliance with the Contract Documents. DEVELOPER and OWNER each agree to identify a representative who will be available to resolve minor problems, answer questions and reach mutually acceptable solutions. The individuals identified by DEVELOPER and OWNER shall try to reach informal agreement on problems as they arise but are under no obligation to do so.

37.2   Both DEVELOPER and OWNER pledge that their relations will be conducted with courtesy and consideration in an environment characterized by mutual respect. OWNER pledges to respond promptly to requests by DEVELOPER for guidance, assistance and payments when due and agrees to extend to DEVELOPER the deference and latitude a dedicated professional deserves. CONTRACTOR pledges to commit the skill and resources required to complete the Project in a manner that complies with both the letter and spirit of the

Contract Documents and enhances the reputation of DEVELOPER and for dependability and professionalism.

## SECTION THIRTY-EIGHT. WARRANTY.

38.1 DEVELOPER and CONTRACTOR warrant that the Work shall be free of Defects due to faulty material or workmanship for the period specified in this agreement.

**38.1(a)** General **Requirements.**

38.1(a)(I)      Except as otherwise provided in this agreement, the warranty period shall begin from the date of Completion for 12 months.

38.1(a)(ii)      Work done by CONTRACTOR in compliance with warranty provisions of this agreement does not extend the period of the warranty.

38.1(a)(iii)      DEVELOPER and CONTRACTOR shall deliver to OWNER all warranties provided by vendors and manufacturers of materials and equipment used to complete the Project. DEVELOPER and CONTRACTOR shall have no obligation under warranties provided by others except to render any assistance that OWNER may require in enforcing the terms of those warranties.

38.1(a)(iv)      Except as provided in this agreement, and to the extent permitted by Law, DEVELOPER and CONTRACTOR disclaims all warranties, whether express or implied, whether of fitness for purpose, merchantability, habitability or workmanlike completion.

38.1(a)(v)      Failure of OWNER to give notice of a breach of warranty within the warranty period constitutes a waiver of the right to repair or replacement by DEVELOPER and CONTRACTOR.

38.1(a)(vi)      To make a warranty Claim under this agreement, OWNER must send a clear and specific written complaint to DEVELOPER and CONTRACTOR at the following address within 60 Calendar Days of discovering Defects, unless otherwise specified in the list of items covered under this warranty. DEVELOPER and CONTRACTOR shall make repairs, replacements and corrections promptly and at no expense to OWNER.

**38.1(b) Exclusions from Warranty**

38.1(b)(i) The warranty provided by this contract does not cover any of the following items or conditions:

38.1(b)(i)(A) Damages to private property or bodily injury.

38.1(b)(i)(B) Damages or losses that result from soil movement that is covered by insurance or that is compensated for by legislation.

38.1(b)(i)(C)      Insect damage.

38.1(b)(i)(D)      Damage or losses that result from overloading of any floor, wall, ceiling, or roof

beyond the design capacity.

38.1(b)(i)(E) Damages caused or made worse by:

38.1(b)(i)(E)(1)      Changes, additions, deletions, or any other alterations made to any part of the structure by anyone other than DEVELOPER and CONTRACTOR after the warranty term begins.

38.1(b)(i)(E)(2)      Loss that results from failure of OWNER to take timely action to mitigate or minimize damage.

38.1(b)(ii) DEVELOPER and CONTRACTOR has no liability for incidental or consequential damages from breach of any warranty provided by this agreement insofar as the loss claimed is covered by insurance of OWNER or for which OWNER has a right of recovery from any other party.

38.1(b)(iii) Basic **Warranty Coverage**

It is a breach of warranty if any material or design furnished, or workmanship performed by DEVELOPER and CONTRACTOR or any Subcontractor or Material Supplier, is found to be defective during the first year.

38.1(b)(iv) Warranty **on Major Structural Damage**

It is a breach of the major structural damage warranty where there is actual physical damage to designated load-bearing portions of the structure caused by the failure of such designated portions to perform to their load-bearing functions to the extent that it makes the structure unsafe, uninhabitable, or unsanitary during the first 12 months. The following items are designated load-bearing portions:

(A)    Foundation Systems and Footings
(B)    Beams
(C)    Girders
(D)    Lintels
(E)    Columns
(F)    Walls and Partitions
(G)    Floor Systems
(H)    Roof Framing Systems

### SECTION THIRTY-NINE.  DEVELOPER AND CONTRACTOR CLAIMS.

If DEVELOPER and CONTRACTOR claims that any instruction, Drawing, act or omission of OWNER or any representative of OWNER, or any agency of government, increases costs to DEVELOPER and CONTRACTOR, requires extra time or changes the Scope of Work, CONTRACTOR shall have the right to assert a Claim for such costs or time.

## SECTION FORTY. NOTICE OF CLAIMS.

40.1 No Claim by DEVELOPER and CONTRACTOR shall be considered unless DEVELOPER and CONTRACTOR provide OWNER or OWNER'S Representative with a notice that there will be a Claim for additional compensation or an extension of time. This notice of Claim shall be made no less than 5 Calendar Days after DEVELOPER and CONTRACTOR recognizes or should have recognized that circumstances exist which support such a Claim. The notice of Claim shall include: (a) The date of the notice, (b) The date the basis for the Claim was discovered, (c) The circumstances that support the Claim, and (d) The estimated additional cost to OWNER or additional time required to complete the Project.  Owner shall have exclusive authority and discretion to approve or deny any claim.

40.2 If the Claim involves Extra Work, DEVELOPER and CONTRACTOR shall maintain detailed records which show each expense incurred, including payroll records and receipts for Subcontracted Work, materials and equipment. These detailed records shall be made available to OWNER for verification while Work subject to the Claim is being performed. Developer and Contractor shall obtain written approval from Owner prior to performing any extra work.

40.3 The amount Claimed by CONTRACTOR shall be calculated in accord with provisions in this contract on charges for Extra Work.

## SECTION FORTY-ONE. DISPUTE RESOLUTION.

41.1   **Choice of Forum, Law and Venue**

About any controversy in any way arising out of or relating to the execution or performance of the Agreement, the method of binding dispute resolution shall be litigation and the parties hereby irrevocably agree that any suit, action, or legal proceeding shall be brought in the U.S. District Court for the Middle District of Florida, unless such court lacks jurisdiction, in which case, a state court of record in Manatee County, Florida.  The parties further irrevocably (i) consent to the jurisdiction of such federal or state court in any such suit, action, or legal proceeding, (ii) waive any objection to the laying of venue of any such suit, action, or legal proceeding in such federal or state court, and (iii) waive any defense based upon inconvenient forum or improper venue.  The parties further agree that all disputes arising out of or relating to the Agreement or the performance of it by either party shall be adjudicated solely by and be governed by the laws of the State of Florida without regard to conflicts of law analysis.

41.2   **Attorneys' Fees**.

If either party brings an Action to enforce their rights under this agreement, the prevailing party may recover its expenses (including reasonable attorneys' fees) incurred in connection with the Action and any appeal from the losing party.

## SECTION FORTY-TWO. INSURANCE.

**42.1   Certificates of Insurance**

42.1(a) DEVELOPER and CONTRACTOR shall provide to OWNER a certificate of insurance for each insurance policy required by this agreement. These certificates shall list OWNER as the

certificate holder.

42.1(b) Certificates of insurance shall be issued on a standard form.

42.1(c)      DEVELOPER and CONTRACTOR shall permit no Subcontractor to begin Work on the Project until OWNER has received certificates of insurance demonstrating that the Subcontractor has coverage of a like kind and with comparable limits to insurance coverage required of DEVELOPER and CONTRACTOR under this agreement.

## 42.2   Waivers of Subrogation

OWNER and DEVELOPER and CONTRACTOR waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance except such rights as may exist to the proceeds from insurance held by OWNER as trustee. DEVELOPER and CONTRACTOR shall require similar waivers in Subcontracts for the Project.

## 42.3   Insurance Details

42.3(a) **If** insurance policies meeting the Requirements of this contract are not generally available to DEVELOPER and CONTRACTOR.  DEVELOPER and CONTRACTOR may provide substantially similar coverage and shall so notify OWNER in writing.

42.3(b) **DEVELOPER** and CONTRACTOR may satisfy the policy limits set by this contract through any combination of underlying and excess liability (umbrella) insurance so long as the total coverage is not less than the policy limits specified in this contract. Any excess liability (umbrella) insurance coverage provided by CONTRACTOR must be written on an occurrence basis, offer coverage at least as broad as the underlying insurance, and have concurrent effective dates. Excess liability (umbrella) insurance provided by DEVELOPER and CONTRACTOR shall provide additional insured endorsements, blanket contractual coverage, and punitive damages coverage (unless prohibited by Law).

## 42.4   Liability Insurance

42.4(a) **As** an alternative to including OWNER as an additional insured under a comprehensive general liability policy, DEVELOPER and CONTRACTOR may provide an OWNER'S and CONTRACTOR's Protective Liability Policy. If DEVELOPER and CONTRACTOR are unable to procure the minimum amounts of insurance in a single policy, CONTRACTOR may provide required policy limits through a combination of a primary OCP Policy and one or more excess policies. OWNER shall be the named insured on the Policy and, if applicable, the excess policy. Each policy shall be endorsed to include each Subcontractor of every Tier as the CONTRACTOR designated in the declarations.

42.4(b) **Minimum** CONTRACTOR's liability coverage shall be: $2,000,000 combined bodily injury and property damage single occurrence limit, annual aggregate limit of $2,000,000, products and completed operations aggregate limit of $1,000,000, personal and advertising injury aggregate limit of $1,000,000.

## 42.5   Builder's Risk Insurance

42.5(a) OWNER shall provide builder's risk insurance covering property damage to the Project during the construction period. OWNER accepts the risk of damage to the Work during construction and agrees to Indemnify and hold harmless DEVELOPER and CONTRACTOR and Subcontractors at any Tier from losses resulting from uninsured damage to the Work prior to final payment under this agreement.

42.5(b) Builder's risk insurance shall include a loss payable provision naming OWNER as loss payee. OWNER shall have the power to adjust and settle Claims resulting from builder's risk insurance.

42.5(c)     Policy limits for builder's risk coverage shall be no less than the completed replacement value of the Project including the value of Change Orders.

## SECTION FORTY-THREE. LIABILITY FOR DAMAGES.
## (DEVELOPER AND CONTRACTOR LIABILITY FOR DAMAGES)

DEVELOPER and CONTRACTOR shall have no liability for damage to or loss of OWNER'S private property left on the Job Site unless such damage or loss is the direct result of intentional or negligent acts by DEVELOPER and CONTRACTOR.

## SECTION FORTY-FOUR. INDEMNITY.

44.1     DEVELOPER and CONTRACTOR shall defend, Indemnify, and hold harmless OWNER and all officers, employees, agents, and consultants of OWNER from and against all and any losses, liability, Claims, costs, damages and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from performance of Work under this agreement provided such loss, liability, costs, damage and economic detriment is attributable to bodily injury, sickness, disease or death, or to injury or destruction of property (other than the Work itself) caused by the negligent acts or omissions of DEVELOPER and CONTRACTOR, a Subcontractor, or anyone directly or indirectly employed by them, or whether caused by or contributed to by OWNER, unless caused by the sole negligence of OWNER.

44.2     Indemnification of OWNER is limited to the extent of insurance coverage required to be carried by DEVELOPER and CONTRACTOR under this agreement.

44.3     Indemnification under this agreement shall not exceed any limitation on the amount or type of damages, compensation, or benefits payable by or for DEVELOPER and CONTRACTOR or any Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

## SECTION FORTY-FIVE. INTERPRETATION OF THE CONTRACT.

45.1     Section headings and paragraph numbers have been included in this contract to refer easier and in no way limit, define, or enlarge the terms, scope, or conditions of this contract.

45.2     Except as otherwise provided in this contract, OWNER and DEVELOPER and CONTRACTOR intend that this contract be interpreted in accord with the *Restatement of Law, Contracts*, published by the American Law Institute. Specifically: All parts of the Contract Documents should be interpreted together and conduct of the Parties should be interpreted as a

manifestation of intention, and specific provisions should be interpreted as qualifying the meaning of the general provisions.

## SECTION FORTY-SIX. DEALING WITH PLAN DEFECTS.

46.1      At any time, DEVELOPER and CONTRACTOR may request an interpretation or clarification of the Contract Documents from OWNER or OWNER'S Representative. OWNER or OWNER'S Representative shall reply with a written interpretation, clarification, or detailed instructions within a reasonable time.

46.2      DEVELOPER and CONTRACTOR will rely on the Contract Documents as the final authority on what is included in the Project. The Contract Documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction DEVELOPER and CONTRACTOR doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. CONTRACTOR bears no responsibility for defects in the Contract Documents.

46.3      Unless DEVELOPER and CONTRACTOR has asked for and received a written clarification from OWNER in time to prevent delay in the Work, any omission or ambiguity in the Contract Documents shall be interpreted as requiring the material or construction technique necessary to produce the greater quantity and better quality of Work.

46.4      DEVELOPER and CONTRACTOR will report promptly to OWNER any design defects likely to result in problems during construction of the Project. However, DEVELOPER and CONTRACTOR is not a licensed architect or engineer and have no obligation to detect ambiguities, inconsistencies or omissions in the Contract Documents. While acting in good faith, DEVELOPER and CONTRACTOR is entitled to rely on the Work of a trained design specialist selected by and responsible to OWNER.

46.5    DEVELOPER and CONTRACTOR is entitled to rely on dimensions and descriptions shown in the Contract Documents when ordering materials for Installation.

46.6      Ambiguities, inconsistencies and omissions in the Contract Documents are design defects, not errors by DEVELOPER and CONTRACTOR. The cost of correcting design defects shall be at the expense of OWNER.

46.7    If inconsistent, approved changes to the Contract Documents take precedence over the original Contract Documents. Subsequent changes to the Contract Documents take precedence over prior changes to the Contract Documents.

46.8    If inconsistent, the construction Drawings take precedence over the Specifications.

46.9  If anything in the construction Specifications is inconsistent with anything else in the construction Specifications: (a) A product performance Requirement takes precedence over a named product or manufacturer, and (b) Other clauses in the Specifications take precedence over anything incorporated by reference into the Specifications.

46.10     If anything in the construction Drawings is inconsistent with anything else in the construction Drawings: (a) Dimensions written in numbers take precedence over scaled measurements, (b) Notes and schedules take precedence over lines on the Drawings, (c) Large scale Drawings take precedence over small scale Drawings, (d) Schedules take precedence over notes or other directions, (e) Specific notes take precedence over general notes, and (f) Bottom elevations of footings take precedence over any general notes.

46.11     If inconsistent, other Contract Documents take precedence over any manual, industry standard, recommendation, regulation, and set of guidelines, code, or instructions incorporated by reference into the Contract Documents.

46.12     If inconsistent, any portion of the Contract Documents written in longhand takes precedence over anything printed in the Contract Documents.

46.13     DEVELOPER and CONTRACTOR has no liability for any omission, inconsistency or ambiguity in the Contract Documents or for any discrepancy between physical conditions at the Job Site and the Contract Documents, unless DEVELOPER and CONTRACTOR fails to report the error to OWNER or OWNER'S Representative.

## SECTION FORTY-SEVEN. ENTIRE AGREEMENT.

The Contract Documents are the entire agreement and constitute a complete integration of all understandings between DEVELOPER, CONTRACTOR, and OWNER about the Project. The Contract Documents supersede all prior negotiations, representations and agreements, whether written or oral. No subsequent notation, renewal, addition, deletion, change or amendment to this contract shall have any force or effect unless in the form of a written Change Order or amendment to this contract.

## SECTION FORTY-EIGHT. AUTHORSHIP; REPRESENTATION BY COUNSEL.

DEVELOPER, CONTRACTOR, and OWNER agree that the terms and language of this Agreement were the result of negotiations between the DEVELOPER, CONTRACTOR, and OWNER and, as a result, there shall be no presumption that any ambiguities in this Agreement shall be resolved against any party. Any controversy over construction of this Agreement shall be decided without regard to events of authorship or negotiation.  Furthermore, DEVELOPER, CONTRACTOR, and OWNER acknowledge that it has been represented by independent counsel of its choice throughout all negotiations that have preceded the execution of this Agreement.

## SECTION FORTY-NINE. SEVERABILITY.

If any provision of this contract is interpreted or rendered invalid and unenforceable, then the remainder of this contract shall remain in full force and effect.

## SECTION FIFTY. CUMULATIVE REMEDIES.

All rights and remedies provided to DEVELOPER and CONTRACTOR by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to CONTRACTOR at Law or in equity.

## SECTION FIFTY-ONE. MATERIALS AND SUBSTITUTIONS.

51.1    When the Specifications refer to materials or equipment by performance standard (such as an ASTM identifier), DEVELOPER and CONTRACTOR may select for Installation any product or equipment meeting that standard. When several products or manufacturers are identified as acceptable in the Specifications, DEVELOPER and CONTRACTOR has the option of using any of the products or selecting any of the manufacturers listed without seeking approval from OWNER or OWNER'S Representative.

51.2    Except as stated otherwise in the Specifications, any reference in the Specifications to a brand, make, manufacturer, or model denotes only characteristics of quality, workmanship, economy of operation and suitability for the intended purpose. DEVELOPER and CONTRACTOR may use any substantially equivalent material, equipment, or article if approved in advance of Installation by OWNER or OWNER'S Representative.

51.3    All materials and equipment used on the Project shall comply with Specifications in the Contract Documents unless a substitution is approved in advance of Installation by OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall apply to OWNER or OWNER'S Representative for approval of a substitute material when: (a) Any item specified is found to be unusable or unavailable when needed for Installation, or (b) The item specified is considered inferior to an equivalent item which is readily available at a Similar cost. With the application, DEVELOPER and CONTRACTOR shall include documentation: (a) Demonstrating that essential features of the substitute item are equal to or exceed similar features of the item specified, and (b) Listing delivered prices for the substitute item based on Material Supplier quotations. OWNER or OWNER'S Representative may deny any application for substitution if not in the best interest of OWNER. If approved, any savings in cost that result from the substitution will be credited to OWNER. No request for substitution of material shall constitute grounds for extension of the Contract Time. Proposed substitutions shall not be purchased or installed without approval of the substitution by OWNER or OWNER'S Representative.

## SECTION FIFTY-TWO. INSPECTIONS.

52.1 DEVELOPER and CONTRACTOR shall schedule and coordinate all Inspections required by the Contract Documents and by public authority so as not to delay the progress of the Work or the Work of OWNER or Separate CONTRACTORs. If the Contract Documents require that an Inspection be witnessed or attended by OWNER or OWNER'S Representative, DEVELOPER and CONTRACTOR shall give notice of the time and place of the Inspection. DEVELOPER and CONTRACTOR shall schedule Inspections during regular Work Days and normal business hours, unless mutually agreed by DEVELOPER and CONTRACTOR, OWNER, and Inspector.

52.2    Insofar as applicable and except where superseded by other provisions of the Contract Documents or by government regulation, Inspection of the following Work will be required on the Project: (a) Bearing surfaces of excavations before concrete is placed, (b) Reinforcing steel after Installation and before concrete is poured, (c) Structural concrete when poured, (d) Structural framing after erection and prior to being covered or enclosed, (e) Steel welding, (f) Mechanical and plumbing Work following Installation and prior to being covered or enclosed, (g) Electrical Work following Installation and prior to being covered or enclosed, (h) Above-ceiling Work when

complete but before the finish ceiling material is installed, and (I) Final Inspections prior to occupancy.

52.3     If an Inspection reveals Work of DEVELOPER and CONTRACTOR not in compliance with the Contract Documents or not in compliance with any code or statute, DEVELOPER and CONTRACTOR shall bear the costs of correction, the cost of repeating the Inspection, and any related costs, including reasonable charges by OWNER or OWNER'S Representative for additional services.

## SECTION FIFTY-THREE. THE CONSTRUCTION SCHEDULE.

53.1     DEVELOPER and CONTRACTOR shall prepare and submit to OWNER for review and approval an estimated progress Schedule for the Work showing completion within the Contract Time. This progress Schedule shall identify expected starting and completion dates for each part of the job and identify tasks critical to timely completion of the Work.

53.2     DEVELOPER and CONTRACTOR may select any type of Schedule which: (a) Is suitable for monitoring progress of the Work, (b) Provides easy access to information about the timing of decisions OWNER must make and acts OWNER must perform, (c) Includes sufficient detail to demonstrate adequate planning for the Work, and (d) Presents a practical plan to complete the Work in an acceptable time.

53.3     DEVELOPER and CONTRACTOR shall plan, develop, supervise, control, and coordinate the performance of the Work so that job progress, sequence and timing conform to the construction Schedule. If DEVELOPER and DEVELOPER and CONTRACTOR falls materially behind the currently approved construction Schedule, OWNER may require DEVELOPER and CONTRACTOR to prepare and submit for approval, at no cost to OWNER, a plan for completing the Project within the Contract Time. Failure to submit a plan meeting this Requirement shall constitute grounds for termination under the terms of this agreement.

53.4     The Schedule shall allow for and depict the following: (a) Beginning and Completion Dates of each significant task (Work breakdown structure) in the job, (b) Delivery and approval of each Submittal, Samples and Shop Drawing, (c) Inspections and tests, (d) The Work of Subcontractors and Separate CONTRACTORs, and (e) Order dates and delivery dates of significant equipment and key materials. The construction Schedule shall include a legend which identifies the meaning of each symbol and abbreviation.

## SECTION FIFTY-FOUR.  EXTENSION OF THE TIME FOR COMPLETIONS.

54.1   OWNER shall execute a Change Order for Excusable Delay by extending the Contract Time for the period of the delay. Any of the following shall constitute excusable delay for which the Contract Time shall be extended: (a) Strike, boycott, embargo, terrorism, armed rebellion, quarantine or other obstructive action by employees, labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or, order of government authority, and (b) Fire, flood, earthquake, tornado, tidal wave, lightning, rain, snow, temperature under 32 degrees, casualty loss, epidemic, or unusually adverse weather.

54.2     For delay in delivery of materials, FF&E, equipment or for a shortage of labor that

results from unforeseeable circumstances beyond the control and without fault or negligence of either DEVELOPER and CONTRACTOR, or any Subcontractor or Material Supplier of DEVELOPER and CONTRACTOR, OWNER will grant an extension of the Contract Time if: (a) DEVELOPER and CONTRACTOR,  notifies OWNER or OWNER'S Representative promptly on discovery of the anticipated shortage, (b) DEVELOPER and CONTRACTOR,  substantiates the delay as unavoidable with a detailed chronology of events and all relevant correspondence, and (c) DEVELOPER and CONTRACTOR, provides an estimated date when the material, equipment or labor will be available.

54.3      Any Change Order granted for Excusable Delay shall have no effect on a Claim by DEVELOPER and CONTRACTOR, for damage from the same delay for interruption, hindrance, or disruption.

**SECTION FIFTY-FIVE. DEVELOPER AND CONTRACTOR CLAIMS FOR DELAY.**

55.1     The Contract Price shall be adjusted for any increase in the cost of performance of this contract caused by suspension, delay or interruption of the Work due to: (a) An error or omission in the Contract Documents, (b) A decision of OWNER to change the Scope of the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR, (c) A decision of OWNER to suspend the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR, (d) A failure by OWNER or OWNER'S Representative to comply with the construction Schedule, (e) Any act or neglect of OWNER or agent of OWNER or any Separate DEVELOPER and CONTRACTOR, (f) Failure of OWNER to yield control of the Job Site to DEVELOPER and CONTRACTOR, or (g) Failure of OWNER to make payments when due under the terms of this agreement.

55.2   Within 3 Working Days after receipt of a notice of Claim for compensation for suspension, delay, or interruption, OWNER shall: (a) Respond with a resolution, remedy, or direction to alleviate the delay, (b) Respond with a notice rejecting the Claim for delay, or (c) Respond with a draft Change Order accepting the Claim for delay. If the issue is not then resolved, DEVELOPER and CONTRACTOR, may request a Change Order.

55.3      No change in the Contract Time for completion or the Contract Price shall become part of the Contract Documents without a Change Order.

55.4  Compensation to DEVELOPER and CONTRACTOR, for suspension, delay, or interruption of Work shall include direct overhead (Job Site) expense, a proportionate share of unabsorbed indirect (home office) overhead expense, lost efficiency and lost profit taken as 15 percent of total compensable expenses. Direct overhead costs shall include, without limitation: (a) Labor (with taxes, insurance and fringe benefits) for the idle work force, (b) The fair rental cost of idle equipment (such as vehicles, construction tools and equipment), (c) Facilities (such as temporary structures, water, power, phone, and toilets), (d) The additional cost of Bonds and insurance, (e) Similar direct overhead costs of Subcontractors to whom DEVELOPER and CONTRACTOR, is liable for damages that result from the delay, and (f) Demobilization and re-mobilization costs. Unabsorbed indirect overhead costs shall include, without limitation, the proportionate share of office rent, office supplies, office utilities, office equipment, advertising, professional fees, management salaries, technical services, estimating, selling, accounting, bookkeeping and clerical expense, business licenses, taxes (except income taxes), and

insurance.

## SECTION FIFTY-SIX. LIQUIDATED DAMAGES.

56.1     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the Contract Time are considered reasonable by OWNER and DEVELOPER and DEVELOPER and CONTRACTOR, any neglect, refusal or failure of DEVELOPER and CONTRACTOR to reach Substantial Completion within the Contract Time, plus approved extensions of that time, will result in damage to OWNER impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and CONTRACTOR or which may become due CONTRACTOR the sum of $150.00 as liquidated damages for each Calendar Day that Substantial Completion is delayed beyond the Contract Time, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

56.2     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the time for Completion are considered reasonable by OWNER and CONTRACTOR. Any neglect, refusal or failure of DEVELOPER and CONTRACTOR, to reach Completion within the time provided in this contract, plus approved extensions of that time, will result in damage in the form of inconvenience, loss of opportunities, and higher Inspection, Superintendence, and administrative costs to OWNER. These costs are impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and DEVELOPER and CONTRACTOR or which may become due DEVELOPER and CONTRACTOR, the sum of $150.00 as liquidated damages for each Calendar Day that Completion is delayed beyond the time provided in this contract, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

56.3     Achieving Substantial Completion sooner than the Contract Time, plus approved extensions of that time, shall earn additional compensation to DEVELOPER and CONTRACTOR of $ N/A for each Calendar Day that Substantial Completion is achieved prior to the Contract Time, plus approved extensions of that time.

56.4     DEVELOPER and CONTRACTOR, shall not be charged liquidated damages for any failure, neglect or refusal to complete the Work on Schedule to the extent that the proximate cause of the delay was: (a) Strike, boycott, embargo, terrorism, armed rebellion, quarantine, delay in delivery of FF&E, or other obstructive action by employees, franchise owner, franchisor or labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or by order of government authority, (b) Fire, flood, earthquake, tornado, tidal wave, lightning, casualty loss, epidemic, rain, snow or unusually adverse weather, (c) Any delay of Subcontractors or vendors resulting from items listed in sections a or b above, or (d) Any act or omission of OWNER or anyone acting on behalf of OWNER.

56.5     Except as provided elsewhere in this contract, liquidated damages are the exclusive damage remedy for OWNER for any failure of DEVELOPER and CONTRACTOR to complete Work per Schedule. No damages of any other type or description shall be awarded OWNER for failure of DEVELOPER and CONTRACTOR to comply with the construction Schedule.

## SECTION FIFTY-SEVEN. CONSEQUENTIAL DAMAGES.

DEVELOPER and CONTRACTOR, and OWNER waive all Claims for consequential damages against each other, their respective officers, directors, partners, employees, agents, consultants and Subcontractors, arising out of or relating to this contract or the termination of this contract, except those consequential damages covered by insurance or specifically provided elsewhere in this agreement.

## SECTION FIFTY-EIGHT. RIGHT TO STOP WORK FOR NON-PAYMENT.

58.1    If DEVELOPER and CONTRACTOR, is not paid any amount not in dispute within 7 Calendar Days after the date due, CONTRACTOR shall post on the Job Site and deliver to OWNER and all Subcontractors a notice of intention to stop the Work if payments then due are not received in full within 10 Calendar Days. Thereafter, CONTRACTOR may suspend the Work until delinquent payments have been received, pursuant to Florida code.

58.2    Neither DEVELOPER and CONTRACTOR, nor Surety of CONTRACTOR, nor any Subcontractor of DEVELOPER and CONTRACTOR shall be liable for delay or damage that OWNER may suffer as a result of suspension of the Work for failure to receive payments due under this agreement so long as: (a) Work was suspended by DEVELOPER and CONTRACTOR in compliance with the terms of this contract and with applicable Law, and (b) There is no good faith dispute that payment is due DEVELOPER and CONTRACTOR,  at the time of suspension. A good faith dispute exists if OWNER provides: (a) A list of specific reasons for nonpayment, including labor, materials, or equipment not in compliance with the Contract Documents, and (b) CONTRACTOR is afforded a reasonable opportunity to correct the Defects cited or issue a credit compensating OWNER for Defects that cannot be cured promptly.

## SECTION FIFTY-NINE.  EARLY PARTIAL OCCUPANCY.

59.1    Without prior approval of DEVELOPER and CONTRACTOR, OWNER shall not occupy or use any portion of the Work until Substantial Completion of the Project. If OWNER occupies or uses any portion of the Work before Substantial Completion of the Project and without prior approval of DEVELOPER and CONTRACTOR, the portion or portions used or occupied shall be considered complete, finished, accepted and the responsibility of OWNER.

59.2    No Partial Use or occupancy of the Work by OWNER shall commence prior to Substantial Completion without a Change Order confirming the responsibility of OWNER for maintenance, utilities, operation of equipment, and security during early Partial Use or occupancy.

59.3    If any portion of the Project is used or occupied by OWNER prior to Substantial Completion and if the Project is not completed within the Contract Time, liability of DEVELOPER and CONTRACTOR, for delayed completion shall be reduced by the proportion of the Project used or occupied by OWNER and for the time used or occupied by OWNER prior to Substantial Completion.

## SECTION SIXTY. SUBSTANTIAL COMPLETION.

60.1     When, in the opinion of DEVELOPER and CONTRACTOR, the Work is Substantially Complete, DEVELOPER and CONTRACTOR shall prepare a preliminary Punch List of Work remaining to be done and deliver that Punch List to OWNER'S Representative with a request for evaluation of Substantial Completion. If, in the opinion of OWNER'S Representative, items on the preliminary Punch List are consistent with Substantial Completion, OWNER'S Representative shall conduct an Inspection of the Work to evaluate compliance with the Contract Documents.

60.2 Before OWNER takes possession or occupancy of the Project, DEVELOPER and CONTRACTOR, shall receive a comprehensive Punch List of discrepancies to be corrected or Work to be finished by CONTRACTOR and a date for completing this Work. DEVELOPER and CONTRACTOR, shall complete and correct items on the Punch List by the designated date.

60.3   The Punch List given to DEVELOPER and CONTRACTOR, is a complete and final list of Defective or incomplete Work on the Project. OWNER shall be deemed to have accepted Work not on the Punch List. Nothing in this paragraph shall be interpreted as relieving DEVELOPER and CONTRACTOR, of the obligation to meet warranty and call-back obligations.

60.4     DEVELOPER and CONTRACTOR, shall annotate the Punch List with: (a) A detailed breakdown of the Work required to complete or correct each item, (b) The Subcontractor or trade responsible for the Work, and (c) The dates Work will commence and be finished on each item. No annotation is required for any item on the Punch List which is beyond the control of DEVELOPER and CONTRACTOR. Failure of CONTRACTOR to furnish a detailed completion Schedule for items on the Punch List shall constitute grounds for withdrawing acknowledgment of Substantial Completion.

60.5   OWNER'S Representative will prepare a certificate of Substantial Completion for signature by OWNER and DEVELOPER and CONTRACTOR, when the Project or a specific portion of the Project is ready for occupancy. Except as otherwise provided in the Contract Documents, signing of the certificate of completion shall: (1) Transfer to OWNER responsibility for maintenance, safety, utility expense, controlling access at the site, and (2) Begin running of any warranty or call-back period on the Project.

60.6   after Substantial Completion, DEVELOPER and CONTRACTOR, shall remain responsible for: (a) Damage caused by DEVELOPER and CONTRACTOR, while completing the Work, and (b) Safety of crews when completing the Work.

## SECTION SIXTY-ONE. DELIVERY OF NOTICES.

60.1   Any written notice required by this contract can be: (a) Delivered by hand at the last known address of the addressee, or (b) Delivered by hand to the addressee or representative of the addressee, wherever found. Notice is effective upon delivery.

60.2   Any written notice required by this contract can be: (a) Delivered by enclosing in a stamped envelope addressed to the last known address of the intended recipient and either deposited in a United States Postal Service mailbox or given to a USPS employee, or (b) Consigned to a commercial courier service and addressed to the last known address of the intended recipient. Notice is effective upon delivery if proof of delivery is provided; where no proof of delivery is available, notice is effective 5 Calendar Days after mailing or consignment to a courier service.

**[PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE TO FOLLOW]**

SIGNATURES

The signatures that follow constitute confirmation by those signing that they have examined and understand the Contract Documents and agree to be bound by the terms of these documents.

DEVELOPER and CONTRACTOR may not begin Work before receiving from OWNER a written notice to proceed. Any Work performed by DEVELOPER and CONTRACTOR before receipt of the notice to proceed shall be done at the risk of DEVELOPER and CONTRACTOR and without obligation of OWNER.

This agreement is entered as of the date written below.


**OWNER Name:**

**CHC-4684 PATTERSON AVE WINSTON SALEM LANDCO LLC,**
**a Florida limited liability company**

FG-MGR, LLC, a Maryland limited liability company
Manager

BY: _____
        Pun For Li, Manager

Date: ____2018-03-26____


**DEVELOPER:**

REDSTONE, LLC, a Tennessee limited liability company
D/B/A AMERICAN DEVELOPMENT PARTNERS


BY: _____
        Manny Butera, Developer and Authorized Signatory
        on behalf of REDSTONE, LLC
Date: __3/26/18__

## Glossary of Terms

**Beneficial Occupancy** refers to OWNER'S use of the project premises after Substantial Completion but prior to Completion. Beneficial Occupancy may occur when the project or some portion is sufficiently complete and systems operational such that the OWNER could, after obtaining necessary approvals and certificates, occupy and utilize the space for its intended purpose. The time limit for warranties applicable to that portion of the Work begin on the date the OWNER begins Beneficial Occupancy, unless otherwise specified in this Agreement.

**Bond** means the security offered by a licensed surety company which may be used to satisfy a claim of failure to perform obligations undertaken in this Agreement.

**Calendar Day** means any day shown on the calendar beginning at midnight and ending at midnight the following day. Contrast the term Work Day which excludes Saturdays, Sundays and state-recognized holidays.

**Certification of Payment** is acknowledgment by someone not a party to this Agreement that CONTRACTOR is entitled to payment for work completed.

**Change Order** is a written modification of the Contract Price (including all claims for direct, indirect and consequential damages and costs of delay), Time for Completion and Scope of Work under this Agreement. A Change Order, once signed by all parties, is incorporated into and becomes a part of the Contract Documents.

**Claim** means a demand or assertion by one of the parties to this Agreement seeking, as a matter of right, modification, adjustment or interpretation of contract terms, payment of money, extension of time or other relief.

**Code Requirements** means all laws, statutes, regulations, building codes, ordinances, rules, and lawful orders of all public authorities having jurisdiction over OWNER, CONTRACTOR, any Subcontractor, the Project, the Job Site, the Work, or the prosecution of the Work.

**Contract Completion Date** means the day by which the Work must be substantially complete.

**Contract Date** is the day on which the contract becomes binding between CONTRACTOR and OWNER.

**Contract Documents** are this Agreement and all documents incorporated by reference into this Agreement.

**Contract Price** is the amount which will become due in exchange for work performed under this Agreement. Contract Price includes allowances for purchased materials and equipment and may be modified by a Change Order or contract modification. The Contract Price may be paid in one or more installments, including an Initial Payment at or before the start of work, Progress Payments as work is completed, and a Final Payment on final acceptance of the work. Payment

Between applications for progress payments or prior to the first application for progress payment.

**Contract Schedule** is a graphical representation of a practical plan to complete Work within the Contract Time.

**Contract Time** means the period between Date of Commencement and the date of Substantial Completion.

**CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the Work under the terms of this Agreement.

**Defective Work** means construction done under this Agreement that is unsatisfactory, faulty, omitted, incomplete, deficient, or does not conform to the requirements of the Contract Documents, directives of OWNER'S Representative, or the requirements of an inspection, reference standard, test, or approval specified in the Contract Documents.

**Design Professional** means the person, organization or authorized representative who is responsible to the OWNER for design of the Project through preparation of Drawings and Specifications. The term Design Professional may refer to an architect, designer, engineer or landscape architect.

**Drawings** (also called plans or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Drawings include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed Project. A group of drawings adequate to complete construction of the Project may be referred to as a plan set. Drawings can be either paper or electronic media.

**Emergency** means an unforeseen event, combination of circumstances, or a resulting state that poses imminent danger to health, life or property.

**Excusable Delay** means any circumstance which postpones completion of the Work and for which CONTRACTOR is entitled to an adjustment of the Contract Time but not an adjustment to the Contract Price. Contrast Inexcusable Delay which entitles CONTRACTOR to neither an adjustment of the Contract Price nor an adjustment in the Contract Time.

**Extra Work** means any change, interpretation, clarification or correction in the Contract Documents or in applicable law, ordinance or regulation which would increase or decrease the quantity of work, delay, suspend or interfere with the work, require an addition to or omission from the work, change the character, quality or nature of any part of the work or material used in the work, change levels, lines, positions or dimensions of any part of the work, require demolition or removal of any work completed under this Agreement, extend or amend the normal work day, alter the construction schedule or require completion of any part of the work at a time other than provided by this Contract when originally made.

**Completion** is the date of OWNER'S acceptance of the Work as fully performed per the Contract Documents.

**Furnish** means to supply and deliver to the job site.

**General CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking execution of the Work under terms of a Prime Contract.

**Hazardous Materials** means radioactive materials, asbestos, polychlorinated biphenyls, petroleum, crude oil, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, and toxic substances which are restricted, prohibited, or regulated by any agency of government in the manufacture, use, maintenance, storage, Ownership or handling.

**Indemnification** Financial compensation intended to restore someone to their condition before a loss or damage.

**Inspection** is any review of the Project, including a visual review of the Work completed to ascertain compliance with Contract Documents, building codes and construction standards.

**Inspector** is anyone authorized by government or the Design Professional to conduct inspections of contract performance and materials supplied for the Work.

**Install** means to secure in position in compliance with the Contract Documents and includes unloading materials, supplying all necessary equipment and rigs to do the work and performing functional tests which demonstrate fitness for the intended purpose.

**Job Site** is the address or location of the Project.

**Law** means federal or state statutes, municipal ordinances, building codes, regulations adopted pursuant to statute, executive orders, official interpretations, and other rules and directives issued by government.

**Material Supplier** means any manufacturer, fabricator, distributor, material man or vendor who provides material for the Project but does not provide on-site labor.

**Modification** is a written amendment to the Contract signed by both parties.

**OWNER'S Representative** means the person or firm authorized to act and make administrative decisions on behalf of the OWNER during construction. Any notice required to be delivered to the OWNER may be delivered to the OWNER'S Representative. The scope of authority of the OWNER'S Representative is defined in this contract. CONTRACTOR cannot rely on any decision or instruction by OWNER'S Representative that is beyond the representative's defined scope of his authority. Nothing in this contract prevents OWNER from issuing a notice or instructions directly to the CONTRACTOR. The OWNER may change the OWNER'S Representative from time to time and may, if OWNER'S Representative is absent, disabled or

otherwise temporarily unavailable, appoint an interim OWNER'S Representative.

**Party (to this contract)** means a person or business organization which has an obligation to perform under the terms of this contract.

**Plans** (also called drawings or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Plans include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed project. A group of plans adequate to complete construction of the Project may be referred to as a plan set. Plans can be either paper or electronic media.

**Prime Contract** is a written agreement between CONTRACTOR and OWNER which binds CONTRACTOR to furnish labor, equipment, or materials or perform certain work for a price to be paid by OWNER.

**Project** means Work to be completed in accord with the Contract Documents. Work at the Job Site may include other projects to be completed by the OWNER or other CONTRACTORs working under other agreements.

**Provide** means furnish and install and includes connecting, testing, and placing in service for the intended use.

**Punch List** is a comprehensive list of incomplete, defective or incorrect Work yet to be completed or which does not comply with Contract Documents. A Punch List may be prepared by the CONTRACTOR, Subcontractor, Design Professional or OWNER. An initial Punch List will be prepared before application for Substantial Completion. A Close-out Punch List will be prepared before Completion.

**Requirements** means, in addition to obligations, responsibilities and limitations set out in the Contract Documents, the obligations, responsibilities and limitations imposed by law, rules, orders, ordinances, regulations, statutes, codes and executive orders of governmental authorities or fire rating bureaus.

**Retainage** is a portion of each progress payment temporarily held back or retained by the OWNER. Accumulated retainage is released to CONTRACTOR on satisfactory completion of the work.

**Sample** means a physical example of material; equipment or workmanship intended to be representative of some portion of the Work. When approved, samples establish standards for completion of similar work on the Project.

**Schedule of Values** means the detailed breakdown of cost of materials, equipment and labor necessary to complete the Project as described in the Contract Documents.

**Scope of Work** means the Work as defined by the Contract Documents.

**Separate CONTRACTOR** means a person or firm working under a different contract but on the same site and at the same time as work will be done under this contract.

**Shop Drawings** are diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data which are prepared by the CONTRACTOR or a Subcontractor, manufacturer, supplier or distributor, and which illustrate or describe some portion of the Work to be completed in compliance with the Contract Documents. Once submitted to the approval authority and approved, Shop Drawings establish standards for completion of work on Project.

**Similar** means having a like kind, quality and characteristics. Similar is not to be construed as meaning identical or by the same manufacturer.

**Specifications** (also called specs) are the part of the Contract Documents which provide descriptions of materials, equipment, construction systems, technique and workmanship to be used on the Project. Specifications are both instructions to be followed by the CONTRACTOR and Subcontractors and a reference for the Building Official to evaluate code compliance.

**Subcontract** is a written agreement between a specialty CONTRACTOR and General CONTRACTOR. Terms of the subcontract require the specialty CONTRACTOR to complete some portion of the work General CONTRACTOR is obligated to perform under another agreement, usually with the OWNER.

**Subcontractor** is any person or business entity under contract to a general CONTRACTOR to perform some portion of the work general CONTRACTOR is obligated to complete under a contract with the OWNER. Subcontractor is an independent CONTRACTOR performing services for another CONTRACTOR rather than for the OWNER. A person or organization providing supplies or materials for the Project, but no job site labor is not a Subcontractor.

**Submittals** demonstrate the way by which the CONTRACTOR proposes to conform to the requirements of the Contract Documents. Submittals are shop drawings (diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data) required by the Contract Documents which are prepared for the CONTRACTOR to depict some portion of the Work. Submittals are delivered to the OWNER for approval or disapproval by the OWNER prior to purchase or installation.

**Substantial Completion** means the Project, or a designated portion of the Project is nearly in compliance with the Contract Documents and is sufficiently complete to be considered fully operational in all its components and is fit for the intended use. Substantial Completion is reached when a limited number of non-conforming or defective items on a Punch List remain to be completed. Normally, a Project or portion of a Project cannot be considered Substantially Complete until (1) all utilities and services are connected and working, (2) all equipment is installed and in acceptable working condition, (3) additional activity by the CONTRACTOR to correct items on the Punch List will not prevent or disrupt use of the facility, and, (4) a certificate

of occupancy has been issued by the appropriate authority.

**Sub-subcontractor** is any person or business entity under contract to a subcontractor or any lower tier subcontractor to perform some portion of the work subcontractor is obligated to complete under a
contract with the prime CONTRACTOR. Sub-subcontractors are independent CONTRACTORs performing services for another CONTRACTOR rather than for the prime CONTRACTOR. A person or organization providing supplies or materials for the Project, but no job site labor is not a Sub-subcontractor.

**Superintendent** is the representative of the CONTRACTOR at the job site who is authorized to receive instructions from the OWNER or OWNER'S Representative and who is authorized to direct the performance of work on behalf of the CONTRACTOR.

**Surety** means any qualified individual, firm or corporation other than the CONTRACTOR, which executes a bond to insure its acceptable performance of the contract.

**Tier** refers to the contractual level of a person or business organization doing work on the Project. A first-tier subcontractor has a contract with the general CONTRACTOR but not the OWNER. A second-tier subcontractor has a contract with another subcontractor but not with the general CONTRACTOR or the OWNER.

**Work** means all labor, material, equipment, tools, transportation, permanent and temporary utilities, connections, provisions for safety and management services required to complete the Project in compliance with the Contract Documents. Work may constitute the whole or a part of the Project. Work is to be performed in a safe, expeditious, orderly and professional manner in keeping with current standards of the industry. Work includes everything that is or should be evident to a skilled construction professional after careful examination of the Contract Documents and the Job Site.

**Work Day** means any day, excluding Saturdays, Sundays and state-recognized holidays, shown on the calendar beginning at midnight and ending at midnight the following day.

**EXHIBIT "J"**



**American Development Partners Development Contract**

**THIS AGREEMENT** is made on this the 20th day of April 2018, by and between **REDSTONE, LLC, a Tennessee limited liability company, D/B/A American Development Partners** (hereinafter "DEVELOPER") and **CHC-2735 CALUMET TRACE OWENSBORO KY LANDCO LLC, a Florida limited liability company** (hereinafter "OWNER").

**DEVELOPER**

DEVELOPER Name: **REDSTONE LLC DBA American Development Partners ®**
PO Box 681982
Franklin, TN 37064
Office - (615) 368-3412
Attn:  Manny Butera
Email Address: manny@americandevelopmentpartners.com

DEVELOPER Name: **American Development Partners ®** will be referred to as DEVELOPER throughout this agreement.

**CONTRACTOR**
<u>**CONTRACTOR INFORMATION:**</u>
Address: Phone Number: (615) 330-0629
Email Address: llynp@built-more.com
License Number: 00057609

CONTRACTOR Name: Built-more LLC will be referred to as CONTRACTOR throughout this agreement.

**OWNER**
OWNER AGENT:

**CHC-2735 CALUMET TRACE OWENSBORO KY LANDCO LLC**
201 Madeira Avenue
Coral Gables, FL 33134
Attn:  Pun For Li
Email Address:  fli@fg-llc.com

With a Copy to:
Jose L. Torres, P.A.
224 Palermo Avenue
Coral Gables, FL 33134
Email Address: jtorres@jltorrespa.com

OWNER Name:

**CHC-2735 CALUMET TRACE OWENSBORO KY LANDCO LLC**
201 Madeira Avenue
Coral Gables, FL 33134
Attn:  Pun For Li
Email Address:  fli@fg-llc.com

### SECTION ONE. PROJECT DESCRIPTION.

1.1  For a price identified below, DEVELOPER agrees to complete a new commercial building (identified as the Project in this agreement) for OWNER.

1.2  For the Contract Price identified below, DEVELOPER agrees to complete a new commercial building consisting of approximately 1800 sq. ft. +/- square feet of air-conditioned space plus patio 300 + / - square feet and used as a CHURCH'S CHICKEN or other similar Quick Service Restaurant (identified as the "Project" in this Agreement), for TENANT's use and OWNERS ownership on the Land in accordance with the plans

1.3  The term "Total Build Cost" shall mean the aggregate of (1) the Total Project Cost, (2) the Contract Price, (3) the Contingencies of the Project, (4) the cost of the Work and the Extra Work, (5) other costs, charges and fees under this Agreement (collectively, the "Other Agreements") (the Other Agreements shall include but not be limited to any contractor or subcontractor agreements and the cost of all materials and labor), but shall not exceed  $1,827,247.28.

1.4  The term "Budget" shall mean the Total Build Cost less the cost to acquire the Land.

1.5  The term "Property" shall mean the Land and all improvements thereon including but not limited to the Project.

1.6  Contract Price / OWNERS Cost Cap / Developer.

1.7  DEVELOPER shall earn in addition to any other charges specified in this agreement, OWNER agrees to pay a 10% development fee for completing the Work described as the Project. DEVELOPER fee is paid off total project cost that includes building, construction and all numbers that are used to factor total project cost.

1.8  Notwithstanding any contrary provision in this Agreement or otherwise, OWNERS maximum monetary liability under this Agreement and for the Project towards all

Page 2

amounts, including but not limited to the Total Build Cost, shall not exceed, and shall be capped at, the sum of $1,827,247.28 said amount referred to as the (OWNERS GROSS MAX). Notwithstanding any contrary provision in this Agreement or otherwise, DEVELOPER shall be solely responsible under this Agreement and to OWNER, for any projects overruns that are above the gross max number provided to OWNER.

## SECTION TWO. CONTRACT PRICE.

DEVELOPER shall earn, and OWNER agrees to pay a development fee of 10% of total project cost in addition to any other charges specified in this agreement. In addition to any other charges specified in this agreement, OWNER agrees to pay DEVELOPER $166,113.39 development fee for completing the Work described as the Project.

## SECTION THREE. CONTINGENCY BUDGET.

It is identified and agreed to by OWNER that DEVELOPER has an estimated budget of **5 %** of project cost for "contingencies". CONTRACTOR will submit to DEVELOPER a "change order" for approval by DEVELOPER and OWNER any proposed change order. Contingencies are limited to change orders due to error or omission by a licensed architect after plans were received and reviewed by contractor, all state or federal codes changes that were mandated after contractor received stamped plans and or building permit.

## SECTION FOUR. SCHEDULED START OF CONSTRUCTION.

4.1     Work under this agreement will begin within 5 Calendar Days after the following contingencies have been met.

4.1(a) Complete Plans and Specifications have been approved and initialed by both OWNER, DEVELOPER, and CONTRACTOR.

4.1(b) OWNER has shown proof of funds or other financing acceptable to DEVELOPER.

4.1(c)     DEVELOPER has obtained all architectural approvals from any franchise and or corporate authorities.

4.1(d)     OWNER has furnished DEVELOPER with evidence of Ownership of the property satisfactory to DEVELOPER.

4.1(e) All appropriate building permits have been issued.

4.1(f) DEVELOPER has received written notice from the lien holder or the title company insuring lien holder's security interest in the property that all documents required to be recorded prior to the commencement of construction have been properly recorded.

4.1(g) The contract has been signed by OWNER, DEVELOPER and CONTRACTOR.

## SECTION FIVE. SCHEDULED COMPLETION OF CONSTRUCTION

Contractor shall achieve Substantial Completion of the entire work not later than ONE HUNDRED TWENTY-FIVE (125) calendar days from the date the building permit is issued, or the date reflected in the site investigation report ("SIR") whichever is the later of the two. This is only for projects where land owner has approved developer to finalize full architectural and engineering plans to be completed during the due diligence period.  If the landowner does not approve developer to finalize full architectural and engineering plans to be completed during the due diligence period, then the Contractor shall achieve Substantial Completion of the entire work not later than ONE HUNDRED TWENTY-FIVE (125) calendar days from the date the building permit is issued. The Substantial Completion date may be modified as reasonably necessary by Contractor after final plans, specifications, and bidding process.  "Substantial Completion" for purposes of this Agreement shall mean the date when Work has been sufficiently completed in accordance with the Contract Documents, so the Owner can occupy or utilize the Property for its Intended Use.  "Intended Use" for purposes of this Agreement shall mean the intended use of the property as a quick serve restaurant. This is subject this Clause, "Event of Force Majeure" means an event beyond the control of the developer or contractor, which prevents a them from complying with any of its obligations under this Contract, including but not limited to, act of God (such as, but not limited to, fires, explosions, earthquakes, drought, rain, snow, tidal waves and floods); war, hostilities (whether war be declared or not), invasion, act of foreign enemies, mobilization, requisition, or embargo; rebellion, revolution, insurrection, or military or usurped power, or civil war; contamination by radio-activity from any nuclear fuel, or from any nuclear waste from the combustion of nuclear fuel, radio-active toxic explosive, or other hazardous properties of any explosive nuclear assembly or nuclear component of such assembly; riot, commotion, strikes, go slows, lock outs or disorder, unless solely restricted to employees of the Supplier or of his Subcontractors; or acts or threats of terrorism.

In any event, a time extension may be granted only for an excusable delay that is beyond Contractor's control and occurs without the Contractor's fault or negligence.  No time extension will be granted in the absence of a written claim for the time extension.

## SECTION SIX. DOCUMENTS INCORPORATED

6.1    The Glossary of Terms which follows our signatures is incorporated into this contract as though included in full as part of this agreement.

6.2    This agreement incorporates by reference certain documents which define and describe the Work to be done. The following documents are incorporated as though included in full as part of this agreement.

## SECTION SEVEN. OWNERSHIP OF PLANS.

All Plans, Drawings, Specifications and other documents prepared by or for OWNER for use under this agreement will be paid for and are the property of DEVELOPER and remain the property of DEVELOPER. Plans, Drawings and Specifications, whether in paper or electronic form, prepared for use in construction under this agreement shall not be modified or used on any other project without written consent of DEVELOPER. DEVELOPER shall hold harmless and Indemnify OWNER from and against all Claims, actions, suits, costs, damages, losses, expenses and attorney's fees arising out of use of the Project Plans, Drawings, or Specifications

Page 4

for any purpose other than construction to be completed under this agreement. DEVELOPER, CONTRACTOR and Subcontractors are granted a limited license to use and reproduce applicable portions of the Plans, Specifications and Drawings as required for construction under this agreement. All copies made under this license shall bear a notice showing OWNER as copyright holder. DEVELOPER may retain one record set of the Plans, Drawings and Specifications. All other sets shall be accounted for by DEVELOPER and CONTRACTOR and returned to OWNER. Submittal or distribution of Project Plans, Drawings or Specifications to meet Official Regulatory Requirements is not to be construed as publication in derogation of the rights of OWNER.

## SECTION EIGHT. PLANS ON SITE.

DEVELOPER and CONTRACTOR will keep a full set of Project Plans available on-site to authorized personnel during the period of construction.

## SECTION NINE. DOCUMENTS SUPPLIED BY CONTRACTOR.

OWNER will furnish to DEVELOPER and CONTRACTOR at no cost (this is part of total project cost)

9.1(a) A full set of Plans and Specifications for all trades in electronic format.

9.2(b) DEVELOPER and CONTRACTOR will distribute Contract Documents as required by Subcontractors.

## SECTION TEN. SCOPE OF WORK.

10.1      DEVELOPER and CONTRACTOR shall supervise and direct the Work and accepts responsibility for construction means, methods, techniques, sequences and procedures required to complete the Project in compliance with the Contract Documents.

10.2      DEVELOPER and CONTRACTOR are responsible for coordination of the various trades and deliveries of equipment, materials and supplies to minimize interference which could delay the Work or pose a hazard to life or property. DEVELOPER shall be responsible for allocation of tasks between trades and will be the final authority on location and routing of equipment and storage of materials on the Job Site.

10.3      DEVELOPER will ensure that Subcontractors, their agents, and employees adhere to these Contract Documents. DEVELOPER and CONTRACTOR accepts responsibility for all Work performed under this contract, including Work performed by employees of Subcontractors.

10.4      CONTRACTOR shall provide on the Job Site during the period of construction a temporary chemical toilet or water closet which shall be serviced no less than weekly. Upon completion of the Project, CONTRACTOR will remove temporary toilet facilities from the site.

10.5      DEVELOPER and CONTRACTOR shall provide temporary elevators and lifts as may be required by construction personnel, including Subcontractors, Material Suppliers, Inspectors, and Representatives of OWNER. Elevators and lifts will comply with all federal, state and local Laws and ordinances in effect at the Job Site. Upon completion of the Project, DEVELOPER

and CONTRACTOR will dismantle and remove temporary elevators and lifts.

10.6      DEVELOPER and CONTRACTOR shall develop and present to OWNER for approval (which shall not be withheld unreasonably), a site logistics plan drawn to scale, showing proposed secure and fenced areas, locations and types of temporary barricades, material storage and staging areas, property entrances used for material deliveries, and special material or equipment storage Requirements. This plan will include a description and proposed location for any temporary office, storage trailer, sanitary facilities, and parking for construction personnel.

## SECTION ELEVEN. SUBMITTALS.

11.1      Architectural Drawings will indicate in detail all parts of the building components, Installation details, and coordination with Work of other trades or other CONTRACTORS. Architectural Drawings for structural steel, timbers and pre-cast concrete will include engineering calculations, fabrication details and erection Drawings that show physical characteristics, dimensions, shapes, inserts, attaching points and methods, and other information required for manufacture, assembly and erection, in compliance with the Contract Documents.

11.2      Approval by OWNER'S Representative does not relieve DEVELOPER and CONTRACTOR of responsibility for compliance with the Contract Documents except as follows: If a Submittal does not comply with Contract Documents, DEVELOPER and CONTRACTOR will attach to the Submittal, prior to approval, a written request for variation showing the change in Contract Price and Contract Time, if any, that will result from the variation. If OWNER'S Representative approves a Submittal which includes a written request for a variation and which requires a change in the Contract Price or Contract Time, OWNER'S Representative will issue a contract Modification confirming the change. If OWNER'S Representative approves a Submittal with a written request for a minor variation which does not require a change in the Contract Price or Contract Time, no contract Modification is needed. A minor variation is anything which does not materially alter the quality or performance of the Work. Approved variations are subject to all terms of this agreement and without prejudice to any rights granted to OWNER'S Representative under a Surety Bond.

11.3      DEVELOPER and CONTRACTOR is entitled to expect that corrections to Submittals by OWNER'S Representative be clearly noted and easily understood so that prompt resubmission is possible without further instructions from OWNER'S Representative.

11.4      OWNER'S Representative will review Submittals and notify DEVELOPER and CONTRACTOR of approval or rejection within TWO (**2**) Calendar Days of receipt.

11.5      OWNER'S Representative will review Submittals of DEVELOPER and CONTRACTOR for conformance with Requirements of the Contract Documents and will approve or take other appropriate action upon those Submittals.  OWNER'S Representative will advise DEVELOPER and CONTRACTOR of any errors or omissions which OWNER'S Representative may detect during this review. Submittals approved by OWNER'S Representative become additions to the Contract Documents and can be relied on by DEVELOPER and CONTRACTOR in completing the Work. Nothing in any approved Submittal shall be interpreted to limit DEVELOPER and CONTRACTOR in selection of the means, method, technique, sequence or procedure of

construction.

## SECTION TWELVE. RECORD DOCUMENTS.

DEVELOPER and CONTRACTOR will note on a record set of Project Drawings any Work done that is not shown on the original Plans and not described in other Contract Documents. The record set of Project documents will be delivered to OWNER at the same time as final payment is requested.

## SECTION THIRTEEN. JOB SITE SAFETY.

DEVELOPER and CONTRACTOR will always take all reasonable precautions for the safety of employees and the public at the Job Site and will comply with all applicable safety Laws and regulations of federal, state, and local authorities (including building codes) and safety Requirements of OWNER.

## SECTION FOURTEEN.  HAZARDOUS MATERIALS USED IN CONSTRUCTION.

Except as provided elsewhere in the Contract Documents, CONTRACTOR is responsible for all Hazardous Materials brought to the Job Site by CONTRACTOR or Subcontractors.

## SECTION FIFTEEN.  HAZARDOUS MATERIALS DISCOVERED ON SITE.

15.1    Except as provided elsewhere in the Contract Documents, OWNER is responsible for all Hazardous Materials discovered on the Job Site so long as those materials were not brought on the Job Site by CONTRACTOR, Subcontractors, or anyone directly or indirectly employed by them. Nothing in this paragraph shall relieve DEVELOPER and CONTRACTOR from liability for negligence in handling or removing hazardous materials as required under the terms of this agreement.

15.2    Except as provided in the Contract Documents or as agreed by mutual consent, DEVELOPER and CONTRACTOR shall not be required to perform Work relating to asbestos, polychlorinated biphenyl (PCB), radioactive material, toxic mold or any other Hazardous Material.

15.3    OWNER shall defend, Indemnify and hold harmless DEVELOPER  and CONTRACTOR from and against all loss, liability, claims, costs, damage and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from the discovery or existence of Hazardous Material on the Job Site, whether or not identified in the Contract Documents, provided such loss, liability, costs, damage and economic detriment is not the result of any negligent act or omissions of DEVELOPER and CONTRACTOR, Subcontractors or anyone directly or indirectly employed by them. Indemnification by OWNER under this paragraph shall apply even if OWNER is in no way responsible for the loss to DEVELOPER and CONTRACTOR.

**SECTION SIXTEEN. COMPLIANCE WITH FEDERAL, STATE, AND LOCAL LAW.**

16.1      CONTRACTOR and OWNER mutually commit to use reasonable care to meet the Requirements of state, federal and local Law when discharging their responsibilities under this agreement.

16.2      If DEVELOPER and CONTRACTOR observe that Drawings, Specifications, or other Contract Documents do not comply with applicable Law, DEVELOPER and CONTRACTOR shall promptly notify OWNER or OWNER'S Representative of the variance. Any changes made to the Contract Documents because of this notice shall be handled in the form of a Change Order under this agreement.

16.3      DEVELOPER and CONTRACTOR shall bear none of the cost of correcting Work completed per Contract Documents but not in compliance with Law if CONTRACTOR did not know that Contract Documents or instructions from OWNER or OWNER'S Representative did not comply with the Law.

16.4      If Law enacted after the Contract Date changes the Scope of Work under this agreement, DEVELOPER and CONTRACTOR and OWNER will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

**SECTION SEVENTEEN. LAYOUT.**

DEVELOPER and CONTRACTOR shall be responsible for alignment and elevation of the Work and will set grade stakes, batter boards, and other working points, lines and elevations required to complete the Project as described in the Contract Documents.

**SECTION EIGHTEEN. PERMIT AND FEES.**

18.1      DEVELOPER and CONTRACTOR shall secure all permits, licenses and renewals required by government authority to complete construction of the Project. If permits are required for Subcontracted Work, Subcontractors will secure those permits. OWNER may request a copy of each permit, license and renewal issued by government authority for the Project. All permits and fees are considered a fee that is enclosed in the project plan.

18.2      Project budget will include the building permit fee, Plan check fee, and charges levied by government for testing, Inspection and Re-Inspection of the Project. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.3      Except as provided elsewhere in this agreement, Project budget  will include all fees and application charges imposed by government authority, including, but not limited to, grading permit fees, drainage permit fees, traffic control charges, thoroughfare charges, impact fees, special district fees, sewer fees, water fees, planning fees, school fees, elevator permit fees, charges for temporary access or use of the public right of way, and charges for document

processing, hearings, and certifications. Project budget will also pay all fees and application charges imposed by any association of property OWNERs having authority over the Job Site. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.4    Except as provided elsewhere in this agreement, Project budget will include all application fees and connection charges imposed by utility companies or government agencies for bringing service to the Job Site, and for connecting gas, water, electricity, phone, cable, sewer, and drainage lines. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

18.5    Except as provided elsewhere in this agreement, Project budget will include all approvals for the Project that are required by government authority, including planning, easements, remediation, environmental, and zoning approvals. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

### SECTION NINETEEN. TAXES.

If any federal, state or local tax rate increases or if any new federal, state or local tax is imposed, whether by Law, regulation, or interpretation, between the Contract Date and Substantial Completion, the Contract Price shall be increased by the additional tax levied on DEVELOPER and CONTRACTOR but only to the extent that the change in rate or new tax could not have been reasonably foreseen on the Contract Date. If a government authority issues or charges an unbudgeted permit or fee, then DEVELOPER and CONTRACTOR will immediately notify the OWNER and this fee will be passed onto the OWNER and should be considered part of the contingency budget.

### SECTION TWENTY. TEMPORARY UTILITIES.

20.1    DEVELOPER and CONTRACTOR have budgeted for all costs associated with use of temporary utilities on the Job Site during construction, including application fees, permits, engineering, and metered service for water, electric power, heating and cooling. Temporary utility systems provided by DEVELOPER CONTRACTOR shall be designed and installed to protect the public and construction personnel and conform to applicable Laws and Regulations.

20.2    Utility services shall be re-listed in the name of future building occupant on the Calendar Day following Substantial Completion.

### SECTION TWENTY-ONE. PERMANENT UTILITIES.

Project budget shall include Installation, connection, and modification of permanent electric, water, phone, cable, sewer and gas service as required for the completed Project. It will not include any deposits that will be paid by building occupant.

## SECTION TWENTY-TWO. JOB CLEAN UP.

22.1     DEVELOPER and CONTRACTOR shall regularly remove from the Job Site and storage areas all surplus material, waste and debris resulting from the Work. Construction debris shall be removed to a legal refuse collection site with disposal or recycling fees included in Project budget. At completion of the Work, DEVELOPER and CONTRACTOR shall, in addition, remove from the Job Site all tools, equipment and scaffolding brought to the Job Site by DEVELOPER and CONTRACTOR or Subcontractors. At Substantial Completion, exposed finishes of windows, doors, floors, walls, ceilings, fixtures and trim shall be cleaned and free of grime, stains, over spray, dirt and dust.

22.2     DEVELOPER and CONTRACTOR shall provide a trash disposal facility on the Job Site for use by construction personnel. The on-site trash facility provided by DEVELOPER and CONTRACTOR shall be of an appropriate size for the Project and placed in a location approved by OWNER. All construction debris shall either be placed in the trash facility provided by DEVELOPER and CONTRACTOR or hauled to a legal disposal site, at the discretion of DEVELOPER and CONTRACTOR. When any trash container provided by DEVELOPER and CONTRACTOR is full, contents shall be removed to a legal disposal facility at the expense of CONTRACTOR.

## SECTION TWENTY-THREE. PROJECT SIGN.

DEVELOPER and CONTRACTOR shall have the right to fabricate and erect a Project sign bearing the name of the Project, Prime CONTRACTOR, principal Subcontractors, designers, consultants, lead lender, a short Project description, and expected Completion Date. CONTRACTOR may erect directional signs at the Job Site with approval of OWNER with respect to size, style and location. Directional signs may bear the name of CONTRACTOR and a directional symbol. No other signs will be permitted except by permission of OWNER.

## SECTION TWENTY-FOUR.  PROJECT SUPERINTENDENT.

DEVELOPER and CONTRACTOR shall employ a competent Superintendent and any necessary assistants or alternates that will be at the job site from start to finish of project. The Superintendent shall not be changed unless the Superintendent is discharged by DEVELOPER and CONTRACTOR. The Superintendent shall have authority to represent DEVELOPER and CONTRACTOR in all matters relating to the Project. Communications with the Superintendent shall have the same force and effect as direct communication with DEVELOPER and CONTRACTOR.

## SECTION TWENTY-FIVE. OWNER'S RESPONSIBILITIES.

25.1     OWNER affirms that OWNER has the right to enter this agreement and has the right to contract for construction of the Project on the Job Site. OWNER shall pay all taxes and assessments due on the Job Site during the period of construction and shall take all reasonable actions required to protect marketable title to the Job Site. OWNER is responsible for all standard responsibilities that a property OWNER / landlord would have.

25.2      OWNER will ensure that OWNER'S Representative responds in writing and with

reasonable promptness to written requests from DEVELOPER and CONTRACTOR for (1) interpretation of the Plans or Specifications, or (2) other information relevant to completion of the Work. DEVELOPER and CONTRACTOR are authorized to rely on written responses from OWNER'S Representative.

25.3     OWNER shall have sole responsibility to secure financing for the Project and shall pay all fees, charges, or other costs of such financing, including Inspection fees charged by any lender. The nonperformance of any lender shall not affect the obligation of OWNER to DEVELOPER and CONTRACTOR. OWNER hereby authorizes and directs any lender on the Project to furnish DEVELOPER and CONTRACTOR with full information on undisbursed proceeds when requested by DEVELOPER and CONTRACTOR. Proof of funds must be made available to DEVELOPER prior to project starting.

25.4     OWNER will not interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by DEVELOPER and CONTRACTOR or Subcontractors except as provided under this agreement.

## SECTION TWENTY-SIX. CONSTRUCTION BY OTHERS.

OWNER shall neither hire nor retain Separate DEVELOPER and CONTRACTOR, Subcontractors, employees or agents of OWNER to perform Work on the Job Site while Work is being done under this agreement by DEVELOPER and CONTRACTOR.

## SECTION TWENTY-SEVEN.  AUTHOIRTY OF OWNER'S REPRESENTATIVE.

27.1     OWNER'S Representative has authority to administer the contract, make construction decisions on behalf of OWNER, and is the primary authority on issues of compliance with the Drawings and Specifications, quality of workmanship, materials used, manner of performance, and rate of progress on the Project.

27.2      After the Contract Date, OWNER shall make no change in the responsibilities or authority of OWNER'S Representative without consent of DEVELOPER and CONTRACTOR.

27.3     OWNER'S Representative shall have the right to visit the Project and view Work in progress at any time. Any Defective Work found or suspected, either as the result of a site visit or otherwise, shall be reported promptly to DEVELOPER and CONTRACTOR. No actions taken, or statements made during site visits shall relieve DEVELOPER and CONTRACTOR of obligations described in the Contract Documents.

27.4      Communication between DEVELOPER and CONTRACTOR and OWNER shall be initiated through OWNER'S Representative unless direct communication is required by Law or Contract Documents. Unless otherwise authorized by DEVELOPER and CONTRACTOR, communications between OWNER'S Representative and Subcontractors or Material Suppliers shall be through DEVELOPER and CONTRACTOR.

27.5     OWNER'S Representative shall have the authority to reject and order removed any portion of the Work which does not conform to the Contract Documents.

27.6     OWNER'S Representative shall have authority to conduct Inspections about Beneficial

Occupancy and to determine the dates of Substantial Completion.

## SECTION TWENTY-EIGHT.  REPRESENTATIONS BY DEVELOPER AND CONTRACTOR.

28.1     DEVELOPER and CONTRACTOR shall use skill and attention to complete the Work in a timely manner consistent with the Contract Documents.

28.2     OWNER has reported to DEVELOPER and CONTRACTOR all conditions known to OWNER which may not be apparent to CONTRACTOR and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the Job Site, unsuitable soil conditions, prior Defective Work of others, latent Defects in the Plans or Specifications, earlier attempts to do Similar or related Work, and obligations imposed by government.

## SECTION TWENTY-NINE.  DISCLAIMER BY OWNER, RELIANCE BY CONRACTOR.

OWNER has provided DEVELOPER and CONTRACTOR with information on subsurface or concealed conditions at the Job Site. Except to the extent that DEVELOPER and CONTRACTOR knows this information to be false, DEVELOPER and CONTRACTOR is entitled to rely on the accuracy of this information.

## SECTION THIRTY.  DISCREPANCY BETWEEN PLANS AND FIELD CONDITIONS.

30.1     DEVELOPER and CONTRACTOR is not a Design Professional and have no obligation to find discrepancies between Job Site conditions and representations or Requirements in the Contract Documents.

30.2     DEVELOPER and CONTRACTOR shall not be liable for discrepancies between representations or Requirements in the Contract Documents and conditions at the Job Site unless DEVELOPER and CONTRACTOR knowingly fails to report a discrepancy, in which case DEVELOPER and CONTRACTOR shall be liable for additional costs incurred because of failure to give prompt notification.

30.3     If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information provided by OWNER, DEVELOPER and CONTRACTOR shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall submit a Claim for a Change Order which covers the additional cost incurred because of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

## SECTION THIRTY-ONE. USE OF SITE.

31.1     OWNER has agreed to furnish all required rights to use the land upon which the Work is to be constructed. OWNER will identify any encumbrances or restrictions related to use of the land furnished and DEVELOPER and CONTRACTOR agrees to comply with those encumbrances or restrictions. If OWNER fails to furnish the land, rights of way, or easements when required, DEVELOPER and CONTRACTOR may make a Claim for extra compensation,

additional time, or other relief.

31.2 OWNER shall designate a construction entrance which DEVELOPER and CONTRACTOR shall use for all delivery of materials and equipment and which shall be used by all construction personnel.

**SECTION THIRTY-TWO. DRAW SCHEDULE.**

32.1 OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:

> **OWNER will pay to DEVELOPER the Contract Price in installments consisting of progress payments and a final payment on completion of the Work. The payment plan on this project will consist of a development standard draw schedule of:**

> **Momentum draw - 10% of the Budget within three (3) Business Days following the closing on land, building or execution of this development contract. Momentum draw will include all developer's pursuit cost, project soft cost, developer fee and necessary local, state and or federal permitting fees to start the project.**

> **Draw 1 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following the commencement of the Work.**

> **Draw 2 - 30% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 1.**

> **Draw 3 - 20% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request shall be no sooner than thirty (30) days following draw number 2.**

> **Final Draw – 10% of the Budget within three (3) Business Days following the written request from DEVELOPER to LANDLORD, where said request includes a copy of all executed lien releases and final payment affidavits (from CONTRACTOR, Subcontractors and others) being submitted to the clerk of court and recorded in the public records and a copy of the permanent Certificate of Occupancy issued for the Project.**

32.2 It is agreed by OWNER and or FUNDING SOURCE that all payments will be made to DEVELOPER. DEVELOPER will disburse funds in a timely manner. The afore mentioned budget that is supported by the GMAX clause is considered total project budget and the DEVELOPER will disburse funds per DEVELOPERS discretion. No third-party title company will be granted permission to disburse funds to any company or individual on behalf of funding group. Each application for payment shall be submitted on the form approved by OWNER.

**SECTION THIRTY-THREE.**
**DISCHARGE OF LIENS AND PAYMENT OF SUBCONTRACTORS.**

33.1     DEVELOPER and CONTRACTOR warrants that, upon payment, OWNER shall receive clear title to all Work identified in the application for payment, free and clear of all liens and Claims, including Claims of Subcontractors, employees or Material Suppliers. CONTRACTOR also agrees that this vesting of title in OWNER does not impose any obligation on OWNER or relieve CONTRACTOR from any obligation under this contract. CONTRACTOR shall remain responsible for damage to or loss of both the Work and stored materials until Completion.

33.2     DEVELOPER and CONTRACTOR warrants and guarantees that no Work, materials, or equipment covered by a request for payment has been acquired by DEVELOPER and CONTRACTOR or by any other person performing the Work or furnishing materials or equipment for the Project subject to an agreement under which an interest therein, or an encumbrance thereon, has been retained by seller or otherwise imposed by CONTRACTOR.

33.3     DEVELOPER and CONTRACTOR shall furnish, with each application for payment, and as a condition to Owner's obligations to pay, executed waivers of liens from DEVELOPER and CONTRACTOR and each Subcontractor and Material Supplier to the Project in the amount of the application for payment. Waivers of liens shall be in a form satisfactory to OWNER, title insurer, and lenders.

33.4     DEVELOPER shall disburse funds received from OWNER among DEVELOPER and CONTRACTOR, subcontractors and material suppliers in proportion to the work done and materials received for the project during the pay period.

**SECTION THIRTY-FOUR. INTEREST.**

34.1     Payments due and not paid under the Contract Documents shall bear interest from the date payment is due at a monthly rate of **TEN PERCENT (10%)**.

34.2     Payment of interest does not abrogate or replace any other rights DEVELOPER and CONTRACTOR may have under this agreement.

**SECTION THIRTY-FIVE. FINAL PAYMENT.**

35.1   DEVELOPER and CONTRACTOR will apply for final payment and will notify OWNER'S Representative when the work has been completed. OWNER'S Representative will issue a certificate of completion on determination that the Project is complete and in compliance with the Contract Documents. When the certificate of completion is issued, the entire unpaid balance of the contract amount, including any retainage, is payable to DEVELOPER.

35.2   Making of final payment constitutes waiver of all Claims by OWNER against DEVELOPER and CONTRACTOR except those Claims previously made in writing and delivered to DEVELOPER and CONTRACTOR and those obligations otherwise provided by this agreement or by operation of Law.

35.3   The acceptance of final payment by CONTRACTOR constitutes a complete and unconditional waiver and release of any and all Claims by CONTRACTOR of whatever nature, and regardless of whether they are then known or unknown, and a complete and unconditional release of OWNER, and every person for whom OWNER is responsible, for any and all matters related to the contract or otherwise, except those Claims which have been made in writing and identified by CONTRACTOR as not having been settled at that time.

## SECTION THIRTY-SIX.  CHANGES IN WORK.

36.1   Except as required by changes in the Prime Contract between OWNER and DEVELOPER, no change to this contract (including Modification, clarification, interpretation or correction of the Plans or Specifications) shall be made without agreement and a written Change Order signed by DEVELOPER and CONTRACTOR and OWNER identifying the change, the cost of the change, and the effect on Project Schedule, if any.

36.2   Any change in Plans, Specifications or Contract Documents necessary to conform to existing or future Laws, codes, ordinances or regulations shall be considered Extra Work.

36.3   Changes in the Work required due to defects or inconsistencies in Plans or Specifications or other Contract Documents shall be considered Extra Work.

36.4   The charge for Extra Work shall be the normal selling price DEVELOPER and CONTRACTOR charges for similar changes on other jobs.

36.5 Failure of DEVELOPER and CONTRACTOR and OWNER to agree on the terms of a Change Order shall be resolved under the provisions of this agreement which cover Claims and disputes.

36.6 Should DEVELOPER and CONTRACTOR and OWNER fail to agree promptly on the terms of a Change Order, DEVELOPER and CONTRACTOR shall be paid, pending resolution of the dispute, the portion of the cost of the change not in dispute, including the costs of time and materials required to execute the change. Payments required under this paragraph shall be made as the Work progresses, concurrently with progress payments.

## SECTION THIRTY-SEVEN.  COOPERATION OF THE PARTIES.

37.1   OWNER and DEVELOPER acknowledge that open communication and cooperation will be required to complete the Project on time, as estimated, and in compliance with the Contract Documents. DEVELOPER and OWNER each agree to identify a representative who will be available to resolve minor problems, answer questions and reach mutually acceptable solutions. The individuals identified by DEVELOPER and OWNER shall try to reach informal agreement on problems as they arise but are under no obligation to do so.

37.2   Both DEVELOPER and OWNER pledge that their relations will be conducted with courtesy and consideration in an environment characterized by mutual respect. OWNER pledges to respond promptly to requests by DEVELOPER for guidance, assistance and payments when due and agrees to extend to DEVELOPER the deference and latitude a dedicated professional deserves. CONTRACTOR pledges to commit the skill and resources required to complete the Project in a manner that complies with both the letter and spirit of the

Contract Documents and enhances the reputation of DEVELOPER and for dependability and professionalism.

## SECTION THIRTY-EIGHT. WARRANTY.

38.1 DEVELOPER and CONTRACTOR warrant that the Work shall be free of Defects due to faulty material or workmanship for the period specified in this agreement.

**38.1(a)** General **Requirements.**

38.1(a)(I)      Except as otherwise provided in this agreement, the warranty period shall begin from the date of Completion for 12 months.

38.1(a)(ii)      Work done by CONTRACTOR in compliance with warranty provisions of this agreement does not extend the period of the warranty.

38.1(a)(iii)      DEVELOPER and CONTRACTOR shall deliver to OWNER all warranties provided by vendors and manufacturers of materials and equipment used to complete the Project. DEVELOPER and CONTRACTOR shall have no obligation under warranties provided by others except to render any assistance that OWNER may require in enforcing the terms of those warranties.

38.1(a)(iv)      Except as provided in this agreement, and to the extent permitted by Law, DEVELOPER and CONTRACTOR disclaims all warranties, whether express or implied, whether of fitness for purpose, merchantability, habitability or workmanlike completion.

38.1(a)(v)      Failure of OWNER to give notice of a breach of warranty within the warranty period constitutes a waiver of the right to repair or replacement by DEVELOPER and CONTRACTOR.

38.1(a)(vi)      To make a warranty Claim under this agreement, OWNER must send a clear and specific written complaint to DEVELOPER and CONTRACTOR at the following address within 60 Calendar Days of discovering Defects, unless otherwise specified in the list of items covered under this warranty. DEVELOPER and CONTRACTOR shall make repairs, replacements and corrections promptly and at no expense to OWNER.

**38.1(b) Exclusions from Warranty**

38.1(b)(i) The warranty provided by this contract does not cover any of the following items or conditions:

38.1(b)(i)(A) Damages to private property or bodily injury.

38.1(b)(i)(B) Damages or losses that result from soil movement that is covered by insurance or that is compensated for by legislation.

38.1(b)(i)(C)      Insect damage.

38.1(b)(i)(D)      Damage or losses that result from overloading of any floor, wall, ceiling, or roof

beyond the design capacity.

38.1(b)(i)(E) Damages caused or made worse by:

38.1(b)(i)(E)(1)     Changes, additions, deletions, or any other alterations made to any part of the structure by anyone other than DEVELOPER and CONTRACTOR after the warranty term begins.

38.1(b)(i)(E)(2)     Loss that results from failure of OWNER to take timely action to mitigate or minimize damage.

38.1(b)(ii) DEVELOPER and CONTRACTOR has no liability for incidental or consequential damages from breach of any warranty provided by this agreement insofar as the loss claimed is covered by insurance of OWNER or for which OWNER has a right of recovery from any other party.

38.1(b)(iii) Basic **Warranty Coverage**

It is a breach of warranty if any material or design furnished, or workmanship performed by DEVELOPER and CONTRACTOR or any Subcontractor or Material Supplier, is found to be defective during the first year.

38.1(b)(iv) Warranty **on Major Structural Damage**

It is a breach of the major structural damage warranty where there is actual physical damage to designated load-bearing portions of the structure caused by the failure of such designated portions to perform to their load-bearing functions to the extent that it makes the structure unsafe, uninhabitable, or unsanitary during the first 12 months. The following items are designated load-bearing portions:

(A)     Foundation Systems and Footings
(B)     Beams
(C)     Girders
(D)     Lintels
(E)     Columns
(F)     Walls and Partitions
(G)     Floor Systems
(H)     Roof Framing Systems

### SECTION THIRTY-NINE.  DEVELOPER AND CONTRACTOR CLAIMS.

If DEVELOPER and CONTRACTOR claims that any instruction, Drawing, act or omission of OWNER or any representative of OWNER, or any agency of government, increases costs to DEVELOPER and CONTRACTOR, requires extra time or changes the Scope of Work, CONTRACTOR shall have the right to assert a Claim for such costs or time.

## SECTION FORTY. NOTICE OF CLAIMS.

40.1 No Claim by DEVELOPER and CONTRACTOR shall be considered unless DEVELOPER and CONTRACTOR provide OWNER or OWNER'S Representative with a notice that there will be a Claim for additional compensation or an extension of time. This notice of Claim shall be made no less than 5 Calendar Days after DEVELOPER and CONTRACTOR recognizes or should have recognized that circumstances exist which support such a Claim. The notice of Claim shall include: (a) The date of the notice, (b) The date the basis for the Claim was discovered, (c) The circumstances that support the Claim, and (d) The estimated additional cost to OWNER or additional time required to complete the Project.  Owner shall have exclusive authority and discretion to approve or deny any claim.

40.2 If the Claim involves Extra Work, DEVELOPER and CONTRACTOR shall maintain detailed records which show each expense incurred, including payroll records and receipts for Subcontracted Work, materials and equipment. These detailed records shall be made available to OWNER for verification while Work subject to the Claim is being performed. Developer and Contractor shall obtain written approval from Owner prior to performing any extra work.

40.3 The amount Claimed by CONTRACTOR shall be calculated in accord with provisions in this contract on charges for Extra Work.

## SECTION FORTY-ONE. DISPUTE RESOLUTION.

41.1   **Choice of Forum, Law and Venue**

About any controversy in any way arising out of or relating to the execution or performance of the Agreement, the method of binding dispute resolution shall be litigation and the parties hereby irrevocably agree that any suit, action, or legal proceeding shall be brought in the U.S. District Court for the Middle District of Florida, unless such court lacks jurisdiction, in which case, a state court of record in Manatee County, Florida.  The parties further irrevocably (i) consent to the jurisdiction of such federal or state court in any such suit, action, or legal proceeding, (ii) waive any objection to the laying of venue of any such suit, action, or legal proceeding in such federal or state court, and (iii) waive any defense based upon inconvenient forum or improper venue.  The parties further agree that all disputes arising out of or relating to the Agreement or the performance of it by either party shall be adjudicated solely by and be governed by the laws of the State of Florida without regard to conflicts of law analysis.

41.2   **Attorneys' Fees**.

If either party brings an Action to enforce their rights under this agreement, the prevailing party may recover its expenses (including reasonable attorneys' fees) incurred in connection with the Action and any appeal from the losing party.

## SECTION FORTY-TWO. INSURANCE.

### 42.1   Certificates of Insurance

42.1(a) DEVELOPER and CONTRACTOR shall provide to OWNER a certificate of insurance for each insurance policy required by this agreement. These certificates shall list OWNER as the

certificate holder.

42.1(b) Certificates of insurance shall be issued on a standard form.

42.1(c)    DEVELOPER and CONTRACTOR shall permit no Subcontractor to begin Work on the Project until OWNER has received certificates of insurance demonstrating that the Subcontractor has coverage of a like kind and with comparable limits to insurance coverage required of DEVELOPER and CONTRACTOR under this agreement.

## 42.2   Waivers of Subrogation

OWNER and DEVELOPER and CONTRACTOR waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance except such rights as may exist to the proceeds from insurance held by OWNER as trustee. DEVELOPER and CONTRACTOR shall require similar waivers in Subcontracts for the Project.

## 42.3   Insurance Details

42.3(a) **If** insurance policies meeting the Requirements of this contract are not generally available to DEVELOPER and CONTRACTOR.   DEVELOPER and CONTRACTOR may provide substantially similar coverage and shall so notify OWNER in writing.

42.3(b) **DEVELOPER** and CONTRACTOR may satisfy the policy limits set by this contract through any combination of underlying and excess liability (umbrella) insurance so long as the total coverage is not less than the policy limits specified in this contract. Any excess liability (umbrella) insurance coverage provided by CONTRACTOR must be written on an occurrence basis, offer coverage at least as broad as the underlying insurance, and have concurrent effective dates. Excess liability (umbrella) insurance provided by DEVELOPER and CONTRACTOR shall provide additional insured endorsements, blanket contractual coverage, and punitive damages coverage (unless prohibited by Law).

## 42.4   Liability Insurance

42.4(a) **As** an alternative to including OWNER as an additional insured under a comprehensive general liability policy, DEVELOPER and CONTRACTOR may provide an OWNER'S and CONTRACTOR's Protective Liability Policy. If DEVELOPER and CONTRACTOR are unable to procure the minimum amounts of insurance in a single policy, CONTRACTOR may provide required policy limits through a combination of a primary OCP Policy and one or more excess policies. OWNER shall be the named insured on the Policy and, if applicable, the excess policy. Each policy shall be endorsed to include each Subcontractor of every Tier as the CONTRACTOR designated in the declarations.

42.4(b) **Minimum** CONTRACTOR's liability coverage shall be: $2,000,000 combined bodily injury and property damage single occurrence limit, annual aggregate limit of $2,000,000, products and completed operations aggregate limit of $1,000,000, personal and advertising injury aggregate limit of $1,000,000.

## 42.5    Builder's Risk Insurance

42.5(a) OWNER shall provide builder's risk insurance covering property damage to the Project during the construction period. OWNER accepts the risk of damage to the Work during construction and agrees to Indemnify and hold harmless DEVELOPER and CONTRACTOR and Subcontractors at any Tier from losses resulting from uninsured damage to the Work prior to final payment under this agreement.

42.5(b) Builder's risk insurance shall include a loss payable provision naming OWNER as loss payee. OWNER shall have the power to adjust and settle Claims resulting from builder's risk insurance.

42.5(c)      Policy limits for builder's risk coverage shall be no less than the completed replacement value of the Project including the value of Change Orders.

## SECTION FORTY-THREE. LIABILITY FOR DAMAGES.
## (DEVELOPER AND CONTRACTOR LIABILITY FOR DAMAGES)

DEVELOPER and CONTRACTOR shall have no liability for damage to or loss of OWNER'S private property left on the Job Site unless such damage or loss is the direct result of intentional or negligent acts by DEVELOPER and CONTRACTOR.

## SECTION FORTY-FOUR. INDEMNITY.

44.1      DEVELOPER and CONTRACTOR shall defend, Indemnify, and hold harmless OWNER and all officers, employees, agents, and consultants of OWNER from and against all and any losses, liability, Claims, costs, damages and economic detriment of any kind whatsoever, or expense (including attorney's fees) that arises out of or results from performance of Work under this agreement provided such loss, liability, costs, damage and economic detriment is attributable to bodily injury, sickness, disease or death, or to injury or destruction of property (other than the Work itself) caused by the negligent acts or omissions of DEVELOPER and CONTRACTOR, a Subcontractor, or anyone directly or indirectly employed by them, or whether caused by or contributed to by OWNER, unless caused by the sole negligence of OWNER.

44.2      Indemnification of OWNER is limited to the extent of insurance coverage required to be carried by DEVELOPER and CONTRACTOR under this agreement.

44.3      Indemnification under this agreement shall not exceed any limitation on the amount or type of damages, compensation, or benefits payable by or for DEVELOPER and CONTRACTOR or any Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

## SECTION FORTY-FIVE. INTERPRETATION OF THE CONTRACT.

45.1      Section headings and paragraph numbers have been included in this contract to refer easier and in no way limit, define, or enlarge the terms, scope, or conditions of this contract.

45.2      Except as otherwise provided in this contract, OWNER and DEVELOPER and CONTRACTOR intend that this contract be interpreted in accord with the *Restatement of Law, Contracts*, published by the American Law Institute. Specifically: All parts of the Contract Documents should be interpreted together and conduct of the Parties should be interpreted as a

manifestation of intention, and specific provisions should be interpreted as qualifying the meaning of the general provisions.

## SECTION FORTY-SIX. DEALING WITH PLAN DEFECTS.

46.1      At any time, DEVELOPER and CONTRACTOR may request an interpretation or clarification of the Contract Documents from OWNER or OWNER'S Representative. OWNER or OWNER'S Representative shall reply with a written interpretation, clarification, or detailed instructions within a reasonable time.

46.2      DEVELOPER and CONTRACTOR will rely on the Contract Documents as the final authority on what is included in the Project. The Contract Documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction DEVELOPER and CONTRACTOR doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. CONTRACTOR bears no responsibility for defects in the Contract Documents.

46.3      Unless DEVELOPER and CONTRACTOR has asked for and received a written clarification from OWNER in time to prevent delay in the Work, any omission or ambiguity in the Contract Documents shall be interpreted as requiring the material or construction technique necessary to produce the greater quantity and better quality of Work.

46.4      DEVELOPER and CONTRACTOR will report promptly to OWNER any design defects likely to result in problems during construction of the Project. However, DEVELOPER and CONTRACTOR is not a licensed architect or engineer and have no obligation to detect ambiguities, inconsistencies or omissions in the Contract Documents. While acting in good faith, DEVELOPER and CONTRACTOR is entitled to rely on the Work of a trained design specialist selected by and responsible to OWNER.

46.5   DEVELOPER and CONTRACTOR is entitled to rely on dimensions and descriptions shown in the Contract Documents when ordering materials for Installation.

46.6      Ambiguities, inconsistencies and omissions in the Contract Documents are design defects, not errors by DEVELOPER and CONTRACTOR. The cost of correcting design defects shall be at the expense of OWNER.

46.7      If inconsistent, approved changes to the Contract Documents take precedence over the original Contract Documents. Subsequent changes to the Contract Documents take precedence over prior changes to the Contract Documents.

46.8   If inconsistent, the construction Drawings take precedence over the Specifications.

46.9 If anything in the construction Specifications is inconsistent with anything else in the construction Specifications: (a) A product performance Requirement takes precedence over a named product or manufacturer, and (b) Other clauses in the Specifications take precedence over anything incorporated by reference into the Specifications.

46.10    If anything in the construction Drawings is inconsistent with anything else in the construction Drawings: (a) Dimensions written in numbers take precedence over scaled measurements, (b) Notes and schedules take precedence over lines on the Drawings, (c) Large scale Drawings take precedence over small scale Drawings, (d) Schedules take precedence over notes or other directions, (e) Specific notes take precedence over general notes, and (f) Bottom elevations of footings take precedence over any general notes.

46.11    If inconsistent, other Contract Documents take precedence over any manual, industry standard, recommendation, regulation, and set of guidelines, code, or instructions incorporated by reference into the Contract Documents.

46.12    If inconsistent, any portion of the Contract Documents written in longhand takes precedence over anything printed in the Contract Documents.

46.13    DEVELOPER and CONTRACTOR has no liability for any omission, inconsistency or ambiguity in the Contract Documents or for any discrepancy between physical conditions at the Job Site and the Contract Documents, unless DEVELOPER and CONTRACTOR fails to report the error to OWNER or OWNER'S Representative.

## SECTION FORTY-SEVEN. ENTIRE AGREEMENT.

The Contract Documents are the entire agreement and constitute a complete integration of all understandings between DEVELOPER, CONTRACTOR, and OWNER about the Project. The Contract Documents supersede all prior negotiations, representations and agreements, whether written or oral. No subsequent notation, renewal, addition, deletion, change or amendment to this contract shall have any force or effect unless in the form of a written Change Order or amendment to this contract.

## SECTION FORTY-EIGHT. AUTHORSHIP; REPRESENTATION BY COUNSEL.

DEVELOPER, CONTRACTOR, and OWNER agree that the terms and language of this Agreement were the result of negotiations between the DEVELOPER, CONTRACTOR, and OWNER and, as a result, there shall be no presumption that any ambiguities in this Agreement shall be resolved against any party. Any controversy over construction of this Agreement shall be decided without regard to events of authorship or negotiation.  Furthermore, DEVELOPER, CONTRACTOR, and OWNER acknowledge that it has been represented by independent counsel of its choice throughout all negotiations that have preceded the execution of this Agreement.

## SECTION FORTY-NINE. SEVERABILITY.

If any provision of this contract is interpreted or rendered invalid and unenforceable, then the remainder of this contract shall remain in full force and effect.

## SECTION FIFTY. CUMULATIVE REMEDIES.

All rights and remedies provided to DEVELOPER and CONTRACTOR by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to CONTRACTOR at Law or in equity.

**SECTION FIFTY-ONE. MATERIALS AND SUBSTITUTIONS.**

51.1    When the Specifications refer to materials or equipment by performance standard (such as an ASTM identifier), DEVELOPER and CONTRACTOR may select for Installation any product or equipment meeting that standard. When several products or manufacturers are identified as acceptable in the Specifications, DEVELOPER and CONTRACTOR has the option of using any of the products or selecting any of the manufacturers listed without seeking approval from OWNER or OWNER'S Representative.

51.2    Except as stated otherwise in the Specifications, any reference in the Specifications to a brand, make, manufacturer, or model denotes only characteristics of quality, workmanship, economy of operation and suitability for the intended purpose. DEVELOPER and CONTRACTOR may use any substantially equivalent material, equipment, or article if approved in advance of Installation by OWNER or OWNER'S Representative.

51.3    All materials and equipment used on the Project shall comply with Specifications in the Contract Documents unless a substitution is approved in advance of Installation by OWNER or OWNER'S Representative. DEVELOPER and CONTRACTOR shall apply to OWNER or OWNER'S Representative for approval of a substitute material when: (a) Any item specified is found to be unusable or unavailable when needed for Installation, or (b) The item specified is considered inferior to an equivalent item which is readily available at a Similar cost. With the application, DEVELOPER and CONTRACTOR shall include documentation: (a) Demonstrating that essential features of the substitute item are equal to or exceed similar features of the item specified, and (b) Listing delivered prices for the substitute item based on Material Supplier quotations. OWNER or OWNER'S Representative may deny any application for substitution if not in the best interest of OWNER. If approved, any savings in cost that result from the substitution will be credited to OWNER. No request for substitution of material shall constitute grounds for extension of the Contract Time. Proposed substitutions shall not be purchased or installed without approval of the substitution by OWNER or OWNER'S Representative.

**SECTION FIFTY-TWO. INSPECTIONS.**

52.1 DEVELOPER and CONTRACTOR shall schedule and coordinate all Inspections required by the Contract Documents and by public authority so as not to delay the progress of the Work or the Work of OWNER or Separate CONTRACTORs. If the Contract Documents require that an Inspection be witnessed or attended by OWNER or OWNER'S Representative, DEVELOPER and CONTRACTOR shall give notice of the time and place of the Inspection. DEVELOPER and CONTRACTOR shall schedule Inspections during regular Work Days and normal business hours, unless mutually agreed by DEVELOPER and CONTRACTOR, OWNER, and Inspector.

52.2    Insofar as applicable and except where superseded by other provisions of the Contract Documents or by government regulation, Inspection of the following Work will be required on the Project: (a) Bearing surfaces of excavations before concrete is placed, (b) Reinforcing steel after Installation and before concrete is poured, (c) Structural concrete when poured, (d) Structural framing after erection and prior to being covered or enclosed, (e) Steel welding, (f) Mechanical and plumbing Work following Installation and prior to being covered or enclosed, (g) Electrical Work following Installation and prior to being covered or enclosed, (h) Above-ceiling Work when

Page 23

complete but before the finish ceiling material is installed, and (I) Final Inspections prior to occupancy.

52.3     If an Inspection reveals Work of DEVELOPER and CONTRACTOR not in compliance with the Contract Documents or not in compliance with any code or statute, DEVELOPER and CONTRACTOR shall bear the costs of correction, the cost of repeating the Inspection, and any related costs, including reasonable charges by OWNER or OWNER'S Representative for additional services.

## SECTION FIFTY-THREE. THE CONSTRUCTION SCHEDULE.

53.1     DEVELOPER and CONTRACTOR shall prepare and submit to OWNER for review and approval an estimated progress Schedule for the Work showing completion within the Contract Time. This progress Schedule shall identify expected starting and completion dates for each part of the job and identify tasks critical to timely completion of the Work.

53.2     DEVELOPER and CONTRACTOR may select any type of Schedule which: (a) Is suitable for monitoring progress of the Work, (b) Provides easy access to information about the timing of decisions OWNER must make and acts OWNER must perform, (c) Includes sufficient detail to demonstrate adequate planning for the Work, and (d) Presents a practical plan to complete the Work in an acceptable time.

53.3     DEVELOPER and CONTRACTOR shall plan, develop, supervise, control, and coordinate the performance of the Work so that job progress, sequence and timing conform to the construction Schedule. If DEVELOPER and DEVELOPER and CONTRACTOR falls materially behind the currently approved construction Schedule, OWNER may require DEVELOPER and CONTRACTOR to prepare and submit for approval, at no cost to OWNER, a plan for completing the Project within the Contract Time. Failure to submit a plan meeting this Requirement shall constitute grounds for termination under the terms of this agreement.

53.4     The Schedule shall allow for and depict the following: (a) Beginning and Completion Dates of each significant task (Work breakdown structure) in the job, (b) Delivery and approval of each Submittal, Samples and Shop Drawing, (c) Inspections and tests, (d) The Work of Subcontractors and Separate CONTRACTORs, and (e) Order dates and delivery dates of significant equipment and key materials. The construction Schedule shall include a legend which identifies the meaning of each symbol and abbreviation.

## SECTION FIFTY-FOUR.  EXTENSION OF THE TIME FOR COMPLETIONS.

54.1   OWNER shall execute a Change Order for Excusable Delay by extending the Contract Time for the period of the delay. Any of the following shall constitute excusable delay for which the Contract Time shall be extended: (a) Strike, boycott, embargo, terrorism, armed rebellion, quarantine or other obstructive action by employees, labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or, order of government authority, and (b) Fire, flood, earthquake, tornado, tidal wave, lightning, rain, snow, temperature under 32 degrees, casualty loss, epidemic, or unusually adverse weather.

54.2     For delay in delivery of materials, FF&E, equipment or for a shortage of labor that

results from unforeseeable circumstances beyond the control and without fault or negligence of either DEVELOPER and CONTRACTOR, or any Subcontractor or Material Supplier of DEVELOPER and CONTRACTOR, OWNER will grant an extension of the Contract Time if: (a) DEVELOPER and CONTRACTOR,  notifies OWNER or OWNER'S Representative promptly on discovery of the anticipated shortage, (b) DEVELOPER and CONTRACTOR,  substantiates the delay as unavoidable with a detailed chronology of events and all relevant correspondence, and (c) DEVELOPER and CONTRACTOR, provides an estimated date when the material, equipment or labor will be available.

54.3      Any Change Order granted for Excusable Delay shall have no effect on a Claim by DEVELOPER and CONTRACTOR, for damage from the same delay for interruption, hindrance, or disruption.

**SECTION FIFTY-FIVE. DEVELOPER AND CONTRACTOR CLAIMS FOR DELAY.**

55.1     The Contract Price shall be adjusted for any increase in the cost of performance of this contract caused by suspension, delay or interruption of the Work due to: (a) An error or omission in the Contract Documents, (b) A decision of OWNER to change the Scope of the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR, (c) A decision of OWNER to suspend the Work, unless the decision is the result of an error or omission by DEVELOPER and CONTRACTOR, (d) A failure by OWNER or OWNER'S Representative to comply with the construction Schedule, (e) Any act or neglect of OWNER or agent of OWNER or any Separate DEVELOPER and CONTRACTOR, (f) Failure of OWNER to yield control of the Job Site to DEVELOPER and CONTRACTOR, or (g) Failure of OWNER to make payments when due under the terms of this agreement.

55.2   Within 3 Working Days after receipt of a notice of Claim for compensation for suspension, delay, or interruption, OWNER shall: (a) Respond with a resolution, remedy, or direction to alleviate the delay, (b) Respond with a notice rejecting the Claim for delay, or (c) Respond with a draft Change Order accepting the Claim for delay. If the issue is not then resolved, DEVELOPER and CONTRACTOR, may request a Change Order.

55.3      No change in the Contract Time for completion or the Contract Price shall become part of the Contract Documents without a Change Order.

55.4  Compensation to DEVELOPER and CONTRACTOR, for suspension, delay, or interruption of Work shall include direct overhead (Job Site) expense, a proportionate share of unabsorbed indirect (home office) overhead expense, lost efficiency and lost profit taken as 15 percent of total compensable expenses. Direct overhead costs shall include, without limitation: (a) Labor (with taxes, insurance and fringe benefits) for the idle work force, (b) The fair rental cost of idle equipment (such as vehicles, construction tools and equipment), (c) Facilities (such as temporary structures, water, power, phone, and toilets), (d) The additional cost of Bonds and insurance, (e) Similar direct overhead costs of Subcontractors to whom DEVELOPER and CONTRACTOR, is liable for damages that result from the delay, and (f) Demobilization and re-mobilization costs. Unabsorbed indirect overhead costs shall include, without limitation, the proportionate share of office rent, office supplies, office utilities, office equipment, advertising, professional fees, management salaries, technical services, estimating, selling, accounting, bookkeeping and clerical expense, business licenses, taxes (except income taxes), and

insurance.

## SECTION FIFTY-SIX. LIQUIDATED DAMAGES.

56.1     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the Contract Time are considered reasonable by OWNER and DEVELOPER and DEVELOPER and CONTRACTOR, any neglect, refusal or failure of DEVELOPER and CONTRACTOR to reach Substantial Completion within the Contract Time, plus approved extensions of that time, will result in damage to OWNER impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and CONTRACTOR or which may become due CONTRACTOR the sum of $150.00 as liquidated damages for each Calendar Day that Substantial Completion is delayed beyond the Contract Time, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

56.2     Time is of the essence about this contract. The Schedule for completion and provisions in this contract for extension of the time for Completion are considered reasonable by OWNER and CONTRACTOR. Any neglect, refusal or failure of DEVELOPER and CONTRACTOR, to reach Completion within the time provided in this contract, plus approved extensions of that time, will result in damage in the form of inconvenience, loss of opportunities, and higher Inspection, Superintendence, and administrative costs to OWNER. These costs are impossible to estimate accurately in advance, and difficult to calculate after the occurrence. In lieu of actual damages for delay, OWNER shall deduct from money due DEVELOPER and DEVELOPER and CONTRACTOR or which may become due DEVELOPER and CONTRACTOR, the sum of $150.00 as liquidated damages for each Calendar Day that Completion is delayed beyond the time provided in this contract, plus approved extensions of that time. This daily rate for liquidated damages is reasonable, is our best estimate of actual damages, and is not a penalty.

56.3     Achieving Substantial Completion sooner than the Contract Time, plus approved extensions of that time, shall earn additional compensation to DEVELOPER and CONTRACTOR of $ N/A for each Calendar Day that Substantial Completion is achieved prior to the Contract Time, plus approved extensions of that time.

56.4     DEVELOPER and CONTRACTOR, shall not be charged liquidated damages for any failure, neglect or refusal to complete the Work on Schedule to the extent that the proximate cause of the delay was: (a) Strike, boycott, embargo, terrorism, armed rebellion, quarantine, delay in delivery of FF&E, or other obstructive action by employees, franchise owner, franchisor or labor organizations, discovery of archaeological or paleontological artifacts, act or neglect of a public utility, or by order of government authority, (b) Fire, flood, earthquake, tornado, tidal wave, lightning, casualty loss, epidemic, rain, snow or unusually adverse weather, (c) Any delay of Subcontractors or vendors resulting from items listed in sections a or b above, or (d) Any act or omission of OWNER or anyone acting on behalf of OWNER.

56.5     Except as provided elsewhere in this contract, liquidated damages are the exclusive damage remedy for OWNER for any failure of DEVELOPER and CONTRACTOR to complete Work per Schedule. No damages of any other type or description shall be awarded OWNER for failure of DEVELOPER and CONTRACTOR to comply with the construction Schedule.

## SECTION FIFTY-SEVEN. CONSEQUENTIAL DAMAGES.

DEVELOPER and CONTRACTOR, and OWNER waive all Claims for consequential damages against each other, their respective officers, directors, partners, employees, agents, consultants and Subcontractors, arising out of or relating to this contract or the termination of this contract, except those consequential damages covered by insurance or specifically provided elsewhere in this agreement.

## SECTION FIFTY-EIGHT. RIGHT TO STOP WORK FOR NON-PAYMENT.

58.1     If DEVELOPER and CONTRACTOR, is not paid any amount not in dispute within 7 Calendar Days after the date due, CONTRACTOR shall post on the Job Site and deliver to OWNER and all Subcontractors a notice of intention to stop the Work if payments then due are not received in full within 10 Calendar Days. Thereafter, CONTRACTOR may suspend the Work until delinquent payments have been received, pursuant to Florida code.

58.2     Neither DEVELOPER and CONTRACTOR, nor Surety of CONTRACTOR, nor any Subcontractor of DEVELOPER and CONTRACTOR shall be liable for delay or damage that OWNER may suffer as a result of suspension of the Work for failure to receive payments due under this agreement so long as: (a) Work was suspended by DEVELOPER and CONTRACTOR in compliance with the terms of this contract and with applicable Law, and (b) There is no good faith dispute that payment is due DEVELOPER and CONTRACTOR,  at the time of suspension. A good faith dispute exists if OWNER provides: (a) A list of specific reasons for nonpayment, including labor, materials, or equipment not in compliance with the Contract Documents, and (b) CONTRACTOR is afforded a reasonable opportunity to correct the Defects cited or issue a credit compensating OWNER for Defects that cannot be cured promptly.

## SECTION FIFTY-NINE.  EARLY PARTIAL OCCUPANCY.

59.1     Without prior approval of DEVELOPER and CONTRACTOR, OWNER shall not occupy or use any portion of the Work until Substantial Completion of the Project. If OWNER occupies or uses any portion of the Work before Substantial Completion of the Project and without prior approval of DEVELOPER and CONTRACTOR, the portion or portions used or occupied shall be considered complete, finished, accepted and the responsibility of OWNER.

59.2     No Partial Use or occupancy of the Work by OWNER shall commence prior to Substantial Completion without a Change Order confirming the responsibility of OWNER for maintenance, utilities, operation of equipment, and security during early Partial Use or occupancy.

59.3     If any portion of the Project is used or occupied by OWNER prior to Substantial Completion and if the Project is not completed within the Contract Time, liability of DEVELOPER and CONTRACTOR, for delayed completion shall be reduced by the proportion of the Project used or occupied by OWNER and for the time used or occupied by OWNER prior to Substantial Completion.

## SECTION SIXTY. SUBSTANTIAL COMPLETION.

60.1     When, in the opinion of DEVELOPER and CONTRACTOR, the Work is Substantially Complete, DEVELOPER and CONTRACTOR shall prepare a preliminary Punch List of Work remaining to be done and deliver that Punch List to OWNER'S Representative with a request for evaluation of Substantial Completion. If, in the opinion of OWNER'S Representative, items on the preliminary Punch List are consistent with Substantial Completion, OWNER'S Representative shall conduct an Inspection of the Work to evaluate compliance with the Contract Documents.

60.2 Before OWNER takes possession or occupancy of the Project, DEVELOPER and CONTRACTOR, shall receive a comprehensive Punch List of discrepancies to be corrected or Work to be finished by CONTRACTOR and a date for completing this Work. DEVELOPER and CONTRACTOR, shall complete and correct items on the Punch List by the designated date.

60.3   The Punch List given to DEVELOPER and CONTRACTOR, is a complete and final list of Defective or incomplete Work on the Project. OWNER shall be deemed to have accepted Work not on the Punch List. Nothing in this paragraph shall be interpreted as relieving DEVELOPER and CONTRACTOR, of the obligation to meet warranty and call-back obligations.

60.4     DEVELOPER and CONTRACTOR, shall annotate the Punch List with: (a) A detailed breakdown of the Work required to complete or correct each item, (b) The Subcontractor or trade responsible for the Work, and (c) The dates Work will commence and be finished on each item. No annotation is required for any item on the Punch List which is beyond the control of DEVELOPER and CONTRACTOR. Failure of CONTRACTOR to furnish a detailed completion Schedule for items on the Punch List shall constitute grounds for withdrawing acknowledgment of Substantial Completion.

60.5   OWNER'S Representative will prepare a certificate of Substantial Completion for signature by OWNER and DEVELOPER and CONTRACTOR, when the Project or a specific portion of the Project is ready for occupancy. Except as otherwise provided in the Contract Documents, signing of the certificate of completion shall: (1) Transfer to OWNER responsibility for maintenance, safety, utility expense, controlling access at the site, and (2) Begin running of any warranty or call-back period on the Project.

60.6    after Substantial Completion, DEVELOPER and CONTRACTOR, shall remain responsible for: (a) Damage caused by DEVELOPER and CONTRACTOR, while completing the Work, and (b) Safety of crews when completing the Work.

## SECTION SIXTY-ONE. DELIVERY OF NOTICES.

60.1   Any written notice required by this contract can be: (a) Delivered by hand at the last known address of the addressee, or (b) Delivered by hand to the addressee or representative of the addressee, wherever found. Notice is effective upon delivery.

60.2   Any written notice required by this contract can be: (a) Delivered by enclosing in a stamped envelope addressed to the last known address of the intended recipient and either deposited in a United States Postal Service mailbox or given to a USPS employee, or (b) Consigned to a commercial courier service and addressed to the last known address of the intended recipient. Notice is effective upon delivery if proof of delivery is provided; where no proof of delivery is available, notice is effective 5 Calendar Days after mailing or consignment to a courier service.

**[PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE TO FOLLOW]**

SIGNATURES

The signatures that follow constitute confirmation by those signing that they have examined and understand the Contract Documents and agree to be bound by the terms of these documents.

DEVELOPER and CONTRACTOR may not begin Work before receiving from OWNER a written notice to proceed. Any Work performed by DEVELOPER and CONTRACTOR before receipt of the notice to proceed shall be done at the risk of DEVELOPER and CONTRACTOR and without obligation of OWNER.

This agreement is entered as of the date written below.

**OWNER Name:**

**CHC-2735 CALUMET TRACE OWENSBORO KY LANDCO LLC,**
**a Florida limited liability company**

FG-MGR, LLC, a Maryland limited liability company
Manager

BY: _____
         Pun For Li, Manager

Date: ___2018-04-20___

**DEVELOPER:**

REDSTONE, LLC, a Tennessee limited liability company
D/B/A AMERICAN DEVELOPMENT PARTNERS

BY: _____
         Manny Butera, Developer and Authorized Signatory
         on behalf of REDSTONE, LLC

Date: _4/20/18___

Page 30

## Glossary of Terms

**Beneficial Occupancy** refers to OWNER'S use of the project premises after Substantial Completion but prior to Completion. Beneficial Occupancy may occur when the project or some portion is sufficiently complete and systems operational such that the OWNER could, after obtaining necessary approvals and certificates, occupy and utilize the space for its intended purpose. The time limit for warranties applicable to that portion of the Work begin on the date the OWNER begins Beneficial Occupancy, unless otherwise specified in this Agreement.

**Bond** means the security offered by a licensed surety company which may be used to satisfy a claim of failure to perform obligations undertaken in this Agreement.

**Calendar Day** means any day shown on the calendar beginning at midnight and ending at midnight the following day. Contrast the term Work Day which excludes Saturdays, Sundays and state-recognized holidays.

**Certification of Payment** is acknowledgment by someone not a party to this Agreement that CONTRACTOR is entitled to payment for work completed.

**Change Order** is a written modification of the Contract Price (including all claims for direct, indirect and consequential damages and costs of delay), Time for Completion and Scope of Work under this Agreement. A Change Order, once signed by all parties, is incorporated into and becomes a part of the Contract Documents.

**Claim** means a demand or assertion by one of the parties to this Agreement seeking, as a matter of right, modification, adjustment or interpretation of contract terms, payment of money, extension of time or other relief.

**Code Requirements** means all laws, statutes, regulations, building codes, ordinances, rules, and lawful orders of all public authorities having jurisdiction over OWNER, CONTRACTOR, any Subcontractor, the Project, the Job Site, the Work, or the prosecution of the Work.

**Contract Completion Date** means the day by which the Work must be substantially complete.

**Contract Date** is the day on which the contract becomes binding between CONTRACTOR and OWNER.

**Contract Documents** are this Agreement and all documents incorporated by reference into this Agreement.

**Contract Price** is the amount which will become due in exchange for work performed under this Agreement. Contract Price includes allowances for purchased materials and equipment and may be modified by a Change Order or contract modification. The Contract Price may be paid in one or more installments, including an Initial Payment at or before the start of work, Progress Payments as work is completed, and a Final Payment on final acceptance of the work. Payment

Between applications for progress payments or prior to the first application for progress payment.

**Contract Schedule** is a graphical representation of a practical plan to complete Work within the Contract Time.

**Contract Time** means the period between Date of Commencement and the date of Substantial Completion.

**CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the Work under the terms of this Agreement.

**Defective Work** means construction done under this Agreement that is unsatisfactory, faulty, omitted, incomplete, deficient, or does not conform to the requirements of the Contract Documents, directives of OWNER'S Representative, or the requirements of an inspection, reference standard, test, or approval specified in the Contract Documents.

**Design Professional** means the person, organization or authorized representative who is responsible to the OWNER for design of the Project through preparation of Drawings and Specifications. The term Design Professional may refer to an architect, designer, engineer or landscape architect.

**Drawings** (also called plans or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Drawings include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed Project. A group of drawings adequate to complete construction of the Project may be referred to as a plan set. Drawings can be either paper or electronic media.

**Emergency** means an unforeseen event, combination of circumstances, or a resulting state that poses imminent danger to health, life or property.

**Excusable Delay** means any circumstance which postpones completion of the Work and for which CONTRACTOR is entitled to an adjustment of the Contract Time but not an adjustment to the Contract Price. Contrast Inexcusable Delay which entitles CONTRACTOR to neither an adjustment of the Contract Price nor an adjustment in the Contract Time.

**Extra Work** means any change, interpretation, clarification or correction in the Contract Documents or in applicable law, ordinance or regulation which would increase or decrease the quantity of work, delay, suspend or interfere with the work, require an addition to or omission from the work, change the character, quality or nature of any part of the work or material used in the work, change levels, lines, positions or dimensions of any part of the work, require demolition or removal of any work completed under this Agreement, extend or amend the normal work day, alter the construction schedule or require completion of any part of the work at a time other than provided by this Contract when originally made.

**Completion** is the date of OWNER'S acceptance of the Work as fully performed per the Contract Documents.

**Furnish** means to supply and deliver to the job site.

**General CONTRACTOR** is an individual, partnership, firm, corporation, joint venture, or other legal entity undertaking execution of the Work under terms of a Prime Contract.

**Hazardous Materials** means radioactive materials, asbestos, polychlorinated biphenyls, petroleum, crude oil, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, and toxic substances which are restricted, prohibited, or regulated by any agency of government in the manufacture, use, maintenance, storage, Ownership or handling.

**Indemnification** Financial compensation intended to restore someone to their condition before a loss or damage.

**Inspection** is any review of the Project, including a visual review of the Work completed to ascertain compliance with Contract Documents, building codes and construction standards.

**Inspector** is anyone authorized by government or the Design Professional to conduct inspections of contract performance and materials supplied for the Work.

**Install** means to secure in position in compliance with the Contract Documents and includes unloading materials, supplying all necessary equipment and rigs to do the work and performing functional tests which demonstrate fitness for the intended purpose.

**Job Site** is the address or location of the Project.

**Law** means federal or state statutes, municipal ordinances, building codes, regulations adopted pursuant to statute, executive orders, official interpretations, and other rules and directives issued by government.

**Material Supplier** means any manufacturer, fabricator, distributor, material man or vendor who provides material for the Project but does not provide on-site labor.

**Modification** is a written amendment to the Contract signed by both parties.

**OWNER'S Representative** means the person or firm authorized to act and make administrative decisions on behalf of the OWNER during construction. Any notice required to be delivered to the OWNER may be delivered to the OWNER'S Representative. The scope of authority of the OWNER'S Representative is defined in this contract. CONTRACTOR cannot rely on any decision or instruction by OWNER'S Representative that is beyond the representative's defined scope of his authority. Nothing in this contract prevents OWNER from issuing a notice or instructions directly to the CONTRACTOR. The OWNER may change the OWNER'S Representative from time to time and may, if OWNER'S Representative is absent, disabled or

otherwise temporarily unavailable, appoint an interim OWNER'S Representative.

**Party (to this contract)** means a person or business organization which has an obligation to perform under the terms of this contract.

**Plans** (also called drawings or prints) are scale representations of the shape, location, character and dimensions of Work to be completed under this contract. Plans include plan views, elevation views, transverse and longitudinal sections, large and small-scale sections and details, isometrics, diagrams, schedules, tables, data and pictures which depict the completed project. A group of plans adequate to complete construction of the Project may be referred to as a plan set. Plans can be either paper or electronic media.

**Prime Contract** is a written agreement between CONTRACTOR and OWNER which binds CONTRACTOR to furnish labor, equipment, or materials or perform certain work for a price to be paid by OWNER.

**Project** means Work to be completed in accord with the Contract Documents. Work at the Job Site may include other projects to be completed by the OWNER or other CONTRACTORs working under other agreements.

**Provide** means furnish and install and includes connecting, testing, and placing in service for the intended use.

**Punch List** is a comprehensive list of incomplete, defective or incorrect Work yet to be completed or which does not comply with Contract Documents. A Punch List may be prepared by the CONTRACTOR, Subcontractor, Design Professional or OWNER. An initial Punch List will be prepared before application for Substantial Completion. A Close-out Punch List will be prepared before Completion.

**Requirements** means, in addition to obligations, responsibilities and limitations set out in the Contract Documents, the obligations, responsibilities and limitations imposed by law, rules, orders, ordinances, regulations, statutes, codes and executive orders of governmental authorities or fire rating bureaus.

**Retainage** is a portion of each progress payment temporarily held back or retained by the OWNER. Accumulated retainage is released to CONTRACTOR on satisfactory completion of the work.

**Sample** means a physical example of material; equipment or workmanship intended to be representative of some portion of the Work. When approved, samples establish standards for completion of similar work on the Project.

**Schedule of Values** means the detailed breakdown of cost of materials, equipment and labor necessary to complete the Project as described in the Contract Documents.

**Scope of Work** means the Work as defined by the Contract Documents.

**Separate CONTRACTOR** means a person or firm working under a different contract but on the same site and at the same time as work will be done under this contract.

**Shop Drawings** are diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data which are prepared by the CONTRACTOR or a Subcontractor, manufacturer, supplier or distributor, and which illustrate or describe some portion of the Work to be completed in compliance with the Contract Documents. Once submitted to the approval authority and approved, Shop Drawings establish standards for completion of work on Project.

**Similar** means having a like kind, quality and characteristics. Similar is not to be construed as meaning identical or by the same manufacturer.

**Specifications** (also called specs) are the part of the Contract Documents which provide descriptions of materials, equipment, construction systems, technique and workmanship to be used on the Project. Specifications are both instructions to be followed by the CONTRACTOR and Subcontractors and a reference for the Building Official to evaluate code compliance.

**Subcontract** is a written agreement between a specialty CONTRACTOR and General CONTRACTOR. Terms of the subcontract require the specialty CONTRACTOR to complete some portion of the work General CONTRACTOR is obligated to perform under another agreement, usually with the OWNER.

**Subcontractor** is any person or business entity under contract to a general CONTRACTOR to perform some portion of the work general CONTRACTOR is obligated to complete under a contract with the OWNER. Subcontractor is an independent CONTRACTOR performing services for another CONTRACTOR rather than for the OWNER. A person or organization providing supplies or materials for the Project, but no job site labor is not a Subcontractor.

**Submittals** demonstrate the way by which the CONTRACTOR proposes to conform to the requirements of the Contract Documents. Submittals are shop drawings (diagrams, illustrations, pictures, schedules, performance charts, layouts, schematics, descriptive literature, schedules, performance and test data, and other data) required by the Contract Documents which are prepared for the CONTRACTOR to depict some portion of the Work. Submittals are delivered to the OWNER for approval or disapproval by the OWNER prior to purchase or installation.

**Substantial Completion** means the Project, or a designated portion of the Project is nearly in compliance with the Contract Documents and is sufficiently complete to be considered fully operational in all its components and is fit for the intended use. Substantial Completion is reached when a limited number of non-conforming or defective items on a Punch List remain to be completed. Normally, a Project or portion of a Project cannot be considered Substantially Complete until (1) all utilities and services are connected and working, (2) all equipment is installed and in acceptable working condition, (3) additional activity by the CONTRACTOR to correct items on the Punch List will not prevent or disrupt use of the facility, and, (4) a certificate

of occupancy has been issued by the appropriate authority.

**Sub-subcontractor** is any person or business entity under contract to a subcontractor or any lower tier subcontractor to perform some portion of the work subcontractor is obligated to complete under a

contract with the prime CONTRACTOR. Sub-subcontractors are independent CONTRACTORs performing services for another CONTRACTOR rather than for the prime CONTRACTOR. A person or organization providing supplies or materials for the Project, but no job site labor is not a Sub-subcontractor.

**Superintendent** is the representative of the CONTRACTOR at the job site who is authorized to receive instructions from the OWNER or OWNER'S Representative and who is authorized to direct the performance of work on behalf of the CONTRACTOR.

**Surety** means any qualified individual, firm or corporation other than the CONTRACTOR, which executes a bond to insure its acceptable performance of the contract.

**Tier** refers to the contractual level of a person or business organization doing work on the Project. A first-tier subcontractor has a contract with the general CONTRACTOR but not the OWNER. A second-tier subcontractor has a contract with another subcontractor but not with the general CONTRACTOR or the OWNER.

**Work** means all labor, material, equipment, tools, transportation, permanent and temporary utilities, connections, provisions for safety and management services required to complete the Project in compliance with the Contract Documents. Work may constitute the whole or a part of the Project. Work is to be performed in a safe, expeditious, orderly and professional manner in keeping with current standards of the industry. Work includes everything that is or should be evident to a skilled construction professional after careful examination of the Contract Documents and the Job Site.

**Work Day** means any day, excluding Saturdays, Sundays and state-recognized holidays, shown on the calendar beginning at midnight and ending at midnight the following day.